**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL 2724<br>16-md-2724 |
| THIS DOCUMENT RELATES TO: | HON. CYNTHIA M. RUFE |
| *Ahold USA, Inc., et al. v. Actavis Holdco U.S., Inc. et al.* | Civil Action Nos.<br><br>18-2641 |
| *1199SEIU Nat'l Benefit Fund, et al. v. Actavis Holdco US, Inc.* | 18-2401<br>18-3299<br>18-2533 |
| *Humana Inc. v. Actavis Elizabeth, LLC et al.* | 18-284<br>18-4137<br>17-3768 |
| *West Val Pharm., et al. v. Actavis Holdco U.S., Inc.* | |
| *The Kroger Co., et al. v. Actavis Holdco U.S., Inc.* | **ORAL ARGUMENT REQUESTED** |
| *Marion Diagnostic Center, LLC, et al. v. McKesson Corp., et al.* | |
| *The State Attorneys General Litigation* | |

**APOTEX CORP.'S INDIVIDUAL BRIEF**
**IN SUPPORT OF ITS MOTION TO DISMISS**
**PLAINTIFFS' OVERARCHING CONSPIRACY CLAIMS**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

FACTS AS ALLEGED AGAINST APOTEX ..................................................................... 2

ARGUMENT ...................................................................................................................... 3

**I.**     PLAINTIFFS DO NOT SUFFICIENTLY ALLEGE THAT APOTEX
         PARTICIPATED IN AN "OVERARCHING" CONSPIRACY. ................................... 3

         A.     Plaintiffs Do Not Plausibly Allege that Apotex Engaged in the Conduct
                that Allegedly Manifested the "Overarching" Conspiracy. ................................... 5

                1.     *Plaintiffs Do Not Allege that Apotex Traded Customers Across
                       Multiple Drug Markets Via* Quid Pro Quo *Arrangements.* ........................ 6

                2.     *Plaintiffs Do Not Allege that Apotex Supported Price Increases
                       Across Multiple Drug Markets Via* Quid Pro Quo *Arrangements,
                       and Plaintiffs' Allegations Concerning Apotex Render its
                       Participation in Such* Quid Pro Quo *Arrangements Factually
                       Impossible.* ................................................................................................ 7

                3.     *Plaintiffs Do Not Allege that Apotex Allocated Customers or
                       Rigged Bids Within Individual Drug Markets.* ........................................... 8

         B.     Plaintiffs Do Not Plausibly Allege that Apotex was a Competitor or
                Potential Competitor in any Markets Other Than the Markets for
                Leflunomide and Pravastatin, and thus Do Not Plausibly Allege that
                Apotex Participated in an "Overarching" Conspiracy. ......................................... 10

         C.     Plaintiffs Cannot Use Allegations of Individual, Single-Drug Conspiracies
                as to Apotex to Bootstrap Pleading an "Overarching" Conspiracy. ..................... 11

CONCLUSION.................................................................................................................... 14

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)........................................................................................3, 5, 8, 9

*Burtch v. Milberg Factors, Inc.*,
  662 F.3d 212 (3d Cir. 2011).........................................................................................3

*Finkelman v. National Football League*,
  810 F.3d 187 (3d Cir. 2016).........................................................................................5

*FTC v. Endo Pharm., Inc.*,
  Civ. No. 2:16-1440, 2016 WL 6124376 (E.D. Pa. Oct. 20, 2016) .........................................12

*In re Auto. Parts Antitrust Litig.*,
  No. 12-md-02311, 2016 WL 8200512 (E.D. Mich. Apr. 13, 2016) ................................12, 14

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
  738 F. Supp. 2d 1011 (N.D. Cal. 2010) ......................................................................4

*In re Ins. Brokerage Antitrust Litig.*,
  618 F.3d 300 (3d Cir. 2010)...................................................................................4, 13

*In re Optical Disk Drive Antitrust Litig.*,
  No. 3:10-md-2143 RS, 2011 WL 3894376 (N.D. Cal. Aug. 3, 2011)....................................12

*In re Optical Disk Drive Antitrust Litig.*,
  No. 3:10-MD-2143 RS, 2014 WL 3378336 (N.D. Cal. July 10, 2014)................................4, 6

*In re OSB Antitrust Litig.*,
  No. 06-826, 2007 WL 2253419 (E.D. Pa. 2007) ............................................................6, 7

