**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

| | |
|---|---|
| **IN RE:  GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION** | **MDL 2724** <br> **16-MD-2724** |

---

| | |
|---|---|
| **THIS DOCUMENT RELATES TO:** | **HON. CYNTHIA M. RUFE** |
| ***END-PAYER PLAINTIFFS' OVERARCHING CONSPIRACY CLASS ACTION COMPLAINT*** | **18-CV-2401** |
| ***INDIRECT RESELLER PLAINTIFFS' AMENDED OVERARCHING CONSPIRACY COMPLAINT*** | **18-CV-2533** |
| ***THE KROGER CO. ET AL. AMENDED COMPLAINT*** | **18-CV-284** |
| ***HUMANA, INC. AMENDED COMPLAINT*** | **18-CV-3299** |

---

**[PROPOSED] ORDER**

**AND NOW**, this ___ day of _____ 2019, upon consideration of Defendant West-Ward Pharmaceuticals Corp.'s ("West-Ward") Motion to Dismiss, and any responses thereto, it is **ORDERED** that the Motion to Dismiss is **GRANTED** and the following claims are **DISMISSED WITH PREJUDICE** against West-Ward:

| Complaint | Counts |
|---|---|
| End-Payer Plaintiffs' Overarching Conspiracy Complaint | All Counts |
| Indirect Reseller Plaintiffs' Overarching Conspiracy Complaint | All Counts |
| The Kroger Co. et al. Amended Complaint | Counts One, Twelve |
| Humana, Inc. Amended Complaint | Counts XLVI-L, CVI-CX |

BY THE COURT:

_____

CYNTHIA M. RUFE
United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

| | |
|---|---|
| **IN RE:  GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION** | **MDL 2724 16-MD-2724** |

---

**THIS DOCUMENT RELATES TO:**

**HON. CYNTHIA M. RUFE**

| | |
|---|---|
| ***END-PAYER PLAINTIFFS' OVERARCHING CONSPIRACY CLASS ACTION COMPLAINT*** | **18-CV-2401** |
| ***INDIRECT RESELLER PLAINTIFFS' AMENDED OVERARCHING CONSPIRACY COMPLAINT*** | **18-CV-2533** |
| ***THE KROGER CO. ET AL. AMENDED COMPLAINT*** | **18-CV-284** |
| ***HUMANA, INC. AMENDED COMPLAINT*** | **18-CV-3299** |

---

**DEFENDANT WEST-WARD PHARMACEUTICALS CORP.'S MOTION TO DISMISS THE OVERARCHING CONSPIRACY CLAIMS FILED BY END-PAYER PLAINTIFFS, INDIRECT RESELLER PLAINTIFFS, KROGER PLAINTIFFS, AND HUMANA, INC.**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), and for the reasons set forth in the accompanying Memorandum of Law, Defendant West-Ward Pharmaceuticals Corp. ("West-Ward"), respectfully moves this Court to dismiss the following claims against West-Ward:

| Complaint | Counts |
|---|---|
| End-Payer Plaintiffs' Overarching Conspiracy Complaint | All Counts |
| Indirect Reseller Plaintiffs' Overarching Conspiracy Complaint | All Counts |
| The Kroger Co. et al. Amended Complaint | Counts One, Twelve |
| Humana, Inc. Amended Complaint | Counts XLVI-L, CVI-CX |

Pursuant to Rule 7.1(f) of the Local Rules of Civil Procedure, West-Ward requests oral argument on its Motion to Dismiss.

DATED: February 21, 2019                                Respectfully submitted,

                                                        /s/ Jan P. Levine
                                                        Jan P. Levine
                                                        Robin P. Sumner
                                                        Michael J. Hartman
                                                        PEPPER HAMILTON LLP
                                                        3000 Two Logan Square
                                                        Eighteenth & Arch Streets
                                                        Philadelphia, PA 19103-2799
                                                        Tel. (215) 981-4000
                                                        Fax. (215) 981-4750

                                                        Keith J. Harrison
                                                        Shari Ross Lahlou
                                                        CROWELL & MORING LLP
                                                        1001 Pennsylvania Avenue, NW
                                                        Washington, D.C. 20004-2595
                                                        Tel. (202) 624-2500
                                                        Fax. (202) 624-5116

                                                        *Attorneys for Defendant West-Ward Pharmaceuticals Corp.*

PEPPER HAMILTON DRAFT
PRIVILEGED AND CONFIDENTIAL
ATTORNEY-CLIENT, JOINT DEFENSE,
AND WORK PRODUCT PRIVILEGED

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **IN RE:  GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION** | **MDL 2724** **16-MD-2724** |
| | **HON. CYNTHIA M. RUFE** |
| **THIS DOCUMENT RELATES TO:** | |
| ***END-PAYER PLAINTIFFS' OVERARCHING CONSPIRACY CLASS ACTION COMPLAINT*** | **18-CV-2401** |
| ***INDIRECT RESELLER PLAINTIFFS' AMENDED OVERARCHING CONSPIRACY COMPLAINT*** | **18-CV-2533** |
| ***THE KROGER CO. ET AL. AMENDED COMPLAINT*** | **18-CV-284** |
| ***HUMANA, INC. AMENDED COMPLAINT*** | **18-CV-3299** |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
### WEST-WARD PHARMACEUTICALS CORP.'S MOTION TO DISMISS THE
### OVERARCHING CONSPIRACY CLAIMS FILED BY END-PAYER PLAINTIFFS,
### <u>INDIRECT RESELLER PLAINTIFFS, KROGER PLAINTIFFS, AND HUMANA, INC.</u>

