**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL2724 16-MD-2724 HON. CYNTHIA M. RUFE |

**THIS DOCUMENT RELATES TO:**

*Ahold USA, Inc., et al. v. Actavis Holdco U.S., Inc. et al.*

*The Kroger Co., et al. v. Actavis Holdco U.S., Inc.*

### DEFENDANT G&W LABORATORIES, INC.'S MOTION TO DISMISS DIRECT PURCHASER PLAINTIFFS' AND KROGER PLAINTIFFS' AMENDED COMPLAINTS

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant G&W Laboratories, Inc. ("G&W") hereby moves this Court for an order dismissing all claims asserted against it by the Direct Purchaser Plaintiffs and The Kroger Co., Albertsons Companies, LLC, and H.E. Butt Grocery Company L.P. ("Kroger Plaintiffs") in both the Direct Purchaser Plaintiffs' First Amended Class Action Complaint (18-CV-02641 Doc. No. 11) and the Kroger Plaintiffs' Amended Complaint (18-CV-284 Doc. No. 37). The grounds for this motion are set forth in the accompanying memorandum of law, Defendant G&W Laboratories, Inc.'s Memorandum of Law in Support of its Individual Motion to Dismiss Direct Purchaser and Kroger Plaintiffs' Complaints. This accompanying Memorandum of Law incorporates by reference the arguments made in support of the Defendants' Joint Motion to Dismiss Plaintiffs' Overarching Conspiracy Claims.

1

For the reasons set forth in those memoranda, this Court should dismiss all claims against G&W contained in the Direct Purchaser and Kroger Plaintiffs' Complaints.  G&W requests oral argument on this Motion to Dismiss, pursuant to Rule 7.1(f) of the Local Rules of Civil Procedure.

**Dated:** February 21, 2019                    Respectfully submitted,

**LATHAM & WATKINS LLP**

By:   _/s/ Marguerite M. Sullivan_

Marguerite M. Sullivan (*pro hac vice*)
Anna M. Rathbun (*pro hac vice*)
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Tel: (202) 637-2200
Fax: (202) 637-2201
marguerite.sullivan@lw.com
anna.rathbun@lw.com

*Attorneys for Defendant*
*G&W Laboratories, Inc.*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: GENERIC PHARMACEUTICALS
PRICING ANTITRUST LITIGATION

MDL2724
16-MD-2724
HON. CYNTHIA M. RUFE

THIS DOCUMENT RELATES TO:

*Ahold USA, Inc., et al. v. Actavis Holdco U.S., Inc. et al.*

*The Kroger Co., et al. v. Actavis Holdco U.S., Inc.*

ORAL ARGUMENT
REQUESTED

## DEFENDANT G&W LABORATORIES, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE DIRECT PURCHASER AND KROGER PLAINTIFFS' COMPLAINTS

**FILED WITH REDACTIONS – PUBLIC VERSION**

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ................................................................................................................1

ARGUMENT ....................................................................................................................2

    A.    DPPs and Kroger Plaintiffs Have Not Adequately Pled that G&W Joined the Alleged Conspiracies—Either Industry-Wide or Metronidazole-Specific .............................................................................................................2

        1.    DPPs And Kroger Plaintiffs Have Not Alleged Any Facts That Plausibly Suggest That G&W Joined An Industry-Wide Multi-Drug Conspiracy ....................................................................................3

        2.    DPPs And Kroger Plaintiffs Have Not Alleged Sufficient Facts To Support Their Alleged Metronidazole Conspiracy ..................................6

    B.    DPPs And Kroger Plaintiffs' Claims Are Barred By The Statute Of Limitations ..........................................................................................................9

CONCLUSION..................................................................................................................12

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**CASES**

*In re Aspartame Antitrust Litig.*,
   416 Fed. App'x 208 (3d Cir. 2011)................................................................11

*In re Baby Food Antitrust Litig.*,
   166 F.3d 112 (3d Cir. 1999).........................................................................7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)....................................................................................8

*Burtch v. Milberg Factors, Inc.*,
   662 F.3d 212 (3d Cir. 2011)......................................................................2, 7

*Cetel v. Kirwan Fin. Grp., Inc.*,
   460 F.3d 494 (3d Cir. 2006).......................................................................10

