## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **In re: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION** | **MDL NO. 2724**<br>**16-MD-2724**<br>**HON. CYNTHIA M. RUFE** |
| **THIS DOCUMENT RELATES TO:**<br><br>*HUMANA INC. v. ACTAVIS ELIZABETH LLC et al.*<br><br>*THE KROGER CO., et al. v. ACTAVIS HOLDCO U.S., INC. et al.* | **18-CV-3299**<br><br><br>**18-CV-284** |

---

## MEMORANDUM OF LAW IN SUPPORT OF BRECKENRIDGE PHARMACEUTICAL, INC.'S MOTION TO DISMISS THE KROGER AND HUMANA INC. AMENDED COMPLAINTS

---

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ...........................................................................................1

RELEVANT PROCEDURAL AND FACTUAL BACKGROUND ...........................................3

ARGUMENT ....................................................................................................................7

I.      PLAINTIFFS FAIL TO PLEAD FACTS DEMONSTRATING THAT
BRECKENRIDGE PARTICIPATED IN ANY OVERARCHING CONSPIRACY
OR PROPRANOLOL CONSPIRACY ......................................................................7

      A.      Plaintiffs Fail to Plead That Breckenridge Agreed to and Was Committed
to the Common Goal of an Overarching Conspiracy to Fix the Prices of
Numerous Drugs That It Did Not Sell..................................................................8

      B.      Plaintiffs Fail to Plead the Interdependence and Overlap as to
Breckenridge that are Required to State an Overarching Conspiracy Claim .........9

II.     PLAINTIFFS FAIL TO ALLEGE THE REQUISITE PLUS FACTORS AS TO
BRECKENRIDGE ...............................................................................................13

CONCLUSION ...............................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re Auto. Parts Antitrust Litig.*,
No. 12-cv-00203, 2016 WL 8200512 (E.D. Mich. Apr. 13, 2016) ........................................ 8

*Fowler v. UPMC Shadyside*,
578 F.3d 203 (3d Cir. 2009) .......................................................................................... 12

*In re Generic Pharm. Pricing Antitrust Litig.*,
338 F. Supp. 3d 404 (E.D. Pa. 2018) ............................................................................ 14

*In re Ins. Brokerage Antitrust Litig.*,
618 F.3d 300 (3d Cir. 2010) ................................................................................. 7, 10, 13

*In re K-Dur Antitrust Litig.*,
No. 01-cv-1652 (SRC)(CLW), 2016 WL 755623 (D.N.J. Feb. 25, 2016) .......................... 9

*Loren Data Corp. v. GXS, Inc.*,
501 F. App'x 275 (4th Cir. 2012) .................................................................................. 11

*Precision Assoc. v. Panalpina World Transp. (Holding) Ltd.*,
No. 08-cv-42 JG VVP, 2011 WL 7053807 (E.D.N.Y. Jan. 4, 2011), *report
and recommendation adopted*, No. 08-CV-00042 JG VVP, 2012 WL 3307486
(E.D.N.Y. Aug. 13, 2012) ............................................................................................... 7

*In re Processed Eggs Prods. Antitrust Litig.*,
821 F. Supp. 2d 709 (E.D. Pa. 2011) .............................................................................. 9

*Sonterra Capital Master Fund Ltd. v. Credit Suisse Grp. AG*,
277 F. Supp. 3d 521 (S.D.N.Y. 2017) ........................................................................... 10

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
586 F. Supp. 2d 1109 (N.D. Cal. 2008) ........................................................................... 8

*United States v. Kelly*,
892 F.2d 255 (3d Cir. 1989) ...................................................................................... 7, 12

*United States v. Smith*,
82 F.3d 1261 (3d Cir. 1996) ..................................................................................... 10, 11

*Wash. Cty. Health Care Auth., Inc. v. Baxter Int'l Inc.*,
328 F. Supp. 3d 824 (N.D. Ill. 2018) ............................................................................ 10

**Other Authorities**

*U.S. Gov't Accountability Off., GAO-16-706, Generic Drugs Under Medicare:*
*Part D Generic Drug Prices Declined Overall, but Some had Extraordinary Price*
*Increases (Aug. 12, 2016)* ........................................................................................... 15

*U.S. Dep't of Health & Human Servs., Off. of Inspector Gen., A-06-15-00030,*
*Average Manufacturer Prices Increased Faster Than Inflation for Many Generic*
*Drugs (Dec. 2015)* ....................................................................................................... 15

