IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL NO. 2724<br>16-MD-2724 |
| | HON. CYNTHIA M. RUFE |
| THIS DOCUMENT RELATES TO: | |
| *Ahold USA, Inc., et al. v. Actavis Holdco U.S., Inc. et al.* | No. 18-2641 |
| *The Kroger Co., et al. v. Actavis Holdco U.S., Inc.* | No. 18-284 |

**PLAINTIFFS' OPPOSITION TO
VALEANT AND OCEANSIDE'S MOTION TO DISMISS
DIRECT PURCHASER AND KROGER PLAINTIFFS' COMPLAINTS**

FILED WITH REDACTIONS – PUBLIC VERSION

# TABLE OF CONTENTS

Page(s)

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................... ii

INTRODUCTION ........................................................................................................... 1

FACTS ............................................................................................................................. 1

ARGUMENT ................................................................................................................... 4

I.    Under This Court's Standards, Plaintiffs Plead Plausible Sherman Act Claims Against Valeant.................................................................................................. 4

    A.    Plaintiffs' allegations satisfy the "Parallel Conduct" element. ................... 4

    B.    Plaintiffs' allegations establish the existence of certain "Plus Factors." ..... 4

        1.    Plaintiffs' "Motive" allegations are consistent and well-pled. ........ 5

        2.    Plaintiffs' allegations of "Actions Against Self-Interest" are well-pled. ................................................................................................. 5

        3.    Plaintiffs allege sufficient "Facts Implying a Traditional Conspiracy." .......................................................................................... 6

II.    Valeant Relies on Inapposite Case Law in Claiming that Plaintiffs Fail to Connect It to a Conspiracy. ................................................................................................ 8

III.    Valeant's "Alternative Explanation" for the ███████████████ Parallel Price Increase with Sandoz is Not Compelling and Does Not Render Plaintiffs' Explanation Less Plausible. .................................................................................. 10

IV.    The Court Should Not Dismiss VPI.................................................................... 12

CONCLUSION .............................................................................................................. 13

FILED WITH REDACTIONS – PUBLIC VERSION

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)..................................................................................................... 11

*In re Air Cargo Shipping Servs. Antitrust Litig.,*
    MDL 1775, 2008 WL 5958061 (E.D.N.Y. Sept. 26, 2008) ..................................... 10

*In re Chocolate Confectionary Antitrust Litig.,*
    801 F.3d 383 (3d Cir. 2015) ...................................................................................... 9

*In re Generic Pharm. Pricing Antitrust Litig.,*
    338 F. Supp. 3d 404 (E.D. Pa. 2018)............................................................... *passim*

*Ins. Brokerage Antitrust Litig.,*
    618 F.3d 300 (3d Cir. 2010) ...................................................................................... 10

*Precision Associates, Inc. v. Panalpina World Transp. (Holding) Ltd.,*
    No. 08–CV–42 (JG)(VVP), 2011 WL 7053807 (E.D.N.Y. Jan. 4, 2011)................. 9

*Swanson v. Citibank, N.A.,*
    614 F.3d 400 (7th Cir. 2010) .................................................................................... 11

*Valspar Corp. v. E. I. du Pont de Nemours & Co.,*
    873 F.3d 185 (3d Cir. 2017) ................................................................................. 5, 11

*Winn-Dixie Stores, Inc. v. E. Mushroom Mktg. Coop.,*
    CIVIL ACTION No. 15-6480, 2019 WL 130535 (E.D. Pa. Jan. 8, 2019)................ 9

**Rules**

Fed. R. Civ. P 15.........................................................................................................13

FILED WITH REDACTIONS – PUBLIC VERSION

## INTRODUCTION

At the pleading stage, Plaintiffs[1] have alleged sufficient facts to state plausible antitrust claims against Valeant[2] for its participation in the "fair share" code of conduct among Defendants to allocate customers and markets, rig bids, and fix prices for generic drugs including Metronidazole. A straightforward comparison of the Court's prior motion to dismiss Opinion to the current allegations demonstrates that this is the case.[3] In short, Plaintiffs' allegations are equivalent to those that the Court previously found sufficient with respect to parallel conduct and plus factors, including "motive," "actions against self-interest" and "facts implying a traditional conspiracy."

