**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL NO. 2724 16-MD-2724 |
| | HON. CYNTHIA M. RUFE |
| THIS DOCUMENT RELATES TO: | |
| *Ahold USA, Inc., et al. v. Actavis Holdco U.S., Inc., et al.* | 18-cv-02641 |
| *The Kroger Co, et al. v. Actavis Holdco U.S., Inc., et al.* | 18-cv-284 |

**REPLY IN FURTHER SUPPORT OF DEFENDANTS VALEANT
AND OCEANSIDE'S MOTION TO DISMISS DIRECT PURCHASERS' FIRST
AMENDED COMPLAINT AND KROGER PLAINTIFFS' AMENDED COMPLAINT**

**FILED WITH REDACTIONS - PUBLIC VERSION**

<u>**TABLE OF CONTENTS**</u>

**Page**

INTRODUCTION ................................................................................................... 1

ARGUMENT .......................................................................................................... 2

     I.     Plaintiffs' Allegations Show a Reason for Price Increases Other Than a Conspiracy, so All Claims Should be Dismissed.................................................. 2

     II.    Plaintiffs Fail to Allege Plus Factors as Required to Sustain a Claim................... 5

     III.   Plaintiffs Fail to Connect Valeant to Conspiracies Among Various Product Markets ............................................................................................................ 7

     IV.   VPI Should be Dismissed because No Allegations Exist .................................... 10

CONCLUSION..................................................................................................... 11

- i -
**FILED WITH REDACTIONS - PUBLIC VERSION**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Auto. Parts Antitrust Litig.*,
No. 12-md-02311, 2016 WL 8200512 (E.D. Mich. Apr. 13, 2016) .........................................8

*In re: Cathode Ray Tube (CRT) Antitrust Litig.*,
MDL No. 1917, 2016 WL 5848702 (N.D. Cal. Oct. 6, 2016).............................................8, 9

*In re Chocolate Confectionary Antitrust Litig.*,
999 F. Supp. 2d 777 (M.D. Pa. 2014), *aff'd,* 801 F.3d 383 (3d Cir. 2015) .............................6

*In re Generic Pharmaceuticals Pricing Antitrust Litigation*,
338 F. Supp. 3d 404 (E.D. Pa. 2018) .......................................................................4, 5, 6, 7, 9

*In re Graphics Processing Units Antitrust Litig.*,
527 F. Supp. 2d 1011 (N.D. Cal. 2007) .................................................................................6

*In re Ins. Brokerage Antitrust Litig.*,
618 F.3d 300 (3d Cir. 2010).............................................................................................3, 4

*Jean Anderson Hierarchy of Agents v. Allstate Life Ins. Co.*,
2 F. Supp. 2d 688 (E.D. Pa. 1998) .......................................................................................10

*Lifewatch Services Inc. v. Highmark Inc.*,
902 F.3d 323 (3rd Cir. 2018) ................................................................................................5

*Lowenstein v. Catholic Health East*,
820 F. Supp. 2d 639 (E.D. Pa. 2011) ...................................................................................10

*Precision Assocs. v. Panalpina World Transport (Holding) Ltd.*,
No. 08-CV-00042, 2011 WL 7053807 (E.D.N.Y. Jan. 4, 2011),
*R&R adopted*, No. 08-00042, 2012 WL 3307486 (E.D.N.Y. Aug. 13, 2012)....................9, 10

*In re Processed Egg Prods. Antitrust Litig.*,
821 F. Supp. 2d 709 (E.D. Pa. 2011) ..................................................................................6, 9

*TV Communications Network, Inc. v. ESPN, Inc.*,
767 F. Supp. 1062 (D. Colo. 1991)........................................................................................8

*U.S. v. Sargent Elec. Co.*,
785 F.2d 1123 (3d Cir. 1986)................................................................................................8

*United States v. Boyd*,
595 F.2d 120 (3d Cir. 1978)..................................................................................................9

