# Exhibit A

**An Agreement Among the Attorneys General of the States and Commonwealths of Connecticut, Alabama, Arizona, Delaware, Florida, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New York, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, South Carolina, Tennessee, Utah, Vermont, Virginia and Wisconsin and Jeffrey Glazer dated March 16, 2017**

This Settlement Agreement is made and entered into this 16th day of March, 2017 (hereinafter, "Effective Date"), by and between the Attorneys General of the States and Commonwealths of Connecticut, Alabama, Arizona, Delaware, Florida, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New York, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, South Carolina, Tennessee, Utah, Vermont, Virginia and Wisconsin (hereinafter, Attorneys General) and Jeffrey Glazer (hereinafter, "Glazer").

WHEREAS, the Attorneys General have been conducting an investigation of civil violations of state and federal antitrust laws and state consumer protection laws in the marketing and sale of generic pharmaceuticals in the United States (the "Attorneys General's Investigation");

WHEREAS, Glazer is a resident of New Jersey, and was formerly the Chairman and Chief Executive Officer of Heritage Pharmaceuticals, Inc. (hereinafter, "Heritage"), a generic pharmaceutical company located in Eatontown, New Jersey;

WHEREAS, Heritage is engaged in the acquisition, licensing, development, marketing, sale and distribution of generic pharmaceutical products for the United States prescription drug market;

WHEREAS, Glazer was charged with two count(s) of criminal violations of the Sherman Antitrust Act, in a criminal Information filed by the United States Department of Justice ("DOJ") on December 12, 2016 arising from his involvement in the marketing and sale of generic pharmaceuticals in the United States;

WHEREAS, Glazer has entered into a Plea Agreement with the DOJ agreeing to waive indictment and pleading guilty to each count of a two-count Information;

WHEREAS, the Attorneys General, based upon their investigation, are prepared to allege the following conduct as relevant to this Settlement Agreement:

## A. ALLEGATIONS

1.     The Drug Price Competition and Patent Term Restoration Act of 1984, commonly known as the Hatch-Waxman Act ("Hatch-Waxman"), created the regulatory mechanism under which the United States Food and Drug Administration can approve generic pharmaceuticals. In 2015, sales of generic pharmaceuticals in the United States were estimated at $74.5 billion dollars. Today, the generic pharmaceutical industry accounts for approximately 88% of all prescriptions written in the United States.

2.     Heritage, a privately held company formed in 2006, markets a variety of products in a number of therapeutic categories, including but not limited to: cardiovascular, metabolic disease, anti-infective and pain management.

3.     Glazer participated in a conspiracy to suppress and eliminate competition by allocating customers, rigging bids, and fixing and maintaining prices for doxycycline hyclate delayed release sold in the United States, from in or about April 2013 and continuing until at least December 2015, in violation of the Sherman Antitrust Act, 15 U.S.C. § 1. Glazer participated in a conspiracy to suppress and eliminate competition by allocating customers and fixing and maintaining prices for glyburide sold in the United States, from in or about April 2014 and continuing until at least December 2015, in violation of the Sherman Antitrust Act, 15 U.S.C. § 1. ("Relevant Conduct").

WHEREAS, based on this information, the Attorneys General are prepared to allege that Glazer engaged in a scheme to (a) fix, control or maintain prices, rates, quotations, or fees; or (b) allocate or divide customers or markets, either functional or geographical; which had the effect of artificially increasing or maintaining prices for certain generic pharmaceuticals within the United States;

WHEREAS, Glazer has cooperated and has agreed to continue to cooperate fully with the ongoing Attorneys General's Investigation;

WHEREAS, in consideration of Glazer's full, voluntary and truthful cooperation with the ongoing Attorneys General's Investigation, and his agreement to pay a civil penalty pursuant to the conduct described in the Allegations above, the Attorneys General find that the relief and other provisions contained in this Settlement Agreement are appropriate and in the public interest; and

NOW THEREFORE, in exchange for the mutual obligations described below, Glazer and the Attorneys General hereby enter into this Settlement Agreement, and agree as follows:

## B. CIVIL PENALTY

1. Within thirty (30) days of the Effective Date of this Settlement Agreement, Glazer agrees to pay a civil penalty in the amount of Twenty-five Thousand Dollars ($25,000) by wire transfer, certified check or other guaranteed funds, pursuant to the instructions of the Attorneys General.

