# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION** | **MDL NO. 2724** <br> **16-MD-2724** <br><br> **HON. CYNTHIA M. RUFE** |
| **THIS DOCUMENT RELATES TO:** | **Civil Action Nos.** |
| *Humana Inc. v. Actavis Elizabeth, LLC, et al.* | No. 18-cv-3299 |
| *Marion Diagnostic Center, LLC, et al. v. McKesson Corp., et al.* | No. 18-cv-4137 |
| *In re: State Attorneys General* | No. 17-cv-3768 |
| *Ahold USA Inc. et al. v. Actavis Holdco U.S., Inc., et al.* | No. 18-cv-2641 |
| *The Kroger Co., et al. v. Actavis Holdco U.S., Inc., et al.* | No. 18-cv-284 |
| *West Val Pharmacy, et al. v. Actavis Holdco U.S., Inc., et al.* | No. 18-cv-2533 |
| *1999SEIU National Benefit Fund, et al. v. Actavis Holdco U.S., Inc., et al.* | No. 18-cv-2401 |

## DEFENDANT ZYDUS PHARMACEUTICALS (USA) INC.'S REPLY TO PLAINTIFFS' JOINT OPPOSITION TO INDIVIDUAL MOTION TO DISMISS OVERARCHING CONSPIRACY CLAIMS

Defendant Zydus Pharmaceuticals (USA) Inc. ("Zydus"), by and through its undersigned counsel, submits this Reply in Support of its Motion to Dismiss Plaintiffs' Overarching Conspiracy Claims ("Reply"), as follows[1]:

## PRELIMINARY STATEMENT

Plaintiffs claim that Zydus engaged in an overarching conspiracy to fix prices and allocate markets for numerous generic drugs, including many drugs it did not sell during the relevant time period.  For such a claim, the basic pleading requirements are straightforward: Plaintiffs must allege facts that, if taken to be true, would suffice to state a plausible claim.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  But as to Zydus specifically, Plaintiffs do not satisfy these basic requirements.  It is not even a close question.

Plaintiffs attempt to paper over the deficiencies in their Overarching Complaints[2] by various tactics.  First, Plaintiffs misstate the pleading standard:  "[T]he standard here," they write, "is plausibility of inferences, and Zydus's interpretation of the allegations is beyond implausible. . . ."  Pls' Opp'n at 2.  Of course, under *Twombly*, Plaintiffs' burden is to plead facts that, if taken to be true, would suffice to state a plausible claim.  *See* 550 U.S. at 570.  Whether Plaintiffs have alleged "plausible inferences" (whatever that means) does not satisfy the standard.

---

[1]    Zydus joins Defendants' Joint Reply in Support of Their Motion to Dismiss Plaintiffs' Overarching Conspiracy Claims.  In accordance with Section II.d of Pretrial Order No. 61, Zydus files this individual Reply to address arguments in Plaintiffs' Joint Opposition to Zydus's Individual Motion to Dismiss Overarching Conspiracy Claims ("Opposition" or "Pls' Opp'n").

[2]    The Overarching Complaints are the Indirect Reseller Plaintiffs' Amended Overarching Complaint ("IRP Complaint"), No. 18-cv-2533; Humana Inc.'s Amended Complaint ("Humana Complaint"), No. 2:18-cv-03299-CMR; Direct Purchasers' First Amended Class Action Complaint ("DPP Complaint"), No. 18-cv-02641; Marion's First Amended Class Action Complaint, No. 2:18-cv-04137-CMR; Kroger Plaintiff's Amended Complaint ("Kroger Complaint"), No. 18-cv-284; Plaintiff States' Consolidated Amended Complaint ("States' Complaint"), No.17-3768; and End-Payer Class Action Complaint ("EPP Complaint"), No. 18-2401.

Second, Plaintiffs seek to give dispositive effect to the Court's decisions denying Zydus's prior motions to dismiss Plaintiffs' individual drug conspiracy claims for divalproex ER and pravastatin as well as Zydus's decision to not file a motion to dismiss Plaintiffs' individual drug conspiracy claim for acetazolamide. Pls' Opp'n at 1. These decisions by the Court and Zydus, Plaintiffs say, "raise a reasonable expectation that discovery will reveal evidence of Zydus's participation in an overarching illegal agreement." Pls' Opp'n at 2. Even if Plaintiffs have satisfied pleading requirements for their individual drug conspiracy claims, it is another matter to plead an overarching conspiracy. And Plaintiffs have not alleged facts connecting Zydus with any broader conspiracy.

