THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL NO. 2724<br><br>16-MD-2724<br><br>HON. CYNTHIA M. RUFE |
| THIS DOCUMENT RELATES TO:<br><br>*The Kroger Co., et al. v. Actavis Holdco U.S., Inc.*<br><br>*Humana Inc. v. Actavis Elizabeth, LLC et al.* | Civil Action Nos.<br><br>18-cv-284<br><br>18-cv-3299 |

**LUPIN PHARMACEUTICALS, INC.'S
REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO DISMISS PLAINTIFFS' OVERARCHING CONSPIRACY CLAIMS**

**TABLE OF CONTENTS**

<u>**Page**</u>

INTRODUCTION ..................................................................................................................1

ARGUMENT.........................................................................................................................2

    A.    Plaintiffs Fail To Connect Lupin To An Industry-Wide Conspiracy. ....................2

    B.    Plaintiffs Do Not Satisfy The *Kelly* Factors As To Lupin. ...................................3

        1.    Plaintiffs Do Not Show Lupin Was Committed To A Common Goal. ...............................................................................................................3

        2.    Plaintiffs Do Not Establish That The Alleged Pravastatin-Specific Conspiracy Was Interdependent On The Overall Conspiracy. ...................4

        3.    Plaintiffs Do Not Show Sufficient Overlap Between The Alleged Pravastatin-Specific Conspiracy And The Overall Conspiracy. .................5

CONCLUSION......................................................................................................................6

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ................................................................................................1, 2

*Bakhtiari v. Spaulding*,
  No. 1:17-cv-00016, 2017 WL 2778524 (M.D. Pa. June 27, 2017)..........................3

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ................................................................................................1, 2

*Commonwealth of Pa. v. PepsiCo, Inc.*,
  836 F.2d 173 (3d Cir. 1988) ....................................................................................3

*Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*,
  602 F.3d 237 (3d Cir. 2010) ....................................................................................3

*In re Insurance Brokerage Antitrust Litig.*,
  618 F.3d 300 (3d Cir. 2010) ....................................................................................2, 4

*In re K-Dur Antitrust Litig.*,
  No. 01-cv-1652, 2016 WL 755623 (D.N.J. Feb. 25, 2016) .....................................4, 5

*United States v. Kelly*,
  892 F.2d 255 (3d Cir. 1989) ....................................................................................2, 3, 5

## INTRODUCTION

Lupin joins in the arguments made in Defendants' Joint Reply, but writes separately to address the fatal flaw in Humana and Kroger's argument regarding Lupin. Without any factual allegations against Lupin beyond those in the single-drug Pravastatin complaints, Humana and Kroger base their overarching conspiracy claim against Lupin on the alleged conduct of other defendants. Kroger and Humana boil down their allegations against Lupin as follows: "Lupin's leadership participation in GPhA with twelve other Defendants, Lupin's ANDAs for drugs beyond Pravastatin, and the existence of the 'fair share' code of conduct, is enough to plausibly allege Lupin's participation in the overarching conspiracy."[1] Remarkably, Kroger and Humana assert that Lupin can be jointly and severally liable for an overarching, industry-wide conspiracy to fix the prices of at least 27 drugs simply because (1) Lupin's executives lawfully joined trade associations, (2) Lupin lawfully had the ability to sell more than one generic pharmaceutical product, and (3) *other companies* in the industry allegedly used phrases such as "fair share" in correspondence with companies *other than* Lupin. Humana and Kroger do not identify a single fact linking Lupin to an alleged overarching conspiracy. Without even alleging a communication between Lupin and any other defendant, Kroger and Humana ask the Court to ignore *Twombly* and *Iqbal* based on allegations made against other defendants in other complaints. Lupin respectfully asks the Court to enforce the pleading requirements in *Twombly* and *Iqbal* and dismiss the overarching conspiracy claim against Lupin.

---

[1] Plaintiff Humana Inc.'s and the Kroger Plaintiffs' Joint Opposition to the Motions to Dismiss by (1) Lupin Pharmaceuticals, Inc., (2) Breckenridge Pharmaceutical, Inc., and (3) Teligent, Inc., Case No. 2:18-cv-00284, Dkt. No. 132 (the "Opp.") at 18.

