**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **In re: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION** | **MDL NO. 2724**<br>**16-MD-2724**<br>**HON. CYNTHIA M. RUFE** |
| **THIS DOCUMENT RELATES TO:**<br><br>*HUMANA INC. v. ACTAVIS ELIZABETH LLC et al.*<br><br>*THE KROGER CO., et al. v. ACTAVIS HOLDCO U.S., INC. et al.* | **18-CV-3299**<br><br>**18-CV-284** |

**REPLY BRIEF IN SUPPORT OF BRECKENRIDGE PHARMACEUTICAL, INC.'S MOTION TO DISMISS THE KROGER AND HUMANA INC. AMENDED COMPLAINTS**

# TABLE OF CONTENTS

**Page**

ARGUMENT ..................................................................................................................3

    I.      PLAINTIFFS FAIL TO PLEAD THAT BRECKENRIDGE
            PARTICIPATED IN THE OVERARCHING CONSPIRACY ............................3

          A.      Plaintiffs Fail to Plead That Breckenridge Was Committed to the
                 Common Goal of an Overarching Conspiracy to Fix the Prices of
                 Numerous Drugs that It Did Not Sell ..........................................................3

          B.      Plaintiffs Fail to Plead Breckenridge's Interdependence as to the
                 Alleged Overarching Conspiracy .............................................................10

          C.      Plaintiffs Fail to Allege Sufficient Overlap to Support the
                 Existence of the Alleged Overarching Conspiracy...................................12

    II.     PLAINTIFFS FAIL TO PLEAD THAT BRECKENRIDGE
            PARTICIPATED IN A CONSPIRACY AS TO PROPRANOLOL
            CAPSULES .................................................................................................12

CONCLUSION ...........................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Auto. Parts Antitrust Litig.*,
No. 12-CV-00203, 2016 WL 8200512 (E.D. Mich. April 13, 2016) .................... 9, 10, 12, 13

*In re Chocolate Confectionary Antitrust Litig.*,
801 F.3d 383 (3d Cir. 2015) ............................................................................................ 15

*Davis v. Powell*,
No. 10CV01891, JLS RBB, 2011 WL 4344251 (S.D. Cal. Aug. 9, 2011) ........................... 11

*Fowler v. UPMC Shadyside*,
578 F.3d 203 (3d Cir. 2009) .............................................................................................. 5

*In re Generic Pharms. Pricing Antitrust Litig.*,
338 F. Supp. 3d 404 (E.D. Pa. 2018) ........................................................................... 3, 6-7

*Hinds Cty., Miss. v. Wachovia Bank N.A.*,
620 F. Supp. 2d 499 (S.D.N.Y. 2009) ................................................................................ 6

*In re Ins. Brokerage Antitrust Litig.*,
618 F.3d 300 (3d Cir. 2010) ..................................................................................... *passim*

*Just New Homes, Inc. v. Beazer Homes*,
293 F. App'x 931 (3d Cir. 2008) ........................................................................................ 6

*In re K-Dur Antitrust Litig.*,
No. 01-1652, 2016 WL 755623 (D.N.J. Feb. 25, 2016) ..................................................... 11

*Loren Data Corp. v. GXS, Inc.*,
501 F. App'x 275 (4th Cir. 2012) ..................................................................................... 10

*In re Musical Instruments & Equip. Antitrust Litig.*,
798 F.3d 1186 (9th Cir. 2015) ............................................................................................ 5

*In re Optical Disk Drive Antitrust Litig.*,
No. 3:10-MD-2143 RS, 2014 WL 3378336 (N.D. Cal. July 10, 2014) ............................. 4-5

*Parker Auto Body Inc. v. State Farm Mut. Auto. Ins. Co.*,
171 F. Supp. 1274 (M.D. Fla. 2016) ............................................................................ 14-15

*Petruzzi's IGA Supermarkets, Inc. v. Darling-Del. Co.*,
998 F.2d 1224 (3d Cir. 1993) ............................................................................................ 6

*U.S. ex rel. Potra v. Jacobson Cos.*,
No. 1:12-CV-01600-WSD, 2014 WL 1275501 (N.D. Ga. Mar. 27, 2014)............................11

*Precision Assocs. v. Panalpina World Transport (Holding) Ltd.*,
No. 08-CV-42, 2011 WL 7053807 (E.D.N.Y. Jan. 4, 2011)......................................................4

*In re Processed Egg Prods. Antitrust Litig.*,
821 F. Supp. 2d 709 (E.D. Pa. 2011)..........................................................................................5

*Resco Prods., Inc. v. Bosai Minerals Grp. Co.*,
158 F. Supp. 3d 406 (W.D. Pa. 2016) ......................................................................................14

*Sonterra Capital Master Fund Ltd. v. Credit Suisse Grp. AG*,
277 F. Supp. 3d 521 (S.D.N.Y. 2017) ........................................................................................7

