UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | : : : : | MDL 2724 16-MD-2724 |
| THIS DOCUMENT RELATES TO: | : : | |
| *Humana Inc. v. Actavis Elizabeth, LLC, et al.* | : : | 18-cv-3299 |
| *Marion Diagnostic Center, LLC, et al. v. McKesson Corp., et al.* | : : : | 18-cv-4137 |
| *In re: State Attorneys General Litigation* | : : | 17-cv-3768 |
| *Ahold USA Inc., et al. v. Actavis Holdco U.S., Inc., et al.* | : : | 18-cv-2641 |
| *The Kroger Co., et al. v. Actavis Holdco U.S., Inc., et al.,* | : : | 18-cv-284 |
| *West Val Pharmacy, et al. v. Actavis Holdco U.S., Inc., et al.* | : : : | 18-cv-2533 |
| *1199SEIU National Benefit Fund, et al. v. Actavis Holdco U.S., Inc., et al.* | : : : : | 18-cv-2401 |

**DEFENDANT GLENMARK PHARMACEUTICALS INC., USA'S
REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
ITS INDIVIDUAL MOTION TO DISMISS PLAINTIFFS' SHERMAN ACT
<u>CLAIMS IN THE MULTI-DRUG COMPLAINTS</u>**

**TABLE OF CONTENTS**

Page

INTRODUCTION ........................................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

I. PLAINTIFFS' OPPOSITION FAILS TO PLAUSIBLY ESTABLISH GLENMARK'S PARTICIPATION IN AN OVERARCHING CONSPIRACY .............. 2

    A. Plaintiffs Cannot Muster More Than Conclusory Allegations of "Interdependence" as to Glenmark. ....................................................................... 2

    B. The Multi-Drug Complaints Do Not Establish that Glenmark Had a "Conscious Commitment" to the Purported Overarching Conspiracy. ................. 5

    C. Plaintiffs' Fosi-HCTZ Allegations Undermine Their Overarching Conspiracy Claims. .............................................................................................. 6

II. PLAINTIFFS' INDIVIDUAL FOSI-HCTZ AND PRAVASTATIN CONSPIRACY CLAIMS FAIL. ..................................................................................... 9

CONCLUSION ............................................................................................................................. 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................................. 7, 8

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................................ 1, 3, 4, 7

*In re Burlington Coat Factory Secs. Litig.*,
   114 F.3d 1410 (3d Cir. 1997) ....................................................................................... 10

*In re Generic Pharms. Pricing Antitrust Litig.*,
   338 F. Supp. 3d 404 (E.D. Pa. 2018) ........................................................................... 10

*In re Ins. Brokerage Antitrust Litig.*,
   618 F.3d 300 (3d Cir. 2009) .......................................................................................... 8

*In re K-Dur Antitrust Litig.*,
   2016 WL 755623 (D.N.J. Feb. 25, 2016) ................................................................... 3, 4

*In re Lithium Ion Batteries Antitrust Litig.*,
   2014 WL 309192 (N.D. Cal. Jan. 21, 2014) ............................................................... 5, 6

*In re London Silver Fixing, Ltd., Antitrust Litig.*,
   332 F. Supp. 3d 885 (S.D.N.Y. 2018) ............................................................................ 4

*In re Packaged Seafood Prods. Antitrust Litig.*,
   2017 WL 35571 (S.D. Cal. Jan. 3, 2017) ............................................................. 4, 5, 7

*In re Processed Egg Prods. Antitrust Litig.*,
   902 F. Supp. 2d at 704 (E.D. Pa. 2012) ..................................................................... 4, 8

*United States v. Macchia*,
   35 F.3d 662 (2d Cir. 1994) ............................................................................................ 3

## INTRODUCTION

Plaintiffs have asserted grandiose claims of an industry-wide conspiracy. Their theories as to exactly what that conspiracy is, which products it involved, and who the alleged participants were, vary across plaintiff groups and have shifted over time. The seriousness of Plaintiffs' sweeping and unfounded allegations, the real-world impact those well-publicized assertions have on companies such as Glenmark, and the tremendous burden of defending such amorphous claims in this massive and growing multi-district litigation, demand strict application of the controlling law and a detailed assessment of the actual allegations against each Defendant. Plaintiffs appear to believe that the broader their allegations are the less specific they need to be; they can allege facts (however insufficient) against so-called "core" Defendants, and then sweep in numerous "additional" Defendants such as Glenmark with little more than *ipse dixit* and improper group pleading. Plaintiffs have it exactly backwards. As the Supreme Court held more than a decade ago, district courts should "insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). The scope and complexity of the antitrust case that led the Supreme Court to reach that conclusion in *Twombly* pales in comparison to this litigation.