*In re Processed Egg Prods. Antitrust Litig.*,
  821 F. Supp. 2d 709 (E.D. Pa. 2011) ...........................................................................4

*U.S. v. Ashland-Warren, Inc.*,
  537 F. Supp. 433 (M.D. Tenn. 1982)..........................................................................10

*U.S. v. Kelly*,
  892 F.2d 255 (3d Cir. 1999)...............................................................................11, 12, 13, 14

*U.S. v. Kemp*,
  500 F.3d 257 (3d Cir. 2007)......................................................................................13

*Zachair, Ltd. v. Driggs*,
  965 F. Supp. 741 (D. Md. 1997) ............................................................................................10

## INTRODUCTION

Defendant Apotex Corp. ("Apotex") joins and incorporates by reference Defendants' Motion to Dismiss and Memorandum of Law in Support of the Motion to Dismiss Plaintiffs' Overarching Conspiracy Claims[1] and Defendants' Motion to Dismiss State Plaintiffs' Federal Law Claims for Lack of Standing and submits this brief in support of its individual motion for an order dismissing the "overarching" conspiracy claims against Apotex in the Complaints.  In addition to the reasons set forth in Defendants' Memorandum of Law, the "overarching" conspiracy claims against Apotex should also be dismissed because each of the Complaints is particularly deficient with respect to its allegations specific to Apotex.

Apotex allegedly sold only <u>two</u> of the more than thirty drugs in this MDL.  Although Plaintiffs allege Apotex participated in individual conspiracies for those two drugs, Plaintiffs do not allege Apotex-specific conduct that connects its sale of those two drugs to each other or to any other drug in the MDL.  As pleaded, Plaintiffs' Complaints do not plausibly allege: (i) that Apotex engaged in any of the conduct Plaintiffs allege effected the "overarching" conspiracy; or (ii) that Apotex was a competitor or potential competitor in markets beyond the drugs it is alleged to have manufactured, sold, or held ANDAs for – pravastatin, leflunomide, and zoledronic acid.  Plaintiffs cannot rescue their deficiently pleaded "overarching" conspiracy claims by bootstrapping them to individual, single-drug conspiracies purportedly pleaded against Apotex.  These deficiencies,

---

[1] Defendants' Motion seeks dismissal of the "overarching" conspiracy claims against all Defendants in the Direct Purchasers' First Amended Class Action Complaint ("DPP Compl."), the End-Payer Class Action Complaint ("EPP Compl."), the Indirect-Reseller Plaintiffs' Amended Overarching Complaints ("IRP Compl."), the Kroger Plaintiffs' Amended Complaint ("Kroger Compl."), Humana, Inc.'s Amended Complaint ("Humana Compl."), Marion Diagnostic Center LLC and Marion Healthcare LLC's Class-Action Complaint ("Marion Compl."), and the Plaintiff States' Consolidated Amended Complaint ("State AG Compl.") (collectively, the "Complaints").  The Direct-Purchaser Plaintiffs, End-Payer Plaintiffs, Indirect-Reseller Plaintiffs, Kroger Plaintiffs, Humana, Inc., Marion Diagnostic Center LLC and Marion Healthcare LLC, and Plaintiff States will be referred to throughout this brief as "Plaintiffs" unless otherwise specified.

common across all Complaints, strike a fatal blow to Plaintiffs' "overarching" conspiracy claims against Apotex.

## FACTS AS ALLEGED AGAINST APOTEX

Plaintiffs' allegations related to Apotex's alleged participation in an overarching conspiracy are scant and not identical from complaint to complaint. The deficient allegations regarding Apotex's participation in an "overarching conspiracy" can be summarized with the following distinct categories:

| Apotex-specific Allegation(s) Regarding Alleged "Overarching Conspiracy" | Complaint(s) |
|---|---|
| Throughout 2013 and 2014, Apotex employees and/or representatives "frequently" communicated with counterparts at Heritage and Teva.[2] | <ul><li>EPP Compl., ¶¶ 141–44.</li><li>State AG Compl., ¶¶ 89–94.</li><li>Kroger Compl, ¶¶ 173–76.</li><li>Humana Compl., ¶¶ 199–201.</li><li>Marion Compl., ¶¶ 52–53.</li></ul> |
| Apotex's former Vice President of Sales and Marketing, Beth Hamilton, worked for another defendant after her employment with Apotex ended.[3] | <ul><li>EPP Compl., ¶ 130.</li><li>IRP Compl., ¶ 71.</li></ul> |
| Apotex employees and/or representatives attended various trade association events and meetings, or were members of various trade associations, during the alleged relevant time periods. | <ul><li>DPP Compl., Exs. D, E.</li><li>EPP Compl., ¶¶ 153, 161, 168, 172, 176, 178.</li><li>Kroger Compl., ¶¶ 154, 157, 159.</li><li>Humana Compl., ¶¶ 176–84.</li></ul> |
| Apotex was part of a "second group of conspirators" who were separate and apart from the "core conspirators" and who were induced by the core conspirators "to participate | <ul><li>Kroger Compl., ¶ 22.</li></ul> |