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ........................................................................................................... 1

II.     BACKGROUND ............................................................................................................ 2

III.    ARGUMENT .................................................................................................................. 4

       A.      EPPs and IRPs Do Not Sufficiently Plead West-Ward's Participation in an
            Overarching 19-Drug Conspiracy ........................................................................... 4

            1.      EPPs and IRPs Do Not Allege West-Ward Participated In or Was
                  Aware of Any of the Conduct Purportedly Evidencing the
                  Overarching Conspiracy ................................................................................. 5

            2.      EPPs' and IRPs' Allegations Regarding West-Ward and Doxy RR
                  Are Inconsistent With the Alleged Heritage-Centric 19-Drug
                  Conspiracy ..................................................................................................... 8

       B.      DAPs Do Not Sufficiently Plead West-Ward's Participation in an
            Overarching Conspiracy or a Separate Mini Overarching Doxycycline
            Conspiracy ............................................................................................................ 11

            1.      DAPs Do Not Sufficiently Allege How West-Ward Purposefully
                  Joined and Participated in an Overarching Conspiracy ........................... 11

            2.      DAPs Do Not Sufficiently Plead that West-Ward Plausibly Joined
                  a General Doxycycline Conspiracy ........................................................... 14

IV.     CONCLUSION .............................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

C<small>ASES</small>

*BanxCorp v. LendingTree LLC*, No. 10-2467, 2011 U.S. Dist. LEXIS 12258
(D.N.J. Feb. 7, 2011)..................................................................................6

*In re Chocolate Confectionary Antitrust Litig.*, 801 F.3d 383 (3d Cir. 2015) ............................13

*In re Generic Pharms. Pricing Antitrust Litig.*, 338 F. Supp. 3d 404 (E.D. Pa.
2018) ...........................................................................................5, 14, 15

*Jung v. Ass'n of Am. Med. Colleges*, 300 F. Supp. 2d 119 (D.D.C. 2004) .......................................6

*In re K-Dur Antitrust Litig.*, No. 01-1652, 2016 WL 755623 (D.N.J. Feb. 25,
2016) ........................................................................................................4

*Precision Assoc. v. Panalpina World Transport (Holding) Ltd.*, 08-42, No. 2011
WL 7053807 (E.D.N.Y. Jan. 4, 2011) .....................................................5

*In re Processed Eggs Antitrust Litig.*, 821 F. Supp. 2d 709 (E.D. Pa. 2011) ................................6

*Rogers v. Detroit Police Department*, 595 F. Supp. 2d 757 (E.D. Mich. 2009).........................15

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109 (N.D. Cal.
2008) ........................................................................................................6

*United States v. Kelly*, 892 F.2d 255 (3d Cir. 1989).....................................................................5

*Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156
(S.D.N.Y. 2015)......................................................................................11

## I.     INTRODUCTION

Following the lead of the State Attorneys General's ("Plaintiff States") multi-drug complaint arising out of the alleged actions of Heritage Pharmaceuticals ("Heritage"), more than two years into this massive MDL, certain private plaintiffs filed "overarching conspiracy complaints" seeking to hold defendants jointly and severally liable for overcharges allegedly paid on as many as 40 different drugs.  These private plaintiffs claim these overcharges resulted from an alleged agreement among *all named defendants* to fix prices and allocate "fair share" for *all named drugs*.  Four of the private plaintiffs' ("Plaintiffs") overarching conspiracy complaints[1] seek to hold West-Ward Pharmaceuticals Corp. ("West-Ward") jointly and severally liable for a conspiracy to fix prices and allocate "fair share" for as many as 40 drugs, despite the facts that (i) the Plaintiff States *do not name* West-Ward as a defendant, (ii) during the relevant time period, West-Ward sold only one drug at issue in the EPPs' and IRPs' follow-on complaints and two of the drugs at issue in the DAPs' follow-on complaints (none of which are at issue in the Plaintiff States' complaint), and, most importantly, (iii) no complaint alleges that West-Ward made any agreement or took any action at all with respect to any drug it did not sell.  Accordingly, Plaintiffs' overarching conspiracy claims against West-Ward must be dismissed because each complaint fails to plead any fact from which one could infer plausibly that West-Ward was even aware of, much less committed to, an agreement to eschew price competition and allocate "fair share" across all of the drugs at issue in each complaint.[2]

---

[1] The Class Plaintiffs filing complaints at issue in this motion are the End-Payer Plaintiffs ("EPPs") and Indirect Reseller Plaintiffs ("IRPs").  Neither the Direct Purchaser Plaintiffs ("DPPs") nor Marion Diagnostic Center, LLC name West-Ward as a Defendant in their overarching conspiracy complaints.

The Direct Action Plaintiffs or "DAPs" filing complaints at issue in this motion are The Kroger Co., Albertsons Companies, LLC, and H.E. Butt Grocery Company, L.P. ("Kroger"), and Humana Inc. ("Humana").

[2] West-Ward also joins in Defendants' Joint Motion to Dismiss Plaintiffs' Overarching Conspiracy Claims and supporting Memoranda of Law.