*In re Chocolate Confectionary Antitrust Litig.*,
   801 F.3d 383 (3d Cir. 2015)........................................................................8

*Davis v. Grusemeyer*,
   996 F.2d 617 (3d Cir. 1993).........................................................................9

*In re Elec. Carbon Prods. Antitrust Litig.*,
   333 F. Supp. 2d 303 (D.N.J. 2004).............................................................2, 4

*In re Flat Glass Antitrust Litig.*,
   385 F.3d 350 (3d Cir. 2004).........................................................................7

*In re Ins. Brokerage Antitrust Litig.*,
   618 F.3d 300 (3d Cir. 2010).........................................................................3

*Jung v. Ass'n of Am. Med. Colls.*,
   300 F. Supp. 2d 119 (D.D.C. 2004).............................................................2

*In re K-Dur Antitrust Litigation*,
   No. 01-cv-1652 (SRC)(CLW), 2016 WL 755623 (D.N.J. Feb. 25, 2016)...........5, 6

*Klehr v. A.O. Smith Corp.*,
   521 U.S. 179 (1997)....................................................................................9

*Kotteakos v. United States*,
   328 U.S. 750 (1946).....................................................................................6

*Molecular Diagnostics Labs. v. Hoffmann-La Roche Inc.*,
    402 F. Supp. 2d 276 (D.D.C. 2005) ...........................................................................9

*In re Processed Egg Prods. Antitrust Litig.*,
    821 F. Supp. 2d 709 (E.D. Pa. 2011) .......................................................................2

*In re Processed Egg Prods. Antitrust Litig.*,
    No. 08-md-02002, 2011 WL 5980001 (E.D. Pa. Nov. 30, 2011) .............................9

*Robinson v. Johnson*,
    313 F.3d 128 (3d Cir. 2002) ...................................................................................10

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    586 F. Supp. 2d 1109 (N.D. Cal. 2008) ...................................................................2

*United States* v. *Kelly*,
    892 F.2d 255 (3d Cir. 1989) ..................................................................................4, 5

*Valspar Corp. v. E.I. Du Pont De Nemours & Co.*,
    873 F.3d 185 (3d Cir. 2017) ..................................................................................7, 8

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
    401 U.S. 321 (1971) .................................................................................................9

**STATUTES**

15 U.S.C. §15b ...............................................................................................................9

**RULES**

Fed. R. Civ. P. 12(b)(6) ..................................................................................................2

## INTRODUCTION

G&W Laboratories, Inc. ("G&W") joins the Defendants' joint motion to dismiss plaintiffs' overarching conspiracy claims,[1] but writes separately to explain why dismissal of both the overarching conspiracy claims and the metronidazole-specific conspiracy claims is particularly warranted with respect to G&W, a fourth generation family-owned business that specializes in the manufacture of topical dermatology treatments.

G&W is named in just two complaints in this sprawling multi-district litigation: the Direct Purchaser Plaintiffs' ("DPPs") complaint and the complaint filed by The Kroger Co., Albertsons Companies LLC, and H.E. Butt Grocery Company L.P. ("Kroger Plaintiffs" and collectively with DPPs, "Plaintiffs").  And, combined, those complaints assert only *three facts* regarding G&W and its alleged conduct:  (1) that G&W manufactured and sold metronidazole cream and jelly; (2) that G&W increased prices on these two products one time in 2011; and (3) that G&W attended a handful of trade association events.  Based on those facts alone, DPPs and Kroger Plaintiffs ask this Court to reach the outrageous conclusion that G&W conspired with 28 other defendants over a seven year period to fix prices and allocate market share for not only metronidazole cream and jelly, but for 38 other products that plaintiffs do not allege G&W ever sold or could sell.

Plaintiffs have not even come close to satisfying their burden to plead ***actual facts*** – as opposed to merely conclusions and even rank speculation – that would plausibly suggest that G&W participated in the alleged conspiracies.  Their claims should be dismissed on that ground. Additionally, DPPs and Kroger Plaintiffs were on notice of the alleged "exorbitant price increases" in 2011 that are the primary basis for their claims against G&W, yet they waited until 2018 to sue

---

[1] *See* Defendants' Joint Memorandum of Law in Support of their Motion to Dismiss Plaintiffs' Overarching Conspiracy Claims, Feb. 21, 2019.