Defendant Breckenridge Pharmaceutical, Inc. ("Breckenridge") submits this Memorandum of Law in Support of its Motion to Dismiss the Kroger Plaintiffs' Amended Complaint and Humana Inc.'s Amended Complaint.  Breckenridge has joined in the Defendants' Motion to Dismiss and the accompanying Memorandum of Law in Support of the Motion to Dismiss Plaintiffs' Overarching Conspiracy Claims ("Joint Memorandum" or "JM") and files this Memorandum in further support of dismissal of Breckenridge as permitted by PTOs 61 and 71.[1]  24-MD-2724, Dkt. Nos. 775, 846.  To the extent that the Kroger and Humana Complaints purport to assert claims related to a Propranolol price fixing conspiracy, Breckenridge adopts the arguments set forth in its Memorandum of Law in Support of its Motion to Dismiss the Federal Claims in the DPP, EPP and IRP Propranolol Complaints ("Propranolol Memorandum" or "PM") as if fully set forth herein.  For all of the reasons set forth in the Joint Memorandum, and as supplemented here, Kroger and Humana have utterly failed to assert any overarching conspiracy against Breckenridge.  Furthermore, for all the reasons set forth in the Propranolol Memorandum, and as discussed further here, Kroger and Humana have failed to allege that Breckenridge participated in a conspiracy regarding Propranolol.

## **PRELIMINARY STATEMENT**

With the notable exception of Kroger and Humana, none of the other sets of plaintiffs that have asserted overarching conspiracy claims in this MDL have brought such claims against Breckenridge.  Only Kroger and Humana, each of which have adopted a generalized and sweeping approach that is entirely divorced from the investigation undertaken by the States,

---

[1] Because Breckenridge was not named as a defendant in the (1) Direct Purchaser Plaintiffs' Amended Class Action Complaint, (2) End-Payer Plaintiffs' First Amended Class Action Complaint, (3) Indirect Reseller Plaintiffs' Amended Class Action Complaint, (4) Marion Plaintiffs' First Amended Complaint, or (5) Plaintiff States' Consolidated Amended Complaint, it does not join in the Motion or the Joint Memorandum as it pertains to those complaints.

1

name Breckenridge, along with numerous other defendants.[2]  Even still, Breckenridge is a

complete afterthought in the Kroger and Humana Complaints.  Breckenridge is mentioned by

name a mere handful of times, and in those instances, the only allegations it is connected with

relate to a single drug – Propranolol – and those allegations are conclusory at best.  There is ***not

a single factual allegation*** across either Complaint that connects Breckenridge in any way to any

overarching conspiracy or to any non-Propranolol drug, or indeed, to any conspiracy related to

Propranolol capsules.

      Breckenridge shares the position of the other defendants that Plaintiffs fail to allege an

overarching conspiracy against any named defendants.[3]  As to Breckenridge however, the

absence of any well-pled facts could not be more apparent.  Although Plaintiffs' Complaints

advance numerous allegations in supposed support of their overarching conspiracy claim, those

allegations have absolutely no relevance or application to Breckenridge.  For example:

- There are **no** allegations that could possibly support Plaintiffs' theory that
  Breckenridge, which is alleged to have sold only one formulation of one drug that is
  at issue in this MDL, could have any motivation to enter into an overarching
  conspiracy across a myriad of other drugs.

- There are **no** allegations of any Breckenridge communications with any other MDL
  defendant, about Propranolol or any other drug in this MDL.

- There are **no** allegations that Breckenridge entered into any market allocation
  agreement.

---

[2] Kroger has named as a defendant in its Complaint every company that was a defendant anywhere in the MDL at the time it filed its Complaint (29 defendants) and Humana, which filed its Complaint later, has named even more defendants than Kroger (36 defendants).

[3] In this Memorandum, the term "Plaintiffs" is used to refer collectively to the plaintiffs named in the Kroger and Humana Complaints, as defined herein.  Plaintiffs are allegedly direct purchasers of Propranolol capsules.  Kroger Compl. ¶¶ 60-62; Humana Compl. ¶ 40.

- There are **no** allegations concerning "fair share" related to Breckenridge.[4]

Nevertheless, Plaintiffs demand that Breckenridge should be held jointly and severally liable for a hypothetical and totally unsupported overarching conspiracy regarding up to 40 drugs.  Their suggestion is ludicrous, unsupported by factual allegations, and completely contrary to law.  Accordingly, Breckenridge should be dismissed with prejudice from the Kroger and Humana Complaints.