Valeant's motion to dismiss should be denied.

## FACTS

Valeant is a manufacturer of both brand and generic drugs.[4] Metronidazole, an antibiotic, is among the 31 generic drugs that are currently at issue in MDL 2724.[5] Plaintiffs' Complaints contain allegations concerning different Metronidazole formulations: cream, jelly/gel,[6] lotion, and vaginal.[7]

---

[1] Direct Purchaser Plaintiffs and Kroger Direct Action Plaintiffs (together, "Plaintiffs").

[2] Defendants Valeant Pharmaceuticals North America LLC ("Valeant North America"), Valeant Pharmaceuticals International ("VPI"), and Oceanside Pharmaceuticals, Inc. ("Oceanside") (collectively, "Valeant"). In July 2018, Valeant Pharmaceuticals International, Inc. changed its name to Bausch Health Companies, Inc.  DPP CAC ¶ 70.

[3] *In re Generic Pharm. Pricing Antitrust Litig.*, 338 F. Supp. 3d 404 (E.D. Pa. 2018).

[4] DPP CAC ¶¶ 292, 296.

[5] DPP CAC Exh. A.

[6] Metronidazole jelly is also referred to as Metronidazole gel.

[7] DPP CAC Exh. A. Valeant's "facts" concerning the substitutability of formulations of Metronidazole are drawn from sources outside the four corners of Plaintiffs' Complaints and have nothing to do with the plausibility of Plaintiffs' allegations supporting their claims that Valeant and Sandoz participated in the fair share understanding and colluded to make rapid, multifold price increases of Metronidazole vaginal around February 2015. Valeant Br. at 3-4.

FILED WITH REDACTIONS – PUBLIC VERSION

Like with other generic drugs and other formulations of Metronidazole, for years the

████████████████████████████████.[8] In 2015, there were two primary manufacturers

of Metronidazole vaginal - MDL Defendants Valeant and Sandoz - and their collective market

dominance permitted collusion.[9] Their ██████████████████████ was similar.[10]



---

Valeant's also argues that the Kroger Plaintiffs' allegation of a conspiracy directed at Metronidazole should be dismissed because they do not allege that Valeant competes with Defendants that sell formulations of Metronidazole other than vaginal. Valeant Br. at 14-15. First, Valeant misstates the law. "The principal considerations in determining the number of the conspiracies are the existence of a common goal, the nature of the scheme, and the overlapping participants in various dealings … Defendants cite no legal authority holding that simply because two products are not interchangeable, a conspiracy theory that encompasses both products is implausible." *In re Polyurethane Foam Antitrust Litig.*, 152 F. Supp. 3d 968, 996 (N.D. Oh. 2015) (citation omitted). Second, Valeant's arguments are premature. Plaintiffs should be allowed to proceed in discovery on their theory. *See In re Animation Workers Antitrust Litig.*, 123 F. Supp. 3d 1175, 1213 (N.D. Cal. 2015) ("Though Defendants may disagree with plaintiffs' theory of the case, Defendants have failed to put forth any authority for the proposition that the Court should, at this stage of the proceeding [i.e. Motion to Dismiss], determine whether Plaintiffs have really alleged one conspiracy or two.") (citation omitted).

[8] DPP CAC ¶ 293.

[9] DPP CAC ¶ 292.

[10] DPP CAC ¶¶ 294-95.

FILED WITH REDACTIONS – PUBLIC VERSION

Plaintiffs have pled that there were no non-collusive market factors (*e.g.*, product shortages) that can explain Defendants' artificially inflated prices.[11]

These Metronidazole price increases were part of a larger understanding among generic drug manufacturers, such as Valeant and Sandoz, each of whom has overlapping generic drug portfolios spanning many drugs.[12] Plaintiffs have also alleged that Valeant and Sandoz were active participants in generic drug trade associations and other gatherings where they had opportunities to meet and conspire with ostensible competitors including in the months leading up to the Metronidazole price increase.[13] Additionally, Valeant executives had leadership roles at other Defendants in this MDL, showing the interwoven nature of the generic drug industry. For example, the current Chairman and CEO of Valeant, Joseph Papa, was previously the CEO of MDL Defendant Perrigo.[14]

Valeant has also been subpoenaed by government regulators looking into drug pricing practices.[15] Price gouging was known to be part of Valeant's brand drug business strategy.[16] Valeant is known to have employed price increase tactics with brand drugs shortly after acquiring them, as noted by Senator Sanders and Representative Cummings on August 14, 2015 in a press release on the investigation of Valeant's significant price increases for brand drug heart medications Isuprel and Nitropress.[17]

---

[11] DPP CAC ¶ 298.