- i -
**FILED WITH REDACTIONS - PUBLIC VERSION**

*Valspar Corp. v. E. I. du Pont de Nemours & Co.*,
    873 F.3d 185 (3d Cir. 2017)....................................................................................................4, 5

*Zachair, Ltd. v. Driggs*,
    965 F. Supp. 741 (D. Md. 1997) ...............................................................................................8

**Other Authorities**

Department of Health & Human Services Office of Inspector General, Medicaid
    Drug Pricing in State Maximum Allowable Cost Programs,
    OEI-03-11-00640, at 12 (August 2013) (MAC is based on wholesale prices),
    *available at* https://oig.hhs.gov/oei/reports/ oei-03-11-00640.pdf ...........................................5

Defendants Valeant Pharmaceuticals North America LLC, Valeant Pharmaceuticals International, and Oceanside Pharmaceuticals, Inc. (collectively, "Valeant") file this reply in further support of their motion to dismiss (DPP Dkt. 33; Kroger Dkt. 74).[1]

## **INTRODUCTION**

Plaintiffs concede that an antitrust conspiracy claim should be dismissed where a defendant's independent self-interest provides an obvious, alternative explanation for a price increase.  Plaintiffs themselves assert two obvious alternative explanations for Valeant's price increase for generic metronidazole vaginal gel.  First, plaintiffs allege Valeant had an independent business practice of "dramatically increasing prices" on drugs "shortly after acquiring them." Second, plaintiffs do not dispute that (1) generic metronidazole vaginal gel is sold in a two-player product market and (2) follow-the-leader pricing in such an oligopolistic market is economically rational.  Accordingly, plaintiffs' claims that Valeant joined conspiracies—based on a price increase shortly after acquiring the product consistent with plaintiffs' allegations of Valeant's well-known business strategy—should be dismissed because two obvious explanations exist for the price increase.

Notwithstanding their actual allegations, plaintiffs now claim that what they meant was that Valeant's practice of increasing prices applied only to branded drugs, which are not at issue, and not to generic drugs.  Plaintiffs' after-the-fact explanation ignores their allegations, which are not limited to branded drugs and are made in support of their generic drug claims.  Plaintiffs' allegation that Valeant had a practice of increasing prices supports dismissal because it is an obvious, alternative explanation for the metronidazole vaginal price increase.

---

[1] Valeant joins and incorporates by reference Defendants' Reply in Support of Their Motion to Dismiss Plaintiffs' Overarching Conspiracy Claims filed on behalf of multiple defendants.

**FILED WITH REDACTIONS - PUBLIC VERSION**

Plaintiffs argue that this Court's previous opinion controls the question of whether common economic experience provides yet another explanation for price increases.  The Court, however, did not analyze whether oligopolistic rationality explains price increases in a market with two participants where one had an alleged strategy of increasing prices.  Because oligopolistic rationality provides an obvious explanation for the price increase, the claims should be dismissed.

The claim that Valeant joined conspiracies among sellers of drugs in different product markets should be dismissed for the additional reason that plaintiffs allege nonsensical markets of products that cannot be substituted for each other and do not compete with each other.  A Section One claim should be dismissed where, as here, the allegedly conspiring parties do not compete.

Finally, plaintiffs do not dispute (and therefore concede) the following facts, which all support dismissal: (1) Valeant did not receive a subpoena or other request related to a criminal antitrust investigation; (2) Valeant's offices were not searched pursuant to a search warrant; (3) No state has sued Valeant or served Valeant with a subpoena or civil investigative demand related to an antitrust investigation; (4) Generic metronidazole vaginal gel has not been subject to a Congressional inquiry; and (5) Valeant was not a member of, and none of its employees served as a board member of, any trade association identified in the complaints.