2. Glazer warrants that, as of the Effective Date of this Settlement Agreement, he is not insolvent, nor will the payment required under this Settlement Agreement render him insolvent, as that term is used in the United States Bankruptcy Code.

## C. COOPERATION WITH THE ATTORNEYS GENERAL'S INVESTIGATION

3. Glazer agrees to continue to provide full, complete and prompt cooperation with the ongoing Attorneys General's Investigation, and related proceedings and actions against any other person, corporation or entity, provided that such cooperation is not inconsistent with any obligations he may have to the DOJ. Glazer shall have at least five (5) business days to object to any cooperation the Attorneys General request on the grounds that it is inconsistent with his obligations to the DOJ.

4. Cooperation shall include, but not be limited to: (a) producing, voluntarily, without service of subpoena, all pre-existing information, documents or other tangible evidence requested by the Attorneys General that relates to the Attorneys General's Investigation; (b) producing, without service of subpoena, any pre-existing compilations or summaries of market information or data that the Attorneys General request that relates to the Attorneys General's Investigation; (c) providing to the Attorneys General, or their designated representative, all facts related to the Relevant Conduct or conduct related to the Attorneys General's Investigation that are now known, or subsequently learned, by Glazer; and (d) if requested by the Attorneys General, attending, on reasonable notice, any proceedings (including but not limited to meetings, interviews, hearings, depositions, grand jury proceedings and trials) and answering completely, candidly and truthfully any and all inquiries relating to the subject matter of the Attorneys General's Investigation that may be put to him by the Attorneys General (or any of them, their deputies, assistants or agents), all without service of subpoena.

5. In the event any document or information is withheld or redacted on grounds of privilege, work-product or other legal doctrine, upon the request of the Attorneys General, or their designated representative, Glazer shall submit a statement in writing indicating: (i) the type of document or information; (ii) the date of the document; (iii) the author and recipient of the document; (iv) the general subject matter of the document or information; (v) the reason for withholding the document; and (vi) the Bates number or range of the withheld document. The Attorneys General or their designated representative

may initiate a challenge to such claim in any state or federal court where jurisdiction is appropriate and may rely on all documents or communications theretofore produced or the contents of which have been described by Glazer.

6. Glazer agrees not to compromise the integrity or confidentiality of any aspect of the Attorneys General's Investigation or any proceeding or actions relating to the Investigation, by sharing or disclosing evidence, documents, or other information provided to Glazer by the Attorneys General or their designated representative with others without the consent of the Attorneys General or their designated representative.  Nothing herein shall prevent Glazer from providing such evidence to other government regulators, law enforcement agencies or as otherwise required by law.

7. Glazer shall maintain custody of, or make arrangements to have maintained, all available documents and/or records relating to Glazer's involvement in the Relevant Conduct or conduct related to the Attorneys General's Investigation, and within the scope of the civil investigative demand issued to Glazer by the Connecticut Attorney General dated November 2, 2016.

8. If Glazer has intentionally given false, misleading or incomplete information or testimony, has failed to cooperate fully, or otherwise has violated any provision of this agreement, then the Attorneys General may deem this Settlement Agreement null and void.  In the event the Attorneys General void this Settlement Agreement, Glazer may be subject to a civil, criminal or administrative action brought by any of the Attorneys General for the conduct identified in the Allegations above, or any other conduct related to the Attorneys General's Investigation. Moreover, any such action may be premised upon (i) any information or statement provided by Glazer to the Attorneys General or their agents or representatives, (ii) any testimony given by him in court, grand jury or other proceeding, and (iii) any leads derived from such information, statement or testimony.  Glazer understands that such information, statements, testimony and leads derived therefrom may be used against him in any such action.  Moreover, Glazer agrees that all such information, statements or testimony shall be admissible in any civil, criminal or administrative proceedings against him, and he expressly waives any claim under the United States Constitution, Rule 410 of the Federal Rules of Evidence, or any other federal or state rule or statute that such information, statements, testimony or leads should be excluded.  Finally, Glazer waives any claim that such action is time-barred where the statute of limitations has expired between the signing of this Settlement Agreement and the commencement of any such lawsuit.