Third, Plaintiffs also seek to give dispositive effect to the Court's decision on the States' motion to amend. *Id*. at 3 ("This Court has already concluded, with respect to the non-futility of amending the States' Complaint, that 'it is plausible to infer that there was a broader conspiracy.'"). Of course, this ignores the text of the Court's order, which (clearly) states that the Court was evaluating the States' Complaint under Rule 15 and that the Court would later address "[t]he arguments of all Defendants as to potential liability, including joint and several liability." Dkt. 603 at 8. In any event, the Court's prior decision did not assess the sufficiency of Plaintiffs' overarching conspiracy claims as to Zydus specifically.

As to Zydus specifically, Plaintiffs substitute ***speculation that suggests a possible claim*** for ***facts that state a plausible claim***. By way of example, Plaintiffs must plead facts establishing that Zydus was aware of and committed to the overarching conspiracy. *See*, *e.g.*, *In re Auto. Parts Antitrust Litig.*, No. 12-md-02311, 2016 U.S. Dist. LEXIS 193193, at *404 (E.D. Mich. Apr. 13, 2016) ("Only after a defendant agrees to the common purpose may it be held responsible for the conduct of co-conspirators."). But Plaintiffs have alleged no such facts.

Plaintiffs do not allege market or pricing activity, communications, or other facts evidencing Zydus's commitment to – or even its awareness of – a broader, "fair share" conspiracy.  All Plaintiffs can offer are re-purposed allegations from their individual drug conspiracy claims.  For these claims, Plaintiffs' allegations are thin at best.  Considered in the context of Plaintiffs' overarching conspiracy claims, they are wholly inadequate.

Because Plaintiffs have failed to satisfy basic pleading requirements, the Court should dismiss their overarching conspiracy claims against Zydus.

## ARGUMENT

For the purpose of determining whether a series of individual agreements constitutes a single overarching conspiracy, the Third Circuit has identified three relevant factors:  (1) whether a common goal existed among the alleged conspirators; (2) whether the agreement could have continued without the continuous cooperation of the conspirators (*i.e.*, whether the individual conspiracies are interdependent); and (3) whether there is sufficient overlap among the participants in the individual conspiracies.  *See United States v. Kelly*, 892 F. 2d 255, 259 (3d Cir. 1989).  Plaintiffs fail to plead facts evidencing any of these factors, instead offering speculation and conclusory assertions.  This is not enough to state a claim for relief.  *See Mayor & Council of Baltimore v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013); *see also In re Pressure Sensitive Labelstock Antitrust Litig.*, 566 F. Supp. 2d 363, 376-77 (M.D. Pa. 2008) ("[S]prinkling a complaint with conclusory assertions that a party was a 'participant in coordinated conduct' or a 'conspirator' or acted in 'concert' with others does not make the requisite showing of entitlement to relief mandated by Rule 8(a)(2).").

**A.**     **Plaintiffs Have Not Alleged Facts Evidencing That Zydus Was Aware of or Participated in a Common Goal to Fix Generic Drug Prices.**

With respect to the first *Kelly* factor, Plaintiffs must allege facts showing that "each of the defendants **was aware of** and **agreed to** the essential purpose of the overarching conspiracy." *Precisions Assocs., Inc. v. Panalpina World Transp. (Holding) Ltd.*, No. 08-cv-42 (JG)(VVP), 2011 U.S. Dist. LEXIS 51330, at *104-05 (E.D.N.Y. Jan. 4, 2011) (citing *United States v. Downing*, 297 F.3d 52, 57 (2d Cir. 2002) (emphasis added)); *see also Howard Hess Dental Labs., Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 255 (3d Cir. 2010) (finding allegation that "all of the defendants . . . conspired and knew about the alleged plan" insufficient because "to survive dismissal it does not suffice to simply say that the defendants had knowledge, there must be factual allegations to plausibly suggest as much"); *In re Optical Disk Drive Antitrust Litig.*, No. 3:10-md-2143 RS, 2014 U.S. Dist. LEXIS 99965, at *46 (N.D. Cal. July 10, 2014) (explaining that plaintiffs must plead "allegations specific to [the Defendant] alleging [the Defendant's] role in the alleged conspiracy"); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1117 (N.D. Cal. 2008) ("[A]t the heart of an antitrust conspiracy is an agreement and a conscious decision by each defendant to join it." ).  But – as set forth in detail below – Plaintiffs allege no facts that, if taken to be true, state a plausible claim that Zydus was (1) aware of and (2) committed to an overarching conspiracy.