## **ARGUMENT**

For the reasons set forth in Defendants' Joint Reply, Humana and Kroger have failed to meet the legal standard to plead the existence of an overarching conspiracy. Assuming *arguendo* that Humana and Kroger properly alleged an overarching conspiracy against other defendants, they have failed to allege Lupin's involvement in such a conspiracy.

### A.     Plaintiffs Fail To Connect Lupin To An Industry-Wide Conspiracy.

The Third Circuit has made clear that "[t]he essence of a conspiracy is an agreement." *United States v. Kelly*, 892 F.2d 255, 258 (3d Cir. 1989). Yet, Plaintiffs assert that they have plausibly stated a claim that Lupin was involved in an overarching conspiracy simply because it has a "vast portfolio of generic drugs" (Opp. at 17) and its former employee "was the GPhA Board of Director President from 2014 to 2016, along with various other representatives from twelve additional Defendants" (Opp. at 18). Plaintiffs apparently concede that Lupin's CEO's statement made on an earnings call does not establish an overarching conspiracy. (*See* Defendant Lupin Pharmaceuticals, Inc.'s Motion to Dismiss Kroger Plaintiffs' and Humana, Inc.'s Overarching Conspiracy Claims (the "Motion") at 4.) Further, Plaintiffs fail to address Lupin's argument on the dearth of allegations against it and the complete lack of allegations that Lupin agreed to enter into an overarching conspiracy. In particular, Plaintiffs ignore that there are no alleged communications between a Lupin employee and any employee of another generic pharmaceutical company, that there are no alleged competitor communications relating to Pravastatin by any defendant, and that Lupin is not alleged to have attended any industry dinners or private meetings. (Motion at 4.) Yet, Plaintiffs assert that they have satisfied their burden by simply repeating the allegations against Lupin from Class Plaintiffs' Pravastatin-specific complaint. These allegations, without more, cannot satisfy *Twombly* and *Iqbal*. *See* Motion at 2-3; *see also In re Insurance Brokerage Antitrust Litig.*, 618 F.3d 300, 349 (3d Cir. 2010)

(membership in trade group did not "plausibly suggest conspiracy"); *Bakhtiari v. Spaulding*, No. 1:17-cv-00016, 2017 WL 2778524, at *9 (M.D. Pa. June 27, 2017) (finding that plaintiff failed to state a claim for conspiracy because allegations were "mere conclusions" and there were no alleged "facts indicating that all of the named Defendants communicated together or came to any agreement to conspire"); *Commonwealth Of Pa. v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (confirming dismissal of antitrust claim because complaint failed to "allege any meetings between [defendants], any communications between them, or any other means by which their alleged conspiracy came about").

### B.  Plaintiffs Do Not Satisfy The *Kelly* Factors As To Lupin.

Plaintiffs state, in conclusory terms, that they have sufficiently satisfied each of the *Kelly* factors. (Opp. at 20.) Yet, *Kelly* requires a "three-step inquiry" that asks "whether there was a common goal among the conspirators," whether "the nature of the scheme . . . 'contemplated bringing to pass a continuous result that will not continue without the continuous cooperation of the conspirators,'" and "the extent to which the participants overlap in the various dealings." *Kelly*, 892 F.2d at 259 (internal citations omitted). Plaintiffs' allegations against Lupin do not come close to satisfying their burden.

#### 1.  Plaintiffs Do Not Show Lupin Was Committed To A Common Goal.

Plaintiffs assert that Lupin's desire "to make money" is a sufficient allegation to show that it was committed to a common goal. (Opp. at 21.) Unlike the alleged common goal in *Kelly*—"mak[ing] money selling 'speed'"—making money by selling a legal product is not an illegal act. Being committed to selling generic pharmaceutical products for a profit, without more, does not establish that Lupin was a member of an overarching, industry-wide conspiracy. *See, e.g., Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 255 (3d Cir. 2010)

3

("simply because each [defendant], on its own, might have been economically motivated to . . . charge the elevated prices [manufacturer] imposed does not give rise to a plausible inference of an agreement among the [defendants] themselves"); *In re Insurance Brokerage*, 618 F.3d at 349 (dismissing global conspiracy complaint even though plaintiffs alleged each defendant was "[r]eaping 'enormous profits'" because it was plausible each defendant had been acting independently). To find otherwise would require a finding that all profit-making enterprises may be co-conspirators in every Section 1 case.