*United States v. Kelly*,
892 F.2d 255 (3d Cir. 1989) ........................................................................................................3

*United States v. Smith*,
82 F.3d 1261 (3d Cir. 1996) ........................................................................................................7

Nothing in the Opposition filed by Plaintiffs The Kroger Co., Albertsons Companies, and H.E. Butt Grocery Company L.P. (collectively, "Kroger") and Humana, Inc. ("Humana") (collectively, "Plaintiffs") undermines the showing by Breckenridge Pharmaceutical, Inc. ("Breckenridge") that Plaintiffs' operative Amended Complaints fail to plead any claims against Breckenridge that can survive Breckenridge's Motion to Dismiss ("Motion").[1]  Whereas Plaintiffs have failed to plead an overarching conspiracy as to any Defendant in this MDL,[2] Plaintiffs' pleading failure is particularly evident as specifically concerns Breckenridge. Plaintiffs have wholly failed to connect Breckenridge to any alleged overarching conspiracy, having made allegations as to Breckenridge pertaining only to one formulation of one drug — Propranolol capsules.

In their Opposition, Plaintiffs concede that their allegations as to Breckenridge concern only Propranolol capsules, and completely fail to address the absence of any factual allegations connecting Breckenridge to the alleged overarching conspiracy involving up to 40 generic drugs. Specifically, Plaintiffs fail to allege that Breckenridge engaged in any of the following central acts on which their overarching conspiracy claim is based:

- Communicated with any other MDL Defendant about the price of Propranolol or any other drug in this MDL.  *See, e.g.*, Kroger Compl. ¶¶ 822-23; Humana Compl. ¶¶ 271, 758.

- Traded customers in one drug market for customers in another drug market.  *See, e.g.*, Kroger Compl. ¶ 137; Humana Compl. ¶¶ 265, 267.

---

[1] Breckenridge's Motion was filed at 18-CV-284, Dkt. No. 86 and 18-CV-3299, Dkt. No. 76, with the supporting Memorandum at 18-CV-284, Dkt No. 86-1 and 18-CV-3299 Dkt. No. 76-1 ("Mem.").  Plaintiffs' Opposition was filed at 18-CV-284, Dkt. No. 132 and 18-CV-3299, Dkt No. 128 ("Opp.").

[2] Breckenridge joins in the Defendants' Joint Motion to Dismiss Plaintiffs' Overarching Conspiracy Claims as that Motion addresses the Kroger and Humana Amended Complaints, 18-CV-284, Dkt No. 83 and 18-CV-3299 Dkt. No. 73, and the supporting Memorandum, 18-CV-284, Dkt No. 83-1 and 18-CV-3299 Dkt. No. 73-1 ("Joint Mem."). Breckenridge has not been named in any other complaint advancing an overarching conspiracy claim that is the subject of that Motion.

- Agreed to concede market share for one generic drug in exchange for another company agreeing to concede market share for a second generic drug.  *See, e.g.*, Kroger Compl. ¶ 819; Humana Compl. ¶ 262.

- Declined to compete on, or agreed to "walk away" from, a bid for one drug in exchange for the opportunity to provide a winning bid for a different drug.  Humana Compl. ¶¶ 265, 483.  *See also* Kroger Compl. ¶¶ 138, 468, 470, 550, 652.

- Agreed to join in a price increase for one drug in exchange for leading a price increase for another drug.  *See, e.g.*, Kroger Compl. ¶ 822; Humana Compl. ¶ 271.

Although Plaintiffs emphasize in their Opposition their allegations concerning "the existence of the 'fair share' code of conduct," Opp. at 17, they do not allege that ***Breckenridge*** engaged in any acts in furtherance of that so-called code of conduct.  Further, Plaintiffs' Opposition does not shed any additional light on how their virtually nonexistent allegations against Breckenridge could possibly form the basis of holding it jointly and severally liable for a hypothetical and totally unsupported overarching conspiracy involving up to 40 drugs.

Furthermore, Plaintiffs proffer threadbare allegations regarding Breckenridge's supposed participation in a Propranolol-specific conspiracy.  They neither allege facts demonstrating an agreement by Breckenridge with another manufacturer to fix the price of Propranolol capsules nor any facts that show parallel conduct.  In addition, they fail to allege the existence of any circumstantial evidence ("plus factors") from which the Court could plausibly infer the existence of an agreement to fix prices.

Because the Kroger and Humana Amended Complaints are devoid of any specific facts demonstrating that Breckenridge was aware of, and consciously committed to, any alleged overarching conspiracy, or even a conspiracy relating to Breckenridge's sale of Propranolol capsules, Breckenridge should be dismissed with prejudice from the Kroger and Humana Amended Complaints.