In their Opposition ("Opp. Br."), Plaintiffs repeat the Multi-Drug Complaints' conclusory and undifferentiated allegations with respect to "Defendants" generally, and dismissively refer to Glenmark's focus on the absence of specific allegations as to it as "myopic." But there are no well-pled allegations that the overarching conspiracy was dependent on the success of Glenmark's alleged participation in the two drug-specific conspiracies (involving Fosi-HCTZ and Pravastatin) where Glenmark is identified, or that Glenmark followed the supposed "rules of the road" to carry out the alleged scheme. Indeed, Plaintiffs' allegations with respect to the

1

purported Fosi-HCTZ conspiracy are fundamentally inconsistent with the core principle underlying their overarching conspiracy theory—that Defendants agreed to abide by "fair share" principles based upon the number and timing of market entrants as to a given drug.  As an initial matter, none of the seven Multi-Drug Complaints contains a single allegation that Glenmark even used the term "fair share," much less provides facts to show that Glenmark abided by that principle.  And, in the case of Fosi-HCTZ, Plaintiffs themselves allege that Heritage was a late entrant, undercut Glenmark's price, and obtained a "dominant" share—hardly the "fair share" that Plaintiffs' theory of the case posits.[1]

Because Plaintiffs have failed to identify well-pled factual allegations *as to Glenmark* as required to state a claim, and their allegations actually contradict their overarching conspiracy theory, Glenmark's motion to dismiss should be granted and the claims against it dismissed.

## ARGUMENT

**I.   PLAINTIFFS' OPPOSITION FAILS TO PLAUSIBLY ESTABLISH GLENMARK'S PARTICIPATION IN AN OVERARCHING CONSPIRACY.**

   **A.   Plaintiffs Cannot Muster More Than Conclusory Allegations of "Interdependence" as to Glenmark.**

Plaintiffs' Opposition concedes that they have no direct evidence of Glenmark's participation in the supposed overarching scheme; they argue instead that the Multi-Drug Complaints circumstantially "suggest that Glenmark joined an overarching multi-drug conspiracy."  Opp. Br. at 3.  But setting aside Plaintiffs' empty assertions that their claims are supported by well-pled, circumstantial allegations, their only response to the absence of plausible allegations of "interdependence" by Glenmark is to repeat the Multi-Drug Complaints' boilerplate allegations as to Defendants generally.  Those allegations fail to explain how

---

[1]   This defect likewise dooms Plaintiffs' stand-alone Fosi-HCTZ conspiracy claim.  Plaintiff Kroger's stand-alone Pravastatin claim is deficient for independent reasons, as set forth below.

*Glenmark's* purported participation in the individual Pravastatin and Fosi-HCTZ conspiracies was necessary to effect the alleged overarching conspiracy.  *See* Opp. Br. at 4 ("'The effectiveness of an agreement on any one drug would be limited and unstable without a broader agreement that encompassed other drugs as well…Defendants understood that in order to be effective, their agreement needed to extend to multiple manufacturers and drugs.'") (quoting EPP CAC ¶ 102).  Such conclusory allegations of interdependence, which are devoid of factual support as to Glenmark, are plainly insufficient under *Twombly*.