[2] The Complaints lack detail regarding the vast majority of these alleged communications, and the Apotex-specific communications for which Plaintiffs do provide detail relate only to the alleged drug-specific conspiracies for pravastatin and leflunomide, and Plaintiffs do not allege specific facts to suggest those communications included discussion of an "overarching" conspiracy. *See* EPP Compl., ¶¶ 567–78; IRP Compl., ¶¶ 268–72; State AG Compl., ¶¶ 384–87; Kroger Compl., ¶¶ 598–603, 716–41; Humana Compl., ¶¶ 555–57, 634, 639. These drug-specific allegations do not support a plausible inference of an "overarching" conspiracy.

[3] Plaintiffs do not allege that Ms. Hamilton's new employer and Apotex participated in the same individual, drug-specific conspiracies, nor that they manufactured or sold the same generic drugs in this MDL. Plaintiffs also do not provide dates of employment for Ms. Hamilton with Apotex or the other defendant and, thus, do not allege whether Ms. Hamilton moved from Apotex to the other defendant before the alleged Apotex-specific price increases occurred.

| | |
|---|---|
| as necessary to increase prices on each of the [drugs at issue] to fully implement and maintain the overarching conspiracy." | |
| Apotex held an ANDA for zoledronic acid. | • EPP Compl., ¶ 115. |
| Apotex representatives discussed price increases "for a number of drugs" with Heritage representatives in April and/or May 2014. | • IRP Compl., ¶ 268. |
| Apotex's alleged involvement in individual drug conspiracies concerning pravastatin and/or leflunomide was "part of an overarching conspiracy." | • EPP Compl., ¶ 581.<br>• IRP Compl., ¶ 280.<br>• State AG Compl., ¶ 390.<br>• Humana Compl., ¶¶ 567, 644. |

Even if each Complaint had the benefit of including all other Complaints' Apotex-specific allegations, which they do not, the overarching conspiracy claims in each of the Plaintiffs' Complaints still fail as a matter of law.

## ARGUMENT

## I.   PLAINTIFFS DO NOT SUFFICIENTLY ALLEGE THAT APOTEX PARTICIPATED IN AN "OVERARCHING" CONSPIRACY.

To successfully state a claim under Section 1 of the Sherman Act, Plaintiffs must allege facts supporting a plausible inference that defendants conspired. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556–67 (2007); Defs.' Mem. at II.A. To plead the existence of such an unlawful agreement, Plaintiffs must allege either (1) direct evidence of an unlawful agreement, or (2) circumstantial evidence of parallel behavior, pleaded in a "context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action." *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 226 (3d Cir. 2011) (citations omitted). Plaintiffs alleging an "industry-wide" or "overarching" conspiracy like the one Plaintiffs purport to allege must do so "with precision" and offer more than a series of individual agreements coupled with

3

allegations that the defendants engaged in the same "pernicious industry practice." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 348–51 (3d Cir. 2010); Defs.' Mem. at II.A.

To survive a motion to dismiss, the Complaints must "delineate[] to some sufficiently specific degree" that Apotex "purposefully joined and participated in" the alleged overarching conspiracy. *In re Processed Egg Prods. Antitrust Litig.*, 821 F. Supp. 2d 709, 720 (E.D. Pa. 2011) (Pratter, J.); Defs.' Mem. at II.A.   Because the Complaints do not "include allegations specific to [Apotex] alleging [Apotex's] role in the alleged [overarching] conspiracy," and do not "make allegations that plausibly suggest that [Apotex] participated in th[at] conspiracy," dismissal of the "overarching" conspiracy claims is required. *In re Optical Disk Drive Antitrust Litig.*, No. 3:10-MD-2143 RS, 2014 WL 3378336, at *4 (N.D. Cal. July 10, 2014) (citing *In re Cathode Ray Tube (CRT) Antitrust Litig.,* 738 F. Supp. 2d 1011, 1019 (N.D. Cal. 2010)).