## II.    BACKGROUND

On March 2, 2016, International Union of Operating Engineers Local 30 Benefits Fund, an EPP, filed the first complaint ultimately giving rise to this MDL.  *See IUOE Local 30 Benefits Fund v. Lannett Co., Inc. et al.*, No. 2:16-cv-00990 (E.D. Pa., filed Mar. 2, 2016).   That complaint accused West-Ward and five other manufacturers (but not Heritage) of conspiracies to fix the prices of Doxycycline Regular Release ("Doxy RR") and Digoxin.[3]  In the nearly three years since, more than 100 different individual complaints have come into this MDL, but none specifically accuses West-Ward of conspiring as to any other drug.

Although Class Plaintiffs EPPs and IRPs,[4] and DAPs Kroger and Humana, each name West-Ward as a Defendant in their "overarching conspiracy" claims, none pleads allegations connecting West-Ward to a larger, overarching agreement that goes beyond the alleged individual Doxy RR and Digoxin conspiracies.  Indeed, EPPs' and IRPs' overarching conspiracy complaints, which allege a 19-drug conspiracy and that Doxy RR (but not Digoxin) was part of that conspiracy, reference and rely on their standalone Doxycycline complaints (*see* EPP Compl. at 79 n.76; IRP Compl. ¶¶ 4, 126 & p.75 n.22) and plead almost nothing additional about West-Ward.[5]  Critically, no overarching conspiracy complaint implicates West-Ward in any of the

---

[3] Although that complaint referred generally to Doxycycline, the allegations specific to the Defendants' alleged pricing conduct clearly related to only Doxy RR products.  (*See, e.g.*, IUOE Compl. ¶ 62.)

[4] As discussed *supra*, DPPs do not name West-Ward as a Defendant in their overarching conspiracy claims despite alleging the same general Heritage-centric conspiracy as EPPs and IRPs.

[5] The allegations in EPPs' overarching conspiracy complaint specific to West-Ward and not already included in their standalone Doxycycline complaint are limited to: (i) West-Ward attended the same January 29-February 1, 2012 ECRM event as Sun and Heritage, which occurred eight months before West-Ward is alleged to have raised its Doxy RR prices (EPP Compl. ¶ 152); (ii) West-Ward increased its Doxy RR prices within the same general timeframe that other Defendants raised prices on certain other drugs West-Ward did not sell (*id.* ¶¶ 154, 156, 269 n.74, ); (iii) West-Ward raised the price of Digoxin (which is not alleged to be part of the overarching conspiracy) (*id.* ¶ 166); (iv) West-Ward holds an ANDA for Zoledronic Acid and a discontinued ANDA for Meprobamate (*id.* ¶¶115-16); and (v) West-Ward received a subpoena from the Connecticut attorney general (*id.* ¶ 657).

The only allegation in IRPs' overarching conspiracy complaint specific to West-Ward and not included in its standalone Doxycycline complaint is that West-Ward received a subpoena from the Connecticut attorney general. (IRP Compl. ¶ 58.)

conduct that Plaintiffs allege evidences the existence of a broader multi-drug agreement. Specifically:

- No complaint alleges that West-Ward was even aware of any alleged agreement to fix the price or allocate "fair share" for any drug other than Doxy RR and Digoxin, much less that it took any action with respect to Doxy RR or Digoxin in reliance on such an alleged agreement.

- No complaint alleges that West-Ward agreed to allocate "fair share" across the multiple drug markets by agreeing to stay out of the market for, or to take any action with respect to, any drug in exchange for another Defendant's agreement to stay out of the market for, or take any action with respect to, Doxy RR or Digoxin, or by trading customers in one market for customers in a different market.

- No complaint alleges that West-Ward ever used the term "fair share" in discussing any drug.

- No complaint alleges that any West-Ward employee communicated (either in-person or by phone call, email, or text message) with any employee of another Defendant.

- No complaint alleges any, let alone frequent, telephone contact between West-Ward and any other Defendant.

- No complaint alleges that West-Ward communicated with, or even sold any of the same drugs as, Heritage—the alleged hub of the overarching conspiracy.

- No complaint alleges that any West-Ward employee was "directly implicated" in anticompetitive conduct by the Plaintiff States (*see, e.g.*, EPP Compl. ¶ 161).

- No complaint alleges that any of the alleged communications facilitating the overarching conspiracy concerned Doxy RR or Digoxin.

Indeed, West-Ward is wholly absent from every factual allegation fundamental to Plaintiffs' overarching conspiracy claims.  This is unsurprising; Plaintiffs must (and often do) concede these allegations come directly from the Plaintiff States' amended complaint,[6] which does not name West-Ward and does not concern Doxy RR or Digoxin.

---

[6] Plaintiff States have been clear that they "don't think it's complicated at all as to what is at issue in [their] complaint" as they "have brought a lawsuit focused on one company, Heritage Pharmaceuticals, and their role in fixing prices and allocating markets on 15 different drugs."  (July 11, 2018 Hearing Tr. at 35:1117.)  Although DPPs, who do not name West-Ward, explicitly acknowledge that their complaint asserts the same Heritage-centric

## III.   ARGUMENT

To state overarching conspiracy claims against West-Ward, Plaintiffs must plead specific facts rendering it plausible that West-Ward purposefully joined and participated in a conspiracy that involved at least 19 different drugs when it sold at most two.[7]  Plaintiffs must tie West-Ward's alleged conduct with respect to Doxy RR and/or Digoxin to the alleged conduct of others with respect to at least 18 (and up to 38) other drugs for which Plaintiffs concede West-Ward took no action.[8]  Plaintiffs also must plead specific facts from which one could infer plausibly that West-Ward would not have undertaken any action with respect to Doxy RR and/or Digoxin without reasonable assurances that all Defendants would do the same with respect to all of the drugs at issue.[9]  The complaints allege nothing of the sort and, therefore, Plaintiffs' overarching conspiracy claims against West-Ward  should be dismissed.