G&W.   Thus, DPPs and Kroger Plaintiffs' claims against G&W are barred by the statute of limitations.   All claims against G&W in both complaints should be dismissed.

**ARGUMENT**

A.      **DPPs and Kroger Plaintiffs Have Not Adequately Pled that G&W Joined the Alleged Conspiracies—Either Industry-Wide or Metronidazole-Specific**

As this Court has explained, a complaint must be dismissed under Fed. R. 12(b)(6) where it lacks enough substance to show that the plaintiff is entitled to relief.   Mem. Op. at 35 (Oct. 16, 2018) ("Mem. Op.").   While the Court must accept ***facts*** alleged in a complaint as true, it is not bound to accept as true conclusory allegations that are not supported by facts.   *Id*. at 37. Further, a plaintiff must allege "more than a sheer possibility that a defendant has acted unlawfully."   *Burtch v. Milberg Factors, Inc.,* 662 F.3d 212, 221 (3d Cir. 2011) (citations omitted). A complaint "must plausibly suggest that the individual defendant actually joined and participated in the conspiracy" alleged.   *In re Processed Egg Prods. Antitrust Litig.,* 821 F. Supp. 2d 709, 719 (E.D. Pa. 2011); *see also Jung v. Ass'n of Am. Med. Colls.*, 300 F. Supp. 2d 119, 161 (D.D.C. 2004) (surviving motion to dismiss requires meeting  "burden of adequately alleging that . . . each defendant knowingly joined or agreed to participate in the conspiracy"); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1117 (N.D. Cal. 2008) ("the complaint 'must allege that each individual defendant joined the conspiracy and played some role in it because, at the heart of an antitrust conspiracy is an agreement and a conscious decision by each defendant to join it.'") (quoting *In re Elec. Carbon Prods. Antitrust Litig.*, 333 F. Supp. 2d 303, 311–12 (D.N.J. 2004)).   DPPs and Kroger Plaintiffs' Amended Complaints lack any substance regarding G&W; neither alleges facts that plausibly suggest that G&W joined and participated in the conspiracies alleged.

2

1.    **DPPs And Kroger Plaintiffs Have Not Alleged Any Facts That Plausibly Suggest That G&W Joined An Industry-Wide Multi-Drug Conspiracy**

DPPs and Kroger Plaintiffs allege no facts that suggest that G&W joined or participated in an overarching multi-drug conspiracy.  G&W only appears in nine paragraphs in the DPP Amended Complaint, and eleven paragraphs in Kroger Plaintiffs' Amended Complaint.  And in those paragraphs, DPPs and Kroger Plaintiffs have alleged only three facts with respect to G&W: (1) it manufactured metronidazole cream and metronidazole jelly; (2) in the Summer of 2011, it raised prices on metronidazole cream and metronidazole jelly; (3) it attended a handful of trade association meetings.  DPP Compl. ¶¶ 270-279; Kroger Compl. ¶¶ 656-662.  That's all.

Based on those facts alone, Plaintiffs ask this Court to make the astonishing inference that G&W conspired with 28 other Defendants to fix the prices of 38 other products that have no relationship to either metronidazole cream or jelly and that Plaintiffs do not allege G&W ever sold or could sell.  *See* DPP Compl. ¶ 122; Kroger Compl. ¶833.  But the three facts alleged against G&W do not support such an inference.  The complaints do not allege any facts at all that suggest G&W participated in the alleged industry-wide conspiracy, or that it was even aware of the alleged conspiracy.  Plaintiffs do not even allege facts that suggest that G&W's price increases in 2011 for metronidazole cream and jelly were the result of the alleged conspiracy.  *See*, *e.g.*, *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 349–51 (3d Cir. 2010) (affirming dismissal of global conspiracy claim against brokers and partner insurers where plaintiffs failed to allege facts supporting plausible inference of horizontal agreement between the various defendants).