<u>**RELEVANT PROCEDURAL AND FACTUAL BACKGROUND**</u>

The only two Complaints that are the subject of this Motion are:  (1) the Amended Complaint filed by The Kroger Co., Albertson's Companies, LLC and H.E. Butt Grocery Company, L.P. (collectively, "Kroger") on December 21, 2018 (18-cv-284, Dkt. No. 37) (the "Kroger Complaint"), and (2) the Amended Complaint filed by Humana Inc. ("Humana") on December 21, 2018 (18-cv-3299, Dkt. No. 29) (the "Humana Complaint").  Plaintiffs' allegations as they pertain to Breckenridge are similar:   (1) they assert that Breckenridge engaged in a conspiracy to fix prices for Propranolol capsules with Actavis Elizabeth, LLC ("Actavis"), and Upsher-Smith Laboratories, Inc. ("Upsher") (collectively the "Propranolol Capsule Defendants"),[5] and (2) they assert that Breckenridge engaged in an overarching conspiracy to fix prices for **all of the drugs** named in each of the Complaints (40 drugs in the Kroger Complaint and 27 drugs in the Humana Complaint), despite the fact that each allege that

---

[4] Humana does not even allege any price increase of Propranolol capsules by Breckenridge, but merely contends that there were *average* price increases for two dosages of Propranolol capsules (which, of course, says nothing about any individual seller's prices).  Additionally, while some other overarching conspiracy complaints allege that certain defendants entered into agreements with other defendants to stay out of particular drug markets, neither Kroger nor Humana make such allegations in their Complaints.

[5] The meager allegations of the alleged Propranolol capsule conspiracy in the DPP, EPP and IRP Propranolol complaints are set forth in the Propranolol Memorandum at 6-9.  The allegations regarding the alleged Propranolol capsule conspiracy are much more sparse in the Kroger and Humana Complaints (*see generally* Kroger Compl. ¶¶ 744-45; Humana Compl. ¶¶ 646-64) than they are in the DPP, EPP and IRP Propranolol complaints.  Accordingly, there is even greater justification to dismiss Breckenridge from the Propranolol-based conspiracy claims alleged by Kroger and Humana.

the only drug that Breckenridge sells is Propranolol capsules.  *See* Kroger Compl. ¶¶ 68, 743-45; Humana Compl. ¶¶ 54, 646.  There are, however, no allegations that could possibly support a finding that Breckenridge participated in any conspiracy, whether overarching or regarding Propranolol capsules.

Kroger alleges that defendants Actavis, Heritage, Mylan, Par, Sun/Taro, Teva, and Sandoz are the "Core Conspirators" that directed the implementation of the alleged overarching conspiracy.  Kroger Compl. ¶ 22.  A much larger secondary group of alleged conspirators, said to consist of Breckenridge and all of the non-Core Conspirator defendants, are so-called "Additional Conspirators."  *Id*.  There are no allegations about the supposed role of these "Additional Conspirators" pertaining to either the alleged overarching conspiracy or the alleged Propranolol capsule conspiracy.

Nevertheless, without any well-pled factual support, Plaintiffs make the sweeping general allegation that "each Defendant consciously committed to an overarching market allocation agreement that governed each of their respective market shares" and "had knowledge of the conspiracy to increase prices, allocate markets, rig bids, and decrease production for each of the Price-Fixed Generic Drugs."  *Id*. ¶¶ 814-15; *see also* Humana Compl. ¶¶ 261-62.  Plaintiffs assert that the alleged overarching conspiracy was implemented by Defendants trading market share or customers for one drug in exchange for market share or customers for another drug. Kroger Compl. ¶¶ 137, 819; Humana Compl. ¶¶ 262, 267.  They do not, however, allege how that mechanism applied, or could possibly apply, to single-drug defendants like Breckenridge.  In fact, Humana even concedes that this mechanism would not work even for Defendants that sold two drugs, never mind single drug Defendants like Breckenridge.  *See* Humana Compl. ¶ 262 ("If the agreement were limited to one or two drugs, it could easily fall apart.")

4

As to Breckenridge, Plaintiffs' allegations are virtually non-existent.  Plaintiffs allege no communications in which Breckenridge allegedly agreed to fix the price of Propranolol capsules or any other drug.[6]  Nor are there any specific allegations that (1) Breckenridge was committed to the common goal of an overarching conspiracy to fix the price of multiple drugs, (2) the overarching conspiracy was dependent upon the existence of a Propranolol capsule price fixing scheme, or (3) Breckenridge engaged in any methods to negotiate, implement or police the alleged overall conspiracy.  For example, Plaintiffs do ***not*** allege that Breckenridge engaged in any of the following conduct allegedly supporting the existence of an overarching conspiracy:

- Traded customers in one drug market for customers in another drug market.  Kroger Compl. ¶ 137; Humana Compl. ¶¶ 265, 267.