[12] DPP CAC ¶¶ 14–19 & Exh. A; Kroger Compl. Exh. 2 (detailing the interrelated web of generic drug fixing).

[13] DPP CAC ¶ 297 & Exh. D.

[14] DPP CAC ¶ 130.

[15] DPP CAC ¶ 296 & Exh. B.

[16] DPP CAC ¶ 296.

[17] DPP CAC ¶ 292 & n.50; *id.* at ¶ 296. *See also* Valeant's Exh. 1.

FILED WITH REDACTIONS – PUBLIC VERSION

## ARGUMENT

I. **Under This Court's Standards, Plaintiffs Plead Plausible Sherman Act Claims Against Valeant.**

Plaintiffs' conspiracy claims against Valeant rest on allegations of "circumstantial evidence (and the reasonable inferences that may be drawn therefrom)."[18] As this Court explained, "Plaintiffs may withstand dismissal by relying on allegations" of "parallel conduct" and "plus factors that serve as proxies for direct evidence of an agreement."[19]

For the reasons stated below, the allegations against Valeant satisfy these requirements.

**A. Plaintiffs' allegations satisfy the "Parallel Conduct" element.**

To satisfy the parallel-conduct element, "Plaintiffs are not required to plead simultaneous price increases—or that the price increases were identical . . . . Rather, they [] [need only] allege price increases that are 'reasonably proximate in time and value.'"[20] Valeant does not dispute that it engaged in parallel pricing for Metronidazole. Nor could it, as this element is satisfied by the allegations that " ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆ " and Pricing Chart 7.[21]

**B. Plaintiffs' allegations establish the existence of certain "Plus Factors."**

Under the Court's framework, the next step is to examine the "plus factors"—*i.e.*, "circumstances in which the inference of independent action is less likely than that of concerted action."[22] This Court identified three plus factors that, if satisfied, supplied the "factual

---

[18] *Generic Pharm. Pricing*, 338 F. Supp. 3d at 441.

[19] *Id.*

[20] *Id.*; *see also id.* at n.209 (citing cases).

[21] DPP CAC ¶ 294.

[22] *Generic Pharm. Pricing*, 338 F. Supp. 3d at 448 (citation and quotation omitted).

FILED WITH REDACTIONS – PUBLIC VERSION

enhancement that is necessary for . . . claims to withstand dismissal."[23] Those factors are "(1) evidence that the defendant had a motive to enter into a price fixing conspiracy; (2) evidence that the defendant acted contrary to its interests; and (3) evidence implying a traditional conspiracy."[24]

1.  Plaintiffs' "Motive" allegations are consistent and well-pled.

Valeant argues that its "hope[] to increase its profits" does not constitute a plus factor.[25] However, this is a misreading of what Plaintiffs allege. The Complaints plausibly outline how Valeant (through its generics division) operates in "a regulatory regime that could reduce" Valeant and its co-conspirators' "profits by driving down generic drug prices over time," and thus they had the "common motive to set drug prices."[26] Notably, Valeant's motive is pled via allegations that mirror those upon which the Court based its prior ruling.[27] Valeant's argument that Plaintiffs have not pled a common motive should be rejected.

2.  Plaintiffs' allegations of "Actions Against Self-Interest" are well-pled.

Valeant does not seriously dispute that Plaintiffs have sufficiently alleged this plus factor,[28] presumably because - as with the motive plus factor - the operative Complaints demonstrate this through allegations that are nearly identical to those upon which the Court previously relied. Here, as with the Group 1 Defendants, Valeant and its ostensible competitors' practice of "dramatically increas[ing] [its] prices" without any "correlated" "changes in demand

---

[23] *Id.* (citation and quotation omitted).