## ARGUMENT

### I.      Plaintiffs' Allegations Show an Obvious Reason for the Price Increase Other Than a Conspiracy, so All Claims Should be Dismissed

Plaintiffs admit this Court "must consider 'an obvious alternative explanation'" in evaluating claims of an alleged conspiracy (DPP & Kroger's Opp. to Valeant & Oceanside's Motion to Dismiss (DPP Dkt. 89) ("Opp.") at 10) and do not dispute that "a claim of conspiracy predicated on parallel conduct should be dismissed if 'common economic experience,' or the facts alleged in the complaint itself, show that independent self-interest is an 'obvious alternative

explanation' for defendants' common behavior." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 326 (3d Cir. 2010).

Instead of disputing the law, plaintiffs desperately assert that their allegations of Valeant's "well-known" "business strategy" of "dramatically raising prices" using "price increase tactics" (DPP Comp. ¶ 292 n.50, ¶ 296; Kroger Comp. ¶ 670) apply to Valeant's branded drugs and not to generic metronidazole vaginal.  (Opp. at 10-11.)  Plaintiffs' explanation runs counter to the actual allegations about Valeant's alleged "business strategy."  Plaintiffs make the following specific allegations regarding Valeant's pharmaceutical pricing:

- "Notably, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇ that Defendant Valeant is known to have been dramatically raising prices on numerous other pharmaceuticals."  (DPP Comp. ¶ 296.)

- "Such price gouging is well-known to have been a major part of Valeant's business strategy."  (*Id.*)

- "Notably, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ occurred around the same time that news sources reported that Valeant was dramatically increasing prices on other drugs."  (Kroger Comp. ¶ 670.)

Plaintiffs properly state that this Court must assume that all allegations in their complaints are true (Opp. at 11), but then ask this Court to ignore their allegations that increasing drug prices was "Valeant's business strategy" and that Valeant was "increasing prices on other drugs."  (DPP Comp. ¶ 296; Kroger Comp. ¶ 670.)  As the Court can see from the allegations quoted above, plaintiffs' allegations show (and were intended to show) that the metronidazole vaginal price increase was consistent with Valeant's purported customary behavior.  (*Id.*)

Plaintiffs assert that Valeant seeks to have this Court "stack up inferences" and proceed only if plaintiffs' inferences are more compelling than the opposing inferences (Opp. at 11), but that is not what Valeant asks.  Instead, this Court should do what Third Circuit precedent requires: dismiss the antitrust conspiracy claims because the factual allegations show independent self-

interest as "an obvious alternative explanation" for price increases.  *E.g.*, *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d at 326.  No "stacking" of inferences is required.

Plaintiffs argue that Valeant did not provide a basis for this Court to dismiss the claims against Valeant based on "common economic experience" (Opp. at 11-12), but plaintiffs ignore that "'oligopolistic rationality' can cause supracompetitive prices because it discourages price reductions while encouraging price increases."[2]  *See, e.g.*, *Valspar Corp. v. E. I. du Pont de Nemours & Co.*, 873 F.3d 185, 191 (3d Cir. 2017).  Where, as here, one of only two parties in a market has an alleged well-known business practice of raising prices, it is economically rational for the parties to engage in follow-the-leader behavior in the absence of any communication or collusive behavior.  *Id.*  Plaintiffs' assertion that this Court's earlier dismissal opinion governs (Opp. at 11-12), is incorrect.  The Court did not consider previously whether the common economic experience of oligopolistic rationality supports dismissal where one of only two market participants had an alleged business strategy of increasing prices shortly after acquiring the right to sell a product—the factual scenario here.  *See In re Generic Pharmaceuticals Pricing Antitrust Litigation*, 338 F. Supp. 3d 404, 448-9 (E.D. Pa. 2018).  The Third Circuit's oligopolistic rationality cases identify an additional explanation for the increase in the price of generic metronidazole vaginal that supports dismissal.[3]

Finally, plaintiffs' argument that MAC pricing limits the ability of sellers to increase the price of a generic drug absent collusion (Opp. at 11-12) is not true with respect to metronidazole

---

[2] Plaintiffs do not dispute that the generic metronidazole vaginal market is a two party oligopoly. *See* Valeant's Br. at 9-10 n.8.