9. In the event Glazer becomes a witness at any action brought by the Attorneys General related to the conduct described in the Allegations or any other conduct related to the Attorneys General's Investigation, and in the event his testimony at such proceeding is

materially different from any statements made or information disclosed to the Attorneys General, by him or any agents acting on his behalf, the Attorneys General may use such statements and information, and all evidence obtained directly or indirectly therefrom, to impeach, cross-examine or rebut such testimony or information.  Glazer understands that such statements and information may be used against him in this manner.

10. The Attorneys General agree that if, in the sole and exclusive judgment of the Attorneys General, they should decide that Glazer has cooperated fully and truthfully, provided substantial assistance to the Attorneys General's Investigation and otherwise complied fully with this Settlement Agreement, then the Attorneys General, at the request of Glazer, will make such cooperation known to any court, or federal or state law enforcement, prosecuting, administrative or regulatory agency.  The Attorneys General make no representations or agreements with Glazer or any person representing Glazer other than as set forth in this Settlement Agreement.

## D.  ENFORCEMENT

11. The Attorneys General may make such application as appropriate to enforce or interpret the provisions of this Settlement Agreement or, in the alternative, may maintain any action within their legal authority for such other and further relief as they determine is proper and necessary for the enforcement of this Settlement Agreement.  Glazer consents to the jurisdiction of the courts of the States of Connecticut or New Jersey only for the purpose of an action brought by the Attorneys General to enforce the terms of this Settlement Agreement.  Connecticut law shall apply in any action brought by the Attorneys General to enforce the terms of this Settlement Agreement.  The parties recognize that remedies at law for violations of this Settlement Agreement, except for Paragraph 1, are inadequate.  The parties agree that, in any action to enforce the terms of this Settlement Agreement, except Paragraph B1, a court shall have the authority to award equitable relief, including specific performance, and the parties consent to the awarding of such equitable relief including specific performance.

12. This Settlement Agreement may be modified by the mutual agreement of Glazer and the Attorneys General.  Any such modification shall be in writing and signed by all parties to this Settlement Agreement.

13. Any information obtained directly and exclusively from Glazer after the Effective Date of the Agreement shall not be disclosed to any state unless that state is (i) a member of the Attorneys General working group ("Working Group") on the Effective Date or (ii) joins the Working Group and agrees to be bound by all provisions of this Agreement.

### E. RELEASE BY ATTORNEYS GENERAL AND PARTICIPATING ATTORNEYS GENERAL

14. Subject to the satisfaction of the obligations of Glazer as set forth in this Settlement Agreement, including, without limitation, the obligations set forth in Paragraphs B1 and C3 through 7 hereof, each Attorney General releases Glazer and his heirs from all civil claims, counterclaims, cross claims, setoffs, civil causes of action of any type (whether common law, equitable, statutory, regulatory or administrative, class, individual or otherwise in nature, and whether reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured), demands, disputes, damages, restitution, whenever incurred, and liabilities of any nature whatsoever, including, without limitation, costs, fines, debts, expenses, penalties and attorneys' fees, known or unknown, arising out of his participation in the Relevant Conduct set forth above through the Effective Date of this Settlement Agreement that could have been asserted by each Attorney General in his or her sovereign capacity as chief law enforcement officer of his or her respective state.  This release specifically does not purport to release any civil claims, counterclaims, cross claims, setoffs, causes of action of any type (whether common law, equitable, statutory, regulatory or administrative, class, individual or otherwise in nature, and whether reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured), demands, disputes, damages, restitution, whenever incurred, and liabilities of any nature whatsoever, including, without limitation, costs, fines, debts, expenses, penalties and attorneys' fees, known or unknown, arising out of his participation in the Relevant Conduct set forth above, that any other person, state agency or non-governmental entity may have.  Each State, through this Settlement Agreement, does not settle, release, or resolve any claims against Glazer or any other person or entity involving any private causes of action, claims, or remedies, including, but not limited to, private causes of action, claims, or remedies provided for under the State's consumer protection or antitrust laws.  This release does not, and is not intended to, benefit or apply to any person other than Glazer and his heirs.