### 1.     *Alleged communications with acetazolamide competitors*

The first "fact" Plaintiffs offer in support of their assertion that Zydus shared a common goal with other Defendants is that two Zydus employees had limited communications with acetazolamide competitors (Teva and Heritage), both "alleged to be in the thick of the conspiracy."  Pls' Opp'n at 5.  One of the Zydus employees had two telephone calls with a former colleague at Teva, and another Zydus employee exchanged text messages with another

Teva employee and exchanged LinkedIn messages with a Heritage employee.  *See id.*  Based on

these communications, Plaintiffs take a giant leap and conclude that

> it is plausible to infer that the Zydus employees were aware that their
> conspiratorial agreements were part of a larger pattern, and that their
> participation strengthened the trust and efficiency of this larger
> anticompetitive enterprise and made them complicit in it.

*Id*.

This "inference" is not well-founded.  All of these communications are alleged in

connection with Plaintiffs' acetazolamide individual drug conspiracy claim *see id.*, and there is

no allegation in any of Plaintiffs' Complaints (nor an explanation in Plaintiffs' Opposition)

detailing how these communications are connected with a broader conspiracy or, more to the

point, evidence Zydus's knowledge or commitment of that purported conspiracy.

### 2.    *Alleged participation in industry events*

Plaintiffs argue that, because Zydus employees attended certain industry events, Zydus

must have been aware of and committed to an overarching conspiracy.  Specifically, Plaintiffs

point to an allegation that one Zydus employee attended a "Girls Night Out" in May 2015.  Pls'

Opp'n at 5.  Notably, this event post-dates by a year the latest of the three individual drug

conspiracies in which Zydus is alleged to have been involved.  Plaintiffs also allege that Zydus

held a seat on the board of the Generic Pharmaceutical Association.[3]  *Id*. at 5-6.  Based on these

---

[3]    Separate and apart from Plaintiffs' failure to plead any connection between Zydus's
participation in industry events, participation in trade association activities does not support
Plaintiffs' overarching conspiracy claim.  *See*, *e.g.*, *Hinds County v. Wachovia Bank N.A.*, 620 F.
Supp. 2d 499, 513 (S.D.N.Y. 2009) (citing *Twombly*, 550 U.S. at 570) ("Beyond bare allegations
that a conspiracy existed, the CAC relies on some of the Joint Defendants' involvement with
trade associations or conferences.  However, participation in trade associations or conferences
cannot support the CAC's allegations of a conspiracy. . . .  An allegation that Joint Defendants
had the opportunity to interact and make an agreement does not 'nudge [Named Plaintiffs']
claims across the line from conceivable to plausible' with respect to their claims against these
Joint Defendants.").

events, Plaintiffs say, "one could infer[ that] Zydus became aware of the scope of the overarching conspiracy . . ." *Id.* at 5.  This is speculation at best.  Plaintiffs otherwise fail to explain how attendance at these events evidences knowledge of or commitment to a broader conspiracy.

### 3.    *Alleged individual drug conspiracies for divalproex ER and pravastatin*

Next, Plaintiffs pivot back to their allegations concerning Zydus's involvement in purported individual drug conspiracies for divalproex ER and pravastatin.  Pls. Opp'n at 6. These and other alleged individual drug conspiracies, Plaintiffs say, "shared a common goal." *Id.*  But Plaintiffs do not offer facts connecting Zydus's alleged actions with regard to divalproex ER and pravastatin with a broader conspiracy.  *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 374 (3d Cir. 2010) (discussing allegations of individual conspiracies among brokers and finding that "these allegations do not plausibly imply concerted action – as opposed to merely parallel conduct" and therefore "cannot support the inference that the insurers associated together for a common purpose of engaging in a course of conduct") (internal quotations and citations omitted).