### 2. Plaintiffs Do Not Establish That The Alleged Pravastatin-Specific Conspiracy Was Interdependent On The Overall Conspiracy.

Plaintiffs next make the conclusory argument that "the Complaints' allegations regarding how the agreements fit together and complement one another are sufficient" to show that they are interdependent. (Opp. at 23.) To establish interdependence, plaintiffs must allege that "the transactions must have been contingent on each other." *In re K-Dur Antitrust Litig.*, No. 01-cv-1652, 2016 WL 755623, at *22 (D.N.J. Feb. 25, 2016). Yet, Plaintiffs point to no allegation against Lupin that shows how the alleged Pravastatin-specific conspiracy is somehow interdependent, much less contingent, on a greater understanding. This is, of course, because the allegation is missing from the Complaints. Both Kroger and Humana merely provide a conclusory statement that the alleged Pravastatin conspiracy contributed to an overarching conspiracy. (*See* Motion at 5 (citing Kroger Am. Compl., ¶ 821; Humana Am. Compl., ¶ 644).) Notably, the Class Plaintiffs and Marion Diagnostic Center do not claim that Lupin was part of the overarching conspiracies that they allege, and Class Plaintiffs instead plead only a Pravastatin-specific conspiracy. It is difficult to then see how Lupin's alleged involvement in a Pravastatin-specific conspiracy was so interdependent on the alleged overarching conspiracy.

For comparison, in *Kelly*, the Court found that this second factor was established because "Kelly was the one constant member during the course of the conspiracy." *Kelly*, 892 F.2d at 259-60. This could not be further from the case against Lupin, in which only two plaintiffs even allege that Lupin had any role in the overarching conspiracy, and those plaintiffs' allegations link Lupin only to one drug in the multi-drug conspiracy.

### 3. Plaintiffs Do Not Show Sufficient Overlap Between The Alleged Pravastatin-Specific Conspiracy And The Overall Conspiracy.

Plaintiffs state that they have sufficiently alleged overlap between the Pravastatin-specific conspiracy and the overarching conspiracy because "Actavis and Teva are alleged to have conspired on sixteen unique drugs, and Mylan on at least twelve drugs." (Opp. at 26.) This argument fails for many reasons. First, Humana has since stipulated to dismissing the Pravastatin-specific claims against Mylan, meaning that any of Humana's allegations against Mylan are completely unrelated to Lupin. (*See* Case No. 2:18-cv-03299-CMR, Dkt. No. 152.) Further, the fact that other companies are alleged to have entered into *other* conspiracies related to *other* drugs with *other* defendants does nothing to show that Lupin agreed to be a part of a larger, overarching conspiracy. Plaintiffs have done nothing to link Lupin's involvement in the alleged Pravastatin conspiracy to Mylan, Teva, or Actavis's alleged conspiracy with any other company over any other product. That Plaintiffs allege that Lupin conspired on the prices for Pravastatin says nothing about whether Lupin was involved in any market allocation scheme, and particularly not an industry-wide overarching conspiracy. *See, e.g., In re K-Dur*, 2016 WL 755623, at *23 ("[T]he Supreme Court has ruled that the presence of a single party common to several illegal agreements with other parties does not necessarily establish a single conspiracy." (citing *Kotteakos v. United States*, 328 U.S. 750, 755 (1946))).

5

## CONCLUSION

For the foregoing reasons, as well as the reasons set forth in Lupin's Motion to Dismiss, Defendants' Joint Motion to Dismiss, and Defendants' Joint Reply Brief, Lupin respectfully requests that the Court grant Lupin's Motion to Dismiss.

Dated: June 13, 2019

*/s/ Leiv Blad*
Leiv H. Blad
Zarema A. Jaramillo
Katie R. Glynn
Ario Fazli
LOWENSTEIN SANDLER LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037
Tel: (202) 753-3800
Fax: (202) 753-3838
lblad@lowenstein.com
zjaramillo@lowenstein.com
kglynn@lowenstein.com
afazli@lowenstein.com

*Attorneys for Defendant*
*Lupin Pharmaceuticals, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify on June 13, 2019, a true and correct copy of the foregoing was served via CM/ECF upon all counsel of record.

Dated:  June 13, 2019                                   */s/ Leiv Blad*
                                                                            Leiv Blad