## ARGUMENT

### I. PLAINTIFFS FAIL TO PLEAD THAT BRECKENRIDGE PARTICIPATED IN THE OVERARCHING CONSPIRACY

It is undisputed that in order to assert an overarching conspiracy claim against Breckenridge, Plaintiffs must plead facts showing that (1) Breckenridge, along with each other alleged conspirator, was aware of, and committed to, the common goal of the overarching conspiracy that transcended the alleged Propranolol capsule-specific agreement; (2) the alleged overarching conspiracy agreement contemplated a result "that will not continue without the cooperation of the conspirators," i.e., that the alleged Propranolol capsule conspiracy was interdependent with the other alleged individual drug conspiracies; and (3) there was sufficient overlap among the participants in the alleged Propranolol capsule conspiracy with the participants in the other 40 alleged individual drug conspiracies. *United States v. Kelly*, 892 F.2d 255, 258-59 (3d Cir. 1989); *In re Generic Pharms. Pricing Antitrust Litig.*, 338 F. Supp. 3d 404, 437-48 (E.D. Pa. 2018) (16-MD-2724, Dkt. No. 721 at 40-41) ("Dismissal Order"); *see also* Joint Mem. at 6. Plaintiffs must plead "with precision" the scope of the alleged overarching conspiracy. *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 339 (3d Cir. 2010).[3] Plaintiffs have not come close to meeting this pleading standard as to Breckenridge.

> **A. Plaintiffs Fail to Plead That Breckenridge Was Committed to the Common Goal of an Overarching Conspiracy to Fix the Prices of Numerous Drugs that It Did Not Sell**

---

[3] In their Opposition, Plaintiffs mischaracterize Breckenridge's Motion to Dismiss as asking the "Court to reconsider Judge Rakoff's decision." Opp. at 2. However, neither Humana nor Kroger ever filed a case in the Southern District of New York, and their present operative Amended Complaints were not the subject of Judge Rakoff's April 6, 2017 pre-transfer decision. Thus, the Judge Rakoff decision has no bearing on this Motion challenging the sufficiency of these complaints.

Plaintiffs claim the alleged overarching conspiracy involved either 27 (Humana Compl.) or 40 (Kroger Compl.) drugs.  However, in the absence of any factual allegations connecting any agreement to engage in that overarching conspiracy to the sole drug-specific agreement that Breckenridge is alleged to have participated in, i.e., with regard to Propranolol capsules, Plaintiffs have not and cannot properly plead that Breckenridge joined and participated in the alleged overarching conspiracy.  Merely alleging a series of separate, parallel agreements among different manufacturers for the sale of different drugs that Breckenridge does not sell is plainly insufficient.  *See, e.g.*, *Ins. Brokerage Antitrust Litig.*, 618 F.3d at 350-51 (dismissing global conspiracy claim and explaining that allegedly similar "pernicious practices" among different groups of defendants did not "plausibly imply an industry-wide conspiracy").  Even the alleged existence of multiple, discrete conspiracies that "may evidence a widespread problem in the industry" does not establish an overarching conspiracy.  *Precision Assocs. v. Panalpina World Transport (Holding) Ltd.*, No. 08-CV-42, 2011 WL 7053807, at *27-30 (E.D.N.Y. Jan. 4, 2011), *report and recommendation adopted*, No. 08-CV-42, 2012 WL 3307486 (E.D.N.Y. Aug. 13, 2012).

Plaintiffs cannot meet their pleading burden by arbitrarily sweeping Breckenridge in with other Defendants and then attributing the other Defendants' alleged improper behavior to Breckenridge.  Instead, to state a claim that Breckenridge joined and participated in the alleged overarching conspiracy, Plaintiffs must plead "allegations specific to [Breckenridge] alleging [Breckenridge's] role in the alleged conspiracy," "that plausibly suggest that [Breckenridge] participated in th[at] conspiracy."  *In re Optical Disk Drive Antitrust Litig.*, No. 3:10-MD-2143 RS, 2014 WL 3378336, at *4 (N.D. Cal. July 10, 2014) (citing *In re Cathode Ray Tube (CRT)*

*Antitrust Litig.,* 738 F. Supp. 2d 1011, 1019 (N.D. Cal. 2010)).  Plaintiffs' allegations utterly fail to meet this required level of specificity as to Breckenridge.