The only case cited by Plaintiffs that addresses interdependence—the summary judgment opinion *In re K-Dur Antitrust Litig.*, 2016 WL 755623 (D.N.J. Feb. 25, 2016)—proves Glenmark's point.  In *K-Dur*, plaintiffs alleged that a brand name pharmaceutical manufacturer entered into separate patent settlement agreements with two generic pharmaceutical manufacturers that together comprised an overarching antitrust conspiracy.  *Id.* at *19.  According to plaintiffs, "in order to prevent generic competition for [the drug] K-Dur, Schering, Upsher, and ESI had to work together continuously," and the parties each were motivated to settle the two patent lawsuits to keep both generic versions of K-Dur off the market.  *Id.* at *21.  The court held that "[t]o evaluate interdependence, the court engages in an inquiry focused on 'the extent to which the success or failure of one conspiracy is independent of a corresponding success or failure by the other.'"  *Id.* (quoting *United States v. Macchia*, 35 F.3d 662, 671 (2d Cir. 1994)).  Rejecting the argument that the two patent settlements were interdependent conspiracies, the Court held that speculative "[t]heories about one party's motivations in entering into [an agreement] are not evidence of a conspiracy…particularly on these facts where the Court's inquiry must necessarily focus on the evidence related to the interdependence." *Id.* at

3

*22.[2]  As *K-Dur* demonstrates, Plaintiffs' conclusory allegations that Glenmark supposedly entered into the purported, individual Pravastatin and Fosi-HCTZ conspiracies knowing "that in order to be effective, [its] agreement needed to extend to multiple manufacturers and drugs" is based on pure conjecture—not plausible factual allegations of interdependence.

Plaintiffs try to sidestep this defect by erroneously accusing Glenmark of "compartmentalizing" the allegations of the Multi-Drug Complaints, citing *In re Processed Egg Products Antitrust Litig.*, 902 F. Supp. 2d 704 (E.D. Pa. 2012) (Pratter, J.). But *Processed Eggs* makes plain that Plaintiffs' attempt to tie Glenmark to the supposed overarching conspiracy by lumping the actions of multiple defendants together fails the *Twombly* test:

> [T]he Court properly looks for more than mere repetitive generic reference to 'Defendants' tacked on to a conclusory verb form to connect an individual defendant to an actual agreement in an antitrust conspiracy. Such conclusory, collective language is too convenient, too undisciplined and too unfocused…a complaint that simply uses the global term 'defendants' to apply to numerous parties without any specific allegations that would tie each particularly defendant to the conspiracy is not sufficient.

*Id.* at 710–11 (citations and quotation marks omitted). Plaintiffs' Opposition simply doubles down on their improper group pleading.[3] Such boilerplate allegations about the alleged conduct of other Defendants fails to plausibly allege that **Glenmark** engaged in **any** unlawful activities, and it certainly does not establish interdependence or tie Glenmark to a massive generic drug

---

[2]  Although *K-Dur* was decided on summary judgment, the requirement that an overarching conspiracy claim be supported by something more than pure speculation applies equally on a motion to dismiss. *See, e.g.*, *In re London Silver Fixing, Ltd., Antitrust Litig.*, 332 F. Supp. 3d 885, 897–900 n.7 (S.D.N.Y. 2018).

[3]  *See, e.g.*, Opp. Br. at 4 ("*Defendants* understood that in order to be effective, their agreement needed to extend to multiple manufacturers and drugs.") (quoting EPP CAC ¶ 102) (emphasis added); *id.* ("Plaintiffs allege that *Defendants* shared a 'common goal' of reduced competition across the generic industry") (emphasis added); *id.* (*Defendants* "have implemented a 'collusive methodology' to allocate a 'fair share' of customers and markets to each manufacturer and to raise the price of numerous generic pharmaceuticals") (emphasis added).

4

conspiracy as Plaintiffs claim. *See In re Packaged Seafood Prods. Antitrust Litig.*, 2017 WL 35571, at *6 (S.D. Cal. Jan. 3, 2017) ("unlike *Capacitors*, where there were specific allegations regarding the defendants' participation in *both* disparate conspiracies, here Plaintiffs have put forth specific allegations almost principally regarding tuna and ask the Court to draw the inference that there is no reason to segregate tuna from the overall packaged seafood market.").