Plaintiffs attempt to plead Apotex's participation in an "overarching" conspiracy through allegations of: (a) one-time price increases in two separate drug markets (leflunomide and pravastatin); (b) participation in various trade associations; (c) communications with other generic drug manufacturers; (d) FDA approval to manufacture and sell only three generic drugs (leflunomide, pravastatin, and zoledronic acid); and (e) the movement of a single former employee to another generic drug manufacturer.  Plaintiffs do so without specific facts connecting Apotex's alleged conduct to the specific conduct Plaintiffs allege effected the "overarching" conspiracy – *quid pro quo* trading of customers across multiple drug markets, *quid pro quo* price increases across multiple drug markets, market allocation, and bid rigging – or establishing that Apotex was a competitor or potential competitor in drug markets beyond the drugs it sold, manufactured, or had FDA approval to sell.

4

Nevertheless, Plaintiffs ask the Court to infer an "overarching" conspiracy. Those allegations do not pass muster. *See Finkelman v. National Football League*, 810 F.3d 187, 201 (3d Cir. 2016) (explaining that plaintiffs in *Twombly* "looked around and saw conduct *consistent* with a conspiracy, but [alleged] no facts that indicated more plausibly that a conspiracy actually existed" (emphasis in original)). Without more, Third Circuit law compels dismissal of the Complaints' "overarching" conspiracy claims against Apotex.

### A.      Plaintiffs Do Not Plausibly Allege that Apotex Engaged in the Conduct that Allegedly Manifested the "Overarching" Conspiracy.

Plaintiffs' allegations of an "overarching" conspiracy hinge upon the existence of a "fair share" agreement among and between all defendant manufacturers. These allegations are not only entirely generic, with non-specific references to "defendants" and generalized examples of allegedly anticompetitive conduct, *see* Defs.' Mem. at II.B.1., but they also lack plausible factual allegations (and more often have no allegations at all) that Apotex engaged in the types of conduct Plaintiffs allege demonstrated the "overarching" conspiracy.

Additionally, Plaintiffs' alleged "overarching" conspiracy is at times supported with generalized allegations of market-share allocation or bid rigging within individual drug markets (as contrasted with the *quid pro quo* arrangement across multiple drug markets). Similar to the alleged *quid pro quo* arrangements, Plaintiffs do not allege specific facts that demonstrate Apotex engaged in market allocation, bid rigging, or even customer bidding within individual drug markets in furtherance of the alleged "overarching conspiracy."[4]

---

[4] Certain of Plaintiffs' complaints allege that the "fair share" agreement was discussed and facilitated as a result of current and former employees of defendants, including Apotex specifically, working for several defendants over the course of the alleged conspiracy. According to Plaintiffs, these employees would "reach back" to their former employer to facilitate the "fair share" agreement between their former employer and current employer. *See* EPP Compl., ¶ 130; IRP Compl., ¶ 71. Importantly, though, while these particular complaints allege that Apotex's former employee, Beth Hamilton, moved to another defendant these complaints do not allege that Apotex manufactured or sold any of the same drugs as her new employer. The bare fact that Ms. Hamilton worked for another defendant drug manufacturer, and one that did not manufacture leflunomide or pravastatin, after her employment with Apotex does

5

As detailed below, these deficiencies fail to connect Apotex to an "overarching" conspiracy and are fatal to Plaintiffs' "overarching" conspiracy claims against Apotex.

### 1. *Plaintiffs Do Not Allege that Apotex Traded Customers Across Multiple Drug Markets Via* **Quid Pro Quo** *Arrangements.*

Plaintiffs allege that generic drug manufacturers furthered the alleged "overarching" conspiracy through a "fair share" agreement that, in part, involved defendants actively trading customers in one drug market in exchange for customers in a different drug market so that market shares could be properly allocated across the generic drug industry.  *See, e.g.,* EPP Compl., ¶ 125; IRP Compl., ¶ 70; DPP Compl., ¶ 17.  However, Plaintiffs do not identify a single instance in which Apotex "traded" a customer in one of its individual drug markets (leflunomide and pravastatin) for a customer in another drug market in order to obtain a larger market share in either of its individual drug markets.  Instead, the Apotex-specific allegations are limited to alleged conspiracies entirely self-contained within the individual drug markets for leflunomide and pravastatin.  Indeed, the Complaints do not even allege that Apotex manufactured or sold any generic drugs beyond leflunomide and pravastatin.