### A.   EPPs and IRPs Do Not Sufficiently Plead West-Ward's Participation in an Overarching 19-Drug Conspiracy[10]

EPPs and IRPs concede West-Ward sold only one drug, Doxy RR, that they allege is part of the purported Heritage-centric overarching conspiracy they attempt to plead.  Although the

---

multi-drug agreement as the Plaintiff States (DPP Compl. ¶ 3), EPPs and IRPs are less candid.  However, it is clear that EPPs and IRPs are alleging the same Heritage-centric claims as the Plaintiff States, and indeed IRPs concede the "bulk of the specific facts" they allege comes from the Plaintiff States' complaint.  (IRP Compl. ¶ 5.)

[7] The law regarding what is necessary to plead an overarching conspiracy claim is fully set forth in Defendants' Joint Memorandum of Law and will not be repeated here for purposes of efficiency.  (*See* Defs. Joint. Mem. Section II.)

[8] References to the number of drugs in each complaint include the multiple and distinct forms of Acetazolamide, Doxycycline, Metronidazole, Nystatin, and Propranolol at issue, each involving different sets of Defendants and requiring separate ANDA approval.  (*See* Defs. Joint Br, Ex. A.)

[9] In other words, Plaintiffs must allege with precision that the individual Doxy RR conspiracy and/or Digoxin conspiracy were interdependent on each of the other alleged individual drug sub-conspiracies at issue in the respective complaint.  *See, e.g.*, *In re K-Dur Antitrust Litig.*, No. 01-1652, 2016 WL 755623, at *21 (D.N.J. Feb. 25, 2016) (in evaluating interdependence, the court engages in an inquiry focused on "the extent to which the success or failure of one conspiracy is independent of a corresponding success or failure by the other").

[10] Neither EPPs nor IRPs assert causes of action for a Doxy RR sub-agreement.  Accordingly, if the Court finds that they do not sufficiently plead West-Ward's plausible participation in the alleged overarching conspiracy, there would be no remaining claims against West-Ward in these complaints.

Court previously held that Class Plaintiffs stated a plausible individual Doxy RR conspiracy claim under the Sherman Act against West-Ward based on circumstantial evidence, *see In re Generic Pharms. Pricing Antitrust Litig.*, 338 F. Supp. 3d 404 (E.D. Pa. 2018) (Rufe, J.), EPPs and IRPs now seek to hold West-Ward jointly and severally liable for an alleged vast multi-drug conspiracy involving 19 different drugs.[11]   To do so, they need specific factual allegations plausibly evincing that West-Ward "was aware of and agreed to the essential purpose" of raising prices and eliminating competition for 18 other generic drugs.  *Precision Assoc. v. Panalpina World Transport (Holding) Ltd.*, 08-42, No. 2011 WL 7053807, at *30 (E.D.N.Y. Jan. 4, 2011). They cannot merely rely on their existing standalone Doxy RR claims to plead West-Ward into a Heritage-centric 19-drug conspiracy, but that is exactly what they do, incorporating or relying on their standalone Doxycycline complaints by reference and alleging almost nothing else about West-Ward.  Indeed, IRPs do not reference West-Ward in *a single substantive allegation* outside of their six-paragraph Doxy RR section.  (*See* IRP Compl. ¶¶ 125-30.)  EPPs' complaint is similarly barren of specific allegations tying West-Ward to any agreement beyond one for just Doxy RR.

> 1.   EPPs and IRPs Do Not Allege West-Ward Participated in or Was Aware of Any of the Conduct Purportedly Evidencing the Overarching Conspiracy

To plead that West-Ward plausibly joined and committed to a 19-drug Heritage-centric conspiracy, EPPs' and IRPs' complaints must contain well-pled factual allegations that West-Ward was aware of, and committed to, a common goal that transcended its alleged individual agreement on Doxy RR.  *See United States v. Kelly*, 892 F.2d 255, 258-59 (3d Cir. 1989). Rather than meet their burden, however, EPPs and IRPs engage in impermissible group pleading,

---

[11] That decision explicitly found Heritage was not sufficiently pled to be part of the Doxy RR conspiracy, and that direct evidence of Heritage's participation in a Doxy Delayed Release ("Doxy DR") conspiracy did not implicate West-Ward.  *In re Generic Pharms.*, 338 F. Supp. at 439-40.

making general allegations about "Defendants'" conduct and improperly attempting to extend the alleged conduct of *some* to *all*.[12]  They do not allege specifically that *West-Ward* made any agreement with respect to the 18 drugs it did not sell during the relevant time period or that *West-Ward* participated in any of the conduct Plaintiffs claim evinces an agreement to coordinate prices and market share across multiple drugs.  Indeed, although EPPs and IRPs purport to allege "direct evidence of dozens of acts in furtherance of the fair share conspiracy" (*e.g.*, IRP Compl. ¶ 69), they do not allege that *West-Ward* is implicated by any of it.