Plaintiffs' conclusory allegations that those price increases in 2011 were the result of a conspiracy with other manufacturers of metronidazole to fix the prices of metronidazole cream and jelly are not sufficient to support an inference that G&W joined and participated in the alleged

3

multi-year, industry-wide conspiracy.[2]  In *United States* v. *Kelly*, 892  F.2d 255 (3d Cir. 1989), the Third Circuit established "a three-step inquiry to determine whether a series of events constitutes a single conspiracy or separate and unrelated conspiracies."  Courts examine (1) "whether there was a common goal among the conspirators," (2) "whether the agreement contemplated bringing to pass a continuous result that [would] not continue without the continuous cooperation of the conspirators," and (3) "the extent to which the participants overlap in the various dealings."  *Id.* at 259 (internal quotation marks and citations omitted).  DPPs and Kroger Plaintiffs' allegations against G&W fail at each step.

First, DPP and Kroger Plaintiffs do not allege that G&W shared a common goal with the 28 other Defendants.  DPPs and Kroger Plaintiffs assert – without any factual support whatsoever – that all Defendants had a common goal to raise prices of generic pharmaceuticals and preserve market share.  Kroger Compl. ¶ 22.  But courts in this Circuit have repeatedly rejected pleadings that lump all defendants together and fail to allege facts as to any specific defendant.  *See In re Elec. Carbon Prods.*, 333 F. Supp. 2d at 312 ("[s]imply using the global term 'defendants' to apply to numerous parties without any specific allegations that would tie each particular defendant to the conspiracy is not sufficient.") (internal quotation marks omitted).  DPPs and Kroger Plaintiffs do not allege a single fact regarding G&W's goals and objectives, let alone that G&W's goals were aligned with 28 other defendants that manufactured completely different products.  In fact, neither complaint contains any allegations at all that G&W was even aware of or cared about the prices or market shares of other pharmaceutical companies and the wide range of generic drugs at issue in the complaints.

---

[2] DPPs have not brought a metronidazole-specific claim against G&W.  DPP Compl. ¶¶ 507-515.  Nor have DPPs alleged any facts sufficient to allow the Court to infer that G&W participated in a metronidazole-specific conspiracy.  *See* Section A.2 *infra*.

In *In re K-Dur Antitrust Litigation,* No. 01-cv-1652 (SRC)(CLW), 2016 WL 755623, *18 (D.N.J. Feb. 25, 2016), the District of New Jersey dismissed an overarching conspiracy claim against three pharmaceutical companies on the ground that the plaintiffs did not sufficiently allege facts that suggested that the defendants conspired to each enter into reverse-payment settlements to prevent generic drugs from entering the market. *Id.* at 22. The court noted that "theories about one party's motivations" and "awareness of a competitor's actions" are not enough to create the inference of a single, overall conspiracy. *Id.* The same reasoning applies here.

Second, DPPs and Kroger Plaintiffs do not plead any facts that plausibly suggest that G&W participated in an industry-wide conspiracy designed to achieve "a *continuous* result" through G&W's "*continuous* cooperation" with the other alleged conspirators. *Kelly*, 892 F.2d at 259 (emphasis added). Neither complaint alleges a single fact that suggests that G&W cooperated with any other Defendant, let alone engaged in continuous cooperation. At most, plaintiffs allege that G&W attended trade association meetings that other defendants also attended, but even those allegations are sparse: ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████. DPP Compl. at Ex. D; Kroger Compl. at Ex. 3.[3] Neither DPPs nor Kroger Plaintiffs allege that any G&W employee participated in other social events with representatives of other generic pharmaceutical companies, or ever spoke to any other Defendant regarding the alleged "fair share" agreement.

---

[3] ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████. *See, e.g.*, DPP Compl., Ex. D. However, Plaintiffs never explain why, if these events supposedly precipitated an agreement among all Defendants to fix prices of all drugs identified in the complaints, other Defendants did not raise prices on the majority of drugs they allegedly manufactured until 2013 and 2014.

Finally, DPP and Kroger Plaintiffs have not alleged any overlap between G&W's dealings and those of the other Defendants.  Even if DPPs and Kroger Plaintiffs had adequately alleged that G&W agreed with Sandoz, Teva, Impax and Valeant to raise prices for metronidazole cream and metronidazole jelly (and they have not), the conclusory assertion that one party engaged in several illegal agreements is not sufficient to plead that the party participated in an overarching conspiracy. *Kotteakos v. United States*, 328 U.S. 750, 755 (1946).  Again, *K-Dur* is instructive.  In that case, the court held that it could not infer from the fact that the defendants separately entered into settlement agreements delaying entry of generic K-Dur that they had an overarching, and overlapping, illegal motive for entering into those settlement agreements.  *K-Dur*, 2016 WL 755623, at *24.