- Agreed to concede market share for one generic drug in exchange for another company agreeing to concede market share for a second generic drug, or vice versa. Kroger Compl. ¶ 819; Humana Compl. ¶ 262.

- Declined to compete on, or agreed to "walk away" from, a bid for one drug in exchange for the opportunity to provide a pre-determined winning bid for a different drug.  Humana Compl. ¶¶ 265, 483.  *See also* Kroger Compl. ¶¶ 138, 468, 470, 550, 652.

---

[6] The Kroger Complaint alleges only the following as to Propranolol capsule price increases:

> Actavis, Breckenridge, and Upsher-Smith implemented a collusive price increase beginning in November 2013 on Propranolol capsules.  Breckenridge, which had previously had lower prices for Propranolol capsules, increased its prices for all dosages by 88% to 140%.  Upsher-Smith followed in December with a corresponding price increase on all dosages of Propranolol capsules that ranged from 49% to 79%, depending on the dosage strength.  In February 2014, Actavis increased prices for all dosages of Propranolol capsules by 64% to 81%, depending on the dosage strength.

Kroger Compl. ¶ 744. The allegations as to Propranolol capsule price increases in the Humana Complaint are even less detailed: "Propranolol Capsule Defendants increased prices on Propranolol capsules between December 2013 and October 2014," with increases ranging from 164% to 181%.  Humana Compl. ¶¶ 649-50.  There is not a single allegation in the Humana Complaint about any price increase implemented by Breckenridge at all.

- Declined to offer a competitive bid, so as not to undermine an agreed price increase, or was "punished" by other alleged conspirators for failing to do so.  Kroger Compl. ¶¶ 584, 600, 707, 822.  *See also* Humana Compl. ¶¶ 13, 174, 445, 485, 627, 630.

- Coordinated price increases with other companies that manufactured other generic drugs, so that price increases across drugs would be staggered and the alleged overarching conspiracy would be concealed.  Kroger Compl. ¶ 823; Humana Compl. ¶ 758.

- Agreed to join in the price increase for one drug in exchange for leading a price increase for another drug.  Kroger Compl. ¶ 822; Humana Compl. ¶ 271.

- Discontinued production of any drug after a price increase to avoid excess capacity, or benefitted from another company discontinuing production in this way.  Kroger Compl. ¶ 825; Humana Compl. ¶ 431.

- Agreed to allow a competitor to reach its "fair share" for a drug.  Kroger Compl. ¶¶ 9, 372, 468, 481, 692-93, 700, 779; Humana Compl. ¶¶ 237, 262-68, 279, 437, 442, 505, 595-96, 606, 611, 627, 667, 701.

- Manufactured a drug that was subject to "demand-side substitution," i.e., the drug was used for a similar purpose as another drug, so that a price increase for that one drug was relevant to the success of price increases for similar drugs.  Kroger Compl. ¶ 826.

In addition to the foregoing, there are various other allegations in the Complaints that have no relevance to Breckenridge because they only pertain to: defendants that are alleged to sell multiple MDL drugs; defendants that are implicated by the State Amended Complaint or governmental investigations; defendants that made public statements about prices and/or market

conditions; or defendants that are alleged to have communicated with competitors about their respective products, pricing or bids.  *See, e.g.*, Kroger Compl. ¶¶ 4-6, 173-76, 179-226, 819; Humana Compl. ¶¶ 140, 145-58, 205-53, 270-71, 277, 306, 440, 452, 499, 501-03, 719.

## ARGUMENT

### I.   PLAINTIFFS FAIL TO PLEAD FACTS DEMONSTRATING THAT BRECKENRIDGE PARTICIPATED IN ANY OVERARCHING CONSPIRACY OR PROPRANOLOL CONSPIRACY

Breckenridge respectfully refers the Court to the Joint Memorandum and the Propranolol Memorandum for the general legal principles governing the analysis of the instant motion to dismiss.  As to Breckenridge in particular, Plaintiffs come nowhere close to meeting their pleading obligations.