[24] *Id.* (citation and quotation omitted).

[25] Valeant Br. at 11.

[26] *Generic Pharm. Pricing*, 338 F. Supp. 3d at 448.

[27] *Compare id.* (finding motive for all Group 1 Defendants), *with* DPP CAC ¶¶ 90–107 (asserting the same allegations against Valeant and its co-conspirators), *and* Kroger Compl. ¶¶ 658, 115–20, 230–35, & 786–96 (same).

[28] Valeant cites only to the Third Circuit's *Valspar* decision, which, of course, was at summary judgment.   Valeant Br. at 11-12.

FILED WITH REDACTIONS – PUBLIC VERSION

or manufacturing costs" "would be irrational in a competitive market."[29] The Court further noted

that MAC pricing "limits the ability of a generic pharmaceutical manufacturer to unilaterally

lead the market in a price increase absent collusion."[30] Ultimately, Valeant may show that it "had

legitimate economic reasons for [its] pricing decision . . . but [] Plaintiffs are not required to

rebut those reasons in order to withstand dismissal."[31]

>            3.   Plaintiffs allege sufficient "Facts Implying a Traditional Conspiracy."

The third plus factor is satisfied if the complaint alleges that (1) a defendant had the

"opportunity to conspire," which can be demonstrated by the allegation that the defendants "had

occasion to connect with each other, to engage in strategic business discussions, and to gain

awareness of their competitors' current and future business plans,"[32] and (2) that the Defendant

is implicated in the ongoing "government investigation," which can be demonstrated by the fact

that "at least one manufacturer" of Metronidazole "has received a subpoena seeking information

regarding [its] generic drug pricing practices."[33] Plaintiffs are not required "to have the same

quality or quantity of allegations as to one defendant as unto another."[34]

---

[29] *Generic Pharm. Pricing*, 338 F. Supp. 3d at 448. *Compare* 338 F. Supp. 3d at 448–49 (finding all Group 1 Defendants committed actions against self-interest), *with* DPP CAC ¶¶ 14–24, 90–131, & 270–85 (asserting the same allegations against Valeant and its co-conspirators), *and* Kroger Compl. ¶¶ 658, 115–20, 230–35, & 786–96 (same).

[30] *Generic Pharm. Pricing*, 338 F. Supp. 3d at 448-49. Valeant summarily asserts that "generic pharmaceuticals pricing is published" and thus, the story presumably goes, it is more likely that Sandoz and Valeant's conduct of dramatically raising prices in parallel was benign. Valeant Br. at 12. But Valeant's sole citation for its assertion is a cite to the DPP CAC ¶ 90, which states only that, as a general matter, certain list prices may eventually be reported to purchasers and may be compiled. Valeant does not connect the dots to show why eventual dissemination of certain list prices makes it less plausible that Sandoz and Valeant engaged in a conspiracy.

[31] *Id.* at 449.

[32] *Id.* at 449-50.

[33] *Id.* at 453.

[34] *Id.* at 450.

FILED WITH REDACTIONS – PUBLIC VERSION

Here, Valeant's "opportunity to conspire" is demonstrated by the allegations that identify approximately twenty Valeant employees who met with multiple co-conspirator employees at more than a dozen different trade association meetings.[35] These meetings occurred before, and continued for years after, the conspiracy began and included representatives from other MDL Defendants including at least Actavis, Apotex, Aurobindo, Dr. Reddy's, Fougera, G&W, Glenmark, Heritage, Impax, Lannett, Mylan, Par, Perrigo, Sandoz, Sun, Taro, Teva, West-Ward, and Zydus.[36]

Notably, the allegations as to the number of meetings attended and the number of specific employees in attendance are greater than, or equivalent to, the allegations previously deemed sufficient to satisfy this factor. For example, Group 1 Defendants Mayne Pharma USA Inc. ("Mayne") and Lupin Pharmaceuticals, Inc. ("Lupin") - each of which are Defendants that produced only one drug currently at issue in MDL 2724 - are alleged to have had approximately ███████████████████████, respectively, attend trade association meetings and other gatherings.[37] Moreover, the allegations at issue here are more detailed than the allegations against Teligent, Inc. ("Teligent"), the sole Group 1 Defendant that the Court dismissed noting