[3] Plaintiffs complain that Valeant did not adequately explain why the publication of prices in an oligopolistic market makes it more likely that increases will be adopted by all market participants. (Opp. at 6 n.30.)  The Third Circuit provides the obvious explanation: once a participant in an oligopolistic market learns that another participant has increased prices, then that participant is likely to increase prices too.  *See Valspar*, 873 F.3d at 191.

FILED WITH REDACTIONS - PUBLIC VERSION

vaginal.  If all sellers increase the prices charged for a generic drug, then the MAC for that drug will also increase.  *See* Department of Health & Human Services Office of Inspector General, Medicaid Drug Pricing in State Maximum Allowable Cost Programs, OEI-03-11-00640, at 12 (August 2013) (MAC is based on wholesale prices), *available at* https://oig.hhs.gov/oei/reports/ oei-03-11-00640.pdf.  In an oligopolistic two-party market where one party has an allegedly "known" business practice of raising prices on a drug shortly after acquiring the right to sell it, oligopolistic rationality would predict that an increase in the price by one market participant would be followed by the other, leading to an increase in the MAC.  Because the MAC would increase when both participants increase prices, the MAC would not act as a constraint.  The Court did not previously analyze whether MAC pricing would constrain pricing in a two player market where one of the participants had an allegedly known practice of increasing prices.

## II.     Plaintiffs Fail to Allege Plus Factors as Required to Sustain a Claim

In addition to dismissing plaintiffs' claims because an obvious, alternative explanation exists for the generic metronidazole vaginal price increase, the Court should dismiss plaintiffs' claims because plaintiffs fail to adequately allege plus factors with respect to Valeant.

Although courts usually analyze three plus factors in a parallel conduct analysis, plaintiffs ignore that courts "de-emphasize the first two types of evidence [motive and actions contrary to self-interest]" where, as here, "a small number of sellers or buyers of a particular product dominate the market." *Lifewatch Services Inc. v. Highmark Inc.*, 902 F.3d 323, 333 (3rd Cir. 2018) (quoting *Valspar Corp.*, 873 F.3d at 193); *see also Generic Pharm.*, 338 F. Supp. 3d at 448.  Because the focus should be on the third plus factor, which is non-economic evidence that an actual agreement existed, plaintiffs' failure to sufficiently allege this plus factor means the claims should be dismissed.  *E.g.*, *Lifewatch*, 902 F.3d at 333.

Plaintiffs do not dispute that "'[p]articipation in a trade group association and/or attending

trade group meetings, even those meetings where key facets of the conspiracy allegedly were adopted or advanced, are not enough on their own to give rise to the inference of agreement to the conspiracy.'" *Generic Pharm.*, 338 F. Supp. 3d at 439 (quoting *In re Processed Egg Prods. Antitrust Litig.*, 821 F. Supp. 2d 709, 722 (E.D. Pa. 2011)); *see also In re Chocolate Confectionary Antitrust Litig.*, 999 F. Supp. 2d 777, 804 (M.D. Pa. 2014), *aff'd,* 801 F.3d 383 (3d Cir. 2015).

Instead of identifying facts that overcome this legal hurdle, plaintiffs argue Valeant attended "more than a dozen different trade association meetings." (Opp. at 7.)  Plaintiffs do not identify a single allegation that shows Valeant did anything at those meetings related to a conspiracy.[4]  (*Id.*)  The only allegations about those meetings are that two or three of them were months away from price increases.  (DPP Comp. ¶¶ 294, 297 (three meetings); Kroger Comp. ¶¶ 669, 677-678 (two meetings).)  Plaintiffs assert that Valeant's mere attendance at meetings is sufficient even though they do not dispute that such attendance "is presumed legitimate."  *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1023 (N.D. Cal. 2007).