### F. PARTICIPATION OF ADDITIONAL ATTORNEYS GENERAL

15. The attorney general of any state that wishes to join in this settlement may opt in and accept the terms of this Settlement Agreement by signing the opt-in agreement appended hereto as Exhibit 1, within 60 days of the Effective Date.  Any attorney general submitting a timely opt-in agreement will thereby become a party to this Settlement Agreement.

## G.  NOTICES AND REPORTS

16. All notices required to be provided shall be sent electronically or by first-class mail, postage pre-paid as follows:

    For Glazer:

    > Thomas Mueller, Esq.
    > WilmerHale
    > 1875 Pennsylvania Avenue, NW
    > Washington, DC 20006
    > thomas.mueller@wilmerhale.com

    For Attorneys General:

    > W. Joseph Nielsen
    > Assistant Attorney General, Antitrust Department
    > Office of the Connecticut Attorney General
    > 55 Elm Street
    > Hartford, Connecticut 06141
    > joseph.nielsen@ct.gov

## H.  OTHER PROVISIONS

17. This Settlement Agreement is entered into voluntarily and solely for the purpose of resolving the civil claims and causes of action the Attorneys General have against Glazer. This Settlement Agreement and any and all negotiations, documents and discussions associated with it shall not be used for any other purpose, except in proceedings or actions to enforce or interpret this Settlement Agreement.  It shall not constitute or be construed as an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by Glazer.

18. Except as expressly set forth herein, this Settlement Agreement shall not confer any rights upon any persons or entities besides the Attorneys General and Glazer.

19. Nothing in this Settlement Agreement is intended to limit or bar any of the Attorneys General's claims against third parties, including but not limited to, claims against Heritage Pharmaceuticals, Inc., other pharmaceutical manufacturers, individuals or entities who conspired with Glazer.  Nothing in this Settlement Agreement is intended to limit, bar or liquidate damages with respect to any of the Attorneys General's claims against any individual or entity other than Glazer and his heirs in any action brought by

the Attorney(s) General against Heritage Pharmaceuticals, Inc., other pharmaceutical manufacturers or any other individual or entity.

20. This Settlement Agreement may be executed in counterparts.

21. No promise has been made to give Glazer any greater or further consideration other than as stated in this Agreement. All agreements, covenants, representations and warranties, express or implied, oral or written, of the parties hereto concerning the subject matter of this Agreement are contained in this Agreement. No other agreements, covenants, representations or warranties, express or implied, oral or written, have been made by any party hereto to any other party concerning the subject matter of this Agreement. All prior and contemporaneous negotiations, possible and alleged agreements, representations, covenants and warranties, between the Parties concerning the subject matter of this Settlement Agreement are merged into this Settlement Agreement. This Agreement contains the entire agreement between the Parties.

22. Glazer enters into this Agreement as a free and voluntary act with full knowledge of its legal consequences. Glazer has not relied on any information or representations which are not contained in this Agreement.

WHEREFORE, IT IS SO AGREED AND the following signatures are affixed hereto on this 17th day of March, 2017.