### 4.    *Alleged awareness of market trends*

Plaintiffs next argue that Zydus's general awareness of rising prices for generic drugs evidences knowledge of or commitment to an overarching conspiracy.  Pls' Opp'n at 6-7.  The basis for this claim are alleged statements from what appears to be a fairly ordinary investor relations call by a Zydus affiliate based in India (not by the entity Plaintiffs have sued in this litigation).  *See id.* (quoting Kroger Am. Compl. ¶ 226).  In any event, the alleged statements simply show that Zydus's affiliate was aware of pricing trends in the market for generic drugs. There is no suggestion that Zydus knew of or committed to an overarching conspiracy.

### 5. *Jason Malek's alleged statements regarding acetazolamide*

Finally, Plaintiffs argue that because Jason Malek allegedly confirmed in writing that his company, Heritage, had permission from unnamed parties to raise acetalozamide pricing, there is "dispositive evidence of an agreement" involving Zydus.  Pls. Opp'n at 7.  However the alleged Malek statement does not identify Zydus.  *See id*.  Even if it did, this statement – at best – supports Plaintiffs' individual drug conspiracy claim for acetazolamide.  Plaintiffs do not explain how this statement ties Zydus to a broader conspiracy for other drugs.

### B. Plaintiffs Have Not Alleged Facts Evidencing Interdependence.

Plaintiffs have not pled facts that, if taken to be true, explain how or why Zydus's alleged participation in individual drug conspiracies was "necessary or advantageous to the success" of an overarching conspiracy.  *See United States v. Rigas*, 605 F.3d 194, 214 (3d Cir. 2010).  Again, Plaintiffs rely on conclusory assertions and speculation.

### 1. *Plaintiffs cannot rely on facts outside the Complaints*

Plaintiffs argue that Zydus had an interest in other MDL drugs beyond the three drugs on which it has been sued in this litigation (divalproex ER, pravastatin, and acetazolamide) and this (somehow) evidences interdependence.  Pls' Opp'n at 9 ("Zydus appears to have obtained the requisite National Drug Codes in order to sell [other MDL drugs].").  It does not.  In any event, these purported facts are not alleged in any of Plaintiffs' Complaints and therefore may not be considered on a motion to dismiss.  *See*, *e.g.*, *Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is one thing to set forth theories in a brief; it is quite another to make proper allegations in a complaint. … Thus, in the case at bar, the legal theories set forth in Pennsylvania's brief are helpful only to the extent that they find support in the allegations set forth in the complaint.").

2.     *Plaintiffs offer no explanation for their assertion that an overarching conspiracy could not exist without Zydus's participation*

Plaintiffs next claim interdependence because (1) Zydus created an "incremental advantage" to other Defendants by participating in the conspiracy, and (2) if Zydus had withdrawn from the three alleged individual drug conspiracies, "it could have exposed the conduct of its proximate co-conspirators, which could have revealed every scheme so far alleged in MDL 2724 save for econazole and ursodiol." Pls' Opp'n at 10.  Plaintiffs do not take the time to explain either of these theories – nor do they cite supporting facts in their Complaints.  *See id*. That is because there are no facts – either regarding any "incremental advantage" or that Zydus might have "exposed" the purported overarching conspiracy.

Plaintiffs' concession that Zydus could not have affected the alleged individual drug conspiracies for econazole and ursodiol, Pls. Opp'n at 10, underscores that the "connective tissue" between any of the individual drug conspiracies was tenuous at best.  For purposes of Plaintiffs' overarching conspiracy claims against Zydus, it means that Zydus cannot be jointly and severally liable for a broad conspiracy as to all drugs if certain individual drug conspiracies could have continued notwithstanding its withdrawal.  *See Rigas*, 605 F.3d at 214-15.

To be clear, Plaintiffs have not established interdependence to any extent.  To satisfy this element, Plaintiffs must plead "how, when, or where" the individual drug conspiracies "became connected to each other into one global conspiracy connected by common actors, methods, and goals."  *Precision Assocs.*, 2011 U.S. Dist. LEXIS 51330, at *95.  Because Plaintiffs have no facts concerning the how, the when, or the where, they seek to distinguish *Precision Associates*. While *Precision Associates* involved a combination of actors from different countries, Plaintiffs argue, "this MDL focuses on conduct in the United States market."  Pls' Opp'n at 10.  This is a distinction without a difference.