In their Opposition, Plaintiffs attempt to explain away the absence of any specific allegations as to Breckenridge by arguing that "the full scope of the conspiracy is still unknown." Opp. at 17.  In essence, Plaintiffs argue that, at some unidentified time in the future, they may be able to allege specific facts that Breckenridge participated in the alleged overarching conspiracy. Such speculative assertions are not a substitute for the required specificity in pleading and do not afford Plaintiffs a basis to survive Breckenridge's Motion to Dismiss under Rule 12(b)(6).  *See, e.g.*, *Ins. Brokerage Antitrust Litig.*, 618 F.3d at 324 ("But this does not mean that a § 1 claim will be considered adequately pled because of the bare possibility that discovery might unearth direct evidence of an agreement.").  Instead, the complaint must "delineate[] to some sufficiently specific degree" that each defendant "purposefully joined and participated in the conspiracy."  *In re Processed Egg Prods. Antitrust Litig.*, 821 F. Supp. 2d 709, 720 (E.D. Pa. 2011).  *See also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("[I]t is clear that conclusory or 'barebones' allegations will no longer survive a motion to dismiss.").

Plaintiffs' Opposition makes clear that they have not and cannot allege the requisite facts to support their claim that Breckenridge joined and participated in the alleged overarching conspiracy.  Indeed, Plaintiffs' Amended Complaints do not include the necessary who, what, where, when, and how as to Breckenridge's role in the alleged overarching conspiracy.  *See In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1194 n.6 (9th Cir. 2015) (stating that plaintiffs must allege "who, did what, to whom (or with whom), where, and when" regarding the agreement in order to state a Section 1 claim) (internal citations omitted).  In their

-5-

Opposition, Plaintiffs only list the following unconnected allegations in support of their claim that "Breckenridge participated in an overarching conspiracy:"

- "In November 2013, a mere eight months after launching Propranolol, Breckenridge led an extraordinary price increase immediately after attending a GPhA conference in Maryland with its alleged co-conspirators."  Opp. at 17.

- Breckenridge participated "in HDMA with numerous other Defendants, including Propranolol Defendants that also sell in competition with makers of every drug in the MDL."  *Id.*

- "Breckenridge[ ha]s ANDAs for drugs other than Propranolol."  *Id.*[4]

- "[T]he existence of the 'fair share' code of conduct – a code alleged to protect and reward precisely such price increases."  *Id.*

These barebones allegations are insufficient to support an alleged price-fixing conspiracy related to Propranolol capsules, much less a 40-drug overarching conspiracy.

Addressing Plaintiffs' assertions, as a threshold matter, it is black letter law that the mere allegation that a competitor increased its price after attending a trade association meeting, without more, is insufficient to form the basis for a Section 1 antitrust conspiracy claim.  *See Just New Homes, Inc. v. Beazer Homes*, 293 F. App'x 931, 934 (3d Cir. 2008) ("Membership in a trade association, without more, does not violate the antitrust laws."); *Petruzzi's IGA Supermarkets, Inc. v. Darling-Del. Co.*, 998 F.2d 1224, 1235 (3d Cir. 1993) ("[O]pportunity to conspire, without more, will not sustain an inference that a conspiracy has taken place."); *Hinds Cty., Miss. v. Wachovia Bank N.A.*, 620 F. Supp. 2d 499, 513-515 (S.D.N.Y. 2009) ("[T]he CAC's general references to a conspiracy involving all of the Defendants and its reliance on industry-wide trade associations and conferences and various government investigations cannot help Named Plaintiffs satisfy the standard for stating a § 1 claim.").  *See also* Dismissal Order,

---

[4] It is worth noting that there are no Complaint citations supporting this argument.  Furthermore, Plaintiffs fail to connect this unsupported statement to their alleged overarching conspiracy.

338 F. Supp. 3d at 439, Dkt. No. 721 at 42 ("'Participation in a trade group association and/or attending trade group meetings, even those meetings where key facets of the conspiracy allegedly were adopted or advanced, are not enough on their own to give rise to the inference of agreement to the conspiracy.'") (quoting *In re Processed Egg Prods. Antitrust Litig.*, 821 F. Supp. 2d 709, 722 (E.D. Pa. 2011)).

Furthermore, Plaintiffs fail to link the allegation concerning Breckenridge's Propranolol pricing to the alleged overarching conspiracy.  For example, Plaintiffs assert that the alleged overarching conspiracy was implemented by Defendants that traded market share or customers for one drug in exchange for market share or customers for another drug.  Kroger Compl. ¶¶ 137, 819; Humana Compl. ¶¶ 262, 267.  However, Plaintiffs do not allege that Breckenridge traded market share or customers for Propranolol capsules in exchange for market share or customers for another drug.  Courts routinely dismiss claims of an overarching conspiracy where, as here, the allegations fail to link the separate alleged conspiracies to one another.  *See, e.g.*, *Ins. Brokerage Antitrust Litig.*, 618 F.3d at 348-51 (dismissing global conspiracy claim and explaining that even allegedly similar "pernicious industry practices" among different groups of defendants did not "plausibly imply an industrywide conspiracy"); *United States v. Smith*, 82 F.3d 1261, 1269-70 (3d Cir. 1996) (finding that two kickback schemes constituted two conspiracies rather than one where one scheme in no way benefitted from the existence of a similar scheme in another state) (quoting *Blumenthal v. United States*, 332 U.S. 539, 558 (1947)); *Sonterra Capital Master Fund Ltd. v. Credit Suisse Grp. AG*, 277 F. Supp. 3d 521, 546 n.11 (S.D.N.Y. 2017) (noting that the "complaint [did] not plausibly allege that these two alleged patterns of manipulation were part of the same conspiracy").