**B.     The Multi-Drug Complaints Do Not Establish that Glenmark Had a "Conscious Commitment" to the Purported Overarching Conspiracy.**

Plaintiffs also assert that the overarching conspiracy claims should not be dismissed as to Glenmark because, they argue, "[t]he question in this case is not whether any conspiracy existed, only how far it reached" which is a "question…of fact, and cannot be resolved" on a motion to dismiss. Opp. Br. at 2 (citation and quotation marks omitted). Plaintiffs rely on *In re Lithium Ion Batteries Antitrust Litig.*, 2014 WL 309192, at *2 (N.D. Cal. Jan. 21, 2014), for their argument that "the scope of Glenmark's anticompetitive agreement was not limited to Fosi-HCTZ and Pravastatin, but extended to include all of the drugs identified in Plaintiffs' Complaints, including drugs that Glenmark did not sell." Opp. Br. at 2. But that case actually highlights another dispositive flaw in Plaintiffs' overarching conspiracy claims as to Glenmark.

Plaintiffs omit the fact that in *Lithium Ion* the court dismissed two defendants from the case because the allegations failed to demonstrate that they were sufficiently tied to an alleged overarching conspiracy through a "conscious commitment" to the purported collusive scheme. *Lithium Ion*, 2014 WL 309192, at *13. With respect to those defendants, the court observed:

> [B]oth complaints allege in generic, conclusory terms that defendant subsidiaries participated in the conspiracy . . . . Plaintiffs are required to allege that each individual defendant joined the conspiracy and played some role in it because, at the heart of antitrust conspiracy is an agreement and a conscious decision by each defendant to join it. Lacking plausible allegations of such a decision, the defendant[s] . . . . are not properly part of the case.

5

*Id.* (citation and quotation marks omitted).  Here too, Plaintiffs argue in conclusory terms that, "Glenmark knew about, assented to, took actions in furtherance of and benefitted from the overarching conspiracy," Opp. Br. at 1, yet they reference no plausible allegations ***concerning Glenmark*** that reflect a conscious commitment to join the overarching conspiracy.  For example, Plaintiffs contend that "[t]here are numerous factual allegations specific to Glenmark, which support a reasonable inference that Glenmark joined an overarching multi-drug agreement," Opp. Br. at 5, but Plaintiffs' Opposition cites none.  And Plaintiffs' Opposition leaves entirely unopposed Glenmark's argument that it did not implement any of the methods—the "rules of the road," as Plaintiffs call them—that the conspiring Defendants purportedly used to carry out the alleged overarching conspiracy, and which, presumably, would be Plaintiffs' best evidence of Glenmark's conscious commitment to join the overarching conspiracy.  *See* Glenmark Mot. at 6. Plaintiffs' failure to allege well-pled facts establishing a "conscious commitment" by Glenmark is independently dispositive of their claims predicated on an overarching conspiracy.

### C. Plaintiffs' Fosi-HCTZ Allegations Undermine Their Overarching Conspiracy Claims.

In an attempt to salvage their overarching conspiracy claims, Plaintiffs argue in their Opposition that "[i]t is plain from the Complaints that the [alleged] anticompetitive conduct relating to Fosi-HCTZ did not occur in isolation." Opp. Br. at 9.  But, Plaintiffs' allegations as to Glenmark with respect to Fosi-HCTZ actually underscore the fatal defects in their claims.

First, Plaintiffs concede that they do not know the content of the communications that they claim took place between Glenmark employees and employees of other Fosi-HCTZ manufacturers.  *See* Opp. Br. at 8 ("the precise content of Glenmark's communications may not be included in Plaintiffs' Complaints"), at 15 ("this direct evidence does not directly inculpate Glenmark").  It is beyond dispute that "where the well-pleaded facts do not permit the court to

6

infer more than the mere possibility of misconduct, the complaint has alleged but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Here, Plaintiffs do not explain how the content of communications that they do not know, which they speculate involved Fosi-HCTZ, "show" that Glenmark participated in the alleged overarching conspiracy concerning more than 30 other drugs. Plaintiffs argue that Glenmark impermissibly asks the Court "for inferences that are *im*plausible (and in its favor)." Opp. Br. at 8. But Glenmark's Motion simply pointed out that the communications alleged by Plaintiffs were at least as likely to be lawful as unlawful. It is Plaintiffs who misapply the applicable pleading standard. "Facts 'merely consistent with' a defendant's liability fall short of a plausible entitlement to relief." *In re Packaged Seafood Prods. Antitrust Litig.*, 2017 WL 35571, at *4 (quoting *Twombly*, 550 U.S. at 557). Plaintiffs' allegations that Glenmark employees communicated with employees of other generic manufacturers supposedly concerning Fosi-HCTZ are insufficient to plead a conspiracy as to that drug—they certainly cannot form the basis for a viable overarching conspiracy claim as to Glenmark with respect to more than 30 other drugs and dozens of other companies.[4]