Because Plaintiffs do not allege that Apotex traded even a single customer in one drug market in exchange for market share in another market, the Complaints do not plausibly allege "[Apotex's] role in the alleged [fair share agreement], and do not plausibly allege "that [Apotex] participated in th[at] [agreement]." *In re Optical Disk Drive Antitrust Litig.*, 2014 WL 3378336, at *4 (internal citations omitted); *see also In re OSB Antitrust Litig.*, No. 06-826, 2007 WL 2253419, at *5 (E.D. Pa. 2007) ("[T]he plaintiff must allege that each individual defendant joined

---

not, standing alone, plausibly allege Apotex's involvement in a "fair share" agreement.  Notably, there are no allegations regarding *when* Ms. Hamilton moved from Apotex to the other defendant, making it impossible to even speculate about whether she *could* have communicated back to Apotex about any type of agreement to allocate markets or raise prices during the relevant time period.

the conspiracy and played some role in it.").    Accordingly, dismissal of the "overarching" conspiracy claims against Apotex is appropriate. *Id.*

> **2.    *Plaintiffs Do Not Allege that Apotex Supported Price Increases Across Multiple Drug Markets Via* Quid Pro Quo *Arrangements, and Plaintiffs' Allegations Concerning Apotex Render its Participation in Such* Quid Pro Quo *Arrangements Factually Impossible.***

Plaintiffs likewise purport to allege that the "fair share" agreement was premised upon an agreement to support price increases in one drug market in exchange for competing manufacturers' reciprocal agreement to support price increases in another drug market. *See, e.g.,* EPP Compl., ¶ 125; IRP Compl., ¶ 70.  However, Plaintiffs do not allege that Apotex agreed to raise prices on the two drugs it is alleged to have individually conspired over – leflunomide and pravastatin – in exchange for reciprocal price increases on those or any other generic drug.

Instead, with regard to leflunomide, one Plaintiff alleges that Teva and Heritage agreed that if Heritage increased its prices for leflunomide (as well as acetazolamide, glipizide-metformin, glyburide, and glyburide-metformin) Teva would support those increases. *See* IRP Compl., ¶ 266. The same Plaintiff also alleges that Heritage contacted Apotex to discuss price increases for "a number of other generic drugs, including at least leflunomide and the other above-identified drugs,"[5] *id.,* ¶ 268. "Other above-identified drugs" presumably refers to the other drugs referenced in IRP Compl. ¶ 266, but, aside from leflunomide, that Complaint does not allege that Apotex manufactured or sold (let alone held an ANDA for) any of those other drugs that Heritage and Teva are alleged to have conspired over.  This renders any alleged *quid pro quo* price increase a

---

[5] Several Plaintiffs do not plead the same level of detail, and either omit any specificity relating to contacts between Heritage and Apotex, or instead rely upon an allegation that Heritage contacted Apotex to discuss price increases for "at least leflunomide." EPP Compl., ¶ 567; Humana Compl., ¶¶ 548–67.  These absent or more generalized allegations suffer from the same deficiency as the more-detailed (yet still deficient) allegations included in the Indirect Resellers' Complaint.

7

factual impossibility as to Apotex, since it could not support price increases Heritage or Teva purportedly desired in drug markets in which it is not specifically alleged to have participated.

Plaintiffs' scant attempts to allege price-increase horse trading across multiple drug markets do not include facts that plausibly suggest Apotex's alleged involvement in a Section 1 conspiracy involving price increases across multiple drug markets.  Indeed, these allegations lack even a single fact that "ties" Apotex to such a *quid pro quo* conspiracy and, thus, Plaintiffs' "overarching" conspiracy claims against Apotex should be dismissed.  *See Twombly*, 550 U.S. at 556.

> **3.** ***Plaintiffs Do Not Allege that Apotex Allocated Customers or Rigged Bids Within Individual Drug Markets.***

Plaintiffs' Complaints also purport to allege that the "overarching" conspiracy was carried out through customer allocation or bid rigging within specific, individual drug markets. *See, e.g.,* EPP Compl., ¶¶ 118–27; IRP Compl., ¶¶ 65–72; DPP Compl., ¶¶ 16–19; Kroger Compl., ¶ 21; State AG Compl., ¶¶ 12, 92; Humana Compl., ¶¶ 173, 265; Marion Compl., ¶¶ 55–58.  Most Complaints allege in only the most general terms that, when customers requested new bids from generic drug manufacturers for pricing on certain drugs as the result of a price increase from one manufacturer within that drug market, the competing manufacturers would speak with each other to devise strategies for responding to the customers' bids without undermining the initial manufacturer's price increase.  *See id.*  Most Complaints also allege, again in general and conclusory terms, that the defendants agreed within individual drug markets to allocate their shares within that drug market based on the number of competitors and timing of entry.  *See id.*  Apotex, however, is not implicated in any such activity.