For example, although the EPPs' and IRPs' overarching conspiracy complaints allege and depend on a number of Defendant-to-Defendant communications (whether in-person, call, text, or email), none involve West-Ward or even Doxy RR.  (*See, e.g.*, EPP Compl. ¶ 108 (no intercompetitor communication emanating from or directed to West-Ward).)  The charts EPPs borrow from the Plaintiff States' complaint concerning the frequency of phone and text communications between purported "co-conspirators" contain no entries for West-Ward.[13]  (*See* EPP Compl. ¶ 142.)  As such, EPPs and IRPs do not allege any specific instance of West-Ward communicating with any Defendant about Doxy RR or, more importantly, any of the other 18 drugs at issue.  Nor do they allege that West-Ward was aware of communications between other

---

[12] *See BanxCorp v. LendingTree LLC*, No. 10-2467, 2011 U.S. Dist. LEXIS 12258, at *21 (D.N.J. Feb. 7, 2011) ("Plaintiff's use of the 'global term' defendants [and cartel] to apply to numerous parties without any specific allegations that would tie each particular defendant to the conspiracy is not sufficient under *Twombly* and its progeny." (internal quotations omitted)); *see also In re Processed Eggs Antitrust Litig.*, 821 F. Supp. 2d 709, 719-20 (E.D. Pa. 2011) (collecting similar cases); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1117 (N.D. Cal. 2008) ("[T]he complaint must allege that each individual defendant joined the conspiracy and played some role in it because, at the heart of an antitrust conspiracy is an agreement and a conscious decision by each defendant to join it."); *Jung v. Ass'n of Am. Med. Colleges*, 300 F. Supp. 2d 119, 163-64 (D.D.C. 2004) ("[P]laintiffs are not relieved from alleging that each individual defendant joined the conspiracy and played some role in it.").

[13] EPPs attempt to justify the lack of West-Ward allegations in this regard by conceding that "[t]he State AG Complaint does not name Perrigo, Taro or West-Ward as Defendants and thus does not include information about telephone contacts involving these companies."  (EPP Compl. ¶ 141 n.55.)  That West-Ward has not been named in the Plaintiff States' complaint is telling, and it cannot provide a backdoor inference that such "information" otherwise exists for West-Ward.

Defendants.[14]   Accordingly, the conclusory statement that "there was a widespread pattern of communications occurring simultaneously between Defendants that marketed and sold the Drugs at Issue" (from which Plaintiffs suggest one can infer a vast conspiracy to fix price and allocate "fair share" across multiple drugs) cannot apply to West-Ward.  (*E.g.*, *id.* ¶ 143.)

Similarly, EPPs and IRPs allege that Defendants preserved their "fair share" arrangement in individual drug markets by "refusing to bid for a particular customer or by providing a pretextual bid that they knew would not be successful."  (*Id.* ¶ 7; *see also id.* ¶ 124, IRP Compl. ¶ 71 ("[Defendants] often refused to bid or provided cover bids.").)  There are no allegations, however, regarding the submission of a bid, or lack thereof, by West-Ward, nor are there any allegations that any of this purported "sham" bid conduct occurred within the individual Doxy RR market.  (*Cf.* EPP Compl. ¶ 84 (bid conduct allegation regarding Nystatin tablets), ¶ 262 (alleging Heritage purposely overbid on Nimodipine).)  Likewise, there are no allegations that West-Ward participated in any horse trading of customers across the 19 different individual drug markets.  No complaint alleges that West-Ward was aware that any other Defendant engaged in bid conduct of any sort with respect to any customer, or that West-Ward understood such conduct to be part of a "fair share" agreement.  Thus, EPPs and IRPs do not allege that West-Ward participated in, or was even aware of, the primary method through which Defendants allegedly carried out their overarching "fair share" conspiracy.  Said differently, they do not specifically allege that West-Ward took any action in furtherance of the alleged Heritage-centric 19-drug overarching conspiracy or was aware that any other Defendant did so.

---

[14] EPPs and IRPs attempt to muddy the waters at times by putting West-Ward at the same trade association event at which two other Defendants allegedly communicated.  (*See, e.g.*, EPP Compl. ¶ 152.)  There is no allegation that any West-Ward representative was present at or otherwise aware of any "in-person communications" between Defendants, or that any concerned Doxy RR or any other drug West-Ward sold.

2.       EPPs' and IRPs' Allegations Regarding West-Ward and Doxy RR Are Inconsistent With the Alleged Heritage-Centric 19-Drug Conspiracy

West-Ward is uniquely situated in EPPs' and IRPs' overarching conspiracy complaints. As discussed, they allege West-Ward sold only one of the 19 drugs purportedly making up the overarching conspiracy (Doxy RR).   West-Ward is the *only* single-drug Defendant in these complaints that did not sell any of the same drugs as Heritage.   As a result, West-Ward's participation in a 19-drug conspiracy, with Heritage as the hub, makes no sense.

Particularly, the central thesis of EPPs' and IRPs' overarching conspiracy is that:

> an agreement between two Defendants to raise prices or to allocate market share *on one drug* would not likely hold where those *same two Defendants* engaged in vigorous price competition *on another drug*, or where a third manufacturer not party to that agreement entered the market with an intent to compete on price.

(EPP Compl. ¶ 102 (emphasis added).)   Under this theory, therefore, two things *must* be pled against West-Ward to plausibly suggest that its conduct as to Doxy RR was part of a larger 19-drug overarching conspiracy.   First, EPPs and IRPs must specifically allege that West-Ward agreed with the other Doxy RR manufacturers to cease price competition as to at least one of the other 18 drugs.   They do not; West-Ward is not alleged to have sold or refrained from price competition on any other drug at issue.   Second, they must specifically allege that each of the non-Doxy RR Defendants agreed to stay out of the Doxy RR market.   They do not.   Nor do they allege the converse—that *West-Ward* agreed to stay out of any of the other 18 individual drug markets.   Although EPPs allege that West-Ward held an ANDA for Zoledronic Acid and a discontinued ANDA for Meprobamate (*Id*. ¶¶ 115-16), they do not allege that West-Ward agreed to stay out of either market.   Accordingly, the specific allegations against West-Ward are entirely inconsistent with the overarching conspiracy theory alleged.