Here, DPPs and Kroger Plaintiffs have not pled any facts at all that suggest that the alleged conspiracy to raise prices on metronidazole cream and jelly overlaps with any other alleged product-specific conspiracy.  The only factual allegations directed against G&W are that it raised prices on metronidazole jelly and metronidazole cream in 2011.  There is no plausible basis to infer from that fact alone that G&W conspired to raise prices regarding 38 other products.

## 2.    DPPs And Kroger Plaintiffs Have Not Alleged Sufficient Facts To Support Their Alleged Metronidazole Conspiracy

DPPs and Kroger Plaintiffs similarly fail to allege facts that support their conclusory allegations that G&W, Sandoz, Teva, Impax, and Valeant conspired to fix the prices of metronidazole products from 2011 to the present.  Kroger Compl. ¶¶ 1002-1009 (bringing claim for "metronidazole" conspiracy); DPP Compl. ¶¶ 274–285 (alleging conspiracies relating to metronidazole cream involving G&W, Sandoz, and Teva and metronidazole jelly involving G&W, Sandoz, Teva, and Impax).  Neither complaint contains a single non-conclusory allegation suggesting that G&W's price increases on metronidazole cream and metronidazole jelly in 2011

were the result of a conspiracy among all of the manufacturers of metronidazole and its various forms.  Nor do Plaintiffs allege any facts whatsoever to support their assertion that the metronidazole manufacturers continued to conspire to fix prices for metronidazole products following the 2011 price increases.

Moreover, because there is no direct evidence of the alleged metronidazole conspiracy, to survive dismissal, plaintiffs must allege "plus factors" that would allow the Court to infer that the alleged conspiracy occurred.  As this Court has held, parallel price increases are not enough. Mem. Op. at 55.  Plus factors include (1) evidence that the defendant had a motive to enter into the alleged price fixing conspiracy;  (2) evidence that the defendant acted contrary to its interests in joining the alleged conspiracy;  and (3) evidence implying a traditional conspiracy.  *Valspar Corp. v. E.I. Du Pont De Nemours & Co.*, 873 F.3d 185, 193 (3d Cir. 2017).   The Third Circuit generally discounts the first two factors "because they 'largely restate the phenomenon of interdependence.'" *Id.* (quoting *In re Flat Glass Antitrust Litig.*, 385 F.3d 350, 360 (3d Cir. 2004)); *see Burtch*, 662 F.3d at 229 ("'In a free capitalistic society, all entrepreneurs have a legitimate understandable motive to increase profits' and without a 'scintilla of evidence of concerted, collusive conduct,' this motive does not on its own constitute evidence of a 'plus factor.'") (quoting *In re Baby Food Antitrust Litig.*, 166 F.3d 112, 137 (3d Cir. 1999)).   Similarly, this Court has acknowledged that the first two factors "may simply restate the (legally insufficient fact) that market behavior is interdependent and characterized by conscious parallelism" and that the determination of whether plaintiffs have sufficiently alleged plus factors relies primarily on whether plaintiffs have adequately alleged "non-economic evidence that there was an actual, manifest agreement not to compete."  Mem. Op. 57-58 (internal quotation marks and citations omitted).  Here, DPPs and

Kroger Plaintiffs have not pled any facts regarding G&W to support the first two plus factors beyond those that the Court has already deemed insufficient.

Plaintiffs also have not alleged any facts regarding the third plus factor—traditional evidence of G&W's involvement in the alleged metronidazole conspiracy.  Neither DPPs nor Kroger Plaintiffs allege that G&W had any communications with the three other metronidazole manufacturer Defendants throughout the alleged conspiracy period.  Their only allegations are that representatives from G&W attended a small number of trade association meetings, which provided the *opportunity* for such communications.  DPP Compl. ¶¶ 277, 283; Kroger Compl.¶¶ 672-678. But Plaintiffs do not allege that G&W ever actually spoke with the other metronidazole manufacturers at any trade association meeting.  As both the Supreme Court and the Third Circuit have held repeatedly, a court cannot infer a conspiracy from mere attendance at trade association meetings.  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 566-67 & n.12 (2007); *Burch,* 873 F.3d at 228; *In re Chocolate Confectionary Antitrust Litig.,* 801 F.3d 383, 409 (3d Cir. 2015) (evidence that executives from the alleged conspirators "were in the same place at the same time" was insufficient to support a reasonable inference of concerted activity).