As explained in the Joint Memorandum, to survive the motion to dismiss their overarching conspiracy claims, Plaintiffs must allege facts showing that "*each of the defendants* was aware of and committed to the essential purpose of the *overarching conspiracy*."  *Precision Assoc. v. Panalpina World Transp. (Holding) Ltd.*, No. 08-cv-42 JG VVP, 2011 WL 7053807, at *30 (E.D.N.Y. Jan. 4, 2011) (emphases added), *report and recommendation adopted*, No. 08-CV-00042 JG VVP, 2012 WL 3307486 (E.D.N.Y. Aug. 13, 2012).  Specifically, Plaintiffs must plead facts showing that (1) each alleged conspirator was aware of, and committed to, *a common goal* that transcended the individual agreements in which it was alleged to have participated; (2) the alleged agreement contemplated a result "that will not continue without the continuous cooperation of the conspirators," i.e., that the individual conspiracies were *interdependent*; and (3) there was sufficient *overlap* among the participants in the individual conspiracies.  *United States v. Kelly*, 892 F.2d 255, 258-59 (3d Cir. 1989).  It is not enough to allege a series of separate, parallel agreements among different manufacturers in different markets within the same industry.  *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 350 (3d

Cir. 2010) (finding a series of broker-centered conspiracies was insufficient to state a claim for a "global" conspiracy, even if plaintiffs demonstrated a "pernicious industry-wide practice").  Yet all Plaintiffs have done here is allege a supposed series of independent, separate agreements among different defendants for different drugs, and label it an overarching conspiracy.  This requires dismissal of the overarching conspiracy claims as to all Defendants, and especially as to Breckenridge.

> **A.   Plaintiffs Fail to Plead That Breckenridge Agreed to and Was Committed to the Common Goal of an Overarching Conspiracy to Fix the Prices of Numerous Drugs That It Did Not Sell**

Plaintiffs do not allege sufficient facts to show that Breckenridge agreed to a conspiracy to fix the prices of Propranolol capsules, let alone the prices of all of the additional drugs involved in this MDL that it does not sell.  Plaintiffs allege no specific communications in which Breckenridge allegedly agreed to fix any prices for any generic pharmaceutical products, or indeed, that it was even aware of the existence of the supposed overarching conspiracy.  Furthermore, Plaintiffs fail to plead how Breckenridge participated in the supposed overarching conspiracy, or how it was aware of or agreed to any common goal.  *See In re Auto. Parts Antitrust Litig.*, No. 12-cv-00203, 2016 WL 8200512, at *4 (E.D. Mich. Apr. 13, 2016) ("Only after a defendant agrees to the common purpose [of the overarching conspiracy] may it be held responsible for the conduct of co-conspirators.").  Plaintiffs allege that the goal of the overarching conspiracy was to increase the prices of all of the drugs.  *See, e.g.*, Kroger Compl. ¶¶ 22, 828; Humana Compl. ¶¶ 204, 259.  But nowhere do Plaintiffs allege that Breckenridge had any interest in, or incentive to, increase prices for any products that it does not sell.

Likewise, Plaintiffs have failed to allege any action that Breckenridge took in furtherance of that supposed overarching conspiracy.  These omissions are fatal.  See, e.g.*, In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1117 (N.D. Cal. 2008) ("[T]he complaint

must allege that *each* individual defendant joined the conspiracy and *played some role in it* because, at the heart of an antitrust conspiracy is an agreement and a *conscious decision by each defendant to join it*.") (internal quotations omitted) (emphases added).  Plaintiffs cannot rectify these fatal pleading infirmities as to Breckenridge though imprecise and vague "group pleading" of general allegations attributing awareness, conduct and motivations allegedly related to "Defendants" collectively.  *See In re Processed Eggs Prods. Antitrust Litig.*, 821 F. Supp. 2d 709, 719-20 (E.D. Pa. 2011) (collecting cases).  Plaintiffs do not allege a single fact to connect Breckenridge to the existence or goals of any supposed overarching conspiracy.

**B.**   **Plaintiffs Fail to Plead the Interdependence and Overlap as to Breckenridge that are Required to State an Overarching Conspiracy Claim**

Plaintiffs further fail to plead any facts demonstrating that Breckenridge's participation in the alleged Propranolol capsule conspiracy was dependent on the success or failure of the alleged conspiracies regarding the other drugs that Breckenridge did not sell.  As the Joint Memorandum explains, Plaintiffs' overarching conspiracy claims must be dismissed in the absence of allegations demonstrating that the individual conspiracies are interdependent.  JM at 20-25.  *See also In re K-Dur Antitrust Litig.*, No. 01-cv-1652 (SRC)(CLW), 2016 WL 755623, at *21 (D.N.J. Feb. 25, 2016).