---

[35] These Valeant employees include at least: Asha Soto (Vice President, Supply Chain Operations); Barbara Purcell (Executive Director, Global Generics Sales & Marketing); Brian Phillips (Senior Director of Sales); Brian Stolz (Senior Vice President, Generics); Cheryl Volker (Senior Manager, Customer Service); Dean Cowen (National Account Director); Eddie Andruss (Associate Director of National Accounts; Elva Ramsaran (National Account Director); Joanne Kondori (Director, Logistics and Inventory); John Reed (Director, Marketing); Jona Mancuso (Brand Manager); Laizer Kornwasser (EVP & Company Group Chairman); Michelle Nilsson (Associate Sales Director); Natalie Rush (Director, Trade Relations); Robert Sabers (Associate Director, Channel National); Steve Sacheli (Director, National Accounts); Sultana Kazanas (National Account Manager); Thomas Allison (Senior Director of National Accounts); Todd LaRue (Vice President of Sales, U.S.); Tricia Green (Senior Brand Manager). *See* DPP CAC Exh. D; Kroger Compl. Exh. 3. Joseph Papa also attended some of the same trade association meetings as Valeant employees during the time that he was Chairman and CEO of Perrigo. *See, e.g., id.* (NACDS 2013 Annual Meeting).

[36] DPP CAC Exh. D.

[37] *See* DPP CAC Exh. D; Kroger Compl. Exh. 3.

FILED WITH REDACTIONS – PUBLIC VERSION

that only a handful of its employees - including "unnamed Teligent representatives" - were alleged to have attended a small number of meetings.[38] The "context of the timing" of Valeant's Metronidazole price increase at nearly the exact same time as Defendant Sandoz is also different from Teligent whose prices were "alleged to have peaked several months after those instituted" by the other Defendants.[39]

Finally, the Court previously held that a complaint was not rendered implausible merely because not every defendant received a government subpoena, given the allegations that "at least one manufacturer of each of the Group 1 drugs . . . received a subpoena seeking information regarding their generic drug pricing practices."[40] Here not only was Valeant subpoenaed by government regulators looking into at least its brand drug pricing practices, but its co-conspirator Sandoz received subpoenas seeking information regarding its generic drug pricing practices.[41]

## II. Valeant Relies on Inapposite Case Law in Claiming that Plaintiffs Fail to Connect It to a Conspiracy.

Valeant argues that Plaintiffs fail to connect Valeant to a conspiracy, but none of the authorities Valeant cites lend support to its argument.[42]

The issue in *In re Chocolate Confectionary Antitrust Litigation*, was not the viability of an overarching conspiracy but instead the plausibility of a *domestic* price-fixing agreement among chocolate manufacturers when there was only a *Canadian* investigation into the

---

[38] *Generic Pharm. Pricing*, 338 F. Supp. 3d at 451 ("two specifically named Teligent representatives attended three meetings of one group . . . unnamed Teligent representatives attended six GPhA meetings").
[39] *Id.*
[40] *Id.* at 453.
[41] *See* DPP CAC Exh. C.
[42] Valeant Br. at 13-14.

conduct.[43] Thus, Valeant takes the quote from *Chocolate* completely out of context. The Third Circuit was simply explaining that "[a] conspiracy elsewhere [*i.e.*, in Canada], without more, generally does not tend to prove a domestic conspiracy."[44] Plaintiffs' allegations here involve a domestic conspiracy and related domestic government investigations.

The complaint in *Winn-Dixie Stores, Inc. v. E. Mushroom Mktg. Coop.*, which alleged that a trade organization served as a front for price-fixing, was dismissed in part against two individual defendants because it was specific only as to the conduct of the trade organization without specifying the conduct of those individual defendants.[45] Here, by contrast, Plaintiffs allege specific conduct relating to Valeant's participation in a scheme to raise Metronidazole prices as part of a broader conspiracy to divide the generic drug market, prevent price erosion, and raise prices.