Plaintiffs assert that Valeant's motion should be denied because their allegations against Valeant are greater than or equal to those deemed sufficient against Mayne and Lupin.  (Opp. at 7-8.)  The substantial differences between the allegations against Valeant and the ones against Mayne and Lupin highlight the speciousness of plaintiffs' assertion.  Plaintiffs allege Mayne received a grand jury subpoena, is an "unidentified co-conspirator" in a criminal prosecution, and participated in specific telephone calls where price fixing and bid rigging occurred.  (Kroger Compl. ¶¶ 14, 127, 174, 175, 466, 467, 470; DPP Compl. ¶¶ 461-467.)  Both Mayne and Lupin are alleged to have been members of trade associations.  (Kroger Compl. ¶¶ 154, 159.)  Lupin was

---

[4] Plaintiffs fail to assert that the Valeant employees identified as having attended meetings actually worked in the Valeant generic drug business and the majority did not.  (Opp. at 7 n.35.)

FILED WITH REDACTIONS - PUBLIC VERSION

on the board of directors of GPhA and allegedly participated in 9 meetings in 2013 and 2014 alone. (Kroger Compl. ¶¶ 157, 724-26, 728, 730, 732, 734, 737-38.)

Nothing remotely similar is alleged against Valeant: (1) Valeant was not a member of a trade association, (2) Valeant did not have a representative on a trade association board, (3) Valeant did not receive a subpoena or request for information related to a criminal or civil government antitrust investigation of the generic pharmaceutical industry,[5] and (4) generic metronidazole vaginal gel has not been the subject of a Congressional inquiry.[6] *Compare Generic Pharm.*, 338 F. Supp. 3d at 449-451. Because plaintiffs rely on acts that are "presumed legitimate" instead of acts that can support an antitrust claim, the claims should be dismissed.

## III. Plaintiffs Fail to Connect Valeant to Conspiracies Among Various Product Markets

In addition to the generic metronidazole vaginal conspiracy, plaintiffs allege two conspiracies between and among sellers in different product markets: plaintiffs identify one as an overarching conspiracy among sellers of generic drugs in many different product markets and the other (by the Kroger Plaintiffs) as a conspiracy among sellers of different types of generic metronidazole that do not compete with each other. Plaintiffs do not dispute that Valeant's metronidazole vaginal gel (a product only for intravaginal use) is not a reasonable substitute for any other formulation of metronidazole (products that are to be used externally only) or for any

---

[5] Plaintiffs incorrectly argue that because Valeant was subpoenaed about brand drug pricing, Valeant must have joined a generic drug conspiracy. (Opp. at 8.) Plaintiffs' argument that brand pricing is relevant to prove some acts by Valeant, but not others, should be rejected. Furthermore, plaintiffs' assertion that guilt-by-association is adequate—plaintiffs allege that Sandoz received subpoenas (*id.*)—does not support a claim against Valeant because plaintiffs do not make sufficient factual allegations about Valeant that tie <u>Valeant</u> to a conspiracy.

[6] Plaintiffs state that "Valeant has also been subpoenaed by government regulators looking into drug pricing practices." (Opp. at 3, 8.) The allegations cited by plaintiffs do not support their assertion. Further, as explained in Valeant's opening brief (Br. at 2 n.3), the Congressional letter (not subpoena) did not request any information about metronidazole.

other generic drug identified in the complaints.[7]  (Opp. at 1-2 n.7.)