_____
JEFFREY GLAZER

8

STATE OF CONNECTICUT
GEORGE JEPSEN
ATTORNEY GENERAL

*W. Joseph Nielsen* (signature)

GEORGE JEPSEN
Michael E. Cole
Chief, Antitrust Department
W. Joseph Nielsen
Assistant Attorneys General
55 Elm Street, PO Box 120
Hartford, CT 06141-0120
Tel: (860)808-5040
Fax: (860)808-5033
joseph.nielsen@ct.gov

**An Agreement Among the Attorneys General of the States and Commonwealths of Connecticut, Alabama, Arizona, Delaware, Florida, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New York, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, South Carolina, Tennessee, Utah, Vermont, Virginia and Wisconsin and Jason Malek dated March 16, 2017**

This Settlement Agreement is made and entered into this 16th day of March, 2017 (hereinafter, "Effective Date"), by and between the Attorneys General of the States and Commonwealths of Connecticut, Alabama, Arizona, Delaware, Florida, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New York, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, South Carolina, Tennessee, Utah, Vermont, Virginia and Wisconsin (hereinafter, Attorneys General) and Jason Malek (hereinafter, "Malek").

WHEREAS, the Attorneys General have been conducting an investigation of civil violations of state and federal antitrust laws and state consumer protection laws in the marketing and sale of generic pharmaceuticals in the United States (the "Attorneys General's Investigation");

WHEREAS, Malek is a resident of Ocean, New Jersey, and was formerly the President of Heritage Pharmaceuticals, Inc. (hereinafter, "Heritage"), a generic pharmaceutical company located in Eatontown, New Jersey;

WHEREAS, Heritage is engaged in the acquisition, licensing, development, marketing, sale and distribution of generic pharmaceutical products for the United States prescription drug market;

WHEREAS, Malek was charged with two count(s) of criminal violations of the Sherman Antitrust Act, in a criminal Information filed by the United States Department of Justice ("DOJ") on December 13, 2016 arising from his involvement in the marketing and sale of generic pharmaceuticals in the United States;

WHEREAS, Malek has entered into a Plea Agreement with the DOJ agreeing to waive indictment and pleading guilty to each count of a two-count Information;

WHEREAS, the Attorneys General, based upon their investigation, are prepared to allege the following conduct as relevant to this Settlement Agreement:

## A. ALLEGATIONS

1.      The Drug Price Competition and Patent Term Restoration Act of 1984, commonly known as the Hatch-Waxman Act ("Hatch-Waxman"), created the regulatory mechanism under which the United States Food and Drug Administration can approve generic pharmaceuticals. In 2015, sales of generic pharmaceuticals in the United States were estimated at $74.5 billion dollars. Today, the generic pharmaceutical industry accounts for approximately 88% of all prescriptions written in the United States.

2.      Heritage, a privately held company formed in 2006, markets a variety of products in a number of therapeutic categories, including but not limited to: cardiovascular, metabolic disease, anti-infective and pain management.

3.      Malek participated in a conspiracy to suppress and eliminate competition by allocating customers, rigging bids, and fixing and maintaining prices for doxycycline hyclate delayed release sold in the United States, from in or about April 2013 and continuing until at least December 2015, in violation of the Sherman Antitrust Act, 15 U.S.C. § 1. Malek participated in a conspiracy to suppress and eliminate competition by allocating customers and fixing and maintaining prices for glyburide sold in the United States, from in or about April 2014 and continuing until at least December 2015, in violation of the Sherman Antitrust Act, 15 U.S.C. § 1. ("Relevant Conduct").

WHEREAS, based on this information, the Attorneys General are prepared to allege that Malek engaged in a scheme to (a) fix, control or maintain prices, rates, quotations, or fees; or (b) allocate or divide customers or markets, either functional or geographical; which had the effect of artificially increasing or maintaining prices for certain generic pharmaceuticals within the United States;

WHEREAS, Malek has cooperated and has agreed to continue to cooperate fully with the ongoing Attorneys General's Investigation;

WHEREAS, in consideration of Malek's full, voluntary and truthful cooperation with the ongoing Attorneys General's Investigation and his agreement to pay a civil penalty pursuant to the conduct described in the Allegations above, the Attorneys General find that the relief and other provisions contained in this Settlement Agreement are appropriate and in the public interest; and

NOW THEREFORE, in exchange for the mutual obligations described below, Malek and the Attorneys General hereby enter into this Settlement Agreement, and agree as follows:

## B. CIVIL PENALTY

1. Within thirty (30) days of the Effective Date of this Settlement Agreement, Malek agrees to pay a civil penalty in the amount of Twenty-five Thousand Dollars ($25,000) by wire transfer, certified check or other guaranteed funds, pursuant to the instructions of the Attorneys General.