The *Precision Associates* court found that the allegations of parallel conduct were insufficient to support a broad conspiracy claim because "the alleged local conspiracies [were] logically, temporally, and geographically distinct" and related to "different routes, in different countries on different continents, and were imposed by different (albeit somewhat overlapping) groups of defendants." *Precision Assocs.*, 2011 U.S. Dist. LEXIS 51330 at *95.  While the local conspiracies took place in different countries, it was the lack of evidence that "defendants were acting as part of a single continuous operation to fix prices globally" that swayed the court. *Id.* at 103.  Because there were "no allegations in the Complaint that [led] to the conclusion that the various local conspiracies were formulated pursuant to an overarching scheme to raise prices generally" the plaintiffs' overarching conspiracy claim failed.

Plaintiffs here similarly allege that Zydus participated in a "local" agreement as to acetazolamide.  However, Plaintiffs offer no facts connecting this alleged conspiracy with any "global" conspiracy for a broader group of generic drugs.  Like the plaintiffs in *Precision Associates*, Plaintiffs in this case are required to present "how, when, or where" facts supporting a global conspiracy.  They have not and, therefore, have not satisfied the second *Kelly* factor.

## C.    Plaintiffs Have Not Alleged Facts Evidencing Sufficient Overlap.

In support of their argument concerning an overlap in participants, Plaintiffs offer a chart purportedly showing that "the membership of Zydus's sub-agreements overlaps with the membership of the other alleged sub-agreements." Pls' Opp'n at 11-12.  Plaintiffs do not explain why this is the relevant consideration.  What is relevant – and what is clear from the face of the complaints – is that Zydus is alleged to have been involved in only three of the more than thirty claimed individual drug conspiracies.  Without more, Plaintiffs have failed to allege sufficient overlap.  *See Auto Parts*, 2016 U.S. Dist. LEXIS 193193, at *4 ("the mere overlap of some of

defendants in some of the transactions is, on its own, insufficient to establish an overarching agreement.").

Plaintiffs also assert that an "overlap of individuals" occurred. Pls' Opp'n at 14. Specifically, Plaintiffs allege that three former Zydus employees went on to work for other Defendants; because those former Zydus employees allegedly engaged in conspiratorial conduct after leaving Zydus, "one could infer" that they engaged in the same conduct while employed by Zydus. *Id*. This assertion – like many others identified above – is wholly speculative.

## CONCLUSION

For the reasons stated herein, as well as those in Zydus's Memorandum in Support of its Motion to Dismiss Plaintiffs' Overarching Conspiracy Claims (Dkt. 119), Defendants' Joint Memorandum in Support of Motion to Dismiss Plaintiffs' Overarching Conspiracy Claims (Dkt. 116), and Defendants' Joint Reply in Support of Their Motion to Dismiss Plaintiffs' Overarching Conspiracy Claims, Zydus respectfully requests that this Court dismiss Plaintiffs' overarching conspiracy claims against Zydus.

Dated:  June 13, 2019

**ZYDUS PHARMACEUTICALS (USA) INC.**

*By Counsel,*

/s/ *Jason R. Parish*
Jason R. Parish
**BUCHANAN INGERSOLL & ROONEY PC**
1700 K Street, NW, Suite 300
Washington, D.C.  20006
Tel.:    (202) 452-7900
Fax:    (202) 452-7989
Email: jason.parish@bipc.com

Bradley J. Kitlowski
**BUCHANAN INGERSOLL & ROONEY PC**
One Oxford Center
301 Grant Street, 20th Floor
Pittsburgh, PA  15219
Tel.:    (412) 562-8800
Fax:    (412) 562-1041
Email: bradley.kitlowski@bipc.com

*Counsel for Defendant Zydus
Pharmaceuticals (USA) Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 11th day of June, 2019, a true and correct copy of the foregoing was filed by the Court's Electronic Case Filing System, and thereby served on all parties of record registered with the Electronic Case Filing System.

*/s/ Jason R. Parish*

Jason R. Parish