In addition, Plaintiffs overstate the extent of the allegations concerning Breckenridge's "participation" in trade associations, most particularly HDMA.[5]  A review of all of the allegations concerning Breckenridge's attendance at trade association meetings across the relevant operative Complaints (DPP, EPP, IRP, Humana, Kroger) suggests that Breckenridge attended only *five* HDMA meetings during the *six years* from 2011 through 2016.  Kroger Compl. Ex. 3; Humana Compl. Ex. A; DPP Compl. ¶ 132; EPP Compl. ¶ 158; IRP Compl. ¶ 131.  Additionally, although Plaintiffs allege that Breckenridge was a member of HDMA, they do not allege that any Breckenridge employees participated on the HDMA Board of Directors, or even that Breckenridge was an active HDMA member.  *Cf.* Kroger Compl. ¶ 159; Humana Compl. ¶ 184 (alleging participation by other Defendants).

Perhaps most revealingly, although Plaintiffs stress "the existence of the 'fair share' code of conduct," Opp. at 16-17, they never allege that ***Breckenridge*** engaged in any acts that were purported to be in furtherance of this so-called code of conduct.  Specifically, Plaintiffs do ***not*** allege that Breckenridge engaged in any of the following examples of "fair share" conduct identified in Plaintiffs' Amended Complaints that other Defendants allegedly engaged in:

- Traded customers in one drug market for customers in another drug market.  *See, e.g.*, Kroger Compl. ¶ 137; Humana Compl. ¶¶ 265, 267.

- Agreed to concede market share for one generic drug in exchange for another company agreeing to concede market share for a second generic drug.  *See, e.g.*, Kroger Compl. ¶ 819; Humana Compl. ¶ 262.

- Declined to compete on, or agreed to "walk away" from, a bid for one drug in exchange for the opportunity to provide a pre-determined winning bid for a different drug.  Humana Compl. ¶¶ 265, 483.  *See also* Kroger Compl. ¶¶ 138, 468, 470, 550, 652.

---

[5] Notably, neither Kroger nor Humana allege that Breckenridge was even a member of ***any trade association*** at the time of its alleged Propranolol capsule price increase in November of 2013.

- Declined to offer a competitive bid, so as not to undermine an agreed-upon price increase, or was "punished" by other Defendants for failing to do so. *See, e.g.*, Kroger Compl. ¶¶ 584, 600, 707, 822. *See also* Humana Compl. ¶¶ 13, 174, 445, 485, 627, 630.

- Coordinated price increases with Defendants that manufactured other generic drugs, so that price increases across drugs would be staggered and the alleged overarching conspiracy would be concealed. *See, e.g.*, Kroger Compl. ¶ 823; Humana Compl. ¶ 758.

- Agreed to join in the price increase for one drug in exchange for leading a price increase for another drug. *See, e.g.*, Kroger Compl. ¶ 822; Humana Compl. ¶ 271.

- Discontinued production of any drug after a price increase to avoid excess capacity, or benefitted from another company discontinuing production in this way. *See, e.g.*, Kroger Compl. ¶ 825; Humana Compl. ¶ 431.

- Agreed to allow a competitor to reach its "fair share" for a drug. *See, e.g.*, Kroger Compl. ¶¶ 9, 372, 468, 481, 692-93, 700, 779; Humana Compl. ¶¶ 237, 262-68, 279, 437, 442, 505, 595-96, 606, 611, 627, 667, 701.

- Manufactured a drug that was subject to "demand-side substitution," i.e., the drug was used for a similar purpose as another drug, so that a price increase for that one drug was relevant to the success of price increases for similar drugs. Kroger Compl. ¶ 826.

Plaintiffs also fail to allege any facts suggesting that Breckenridge even had knowledge of other alleged price-fixing arrangements concerning other Defendants and other drugs. Similar to Plaintiffs' claims here, in *In re Automotive Parts Antitrust Litigation*, No. 12-CV-00203, 2016 WL 8200512, *4 (E.D. Mich. April 13, 2016), the plaintiffs alleged an overarching "megaconspiracy" covering 18 different auto parts. The court explained that, to state a claim for such an overarching conspiracy, the plaintiffs "must allege facts creating at least an inference as to **each Defendant's** knowing participation in a conspiracy to raise, fix, maintain, or stabilize the price of auto parts, **not just the parts it makes or sells**." *Id.* (emphases added). That court held that the plaintiffs merely alleged conspiracies that were "multiple, separate, and product-specific" because there were "no allegations . . . of deals between makers of different component

-9-

parts, and no inference arises of knowledge outside of each Defendants' own specific deals." *Id.*
The allegations of the Kroger and Humana Amended Complaints as to Breckenridge suffer from
the same fatal infirmity.