Second, Plaintiffs assert that, because they allege that certain other Defendants communicated about drugs other than Fosi-HCTZ around the time of the purported Fosi-HCTZ conspiracy, Glenmark must have communicated about those drugs too. Opp. Br. at 9. This is also pure speculation. It does not contain enough "factual content [as to Glenmark to] allow[] the court to draw the reasonable inference that [Glenmark] is liable for the misconduct alleged."

---

[4] The seven Multi-Drug Complaints name 47 Defendants, yet Glenmark is only alleged to have had any communicated with, at most, four of them. *See* States' CAC ¶¶ 95, 306–28; DPP ACAC ¶¶ 192–215; EPP CAC ¶¶ 142, 453–93; IRP ACAC ¶¶ 189–207; Kroger AC ¶¶ 175, 546–65, 716–41. Indeed, two of the complaints do not allege *any* communications with respect to Glenmark at all. *See* Humana AC; Marion AC. And, even where there are allegations that communications occurred, there are zero facts pled as to the substance of those communications—just sheer speculation and conclusions.

*Iqbal*, 556 U.S. at 678.  Plaintiffs make the remarkable concession that this unsupported argument presents a "somewhat harder question."  Opp. Br. at 9.  Plaintiffs ***should*** find it "hard" to justify such unfounded claims; but for the Court, the application of the controlling pleading standard to these allegations is quite simple.  "A plaintiff must…offer allegations that plausibly suggest that the defendant agreed to a conspiracy, which, in the antitrust context, is a conscious commitment to a common scheme designed to achieve an unlawful objective."  *In re Processed Egg Prods. Antitrust Litig.*, 902 F. Supp. 2d at 709–10 (citing *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 315 (3d Cir. 2009)).  Allegations that other Defendants supposedly conspired with respect to other drugs say nothing about whether Glenmark made the required conscious commitment to the expansive overarching conspiracy that Plaintiffs hypothesize.

Third, Plaintiffs argue that Glenmark is implicated in the overarching "fair share" conspiracy because Heritage allegedly gained market share upon entry into the Fosi-HCTZ market, Opp. Br. at 10, even though it "announced a list price identical to [market incumbent] Sandoz, slightly higher than [market incumbent] Aurobindo, and slightly lower than [market incumbent] Glenmark."  EPP CAC ¶ 456.  As an initial matter, Plaintiffs' allegations are contradictory because they claim that Heritage "was not offering better pricing," *id.* ¶ 457, when, in fact, Plaintiffs affirmatively allege that Heritage announced a list price that was *lower* than Glenmark's price.  *Id*. ¶ 456.  Therefore, Heritage's market share growth indicates competition, not collusion.  Indeed, Plaintiffs allege: "[i]n a competitive generic drug market, new market entrants typically price their product below the prevailing market price in order to gain market share."  *See id.* ¶ 118.

Moreover, according to Plaintiffs, in 2014, "Heritage significantly raised its prices for Fosinopril-HCTZ, [and] it did not lose market share until at least 2016 (when it appears to have

8

begun to exit the market). Maintaining a dominant share of the market was only possible because of the 'fair share' agreement between Heritage, Aurobindo, Citron, Glenmark and Sandoz." *Id.* ¶ 490. But the alleged fact that Heritage gained a dominant market share is fundamentally incompatible with how Plaintiffs claim the "fair share" scheme operated. Plaintiffs allege:

> "Fair shares" were allocated to Defendants within a particular drug market based upon the number of competitors in the market and the timing of their entry into the market. Traditionally, the first entrant to the market received the largest share of the market, and each subsequent entrant received a progressively smaller share. This system aimed to allocate to each Defendant a "fair share" of the market without depressing prices.