Plaintiffs do not allege that even a single pravastatin or leflunomide customer (*i.e.*, the only individual drug conspiracies Apotex allegedly participated in) requested bids in response to a price

increase Apotex or its alleged competitors implemented in those markets.  Likewise, Plaintiffs do not allege that Apotex communicated with an alleged competitor regarding how Apotex should respond to a customer bid without undermining a price increase, or that Apotex refused to bid or provided cover bids that allowed a competing manufacturer's price increase to gain traction.[6]

Nor do Plaintiffs allege that Apotex agreed with competing manufacturers to allocate the markets for leflunomide or pravastatin in light of the number of competing manufacturers within the market or the timing of another manufacturer's entry into the leflunomide or pravastatin markets.  Likewise, Plaintiffs do not allege that when Apotex or its alleged competitors entered either the leflunomide or pravastatin markets, they had a common understanding as to each other's market share allocation based on the alleged "fair share" agreement.  Although certain Plaintiffs do allege that one manufacturer (Teva) left the leflunomide market shortly after Heritage and Apotex allegedly increased prices, Plaintiffs do not allege that Apotex influenced Teva's exit in an effort to consummate a *quid pro quo* arrangement in the leflunomide market.  Plaintiffs' allegations, standing alone, do not support a plausible inference that Apotex agreed with other drug manufacturers to allocate the markets for leflunomide or pravastatin, let alone connect Apotex to a purported "overarching" agreement.  As a result, claims attempting to connect Apotex to an overarching conspiracy, in each of the Complaints, must be dismissed.

---

[6] The only complaint that refers to Apotex's alleged involvement in a bid-rigging scheme is the Kroger Complaint. *See* Kroger Compl., ¶ 379.  However, that complaint contains only a conclusory allegation that Apotex agreed with competing manufacturers that it would increase prices and refrain from submitting competitive bids to each other's customers – it does *not* contain specific factual allegations concerning the conversations between Apotex and competing manufacturers or the customer bids for which Apotex allegedly reached agreements to rig.  Such conclusory allegations concerning a Section 1 conspiracy do not rise to the level of plausibility *Twombly* demands.  550 U.S. at 556

**B.      Plaintiffs Do Not Plausibly Allege that Apotex was a Competitor or Potential Competitor in any Markets Other Than the Markets for Leflunomide and Pravastatin, and thus Do Not Plausibly Allege that Apotex Participated in an "Overarching" Conspiracy.**

To state a plausible Section 1 claim based on allegations of market allocation, bid rigging, and price increases, a plaintiff must plausibly allege that the conspirators are competitors or potential competitors in the same markets.  *See Zachair, Ltd. v. Driggs*, 965 F. Supp. 741, 747 (D. Md. 1997) (dismissing price-fixing claim where plaintiff failed to allege "any facts supportive of an inference that the defendants are competitors"); *see also U.S. v. Ashland-Warren, Inc.*, 537 F. Supp. 433, 443-45 (M.D. Tenn. 1982) (price-fixing "is flatly impossible when the alleged conspirators are not also competitors"); Defs.' Mem. at II.B.2.a.

Plaintiffs do not plausibly allege that Apotex was a competitor or even a *potential* competitor in any drug market beyond leflunomide and pravastatin.  Although one Plaintiff alleges that Apotex held an ANDA for one other drug (zoledronic acid), none of the Plaintiffs allege Apotex-specific conduct relating to the purported individual drug conspiracy in the zoledronic acid market, nor do any Plaintiffs allege that Apotex's purported agreements in the leflunomide or pravastatin markets were premised on an agreement to refrain from entering the market for zoledronic acid.[7]

Certain Plaintiffs concede that the process for obtaining approval from the United States Food and Drug Administration to sell a generic drug can be protracted. *See, e.g.* EPP Compl., ¶ 113; IRP Compl., ¶ 68.  Yet, these Plaintiffs still (implausibly) insist that defendants can easily