Moreover, unlike other drugs, EPPs and IRPs include only limited allegations about Doxy RR in their overarching conspiracy complaints, conceding that their real allegations regarding Doxy RR (and thus West-Ward) are to be found in their existing Doxycycline complaints.  (*See id.* at 79 n.76; IRP Compl. ¶¶ 4, 126 & p.75 n.22)[15]  But those complaints contradict EPPs' and IRPs' overarching conspiracy theory because they allege only that West-Ward and four other Defendants were able to successfully coordinate Doxy RR prices starting in Fall 2012 specifically because the *Doxy RR market* was "susceptible to cartelization."  (EPP Doxy Compl. ¶ 171.)  In other words, those complaints unequivocally allege that it was the characteristics of the Doxy RR market that allowed West-Ward and the other four named Defendants to collude on Doxy RR prices, not what was occurring in any other drug market or the existence of an agreement as to any other drug.  (*See id.* ¶¶ 171-93.)

Yet now these same plaintiffs seek to hold West-Ward jointly and severally liable for an overarching conspiracy by averring that Doxy RR pricing coordination could have been successful only if it was part of a larger 19-drug overarching conspiracy involving a number of manufacturers that never sold Doxy RR.  This is nonsensical and contradictory.  Indeed, EPPs' and IRPs' standalone Doxycycline complaints do not allege that the individual Doxy RR agreement depended on agreements between and among the Doxy RR Defendants to eschew "vigorous price competition on another drug" (EPP Compl. ¶ 102) or that the Doxy RR Defendants rigged bids, allocated customers, or agreed on "fair share."  EPPs' and IRPs' overarching conspiracy theory is built on these components, but their overarching conspiracy complaints fail to implicate West-Ward or Doxy RR in this regard.

---

[15] The section of EPPs' overarching conspiracy complaint discussing the alleged Doxy RR sub-conspiracy is limited to nine paragraphs.  (EPP Compl. ¶¶ 288-96.)  IRPs plead even less, devoting only six paragraphs to Doxy RR.  (IRP Compl. ¶¶ 126-31.)

In this vein, EPPs and IRPs also do not allege any specific facts demonstrating how West-Ward's conduct and the alleged Doxy RR sub-conspiracy fit the mold of the broader "fair share" conspiracy.   Central to their theory are conclusory allegations that "Defendants communicated with each other to determine and agree on the amount of market share each competitor would be allocated" and that "these shares were determined by the timing of each Defendant's entry into the market (with early entrants entitled to a proportionately larger share than later entrants)."  (*Id.* ¶ 6.)  The complaints, however, lack any allegation at all about such communications as to Doxy RR, which manufacturer was first in the Doxy RR market (and so presumably entitled to a larger share), or how shares of the Doxy RR market were apportioned based on entry.  There are no allegations about West-Ward's entry or market share at all.

Rather, EPPs' and IRPs' standalone Doxy complaints allege that the Doxy RR market was "mature" and that "[a]t one point there were over 20 manufacturers of generic Doxycycline."  (*E.g.*, EPP Doxy Compl.¶¶ 63, 115.)  This is inconsistent with the type of pre-entry communications and conduct EPPs and IRPs claim were fundamental to the overarching conspiracy.  (*See, e.g.*, EPP Compl. ¶ 121 ("Defendants understood and engaged in the practice of contacting their competitors *when they were preparing to enter a particular generic market* so that they could allocate the market according to their "fair share" agreement." (emphasis added)).)  In reality, Mylan, Actavis, West-Ward, and Sun received approval for their Doxy RR ANDAs in the first half of the 1980s, and Par, through DAVA, allegedly began to sell Doxy RR in April 2014 (18 months after the alleged Doxy RR price increases) after reaching a distribution agreement with Chartwell Pharmaceuticals (which too held its ANDA since the early 1980s) (*see* EPP Doxy Compl. ¶ 126).[16]  Unlike other drugs, where certain Defendants were allegedly

---

[16] According to the FDA's Orange Book, Mylan received ANDA approval for Doxy RR capsules on March 29, 1982, Actavis on October 13, 1982, Chartwell on September 11, 1984, Hikma (West-Ward's parent) on November

entering a new market during the relevant time period and purportedly agreeing on how to arrive at "fair share," the Doxy RR market was concededly "mature" with the majority of the Defendants entering well before the overarching conspiracy allegedly originated.  Consequently, EPPs' and IRPs' own allegations beg a host of questions about how and when the Doxy RR Defendants could have implemented the purported "fair share" agreement, which EPPs and IRPs claim included decisions by manufacturers approved to sell Doxy RR for decades about "whether and . . . when to enter [the Doxy RR] market" (EPP Compl. ¶ 103).[17]  These questions remain wholly unanswered, and instead EPPs' and IRPs' own pleading demonstrates the inconsistency between the specific allegations about West-Ward and the plausibility of its participation in a Heritage-centric 19-drug "fair share" conspiracy.[18]

> **B.**   **DAPs Do Not Sufficiently Plead West-Ward's Participation in an Overarching Conspiracy or a Separate Mini Overarching Doxycycline Conspiracy**
>
>> 1.   <u>DAPs Do Not Sufficiently Allege How West-Ward Purposefully Joined and Participated in an Overarching Conspiracy</u>

DAPs' kitchen sink approach to pleading, combining the Plaintiff States' Heritage-centric conspiracy with Class Plaintiffs' standalone individual drug complaints, likewise fails to plead

---

7, 1984, and Sun on July 10, 1986.  Attached as Exhibit 1 are copies of ANDA approval information as found on the FDA's online Orange Book site.  The Court may take judicial notice of "documents retrieved from official government websites."  *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 165 (S.D.N.Y. 2015).