Nor are there any allegations that G&W representatives attended other industry-sponsored social gatherings or had board representation on specific trade associations – an omission that this Court relied on, in part, in dismissing similar claims against Teligent. *See* Mem. Op. 60 (finding that Plaintiffs failed to plausibly allege that Teligent conspired where there was no allegation that Teligent had board representation in any relevant trade association or that any Teligent employees attended any industry-sponsored social gatherings).  Plaintiffs have not pled sufficient facts to suggest that G&W participated in the alleged metronidazole conspiracy.

**B.      DPPs And Kroger Plaintiffs' Claims Are Barred By The Statute Of Limitations**

DPP and Kroger Plaintiffs' claims are further barred by the statute of limitations.  It is well-settled that private antitrust claims are subject to the Clayton Act's four-year statute of limitations. 15 U.S.C. §15b.  *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338 (1971). Plaintiffs cannot recover for injuries caused by higher prices outside of the limitations period, unless they can establish that the statute of limitations was tolled.  *Klehr v. A.O. Smith Corp*., 521 U.S. 179, 189 (1997).  However, once a plaintiff is on notice of its claim, fraudulent concealment is not a basis for tolling.  *See In re Processed Egg Prods. Antitrust Litig.*, No. 08-md-02002, 2011 WL 5980001 at \*3 (E.D. Pa. Nov. 30, 2011) (a "key aspect of a plaintiff's case alleging fraudulent concealment is therefore proof that the plaintiff was not previously on notice of the claim he now brings." (quoting *Davis v. Grusemeyer,* 996 F.2d 617, 624 (3d Cir. 1993)); *Molecular Diagnostics Labs. v. Hoffmann-La Roche Inc.*, 402 F. Supp. 2d 276, 283–84 (D.D.C. 2005) ("Fraudulent concealment, however, does not come into play, whatever the lengths to which a defendant has gone to conceal the wrongs, if a plaintiff is on notice of a potential claim.") (internal quotation marks and citations omitted).

DPPs and Kroger Plaintiffs' claims are barred because they were on notice of their claims in 2011, when G&W imposed allegedly "unusual and extraordinary" price increases for metronidazole jelly and metronidazole cream, yet they did not assert claims against G&W until June and December 2018, respectively, over seven years later.  The complaints themselves describe "storm warnings" that should have alerted Plaintiffs to their claims.  For example, both complaints allege that direct purchasers of generic drugs are closely attuned to the prices they pay due to MAC prices, which set limits on the profits each pharmacy can receive for dispensing certain generic drugs.  DPP Compl. ¶ 102; Kroger Compl. ¶ 232.  Kroger Plaintiffs allege that

price increases on metronidazole cream and jelly in 2011 were "stunningly large" and that their pricing pattern was "so unusual and extraordinary as to demonstrate the existence of a conspiracy." Kroger Compl. ¶ 15.   DPPs similarly allege that G&W and others increased prices of metronidazole cream and jelly █████████.   DPP Compl. ¶¶ 275, 281.   Both groups allege that price increases for generic drugs were so high, they triggered Congressional and State investigations in 2014.   Kroger Compl. ¶ 141; DPP Compl., Ex. B.   Thus, the face of both complaints demonstrates that DPPs and Kroger Plaintiffs' claims are barred.   *See Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002) (noting that dismissal is on limitations grounds is appropriate in the Third Circuit where "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations.") (internal quotation marks omitted).

Plaintiffs claim that the limitations period was tolled because Defendants fraudulently concealed their conduct.   But, fraudulent concealment does not toll the statute of limitations once a plaintiff is on notice, as DPPs and Kroger Plaintiffs were here.   *In re Processed Egg Prods. Antitrust Litig.*, 2011 WL 5980001 at *2–4.   Moreover, even if fraudulent concealment could apply, neither DPPs nor Kroger Plaintiffs have sufficiently alleged that G&W fraudulently concealed the alleged conspiracies, whether industry-wide or metronidazole-specific.