Plaintiffs broadly allege that their claimed complex overarching price fixing scheme among many participants and across many products was implemented by Defendants having traded market share or customers for one drug in exchange for market share or customers for another drug.  *See, e.g.*, Kroger Compl. ¶¶ 137, 819; Humana Compl. ¶¶ 262, 267.  But because Plaintiffs allege that Breckenridge only sold Propranolol capsules, Breckenridge is incapable of participating in this *quid pro quo* exchange.  Thus, unsurprisingly, Plaintiffs fail to allege that Breckenridge did so participate.  Therefore, Plaintiffs do not and cannot allege that

9

Breckenridge's alleged participation in a Propranolol-related conspiracy was interdependent in any way on a supposed overarching agreement to fix prices of non-Propranolol drugs. *See Wash. Cty. Health Care Auth., Inc. v. Baxter Int'l Inc.*, 328 F. Supp. 3d 824, 836-37, 843 (N.D. Ill. 2018) (dismissing federal antitrust conspiracy claim and noting that "the more complex the [conspiracy] allegations, the more facts are required under Federal Rule of Civil Procedure 8 to 'show how, in the plaintiff's mind at least, the dots should be connected'").  Courts routinely dismiss claims of an overarching conspiracy where, as here, the allegations fail to link the separate alleged conspiracies to one another.  *See, e.g.*, *Ins. Brokerage*, 618 F.3d at 348-51 (dismissing global conspiracy claim and explaining that even allegedly similar "pernicious industry practices" among different groups of defendants did not "plausibly imply an industry-wide conspiracy"); *United States v. Smith*, 82 F.3d 1261, 1269-70 (3d Cir. 1996) (finding that two kickback schemes constituted two conspiracies rather than one where one scheme in no way benefitted from the existence of a similar scheme in another state) (quoting *Blumenthal v. United States,* 332 U.S. 539, 558 (1947)); *Sonterra Capital Master Fund Ltd. v. Credit Suisse Grp. AG*, 277 F. Supp. 3d 521, 546 n.11 (S.D.N.Y. 2017) (noting that the "complaint [did] not plausibly allege that these two alleged patterns of manipulation were part of the same conspiracy").  Here, Plaintiffs fail to establish the requisite linking or interdependence.

Moreover, as a one-drug defendant, Breckenridge's participation in the alleged overarching conspiracy makes absolutely no economic sense, and is inconsistent with Plaintiffs' theory of the MDL defendants' supposed motivation to participate, i.e., a cross-product-market *quid pro quo* in which a defendant trades market share or customers in one drug for market share or customers for another drug.  *See, e.g.*, Kroger Compl. ¶¶ 137, 468, 819, 822-23, 825-26; Humana Compl. ¶¶ 267-71.  Because Breckenridge, as a single drug defendant, is not alleged to

have engaged in any cross-drug trades, its supposed participation in the overarching conspiracy is entirely inconsistent with Plaintiffs' allegations and is wholly implausible. *See, e.g.*, *Loren Data Corp. v. GXS, Inc*., 501 F. App'x 275, 281 (4th Cir. 2012) (dismissing claim where plaintiff's allegations contradict an inference of a conspiracy and "the conspiracy posited . . . simply makes no practical or economic sense"). Plaintiffs also do not allege that Breckenridge extracted a commitment from the Propranolol Capsule co-Defendants (Actavis and Upsher) regarding market share or customers for an agreement that Breckenridge would not enter a market for another drug. Indeed, Plaintiffs fail to plead any facts showing what benefit Breckenridge received or why it would even have any interest in joining the alleged overarching conspiracy that included conspiracies about drugs it did not sell. *See Smith*, 82 F.3d at 1269-70.

Plaintiffs' pricing allegations are also illustrative of the fatal lack of interdependence among the supposed Propranolol capsule conspiracy and any of the other alleged individual drug conspiracies as it pertains to Breckenridge. Plaintiffs do not and cannot allege that Breckenridge's decision to raise its price for Propranolol capsules in November of 2013 had any impact or interdependency with any other drug price increase, some of which were alleged to have begun over two years earlier (in the summer of 2011) or eight months later (in June of 2014). *See, e.g.*, Kroger Compl. ¶ 833. This failing dooms any attempt by Plaintiffs to establish interdependence as to Breckenridge as required under Third Circuit law.

Plaintiffs' failure to allege the requisite overlap among and between Breckenridge its two Propranolol Capsule co-Defendants and the numerous other alleged participants in the individual conspiracies is equally fatal to their overarching conspiracy claims. While Actavis is alleged to be a participant in a number of individual drug conspiracies, Upsher is an Additional Conspirator that is only alleged to have sold only one drug in addition to Propranolol capsules and is not

11

named in the State Amended Complaint or many of the other overarching conspiracy complaints.