Valeant also points to *Precision Associates, Inc. v. Panalpina World Transp. (Holding) Ltd.* as supporting their argument.[46] However, that case involved domestic and international surcharges made "on different routes during different time periods" among "different defendants involved in each of the local conspiracies" with meetings that "took place in different parts of the world at different times and with different participants" and "no indication that the meeting participants in local conspiracies knew the individuals or defendants involved in the other conspiracies."[47] Here the allegations are quite different as they concern the domestic market,

---

[43] 801 F.3d 383 (3d Cir. 2015). Additionally, the price increases at issue in *Chocolate* were comparatively modest.

[44] *Id.* at 403.

[45] CIVIL ACTION No. 15-6480, 2019 WL 130535, at *3 (E.D. Pa. Jan. 8, 2019).

[46] No. 08–CV–42 (JG)(VVP), 2011 WL 7053807 (E.D.N.Y. Jan. 4, 2011), *r&r adopted*, 2012 WL 3307486 (E.D.N.Y. Aug. 13, 2012).

[47] *Id.* at *30. The case does acknowledge the general proposition that "each co-conspirator need not know the identity of the other co-conspirators," but found the "global conspiracy" there alleged otherwise implausible. *Id.*

FILED WITH REDACTIONS – PUBLIC VERSION

involve many overlapping Defendants, describe a close-knit industry, and list out many common trade association meetings.[48]

**III.   Valeant's "Alternative Explanation" for the ███████████ Parallel Price Increase with Sandoz is Not Compelling and Does Not Render Plaintiffs' Explanation Less Plausible.**

Valeant argues that Plaintiffs' allegations regarding its aggressive business practice of "dramatically increasing prices" on *brand* drugs suggests that Valeant acted on its own in hiking prices for Metronidazole.[49] Valeant posits that this is an "obvious alternative explanation" for why Valeant and Sandoz's prices for *generic* Metronidazole vaginal rose ███████████ in tandem.[50] However, Valeant mischaracterizes Plaintiffs' allegations. Plaintiffs have alleged that Valeant *colluded* with Sandoz to make a rapid price increase of ███████████ as to Metronidazole vaginal - a *generic* drug. Further, as noted above, Plaintiffs allege plus factors, including factors specific to the *generic* drug industry, indicating that collusion is a plausible explanation for Valeant and Sandoz's rapid and similar price increase.

Although the Court must consider "an obvious alternative explanation"[51] in evaluating a conspiracy based on circumstantial evidence, Valeant does not even explain why its alternative explanation relating to Valeant's pricing conduct as to *brand* drugs is an *obvious* alternative explanation for its conduct as to *generic* drugs. As to the brand drugs discussed in Plaintiffs' Complaint, "Valeant is the only company that sells these two life-saving medications."[52] Thus its

---

[48] *Id.* (distinguishing *In re Air Cargo Shipping Servs. Antitrust Litig.*, MDL 1775, 2008 WL 5958061, at *2 (E.D.N.Y. Sept. 26, 2008), which "allowed a single Sherman Act claim to go forward on the basis of various surcharges . . . [where] plaintiffs alleged that all of the defendants joined a worldwide price-fixing conspiracy in the air freight industry . . . [and] defendants attended meetings regarding these surcharges").

[49] Valeant Br. at 9.

[50] *Id.*

[51] *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 326 (3d Cir. 2010).

[52] DPP CAC ¶ 292 n.50 (Sanders and Cummings Press Release).

FILED WITH REDACTIONS – PUBLIC VERSION

willingness to act alone to increase the price on a brand drug, where it is unlikely to have market share repercussions, is not indicative of conduct as to other drugs where it must compete for market share.