The fact that the other drugs identified in the complaints cannot be substituted for metronidazole vaginal is important because "the first inquiry must be whether or not each firm alleged to have been a party to [the horizontal agreement] was an actual or potential competitor in that market."  *U.S. v. Sargent Elec. Co.*, 785 F.2d 1123, 1127 (3d Cir. 1986) (reversing district court because conspiracy could not exist where defendants did not compete).  Plaintiffs ignore *Zachair, Ltd. v. Driggs*, 965 F. Supp. 741, 747 (D. Md. 1997), which states an antitrust claim should be dismissed where a plaintiff fails to allege "any facts supportive of an inference that the defendants are competitors."  *Id.*; *see also TV Communications Network, Inc. v. ESPN, Inc.*, 767 F. Supp. 1062, 1075 (D. Colo. 1991) (dismissing antitrust claims because "even if some kind of arrangement had been created, an agreement between entities that are not competitors does not violate section one").

Plaintiffs admit that a conspiracy among sellers in different product markets should be dismissed unless a complaint contains allegations "'that each Defendant knew of the other Defendants' conduct for other products'" and had "'knowledge outside of each Defendants' own specific deals.'"  (Pls' Joint Response in Opp. to Defs' Joint Motion to Dismiss Plaintiffs' Overarching Conspiracy Claims ("Pls' Joint Opp.") at 15 (quoting *In re Auto. Parts Antitrust Litig.*, No. 12-md-02311, 2016 WL 8200512, *4 (E.D. Mich. Apr. 13, 2016)).  Plaintiffs cite *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, MDL No. 1917, 2016 WL 5848702, at *3 (N.D. Cal. Oct. 6, 2016), which requires plaintiffs to allege that Valeant "had knowledge of … intended to join … [and] depended on the success" of a conspiracy in other product products.  *Id.*; *see also*

---

[7] Plaintiffs do not dispute that the Court can take judicial notice of the facts relied on by Valeant even though plaintiffs use "facts" in quotation marks.  (Opp. at 1 n.7.)  *See* Valeant's Br. at 4 n.5.

**FILED WITH REDACTIONS - PUBLIC VERSION**

Kroger Opp. at 16 (quoting *United States v. Boyd*, 595 F.2d 120, 123 (3d Cir. 1978) (must allege defendant "knowingly participate[d] with the core members").)  Plaintiffs do not dispute the legal proposition cited by Valeant in *Precision Assocs. v. Panalpina World Transport (Holding) Ltd.*, No. 08-CV-00042, 2011 WL 7053807, at *27-30 (E.D.N.Y. Jan. 4, 2011), *R&R adopted*, No. 08-00042, 2012 WL 3307486 (E.D.N.Y. Aug. 13, 2012): dismissal should be granted unless plaintiffs allege "each of the defendants was aware of and committed to the essential purpose of the overarching conspiracy." *Id.*  Despite filing four different briefs, plaintiffs do not identify a single allegation showing Valeant had knowledge of collusion in other product markets, intended to join a conspiracy that included other product markets, or depended on the success of a conspiracy in other product markets.  Therefore, the claims should be dismissed.  *E.g.*, *In re: Cathode Ray*, 2016 WL 5848702 at *3.

Plaintiffs concede that they must allege "specific conduct relating to Valeant's participation" in a purported conspiracy among sellers of drugs in different product markets, but plaintiffs do not identify a single paragraph identifying Valeant's participation in such a conspiracy.  (Opp. at 9.)  The only allegations about Valeant are references to "each manufacturer" or "defendants" (*e.g.*, DPP Comp. ¶ 9, 108, 110 ("each generic drug manufacturer," "Defendants," "Each of Defendants"); Kroger Comp. ¶¶ 814-816 ("each defendant," "every defendant"), ¶ 817 (conclusorily identifying Valeant as an alleged "Additional Conspirator")), which is insufficient to state a claim against Valeant.  *See In re Generic Pharma. Pricing Antitrust Litig.*, 338 F. Supp. 3d at 438 ("'The Court properly looks for more than mere repetitive generic reference to 'Defendants' tacked on to a conclusory verb….'") (quoting *In re Processed Egg Prods. Antitrust Litig.*, 821 F. Supp. 2d at 719).  The Kroger Plaintiffs claim that they are permitted to use group pleading because they have "800 extremely detailed paragraphs," but not one of those paragraphs

connects Valeant to a conspiracy with sellers of drugs in different product markets.  (Kroger Opp. at 9.)  Plaintiffs fail to identify a single allegation, as they must, showing "how, when, or where" Valeant became connected to the generic metronidazole conspiracy or the overarching conspiracy. *See Precision Assocs.*, 2011 WL 7053807 at *27.