2. Malek warrants that, as of the Effective Date of this Settlement Agreement, he is not insolvent, nor will the payment required under this Settlement Agreement render him insolvent, as that term is used in the United States Bankruptcy Code.

## C. COOPERATION WITH THE ATTORNEYS GENERAL'S INVESTIGATION

3. Malek agrees to continue to provide full, complete and prompt cooperation with the ongoing Attorneys General's Investigation, and related proceedings and actions against any other person, corporation or entity, provided that such cooperation is not inconsistent with any obligations he may have to the DOJ. Malek shall have at least five (5) business days to object to any cooperation the Attorneys General request on the grounds that it is inconsistent with his obligations to the DOJ.

4. Cooperation shall include, but not be limited to: (a) producing, voluntarily, without service of subpoena, all pre-existing information, documents or other tangible evidence requested by the Attorneys General that relates to the Attorneys General's Investigation; (b) producing, without service of subpoena, any pre-existing compilations or summaries of market information or data that the Attorneys General request that relates to the Attorneys General's Investigation; (c) providing to the Attorneys General, or their designated representative, all facts related to the Relevant Conduct or conduct related to the Attorneys General's Investigation that are now known, or subsequently learned, by Malek; and (d) if requested by the Attorneys General, attending, on reasonable notice, any proceedings (including but not limited to meetings, interviews, hearings, depositions, grand jury proceedings and trials) and answering completely, candidly and truthfully any and all inquiries relating to the subject matter of the Attorneys General's Investigation that may be put to him by the Attorneys General (or any of them, their deputies, assistants or agents), all without service of subpoena.

5. In the event any document or information is withheld or redacted on grounds of privilege, work-product or other legal doctrine, upon the request of the Attorneys General, or their designated representative, Malek shall submit a statement in writing indicating: (i) the type of document or information; (ii) the date of the document; (iii) the author and recipient of the document; (iv) the general subject matter of the document or information; (v) the reason for withholding the document; and (vi) the Bates number or range of the withheld document. The Attorneys General or their designated representative

may initiate a challenge to such claim in any state or federal court where jurisdiction is appropriate and may rely on all documents or communications theretofore produced or the contents of which have been described by Malek.

6. Malek agrees not to compromise the integrity or confidentiality of any aspect of the Attorneys General's Investigation or any proceeding or actions relating to the Investigation, by sharing or disclosing evidence, documents, or other information provided to Malek by the Attorneys General or their designated representative with others without the consent of the Attorneys General or their designated representative. Nothing herein shall prevent Malek from providing such evidence to other government regulators, law enforcement agencies or as otherwise required by law.

7. Malek shall maintain custody of, or make arrangements to have maintained, all available documents and/or records relating to Malek's involvement in the Relevant Conduct or conduct related to the Attorneys General's Investigation, and within the scope of the civil investigative demand issued to Malek by the Connecticut Attorney General dated November 2, 2016.

8. If Malek has intentionally given false, misleading or incomplete information or testimony, has failed to cooperate fully, or otherwise has violated any provision of this agreement, then the Attorneys General may deem this Settlement Agreement null and void. In the event the Attorneys General void this Settlement Agreement, Malek may be subject to a civil, criminal or administrative action brought by any of the Attorneys General for the conduct identified in the Allegations above or any other conduct related to the Attorneys General's Investigation. Moreover, any such action may be premised upon (i) any information or statement provided by Malek to the Attorneys General or their agents or representatives, (ii) any testimony given by him in court, grand jury or other proceeding, and (iii) any leads derived from such information, statement or testimony. Malek understands that such information, statements, testimony and leads derived therefrom may be used against him in any such action. Moreover, Malek agrees that all such information, statements or testimony shall be admissible in any civil, criminal or administrative proceedings against him, and he expressly waives any claim under the United States Constitution, Rule 410 of the Federal Rules of Evidence, or any other federal or state rule or statute that such information, statements, testimony or leads should be excluded. Finally, Malek waives any claim that such action is time-barred where the statute of limitations has expired between the signing of this Settlement Agreement and the commencement of any such lawsuit.