Not only have Plaintiffs failed to plead that Breckenridge knew of and participated in the
overarching conspiracy, Plaintiffs have failed even to allege facts that would suggest that it
would be plausible for Breckenridge to enter into a conspiracy to fix prices for dozens of drugs it
did not even sell.  In their Opposition, Plaintiffs argue that all Defendants "shared a commitment
to the common goal of realizing artificially high profits from the sale of their generic drugs."
Opp. at 20; *see also, e.g.,* Kroger Compl. ¶¶ 22, 828; Humana Compl. ¶¶ 204, 259.  Plaintiffs do
not allege, however, that Breckenridge had any interest in, or incentive to, increase prices for any
products that it did not sell.  Indeed, it makes "no practical or economic sense" for Breckenridge
to provide a windfall to the numerous other drug manufacturers as to their other drugs by
participating in the alleged overarching conspiracy.  *See Loren Data Corp. v. GXS, Inc.*, 501 F.
App'x 275, 281 (4th Cir. 2012) (dismissing claim where plaintiff's allegations contradict an
inference of a conspiracy and "the conspiracy posited . . . simply makes no practical or economic
sense").

**B.      Plaintiffs Fail to Plead Breckenridge's Interdependence as to the Alleged
Overarching Conspiracy**

Plaintiffs argue in their Opposition that they alleged sufficient facts to demonstrate the
necessary interdependence among the alleged individual drug conspiracies, and baselessly
conclude that Breckenridge "benefited" because the other Propranolol capsule suppliers allowed
Breckenridge to gain its "fair share" and that other Defendants "could recoup any lost profits on

their sales of other drugs." Opp. at 25.[6]  This assertion is pure conjecture and is devoid of any

factual support — both as to the argument that the other Propranolol capsule suppliers

consciously "allowed" Breckenridge to gain share, and that they would suffer lost profits that

"could be recouped" on some other unidentified products (that Breckenridge does not sell).  *See*

*id.*  Accordingly, the Amended Complaints fail to demonstrate that the success of the alleged

Propranolol capsule conspiracy was dependent on the success of the other alleged conspiracies

involving other generic drug manufacturers and numerous other drugs.  *See In re K-Dur Antitrust*

*Litig.*, No. 01-1652, 2016 WL 755623, at *21 (D.N.J. Feb. 25, 2016) (in evaluating

interdependence, the court engages in an inquiry focused on "the extent to which the success or

failure of one conspiracy is independent of a corresponding success or failure by the other").

In their Amended Complaints, Plaintiffs allege that the overarching conspiracy was

implemented by Defendants that traded market share or customers for one drug in exchange for

market share or customers for another drug.  *See, e.g.*, Kroger Compl. ¶¶ 137, 819; Humana

Compl. ¶¶ 262, 267.  As discussed *supra* at 7, Plaintiffs, however, do not and cannot allege that

Breckenridge traded market share or customers for Propranolol capsules in exchange for market

share or customers for another drug, or that the success of the other alleged conspiracies was

dependent on Breckenridge's participation.  Similarly, Plaintiffs do not and cannot allege that

Breckenridge's decision to raise its price for Propranolol capsules in November of 2013 had any

impact or interdependency with any price increase on any other drug, some of which were

---

[6] Neither of these arguments have any actual support in any allegations in Plaintiffs' Amended Complaints, but are being improperly advanced for the first time in the Opposition.  *See, e.g.*, *U.S. ex rel. Potra v. Jacobson Cos.*, No. 1:12-CV-01600-WSD, 2014 WL 1275501, at *3 (N.D. Ga. Mar. 27, 2014) (refusing to consider allegations asserted for the first time in an opposition to motion to dismiss because they are "not properly before the Court"); *Davis v. Powell*, No. 10CV01891 JLS RBB, 2011 WL 4344251, at *10 (S.D. Cal. Aug. 9, 2011), *report and recommendation adopted*, 2011 WL 4344240 (S.D. Cal. Sept. 15, 2011) (same).

alleged to have begun over two years earlier (in the summer of 2011) or eight months later (in June of 2014). *See, e.g.,* Kroger Compl. ¶ 833.