*Id.* ¶ 122. Applying the rules of the "fair share" conspiracy as Plaintiffs have conceived it, Heritage, as the fourth competitor to enter the Fosi-HCTZ market, should have received a smaller market share than Glenmark, Aurobindo, and Sandoz. Yet this is not what Plaintiffs allege happened. Far from implicating Glenmark in the overarching "fair share" conspiracy, Plaintiffs' allegations demonstrate that the Fosi-HTCZ market did not operate in accordance with their "fair share" theory. Thus, Plaintiffs' argument that "Glenmark's adherence to the 'fair share' agreement was a necessary component of the drug-specific Fosi-HCTZ agreement," Opp. Br. at 10, is contradicted by Plaintiffs' own allegations and should be rejected.

## II.    PLAINTIFFS' INDIVIDUAL FOSI-HCTZ AND PRAVASTATIN CONSPIRACY CLAIMS FAIL.

For the reasons above, Plaintiffs have not plausibly alleged a Fosi-HCTZ conspiracy. Plaintiffs concede that they do not know the content of Glenmark employees' alleged communications with other Defendants, which Plaintiffs claim supposedly involved Fosi-HCTZ, and, thus, those alleged communications are insufficient to establish a plausible Fosi-HCTZ conspiracy. *See supra* Sect. I(C) at 6–8. And Plaintiffs' allegations that Heritage entered the

9

market with lower prices than Glenmark and thus gained market share are consistent with a well-functioning market and simply cannot be squared with Plaintiffs' conclusory allegations of an Fosi-HCTZ conspiracy involving Glenmark. *Id.* at 8. Accordingly, Plaintiffs' claim that Glenmark participated in a Fosi-HCTZ conspiracy is implausible and should be dismissed.

Kroger's argument that it has pled a cognizable Pravastatin conspiracy is equally flawed. Kroger claims that, because the Court found the Group 1 Pravastatin Complaints plausible and it could amend its Complaint to copy those allegations, its allegations that Glenmark increased its Pravastatin prices some undisclosed amount sometime between July and December 2013 in "stair-step fashion" with other Defendants are sufficient to establish parallel pricing. Opp. Br. at 14 n.10. Third Circuit law is clear, however, that Kroger may not rely on material extrinsic to its complaint to establish the plausibility of its price-fixing claim, *see In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997), and it "must allege price increases that are reasonably proximate in time and value" to state its price-fixing claim. *In re Generic Pharms. Pricing Antitrust Litig.*, 338 F. Supp. 3d 404, 441 (E.D. Pa. 2018). The allegations in Kroger's Complaint say little about the timing of the purported prices increases and nothing about their value. Kroger's individual Pravastatin price-fixing claim must be dismissed on this basis alone.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in Defendants' Joint Briefs, the Court should dismiss, in full and with prejudice, as to Glenmark, (1) the Sherman Act claims in the Multi-Drug Complaints for an overarching conspiracy, (2) the individual Fosi-HCTZ claims in the States' Complaint and the Kroger Complaint, and (3) the individual Pravastatin claim in the Kroger Complaint.

10

Dated: June 13, 2019

**MORGAN, LEWIS & BOCKIUS LLP**

*/s/  Steven A. Reed*

Steven A. Reed
R. Brendan Fee
Melina R. DiMattio
1701 Market Street
Philadelphia, PA 19103
Telephone:  +1.215.963.5000
Facsimile:   +1.215.963.5001
steven.reed@morganlewis.com
brendan.fee@morganlewis.com
melina.dimattio@morganlewis.com

Andrew S. Wellin
101 Park Avenue
New York, NY 10178
Telephone:  +1.212.309.6154
Facsimile:   +1.212.309.6001
andrew.wellin@morganlewis.com

*Attorneys for Defendant*
Glenmark Pharmaceuticals Inc., USA

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 13th day of June, 2019, the undersigned filed the foregoing Defendant Glenmark Pharmaceuticals Inc., USA's Reply Memorandum of Law in Further Support of its Individual Motion to Dismiss Plaintiffs' Sherman Act Claims in the Multi-Drug Complaints, via the Court's CM/ECF system, which sent notice and a copy of the filing to all counsel of record in this action.

> */s/ Steven A. Reed*
> *Counsel for Defendant*
> Glenmark Pharmaceuticals Inc., USA