---

[7] Only two Plaintiffs make any effort to plead that Defendants must be considered competitors or potential competitors in drug markets beyond the drug-specific conspiracies each Defendant allegedly participated in.  *See* EPP Compl., ¶ 112 ("all defendants could have obtained approval or otherwise acquired marketing right (by, e.g., licensing) to sell the Drugs At Issue, had they chosen to do so"); IRP Compl., ¶ 68 ("Completing an ANDA takes time, but because Defendants can buy, trade, or license already-approved ANDAs . . . they are always industry competitors of one another even if they are not product competitors at a certain moment.").  These allegations do not plausibly establish that Apotex is a competitor or potential competitor in markets beyond leflunomide and pravastatin.

10

purchase a competing manufacturer to obtain an ANDA, or purchase or license an ANDA from another manufacturer who holds it. *See* EPP Compl., ¶ 114; IRP Compl., ¶ 68.  However, Plaintiffs do not allege that Apotex attempted to obtain, intended to obtain, or succeeded in obtaining an ANDA from a competing manufacturer during the alleged relevant time periods.   Although Plaintiffs suggest that a defendant like Apotex must be considered a competitor in other generic drug markets because it *could* acquire a competing manufacturer for the purpose of securing an ANDA, there is no factual support for expanding the understanding of competition in the market for each generic drug to include every generic drug manufacturer in the United States, at any given time, regardless of its practical ability to manufacture and sell those other generic drugs.  Because Plaintiffs do not plead sufficient allegations to establish Apotex as a competitor for any drugs save leflunomide and pravastatin, Plaintiffs' "overarching" conspiracy claims as to Apotex fail.

## C.   Plaintiffs Cannot Use Allegations of Individual, Single-Drug Conspiracies as to Apotex to Bootstrap Pleading an "Overarching" Conspiracy.

To plead Apotex's involvement in an "overarching" conspiracy, Plaintiffs attempt to use Apotex-specific facts of its alleged involvement in individual, drug-specific conspiracies concerning leflunomide and pravastatin.  Plaintiffs do not connect the alleged conduct within these two markets to each other or to any other drug market.  Simply pairing these deficient allegations of conspiracies within individual drug markets with conclusory statements that the drug-specific conspiracies were "part of an overarching conspiracy" does not, without more, state an independent claim under the Third Circuit's three-step inquiry for distinguishing "single conspiracies" from "separated and unrelated conspiracies" set forth in *U.S. v. Kelly*, 892 F.2d 255, 259 (3d Cir. 1999); Defs.' Mem. at II.A.

*First*, Plaintiffs do not allege that Apotex knowingly participated in an overarching conspiracy to allocate the market and/or fix the price for every generic drug alleged in the

Complaints.  *See supra* II.A.2.  Without specific allegations that Apotex's conduct in the alleged leflunomide or pravastatin conspiracies was connected with conspiracies concerning each other or other drugs alleged in the Complaints, there is simply no basis to connect Apotex to any "overarching" conspiracy.  Plaintiffs do not allege that the generic drugs Apotex allegedly manufactured, sold, or held ANDAs for (*i.e.,* pravastatin, leflunomide, and zoledronic acid) are interchangeable or compete with each other or any other drug alleged in the Complaints.  Indeed, they couldn't.  Each generic drug is a separate product, made from different active ingredients, used for different purposes, subject to specific FDA regulatory and approval requirements, and sold in different markets by different companies at different times.  The drugs are also subject to different levels of demand, different supply constraints, and different levels of competition with varying brand and therapeutic equivalents.  *See, e.g., FTC v. Endo Pharm., Inc.,* Civ. No. 2:16-1440, 2016 WL 6124376 at *1, *5 (E.D. Pa. Oct. 20, 2016) (finding that two generic drugs intended to treat "different maladies" operate in "different markets").

The notion that Apotex shared a "common goal" to fix prices across the generic drug industry for drugs it did not even manufacture, sell, or have FDA approval to sell is patently implausible.  *See, e.g., In re Auto. Parts Antitrust Litig.,* No. 12-md-02311, 2016 WL 8200512, at *4 (E.D. Mich. Apr. 13, 2016) ("The [Consolidated Amended Complaints] merely advance allegations of separate conspiratorial conduct between different Defendants making different parts. These examples are not sufficient to plead one, global auto parts conspiracy."); *In re Optical Disk Drive Antitrust Litig.,* No. 3:10-md-2143 RS, 2011 WL 3894376, at *7 (N.D. Cal. Aug. 3, 2011) (dismissing as implausible an "overarching," "vast" conspiracy claim involving different optical disk drive devices and markets).  Plaintiffs do not satisfy the first *Kelly* factor.