[17] For instance, did the Doxy RR Defendants agree on "fair share" in the early 1980s and (implausibly) maintain the agreed split for nearly 30 years before purportedly deciding to coordinate prices in Fall 2012?  Did Mylan reclaim its purported "fair share" upon reentering the Doxy RR market significantly after the allegedly coordinated Doxy RR price increases in Fall 2012?  Did DAVA/Par step into the shoes of Chartwell (which received ANDA approval before both West-Ward and Sun) in the purported "fair share" equation when it allegedly entered a distribution agreement in 2014?

[18] Inexplicably, Count Four of IRPs' overarching conspiracy complaint contains a chart listing West-Ward among Defendants that purportedly increased prices for Glyburide following a state of emergency in violation of the Arkansas and California consumer protection statutes.  (IRP Compl. at p.179.)  However, West-Ward believes its inclusion may have been an inadvertent error as the complaint does not allege that (1) West-Ward made or sold Glyburide, or (2) West-Ward was part of the Glyburide sub-conspiracy (*cf. id.* ¶ 33).  Indeed, no other complaint in this MDL alleges West-Ward undertook any conduct with respect to Glyburide.

plausibly West-Ward's participation in an overarching conspiracy involving as many as 40 different drugs.  DAPs' complaints, which also include separate counts against West-Ward for Doxycycline generally (Doxy DR, Doxycycline Monohydrate ("Doxy Mono"), *and* Doxy RR) and Digoxin, suffer from the same inadequacies as found in the EPPs' and IRPs' complaints. Namely, they contain no well-pled factual allegations that West-Ward specifically participated in any of the communications or acts purportedly evidencing an agreement to coordinate pricing and market share across multiple drugs, or that West-Ward was even aware of any overarching "fair share" conspiracy.  (*See, e.g.*, Kroger Compl. ¶¶ 174-75; Humana Compl. ¶¶ 199-203.)

Kroger does not hide its inability to make these kinds of allegations about West-Ward. Kroger admits that West-Ward was not one of the "Core Conspirators"—the seven Defendant families that DAPs claim "engaged in the conduct alleged in this Complaint and directed the implementation of an overarching conspiracy."  (Kroger Compl. ¶ 22.)  Rather, Kroger lumps West-Ward in with a "second group of conspirators" that were purportedly "induce[d] . . . to participate" in a 40-drug conspiracy "as necessary."  (*Id.*)  This is insufficient.

Fatally, Kroger does not allege how West-Ward was induced to join an existing overarching conspiracy.  None of the examples of the "Additional Conspirators" being so induced relate to West-Ward, Doxy RR, or Digoxin.  (*See id.* ¶¶ 820-22.)  Further, Kroger does not allege that West-Ward understood its alleged Doxy RR or Digoxin price increases to be dependent on other Defendants' conduct regarding other drugs.  Kroger alleges only in conclusory terms that the "Core Conspirators" incentivized and compensated the "Additional Conspirators," such as West-Ward, not to lower their respective prices on individual drugs.  (*See, e.g.*, *id.* ¶ 821.)  But even if accepted as true, that provides no basis to plausibly infer that West-Ward was aware it was being induced to join an overarching 40-drug conspiracy or intended to

do so.  *Cf. In re Chocolate Confectionary Antitrust Litig.*, 801 F.3d 383, 404 (3d Cir. 2015) (rejecting the theory that the conduct of conspirators could "facilitate" or "actuate" conspiratorial conduct of other manufacturers without supporting facts that the latter had knowledge of the former's unlawful conduct).    Under *Twombly*, Kroger's *ipse dixit* about "Additional Conspirators" fails to plead plausibly that West-Ward joined a conspiracy with dozens of other Defendants to allocate "fair share" and fix prices for 38 drugs it did not make or sell. Accordingly, Kroger's overarching conspiracy claim must be dismissed against West-Ward.

Humana similarly fails to connect West-Ward to an overarching conspiracy involving many drugs West-Ward never sold.   The 28-paragraph section purporting to describe the workings of the "overarching generic drug conspiracy" does not mention West-Ward or any drug it allegedly sold.   (*See* Humana Compl. ¶¶ 261-88.)   It simply restates conclusory and insufficient allegations regarding "Defendants" generally and repeats the same Heritage-centric allegations found in the Plaintiff States' complaint, which, again, does not even name West-Ward as a defendant.  (*See id.*)

The remainder of Humana's complaint lacks any well-pled factual allegation that West-Ward participated in, or was aware of, any conduct outside the bounds of the individual Doxy RR and Digoxin markets.   Tellingly, excluding definitional allegations and counts, Humana references West-Ward in only *three* paragraphs outside of the sections dedicated to Doxycycline and Digoxin.  (*See id.* ¶ 181 (alleging (incorrectly) that West-Ward was a regular GPhA member since 2013), ¶ 182 (alleging a West-Ward executive served on GPhA's Board of Directors but omitting the name of said executive); ¶ 253 (quoting a Hikma financial report discussing Doxy RR profitability).)   Nowhere does the complaint suggest that West-Ward's conduct regarding Doxy RR or Digoxin was informed by, or dependent upon, other Defendants' actions regarding

other drugs at issue.  Thus, even if Humana sufficiently pleads that West-Ward participated in individual Doxy RR or Digoxin conspiracies, there are no well-pled factual allegations allowing an inference that West-Ward did so only with the understanding that there were similar agreements as to each and every other drug at issue.  Thus, Humana's overarching conspiracy claims against West-Ward must be dismissed.