To establish fraudulent concealment at the pleading stage, plaintiffs must allege particularized facts sufficient to suggest "(1) that the defendant actively misled the plaintiff; (2) which prevented the plaintiff from recognizing the validity of her claim; and (3) [that] the plaintiff's ignorance is not attributable to lack of reasonable due diligence."   *Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 509 (3d Cir. 2006).   Neither DPPs nor Kroger Plaintiffs satisfy any of these requirements.

The complaints do not allege that G&W actively misled anyone, much less that G&W actively misled DPPs or the Kroger Plaintiffs, who are sophisticated direct purchasers of generic pharmaceuticals.  DPP Compl. ¶¶ 43-47; Kroger Compl. ¶¶ 60-62.  In fact, there are no non-conclusory allegations in either complaint that G&W made any statements about its pricing at all. For that reason DPPs and Kroger Plaintiffs also fail to satisfy the second requirement of fraudulent concealment. By failing to assert any allegations that G&W made any statements regarding the allegedly collusive price increases, Plaintiffs have not plausibly alleged that they were misled by any action of G&W.

Finally, DPPs and Kroger Plaintiffs fail to allege that they exercised any diligence in investigating the numerous "storm warnings" that they describe in the complaints.  Faced with allegedly unprecedented price hikes for metronidazole cream and jelly, reduced profits as a result, and Congressional investigations into generic pharmaceutical prices, neither DPPs nor Kroger Plaintiffs allege that they ever investigated G&W's price increases more closely.  The failure of these plaintiffs to investigate is even more striking in light of DPPs' allegation that the National Community Pharmacists Association (whose members presumably include a large number of direct purchaser class members) wrote to the United States Senate in January 2014 to request hearings on significant spikes in generic drug pricing.  DPP Compl., Ex. B.  Thus, to the extent that DPPs and Kroger Plaintiffs were ignorant of their claims against G&W until June 2018 (and the complaints make clear that they were not), that was entirely a result of their own failure to exercise the due diligence that the antitrust laws require.  *See In re Aspartame Antitrust Litig.*, 416 Fed. App'x 208, 212 (3d Cir. 2011) (affirming district court dismissal on statute of limitations grounds where plaintiffs believed the purchase price of aspartame was "out of sight" but failed to

exercise reasonable diligence).  Thus, alleging fraudulent concealment does not save Plaintiffs'

claims; they are barred by the statute of limitations.

## CONCLUSION

For the above reasons, G&W respectfully requests that the Court dismiss DPPs' and Kroger

Plaintiffs' claims against G&W, with prejudice.

Dated: February 21, 2019                              Respectfully Submitted,

**LATHAM & WATKINS LLP,**

*/s/ Marguerite M. Sullivan*
Marguerite M. Sullivan (*pro hac vice*)
Latham & Watkins LLP
555 Eleventh Street, N.W., Suite 1000
Washington, D.C., 20004
(202)-637-2200
marguerite.sullivan@lw.com

Anna M. Rathbun (*pro hac vice*)
Latham & Watkins LLP
555 Eleventh Street, N.W., Suite 1000
Washington, D.C., 20004
(202)-637-2200
anna.rathbun@lw.com

*Attorneys for Defendant*
*G&W Laboratories, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of February 2019, the foregoing document was filed electronically with the Clerk of Court by using the CM/ECF system, which will serve a copy on all interested parties registered for electronic filing, and is available for viewing and downloading from the ECF system.  A sealed unredacted version of the memorandum in support of the foregoing document was served via e-mail on Liaison Counsel pursuant to the Court's Pretrial Order No. 40.

Dated: February 21, 2019

> */s/ Marguerite M. Sullivan*
> Marguerite M. Sullivan (*pro hac vice*)
> Latham & Watkins LLP
> 555 Eleventh Street, N.W., Suite 1000
> Washington, D.C., 20004
> (202)-637-2200
> marguerite.sullivan@lw.com
>
> Anna M. Rathbun (*pro hac vice*)
> Latham & Watkins LLP
> 555 Eleventh Street, N.W., Suite 1000
> Washington, D.C., 20004
> (202)-637-2200
> anna.rathbun@lw.com
>
> *Attorneys for Defendant*
> *G&W Laboratories, Inc.*