And of course, as to Breckenridge, there is no overlap with other conspiracies at all since

Breckenridge is not alleged to be involved in any drug specific conspiracy other than Propranolol

capsules.  These allegations are simply insufficient to establish the cross-product, cross-

defendant overlap required to show the interdependence that is necessary to support Plaintiffs'

purported overarching conspiracy.  *See Kelly*, 892 F.2d at 258-59.  Nor can Plaintiffs bolster

their insufficient overlap allegations as to Breckenridge with reference to the governmental

investigations or litigations, since Breckenridge is not implicated in any of those.

Plaintiffs' only allegation identifying Breckenridge that is purported to plead

interdependence with the overarching conspiracy is that "Breckenridge's participation in the

conspiracy was dependent on its knowledge—gained in part from attending the many industry

events alleged in Section VIII, *supra*—that each of the Additional Conspirators would follow the

conspiracy's supracompetitive pricing and market allocation agreements in the event that any

entered the market for Propranolol."  Kroger Compl. ¶ 821.  This wildly speculative allegation is

unsupported by any facts, and therefore, cannot be credited under Third Circuit law.  *See Fowler*

*v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("[I]t is clear that conclusory or 'bare-

bones' allegations will no longer survive a motion to dismiss.").

Plaintiffs' Complaints are wholly insufficient to demonstrate that Breckenridge's

participation in the alleged Propranolol capsule conspiracy was dependent on the success or

failure of the alleged conspiracies regarding other drugs that Breckenridge did not sell.

Therefore, Plaintiffs' overarching conspiracy claims must be dismissed because they fail to

allege any facts to establish the requisite interdependence between the alleged Propranolol

individual drug conspiracy and the supposed overarching conspiracy.

12

II.     **PLAINTIFFS FAIL TO ALLEGE THE REQUISITE PLUS FACTORS AS TO BRECKENRIDGE**

Because Plaintiffs do not and cannot allege direct evidence that Breckenridge participated in any conspiracy (overarching or Propranolol-specific), they must plausibly allege circumstantial evidence of Breckenridge's participation in a conspiracy or agreement to conspire. Accordingly, Plaintiffs must adequately plead both (1) parallel conduct among and between Breckenridge and the other MDL defendants and (2) additional circumstantial evidence ("plus factors") from which the Court may plausibly infer Breckenridge's participation either in an overarching agreement to fix the prices of the various drugs, or an agreement to fix the prices of Propranolol capsules.  *In re Ins. Brokerage*, 618 F.3d at 321.  *See also* JM at 25-28; PM at 17-22 (discussing Plaintiffs' failure to allege "plus factors" in support of the alleged Propranolol conspiracy).[7]  Plaintiffs plead neither.

As discussed in the Propranolol Memorandum, Plaintiffs' allegations concerning any ongoing governmental investigations, or trade association or social activities, are insufficient to create an inference that Breckenridge participated in any Propranolol capsule price fixing conspiracy, much less the overarching multi-drug conspiracy alleged in the Kroger and Humana Complaints.  *See* PM at 17-22.  *See also* Kroger Compl. ¶¶ 4, 5, 17, 126-27, 132, 143, 174-75; Humana Compl. ¶¶ 10, 143, 149, 169-70, 201 (Breckenridge not involved in any governmental investigation or litigation regarding alleged excessive pricing).

---

[7] Plaintiffs also fail to allege how Breckenridge's decision to raise its price for Propranolol capsules in November of 2013 constituted parallel conduct with regard to its Propranolol Capsule co-Defendants (Actavis and Upsher), which are alleged to have implemented their own separate and different price increases one and three months later, respectively.  Kroger Compl. ¶ 744.  And, as stated above, the Humana Complaint includes no allegations *at all* about the prices at which Breckenridge, Actavis or Upsher sold Propranolol capsules, and for this additional reason, entirely fails to establish parallel pricing for Propranolol capsules.