Even if Valeant had explained why this alternative explanation is obvious, the Court's role is not "to stack up inferences side by side and allow the case to go forward only if the plaintiff's inferences seem more compelling than the opposing inferences."[53] Rather, the Court must "assum[e] that all the allegations in the complaint are true (even if doubtful in fact)."[54] Here, Plaintiffs plausibly allege "a radical or abrupt change" in the pricing of Metronidazole vaginal, indicative of conspiracy, as opposed to a mere "uptick in . . . a pre-established industry practice."[55] Not only were the price increases by Valeant and Sandoz ████, but they appear coordinated, ██████████████████████████████████████.[56] The price increases took place during the same time that high-ranking Valeant and Sandoz employees were attending the same trade association meetings and in an industry that is especially cozy.[57] Plaintiffs also allege facts supporting Sandoz's participation in other related schemes to increase generic drug prices, which also supports the plausibility of an agreement by at least Valeant and Sandoz to raise the prices of Metronidazole vaginal.[58]

Valeant also argues that in a market with few sellers, collusion is unnecessary to raise or match prices with a competitor.[59] But the generic drug market is not like other markets. The Court previously held that Plaintiffs plausibly allege that in the absence of a conspiracy no

---

[53] *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).
[54] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).
[55] *Valspar Corp. v. E. I. du Pont de Nemours & Co.*, 873 F.3d 185, 196 (3d Cir. 2017).
[56] DPP CAC ¶ 294.
[57] DPP CAC ¶¶ 130, 297 & Exh. D.
[58] DPP CAC Exh. A.
[59] Valeant Br. at 9-10.

FILED WITH REDACTIONS – PUBLIC VERSION

rational actor would have acted as Group 1 Defendants did in raising prices in a coordinated and abrupt departure from prior industry conduct because "MAC pricing. . . limits the ability of a generic pharmaceutical manufacturer to unilaterally lead the market in a price increase absent collusion."[60] Valeant does not attempt to address the impact of MAC pricing or provide any reason for the Court to depart from its earlier determination that this supports an inference of collusion. Thus, the Court has already found plausible Plaintiffs' allegations that the generic drug "regulatory regime [] could reduce Group 1 Defendants' profits by driving down generic drug prices over time and which would give them a common motive to set drug prices."[61]

## IV.    The Court Should Not Dismiss VPI

Valeant argues that the Court should dismiss VPI (now known as Bausch Health Companies Inc.) because Plaintiffs did not allege specific claims against VPI and VPI did not "sell" Metronidazole.[62] In support of this argument, Valeant quotes this Court's statement that something "more than mere repetitive generic reference to 'Defendants' tacked on to a conclusory verb form to connect an individual defendant to an actual agreement in an antitrust conspiracy."[63] However, Valeant takes that quote out of context. The quoted language did not concern the standard for pleading against a specific corporate entity, such as VPI, within a Defendant group, such as Valeant. The Complaints allege that VPI is the parent company of both Valeant North America and Oceanside.[64]

---

[60] *Generic Pharm. Pricing*, 338 F. Supp. 3d at 448-49.

[61] *Id.* at 448.

[62] Valeant Br. at 15.

[63] *Id.* (quoting *Generic Pharm. Pricing*, 338 F. Supp. 3d at 438).

[64] DPP CAC ¶¶ 70-74.

FILED WITH REDACTIONS – PUBLIC VERSION

## **CONCLUSION**

Valeant's motion should be denied.[65]


Dated: May 2, 2019                                     Respectfully submitted,


*/s/ William J. Blechman*                              */s/ Dianne M. Nast*
William J. Blechman                                    Dianne M. Nast
KENNY NACHWALTER, P.A.                                 NASTLAW LLC
1441 Brickell Avenue, Suite 1100                       1101 Market Street, Suite 2801
Miami, Florida  33131                                  Philadelphia, Pennsylvania 19107
305-373-1000                                           215-923-9300
wblechman@knpa.com                                     dnast@nastlaw.com

**Counsel for the Kroger Direct Action**               **Liaison and Lead Counsel for Direct**
**Plaintiffs**                                         **Purchaser Plaintiffs**

---

[65] If the Court concludes that Plaintiffs' allegations are insufficient to sustain their claims against Valeant, Plaintiffs request leave to amend their respective complaints under the liberal pleading standard of Rule 15(a)(2).

FILED WITH REDACTIONS – PUBLIC VERSION

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 2, 2019, an unredacted copy of the foregoing document was served via electronic mail on Defendants' Liaison Counsel and Counsel for Valeant Pharmaceuticals North America LLC, Valeant Pharmaceuticals International and Oceanside Pharmaceuticals, Inc.  A redacted version was filed via the Court's ECF system, which will provide service to all registered counsel.

_____
William J. Blechman