Finally, plaintiffs argue that their conspiracy allegations are plausible because defendants allegedly took action (or refrained from acting) in one product market to assist a conspiracy in another product market.  *See, e.g.*, Pls' Joint Opp. at 5 ("conspiratorial conduct across multiple drugs"); DPPs' Mem. in Opp. to Defs' Joint Mtn. to Dismiss Pls' Overarching Conspiracy Claims at 6 ("applied across multiple generic drugs at a time"); DPP Comp. ¶ 17 ("generic drug manufacturers might give up customers on one generic drug based as a quid quo pro for customers from other generic drug manufacturers on a different generic drug"); Kroger Comp. ¶ 137 ("'based on a quid pro quo from other competitors on different drugs'").  In the four different briefs filed by plaintiffs, they fail to identify a single factual allegation showing Valeant (a company that is alleged to have sold one generic product that was the subject of a purported conspiracy) did anything related to any product market other than the generic metronidazole vaginal product market.  Therefore, the claims should be dismissed.

## IV.    VPI Should be Dismissed because No Allegations Exist

In response to Valeant's motion to dismiss, plaintiffs identify only one allegation about Valeant Pharmaceuticals International ("VPI"): "VPI is the parent company of both Valeant North America and Oceanside."  (Opp. at 12.)  That single allegation, of course, does not state a claim against VPI.  *See Lowenstein v. Catholic Health East*, 820 F. Supp. 2d 639, 643-44 (E.D. Pa. 2011) (dismissing parent because parent corporation is not liable for a subsidiary's acts "'even if or simply because the parent wholly owns the subsidiary'") (quoting *Jean Anderson Hierarchy of Agents v. Allstate Life Ins. Co.*, 2 F. Supp. 2d 688, 691 (E.D. Pa. 1998)).

FILED WITH REDACTIONS - PUBLIC VERSION

## CONCLUSION

For the reasons set forth above, Valeant requests that the Court dismiss all claims against

Valeant with prejudice; and such other and further relief as this Court deems just and proper.

Dated:  June 13, 2019

                                        **NORTON ROSE FULBRIGHT US LLP**


                                        By: */s/ Robin D. Adelstein*_____
                                              Robin D. Adelstein
                                              Mark A. Robertson
                                              Gerald A. Stein
                                              Matthew C. Lamb
                                              1301 Avenue of the Americas
                                              New York, NY 10019-6022
                                              Tel.: 212-318-3000
                                              robin.adelstein@nortonrosefulbright.com
                                              mark.robertson@nortonrosefulbright.com
                                              gerald.stein@nortonrosefulbright.com
                                              matthew.lamb@nortonrosefulbright.com
                                              *Attorneys for Defendants Valeant*
                                              *Pharmaceuticals North America LLC,*
                                              *Valeant Pharmaceuticals International,*
                                              *and Oceanside Pharmaceuticals, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify on this 13th day of June 2019, I caused to be filed electronically on the Court's ECF System Valeant and Oceanside's Reply in Further Support of Their Motion to Dismiss Direct Purchasers' First Amended Complaint and Kroger Plaintiffs' Amended Complaint. Notice of this filing will be sent to all counsel of record by operation of the ECF System.

An unredacted copy of the foregoing is being served electronically upon all counsel of record via electronic mail, and via United States Mail to the Court and Clerk on the 13th day of June, 2019.

Dated: June 13, 2019

*/s/ Matthew C. Lamb*
Matthew C. Lamb