9. In the event Malek becomes a witness at any action brought by the Attorneys General related to the conduct described in the Allegations or any other conduct related to the Attorneys General's Investigation, and in the event his testimony at such proceeding is

materially different from any statements made or information disclosed to the Attorneys General, by him or any agents acting on his behalf, the Attorneys General may use such statements and information, and all evidence obtained directly or indirectly therefrom, to impeach, cross-examine or rebut such testimony or information. Malek understands that such statements and information may be used against him in this manner.

10. The Attorneys General agree that if, in the sole and exclusive judgment of the Attorneys General, they should decide that Malek has cooperated fully and truthfully, provided substantial assistance to the Attorneys General's Investigation and otherwise complied fully with this Settlement Agreement, then the Attorneys General, at the request of Malek, will make such cooperation known to any court, or federal or state law enforcement, prosecuting, administrative or regulatory agency. The Attorneys General make no representations or agreements with Malek or any person representing Malek other than as set forth in this Settlement Agreement.

## D. ENFORCEMENT

11. The Attorneys General may make such application as appropriate to enforce or interpret the provisions of this Settlement Agreement or, in the alternative, may maintain any action within their legal authority for such other and further relief as they determine is proper and necessary for the enforcement of this Settlement Agreement. Malek consents to the jurisdiction of the courts of the States of Connecticut or New Jersey only for the purpose of an action brought by the Attorneys General to enforce the terms of this Settlement Agreement. Connecticut law shall apply in any action brought by the Attorneys General to enforce the terms of this Settlement Agreement. The parties recognize that remedies at law for violations of this Settlement Agreement, except for Paragraph 1, are inadequate. The parties agree that, in any action to enforce the terms of this Settlement Agreement, except Paragraph B1, a court shall have the authority to award equitable relief, including specific performance, and the parties consent to the awarding of such equitable relief including specific performance.

12. This Settlement Agreement may be modified by the mutual agreement of Malek and the Attorneys General. Any such modification shall be in writing and signed by all parties to this Settlement Agreement.

13. Any information obtained directly and exclusively from Malek after the Effective Date of the Agreement shall not be disclosed to any state unless that state is (i) a member of the Attorneys General working group ("Working Group") on the Effective Date or (ii) joins the Working Group and agrees to be bound by all provisions of this Agreement.

### E.  RELEASE BY ATTORNEYS GENERAL AND
### PARTICIPATING ATTORNEYS GENERAL

14. Subject to the satisfaction of the obligations of Malek as set forth in this Settlement Agreement, including, without limitation, the obligations set forth in Paragraphs B1 and C3 through 7 hereof, each Attorney General releases Malek and his heirs from all civil claims, counterclaims, cross claims, setoffs, civil causes of action of any type (whether common law, equitable, statutory, regulatory or administrative, class, individual or otherwise in nature, and whether reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured), demands, disputes, damages, restitution, whenever incurred, and liabilities of any nature whatsoever, including, without limitation, costs, fines, debts, expenses, penalties and attorneys' fees, known or unknown, arising out of his participation in the Relevant Conduct set forth above through the Effective Date of this Settlement Agreement that could have been asserted by each Attorney General in his or her sovereign capacity as chief law enforcement officer of his or her respective state.  This release specifically does not purport to release any civil claims, counterclaims, cross claims, setoffs, causes of action of any type (whether common law, equitable, statutory, regulatory or administrative, class, individual or otherwise in nature, and whether reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured), demands, disputes, damages, restitution, whenever incurred, and liabilities of any nature whatsoever, including, without limitation, costs, fines, debts, expenses, penalties and attorneys' fees, known or unknown, arising out of his participation in the Relevant Conduct set forth above, that any other person, state agency or non-governmental entity may have.  Each State, through this Settlement Agreement, does not settle, release, or resolve any claims against Malek or any other person or entity involving any private causes of action, claims, or remedies, including, but not limited to, private causes of action, claims, or remedies provided for under the State's consumer protection or antitrust laws.  This release does not, and is not intended to, benefit or apply to any person other than Malek and his heirs.