      **C.**      **Plaintiffs Fail to Allege Sufficient Overlap to Support the Existence of the Alleged Overarching Conspiracy**

In their Opposition, Plaintiffs argue that the individual conspiracies sufficiently overlap based solely on the proposition that "Breckenridge's Propranolol co-conspirator, Actavis, is a participant in at least eleven drug-specific conspiracies." Opp. at 26. However, "the mere overlap of some of defendants in some of the transactions is, on its own, insufficient to establish an overarching agreement." *Auto. Parts*, 2016 WL 8200512, at *4. As a threshold matter, Plaintiffs provide no support for their assertion that Actavis is "Breckenridge's Propranolol co-conspirator," but appear to rest that conclusion solely on the fact that Actavis sold Propranolol capsules; participation as a competitor in a market does not establish the existence of a conspiracy. *See, e.g.*, *Ins. Brokerage Antitrust Litig.*, 618 F.3d at 324. Additionally. Plaintiffs also fail to explain why the fact that Actavis may be implicated in multiple alleged individual drug conspiracies makes it any more likely that Breckenridge was aware of, and committed to, any alleged price-fixing conspiracy involving Actavis, much less an overarching price-fixing conspiracy involving up to 39 drugs that Breckenridge did not sell. Moreover, whether or not another Defendant (such as Actavis) that sold Propranolol capsules entered into agreements concerning other unrelated drugs does not demonstrate sufficient overlap that would support the existence of an alleged overarching conspiracy involving Breckenridge.

**II.**      **<u>PLAINTIFFS FAIL TO PLEAD THAT BRECKENRIDGE PARTICIPATED IN A CONSPIRACY AS TO PROPRANOLOL CAPSULES</u>**

In their Opposition, Plaintiffs acknowledge that they cannot identify any direct evidence of an agreement by Breckenridge with another manufacturer to fix the price of Propranolol

capsules.  Opp. at 3.[7]  Accordingly, to survive Breckenridge's Rule 12(b)(6) Motion to Dismiss, Plaintiffs must plausibly allege circumstantial evidence of an agreement to fix the price of Propranolol capsules.  *See* Prop. Mem. at 13.  Specifically, Plaintiffs must adequately plead both (1) parallel conduct and (2) additional circumstantial evidence ("plus factors") from which the Court could plausibly infer the existence of an agreement to fix prices.  *See, e.g.*, *Ins. Brokerage Antitrust Litig.*, 618 F.3d at 321.[8]

The Kroger and Humana Amended Complaints contain only the barest of threadbare allegations regarding Breckenridge's supposed participation in any Propranolol conspiracy, and those allegations utterly fail to survive Breckenridge's Rule 12(b)(6) challenge.  *See generally* Mem. at 5 n.6.  The Kroger Amended Complaint contains only the following meager and patently insufficient allegations as to Propranolol Capsule Defendants' price increases:

- Breckenridge's price increase began in November of 2013, when it increased prices for its Propranolol capsules by 88% to 140%.  Kroger Compl. ¶ 744.

- Upsher's price increase began in December of 2013, when it increased prices for its Propranolol capsules by 49% to 79%.  *Id.*

- Actavis's price increase began in February of 2014, when it increased prices for its Propranolol capsules by 64% to 81%.  *Id.*[9]

---

[7] Breckenridge addresses generally the pleading failures regarding the alleged Propranolol conspiracy in its submissions in support of its Motion to Dismiss the Class Plaintiffs' Complaints. 16-PP-27240, Dkt. Nos. 87, 87-1 ("Prop. Mem."), and the Reply Memorandum ("Prop. Reply Mem.") submitted in that docket today, and refers the Court to the arguments therein.  Because, in addition to the arguments regarding the alleged overarching conspiracy, Kroger and Humana raise specific arguments in their Opposition about the sufficiency of their allegations as to Breckenridge related to the alleged Propranolol conspiracy, for the convenience of the Court, Breckenridge replies to those particular arguments here.

[8] Even if the Court were to rule that Plaintiffs adequately pleaded an antitrust conspiracy as to Propranolol capsules as to Breckenridge, that would not, by itself, be sufficient to support a finding that Breckenridge joined and participated in the alleged overarching conspiracy.  *See, e.g.*, *Auto. Parts*, 2016 WL 8200512, at *3-4 (factual allegations as to "the existence of some agreements among some defendants" were not enough to support an overarching conspiracy allegation where there were "no facts supporting a single agreement among all of them"); *see also* Joint Mem. § A.3 (pleading one drug-specific conspiracy is not a short cut to pleading an overarching conspiracy).

[9] Kroger, which alleges a Propranolol conspiracy (and not separate capsule and tablet conspiracies, like other Plaintiffs), argues simultaneously that two Heritage executives' guilty pleas should be enough to implicate

The Humana Amended Complaint fares no better, as the allegations as to the Propranolol Capsule Defendants' price increases there are even more sparse: "Propranolol Capsule Defendants increased prices on Propranolol capsules between December 2013 and October 2014." Humana Compl. ¶ 373. The Humana Amended Complaint contains not a single allegation about a Breckenridge price increase, of Propranolol or any other product; further, it contains no allegations about Propranolol price increases implemented by any other seller, thereby failing entirely to allege even parallel pricing. *But see* Opp. at 3 (Plaintiffs concede parallel pricing is a pleading requirement).