*Second*, Plaintiffs do not plead that the alleged "overarching" conspiracy required "continuous cooperation" (*i.e.,* "interdependence") among all defendants across each of the individual drug markets. *See* Defs.' Mem. at II.A., II.C. To tie Apotex to an alleged "overarching" conspiracy under *Kelly*, it is not enough for Plaintiffs to simply allege that Apotex conspired with respect to an individual drug or two. Rather, Plaintiffs must also plead facts that plausibly show the success of the alleged conspiracy among the manufacturers of *each individual drug* depended upon the success of the separate conspiracies involving manufacturers selling *other drugs*. *See Ins. Brokerage*, 618 F.3d at 374 (all defendants in the alleged global conspiracy must "associate[] together for a common purpose of engaging in a course of conduct"); *see also* Defs.' Mem. at II.C.

Plaintiffs do not allege Apotex-specific facts explaining why the success or failure of the alleged individual conspiracies as to leflunomide and pravastatin depended upon the success or failure of: (a) each other, (b) the other alleged individual drug conspiracies, or (c) the alleged "overarching" conspiracy as a whole. No matter how Plaintiffs' allegations against Apotex are read, each fails to plausibly allege that Apotex engaged in an individual drug conspiracy that required the type of "continuous cooperation" and "interdependence" across other individual drug conspiracies necessary to state a claim for an "overarching" conspiracy. Plaintiffs thus fail to satisfy the second *Kelly* factor. *See U.S. v. Kemp*, 500 F.3d 257, 290–91 (3d Cir. 2007) (finding lack of "interdependence" where one set of transactions was not "contingent upon the other"); *see also* Defs.' Mem. at II.A, II.C.

*Third*, Plaintiffs' Complaints also do not satisfy the final *Kelly* factor – sufficient overlap among the participants of the purported individual conspiracies to suggest the existence of a single, "overarching" conspiracy. *See Kelly*, 898 F.2d at 259–60; *see also* Defs.' Mem. at II.A., II.D. Rather than pleading that Apotex engaged in individual conspiracies with several overlapping

13

defendants, Plaintiffs rely entirely upon Apotex's alleged involvement in two individual conspiracies that include different combinations of defendants with only one other defendant common across both conspiracies – Teva.  These allegations do not satisfy the third *Kelly* factor, *see Auto Parts*, 2016 WL 8200512, at \*4 ("[W]hile perfect overlap of parties is not necessary . . . the mere overlap of some defendants in some of the transactions is, on its own, insufficient to establish an overarching agreement."); Defs.' Mem. at II.D., and, as a result, Plaintiffs do not plausibly allege Apotex's involvement in an "overarching" conspiracy.

## CONCLUSION

For the foregoing reasons, Apotex requests that this Court issue an order dismissing with prejudice the "overarching" conspiracy claims against Apotex in Plaintiffs' Complaints.

Dated:  February 21, 2019

_/s/ James W. Matthews_
James W. Matthews
Katy E. Koski
John F. Nagle
FOLEY & LARDNER LLP
111 Huntington Avenue
Boston, Massachusetts 02199
Tel:  (617) 342-4000
Fax:  (617) 342-4001
jmatthews@foley.com
kkoski@foley.com
jnagle@foley.com

James T. McKeown
Elizabeth A. N. Haas
Kate E. Gehl
FOLEY & LARDNER LLP
777 E. Wisconsin Avenue
Milwaukee, WI 53202
Tel:  (414) 271-2400
Fax:  (414) 297-4900
jmckeown@foley.com
ehaas@foley.com
kgehl@foley.com

Terry M. Henry
Melanie S. Carter
BLANK ROME LLP
One Logan Square
130 North 18th Street
Philadelphia, PA  19103
Tel:  (215) 569-5644
Fax:  (215) 832-5644
THenry@blankrome.com
MCarter@blankrome.com

_Attorneys for Defendant Apotex Corp._

15

## **CERTIFICATE OF SERVICE**

I hereby certify on this 21st day of February 2019, a true and correct copy of the

foregoing was filed electronically and is available for viewing and downloading from the Court's

ECF System.  Notice of this filing will be sent to all counsel of record by operation of the ECF

System.

/s/  *James W. Matthews*

James W. Matthews