2.     <u>DAPs Do Not Sufficiently Plead that West-Ward Plausibly Joined a General Doxycycline Conspiracy</u>

DAPs' complaints fail to allege that West-Ward plausibly participated in a sub-conspiracy regarding Doxycycline generally.  (*See* Kroger Compl. Count Twelve; Humana Compl. Counts XLVI-L.) Although the Court has concluded that Class Plaintiffs' standalone Doxycycline Hyclate complaints plausibly state a Sherman Act claim that West-Ward conspired to fix *Doxy RR* prices, *see In re Generic Pharms.*, 338 F. Supp. 3d at 404, each complaint in this MDL must stand on its own and, in fact, DAPs' Doxycycline claims are inconsistent with those of the Class Plaintiffs.

Importantly, DAPs do not allege West-Ward participated in a sub-conspiracy limited to the coordination of *Doxy RR* prices; they plead something much broader.  They allege that West-Ward participated in a mini overarching conspiracy involving three different Doxycycline drugs: Doxy RR, Doxy DR, and Doxycycline Monohydrate ("Doxy Mono").  This general Doxycycline conspiracy is implausible absent well-pled factual allegations suggesting a sufficient overlap among the three separate drug markets or establishing their interdependence.  (*See, e.g.*, Defs. Joint Mem. at 26-27.)  None exist in DAPs' complaints.  Indeed, each drug is concededly made by a different set of Defendants,[19] and the drugs are not generic versions of the same brand drug.

---

[19] <u>Doxy RR</u>: Sun, Actavis, West-Ward, Par; <u>Doxy DR</u>: Heritage, Mylan, Mayne; <u>Doxy Mono</u>: Heritage, Lannett, Mylan, Par.

The Court, in fact, has already recognized that factual allegations regarding Doxy DR do not permit inferences regarding Doxy RR.  *See In re Generic Pharms. Pricing Antitrust Litig.*, 338 F. Supp. 3d at 439-40  (agreeing with Defendants that guilty pleas of Heritage executives are not direct evidence of a Doxy RR conspiracy).

Moreover, DAPs do not allege that any purportedly illicit communication concerned all three forms of Doxycycline (or even two).  They do not allege that any Defendants traded customers across different Doxycycline products.  They do not allege that the alleged coordination of Doxy RR pricing depended on similar agreements as to Doxy DR or Doxy Mono.  And they do not allege that West-Ward, specifically, was aware of any conduct or communications regarding Doxy DR or Doxy Mono.  At bottom, nothing renders plausible DAPs' allegations that West-Ward, which made only Doxy RR, or any other Defendant, joined and participated in a conspiracy involving Doxy RR, Doxy DR, *and* Doxy Mono.  Accordingly, DAPs' general Doxycycline claims against West-Ward also should be dismissed.[20]

## IV.    CONCLUSION

For the reasons stated above, no Plaintiff meets its burden to allege that West-Ward plausibly participated in an overarching conspiracy.  DAPs also do not meet their burden to sufficiently allege their general Doxycycline sub-conspiracy claims against West-Ward. Accordingly, West-Ward respectfully requests that this Court grant its motion and dismiss with prejudice all claims against West-Ward in the EPPs' and IRPs' complaints and the overarching conspiracy and Doxycycline claims against West-Ward in the DAPs' complaints.

---

[20] It is inappropriate to read a claim for an individual Doxy RR conspiracy into DAPs' general Doxycycline counts. *See, e.g.*, *Rogers v. Detroit Police Department*, 595 F. Supp. 2d 757, 766 (E.D. Mich. 2009) (explaining that courts may not rewrite a complaint to include claims never presented).  Accordingly, DAPs' Doxycycline counts must rise or fall as the three-drug conspiracy that DAPs plead.

DATED: February 21, 2019                         Respectfully submitted,

                                                 /s/ Jan P. Levine
                                                 Jan P. Levine
                                                 Robin P. Sumner
                                                 Michael J. Hartman
                                                 PEPPER HAMILTON LLP
                                                 3000 Two Logan Square
                                                 Eighteenth & Arch Streets
                                                 Philadelphia, PA 19103-2799
                                                 Tel. (215) 981-4000
                                                 Fax. (215) 981-4750


                                                 Keith J. Harrison
                                                 Shari Ross Lahlou
                                                 CROWELL & MORING LLP
                                                 1001 Pennsylvania Avenue, NW
                                                 Washington, D.C. 20004-2595
                                                 Tel. (202) 624-2500
                                                 Fax. (202) 624-5116

                                                 *Attorneys for Defendant West-Ward*
                                                 *Pharmaceuticals Corp.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify on this 21st day of February 2019, a true and correct copy of the

foregoing was filed electronically and is available for viewing and downloading from the Court's

ECF System.  Notice of this filing will be sent to all counsel of record by operation of the ECF

System.


Dated:  February 21, 2019                                            */s/ Jan P. Levine*
                                                                                   Jan P. Levine