13

Kroger alleges that the "overarching agreement was negotiated and policed through the industry meetings attended by all Defendants."  Kroger Compl. ¶ 817.  But Breckenridge was often not an attendee at those trade association meetings.  *See id.*, Ex. 3 (Breckenridge attended only a small fraction of meetings); Humana Compl., Ex. A.  And no Breckenridge corporate officers served on any board of the trade associations during the relevant time period (*see, e.g.*, Humana Compl. ¶ 159), nor is Breckenridge alleged to have attended any of the so-called "Girls Night Out" or "Women in the Industry" social outings (Kroger Compl. ¶ 168).  Furthermore, neither the Kroger nor Humana Complaint alleges that Breckenridge was a member of any trade association at the time of its alleged Propranolol price increase in November of 2013.  Thus, Plaintiffs have failed to allege that Breckenridge had the opportunity to conspire with the numerous other alleged participants in furtherance of the supposed common goals of the alleged overarching conspiracy or that it had the means to monitor any such agreement.  *See In re Generic Pharm. Pricing Antitrust Litig.*, 338 F. Supp. 3d 404 (E.D. Pa. 2018) (16-MD-2724), Dkt. 721 ("Dismissal Order") at 60-61 (dismissing Teligent and discussing insufficient "plus factors" allegations as to Teligent in connection with the alleged Econazole conspiracy).[8] Plaintiffs have simply failed to allege the requisite plus factors as to Breckenridge.

The Court's Dismissal Order underscores that a finding that Breckenridge did not participate in the alleged overarching conspiracy is warranted.  The Court correctly dismissed Teligent from the Econazole complaints even though there were many more specific allegations concerning Teligent's participation in the alleged Econazole conspiracy than there are concerning Breckenridge's participation in the alleged overarching conspiracy.  *See* PM at 18-21 (comparing the Court's bases in the Dismissal Order for dismissing Teligent and explaining the

---

[8] For the Court's convenience, Breckenridge cites to the page references in the slip op. for the Dismissal Order.

additional factors supporting dismissal of Breckenridge from the Propranolol cases).[9]  There are simply no allegations that support any "plus factors" connect Breckenridge in any way to any alleged overarching conspiracy.

In addition to failing to allege any "plus factors" regarding Breckenridge that could support an inference of a traditional conspiracy, as discussed above, Plaintiffs have completely failed to allege any facts that could possibly support a finding that Breckenridge was motivated to enter into the alleged overarching conspiracy when it would receive no economic benefit from doing so.  *See supra* 9-12.  *See also* Dismissal Order at 56.

## **CONCLUSION**

For all of the reasons set forth herein, as well as in the Joint Memorandum and the Propranolol Memorandum, Breckenridge respectfully requests that the Court dismiss all of the claims in the Kroger Complaint as to Breckenridge (Counts 1 and 28) and all of the federal claims in the Humana Complaint as to Breckenridge (Counts LXXXVI, XC, and CVI-CX), and that such dismissal be with prejudice for the reason that Kroger and Humana have, with the benefit of the Court's Dismissal Order, already filed Amended Complaints in this action.

---

[9] For example, when Congress investigated and identified various drugs that experienced "extraordinary price increases" between the first quarter of 2011 and the first quarter of 2015, Econazole was specifically identified; Propranolol capsules were not.  U.S. Gov't Accountability Off., GAO-16-706, Generic Drugs Under Medicare: Part D Generic Drug Prices Declined Overall, but Some had Extraordinary Price Increases (Aug. 12, 2016) *and* U.S. Dep't of Health & Human Servs., Off. of Inspector Gen., A-06-15-00030, Average Manufacturer Prices Increased Faster Than Inflation for Many Generic Drugs (Dec. 2015) (neither referencing Breckenridge nor Propranolol capsules) (*cited in* Dismissal Order at 23).  Further, although Plaintiffs do not allege any price increase public statements made by Breckenridge, the Econazole plaintiffs did allege that Teligent executives made various public statements supposedly reflecting Teligent's agreement to raise Econazole prices.  Econazole IRP Compl. ¶¶ 86-90; *see also* Dismissal Order at 31-33 (discussing public statements).  Nevertheless, even with these additional allegations, the Court dismissed Teligent.

15

Dated:  February 21, 2019

Respectfully submitted,

/s/ *Stacey Anne Mahoney*
Stacey Anne Mahoney
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, New York  10178
Telephone:  (212) 309-6000
Facsimile:  (212) 309-6001
stacey.mahoney@morganlewis.com

/s/ *Charles J. Reitmeyer*
Charles J. Reitmeyer
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA  19103
Telephone:  (215) 963-5000
Facsimile:  (215) 963-5001
charles.reitmeyer@morganlewis.com

*Counsel for Defendant*
*Breckenridge Pharmaceutical, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 21, 2019, Defendant Breckenridge Pharmaceutical, Inc.'s Motion to Dismiss the Humana Inc. and Kroger Co. Complaints and the accompanying memorandum of law in support thereof were served on all counsel of record and are available for viewing and downloading via the Court's ECF System.

A copy of the foregoing will be submitted to the Court by Lead and Liaison Counsel by the 26th day of February, 2019.

/s/ *Stacey Anne Mahoney*
Stacey Anne Mahoney