### F.  PARTICIPATION OF ADDITIONAL ATTORNEYS GENERAL

15. The attorney general of any state that wishes to join in this settlement may opt in and accept the terms of this Settlement Agreement by signing the opt-in agreement appended hereto as Exhibit 1, within 60 days of the Effective Date.  Any attorney general submitting a timely opt-in agreement will thereby become a party to this Settlement Agreement.

## G.  NOTICES AND REPORTS

16. All notices required to be provided shall be sent electronically or by first-class mail, postage pre-paid as follows:

    For Malek:

    > Michael B. Himmel, Esq.
    > Lowenstein Sandler.
    > 1251 Avenue of the Americas
    > New York, New York 10020

    For Attorneys General:

    > W. Joseph Nielsen
    > Assistant Attorney General, Antitrust Department
    > Office of the Connecticut Attorney General
    > 55 Elm Street
    > Hartford, Connecticut 06141
    > joseph.nielsen@ct.gov

## H.  OTHER PROVISIONS

17. This Settlement Agreement is entered into voluntarily and solely for the purpose of resolving the civil claims and causes of action the Attorneys General have against Malek. This Settlement Agreement and any and all negotiations, documents and discussions associated with it shall not be used for any other purpose, except in proceedings or actions to enforce or interpret this Settlement Agreement.  It shall not constitute or be construed as an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by Malek.

18. Except as expressly set forth herein, this Settlement Agreement shall not confer any rights upon any persons or entities besides the Attorneys General and Malek.

19. Nothing in this Settlement Agreement is intended to limit or bar any of the Attorneys General's claims against third parties, including but not limited to, claims against Heritage Pharmaceuticals, Inc., other pharmaceutical manufacturers, individuals or entities who conspired with Malek.  Nothing in this Settlement Agreement is intended to limit, bar or liquidate damages with respect to any of the Attorneys General's claims against any individual or entity other than Malek and his heirs in any action brought by

the Attorney(s) General against Heritage Pharmaceuticals, Inc., other pharmaceutical manufacturers or any other individual or entity.

20. This Settlement Agreement may be executed in counterparts.

21. No promise has been made to give Malek any greater or further consideration other than as stated in this Agreement. All agreements, covenants, representations and warranties, express or implied, oral or written, of the parties hereto concerning the subject matter of this Agreement are contained in this Agreement. No other agreements, covenants, representations or warranties, express or implied, oral or written, have been made by any party hereto to any other party concerning the subject matter of this Agreement. All prior and contemporaneous negotiations, possible and alleged agreements, representations, covenants and warranties, between the Parties concerning the subject matter of this Settlement Agreement are merged into this Settlement Agreement. This Agreement contains the entire agreement between the Parties.

22. Malek enters into this Agreement as a free and voluntary act with full knowledge of its legal consequences. Malek has not relied on any information or representations which are not contained in this Agreement.

WHEREFORE, IT IS SO AGREED AND the following signatures are affixed hereto on this 21st day of March, 2017.

_____
JASON MALEK

8

STATE OF CONNECTICUT
GEORGE JEPSEN
ATTORNEY GENERAL

*/s/ W. Joseph Nielsen*

GEORGE JEPSEN
Michael E. Cole
Chief, Antitrust Department
W. Joseph Nielsen
Assistant Attorneys General
55 Elm Street, PO Box 120
Hartford, CT 06141-0120
Tel: (860)808-5040
Fax: (860)808-5033
joseph.nielsen@ct.gov