In their Opposition, Plaintiffs merely reiterate that "[a]s a result of generic pharmaceutical industry collusion, Breckenridge increased the price of all dosages of its Propranolol in November 2013, by 88% to 140%." Opp. at 2.[10] Not only do Plaintiffs' allegations fail to allege parallel pricing with the requisite specificity, *see, e.g.*, *Resco Prods., Inc. v. Bosai Minerals Grp. Co.*, 158 F. Supp. 3d 406, 424 (W.D. Pa. 2016), the Kroger allegations actually show that the Propranolol Capsule Defendants' price increases occurred at separate times and involved significantly different percentage increases, and therefore are insufficient as a basis for a claim of a conspiracy as to sales of Propranolol capsules. *See Parker*

---

Breckenridge and that it is irrelevant that the States did not name Breckenridge in its Heritage-centric complaint. *Compare* Opp. 6-8 *with id.* at 7 n.29. Kroger's inconsistent arguments further reveal the flaw in its strained attempt to show Breckenridge's participation in any Propranolol conspiracy.

[10] As a reminder to the Court, Breckenridge only sells the capsules formulation of Propranolol; other Defendants sell only the tablets formulation, and Actavis sells both. The infirmity of the allegations as to Breckenridge is further demonstrated by the inconsistencies among the various plaintiffs' allegations. Class Plaintiffs allege separate Propranolol capsule and tablet conspiracies, and allege that they began and ended at different times and had different participants, and name Breckenridge only as to the capsules. In contrast, Kroger alleges a cross-formulation Propranolol conspiracy, but totally fails to address its inability to allege similar price increases at similar times or in similar amounts across all sellers of Propranolol products (putting aside the various price decreases detailed by the IMS charts alleged by Class Plaintiffs, Prop. Mem. at 12-17). Most recently, and while it is not before the Court on these Motions to Dismiss, the complaint filed in May of 2019 by the State AGs and recently transferred to this MDL alleges a conspiracy as to Propranolol tablets, but does not name Breckenridge as a defendant in connection with those allegations.

*Auto Body Inc. v. State Farm Mut. Auto. Ins. Co.*, 171 F. Supp. 1274, 1286 (M.D. Fla. 2016) (granting motion to dismiss where competitors matched a price leader's increase "over the next month or two"): *see also* Prop. Mem. at 12-17; Prop. Reply Mem. at 4-6.  And, as discussed above in the context of the overarching conspiracy pleading infirmities, Plaintiffs have failed to plead any of the necessary "plus factors."  *See supra* at 4-12.

Finally, because Plaintiffs have not and cannot allege that Breckenridge's sale of Propranolol capsules is the subject of any ongoing governmental investigation, Plaintiffs resort to invoking the existence of governmental investigations involving different parties and products. Opp. at 6-7.  It is well established, however, that allegations of governmental investigations must relate to the actual product or parties at issue in order to constitute a valid "plus factor."  *See In re Chocolate Confectionary Antitrust Litig.*, 801 F.3d 383, 403 (3d Cir. 2015) (holding that plaintiffs must show that relevant activities in different businesses "are sufficiently linked or tied in some way, e.g., the people involved in the conspiracies are the same or overlapping"); *see also* Prop. Mem. at 19-20; Prop. Reply Mem. at 9-10.  Plaintiffs fail to connect any investigation to Breckenridge's Propranolol capsules sales or pricing.  Accordingly, the governmental investigations are not pertinent "plus factors" as to Breckenridge.

## <u>CONCLUSION</u>

For all of the reasons set forth herein, as well as in the Memorandum of Law, the Joint Memorandum and Reply Memorandum, and the Propranolol Memorandum and Reply Memorandum, Breckenridge respectfully requests that the Court dismiss with prejudice all of the claims in the Kroger Amended Complaint as to Breckenridge (Counts 1 and 28) and all of the federal claims in the Humana Amended Complaint as to Breckenridge (Counts LXXXVI, XC, and CVI-CX).

Dated:  June 13, 2019

Respectfully submitted,

/s/ *Stacey Anne Mahoney*
Stacey Anne Mahoney
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, New York  10178
Telephone:  (212) 309-6000
Facsimile:  (212) 309-6001
stacey.mahoney@morganlewis.com

Charles J. Reitmeyer
(PA ID NO. 62751)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA  19103
Telephone:  (215) 963-5000
Facsimile:  (215) 963-5001
charles.reitmeyer@morganlewis.com

*Counsel for Defendant*
*Breckenridge Pharmaceutical, Inc.*