# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL 2724<br>16-md-2724 |
| | HON. CYNTHIA M. RUFE |
| THIS DOCUMENT RELATES TO: | Civil Action Nos. |
| *Ahold USA, Inc., et al. v. Actavis Holdco U.S., Inc., et al.* | 18-2641<br>18-2401<br>18-3299<br>18-2533<br>18-284 |
| *1199SEIU Nat'l Benefit Fund, et al. v. Actavis Holdco US, Inc.* | |
| *Humana Inc. v. Actavis Elizabeth, LLC, et al.* | |
| *West Val Pharm., et al. v. Actavis Holdco U.S., Inc.* | **ORAL ARGUMENT REQUESTED** |
| *The Kroger Co., et al. v. Actavis Holdco U.S., Inc.* | |

**DEFENDANT PERRIGO NEW YORK, INC.'S REPLY
IN SUPPORT OF ITS INDIVIDUAL MOTION TO DISMISS
PLAINTIFFS' "OVERARCHING CONSPIRACY" CLAIMS**

**TABLE OF CONTENTS**

Page(s)

I. INTRODUCTION .................................................................................................................. 1

II. PLAINTIFFS HAVE NOT PLAUSIBLY ALLEGED PERRIGO'S KNOWING PARTICIPATION IN THE PURPORTED "OVERARCHING CONSPIRACY" THEY ALLEGE .................................................................................................................. 2

    A. The Circumstantial Facts Plaintiffs Allege Relating to Perrigo Do Not Support Their Contention That Perrigo Participated in the Overarching Conspiracy They Allege ................................................................................................ 2

    B. Plaintiffs' Market Share Allegations Contradict Their Assertion That Perrigo Participated in an Overarching "Fair Share" Agreement .......................... 6

    C. The Lynchpin of Plaintiffs' Argument That Perrigo Participated in an Overarching "Fair Share" Conspiracy Is Unsupported and Unsupportable ......... 8

    D. Plaintiffs' "Daisy Chain" Argument Is Unsupported and Unalleged Speculation That Cannot Support a Claim Against Perrigo ................................ 9

III. CONCLUSION ................................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 622 (2009) ......................................................................................................... 2, 3

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................................. 9

*DM Research, Inc. v. Coll. of Am. Pathologists*,
    170 F.3d 53 (1st Cir. 1999) .................................................................................................. 9

*Morales-Cruz v. Univ. of P.R.*,
    676 F.3d 220 (1st Cir. 2012) ................................................................................................ 9

*Out Front Prods., Inc. v. Magid*,
    748 F.2d 166, 170 (3d Cir. 1984) ......................................................................................... 9

*Precision Associates, Inc. v. Panalpina World Transportation (Holding) Ltd.*,
    2011 WL 7053807 (E.D.N.Y. Jan. 4, 2011) ........................................................................ 4

*Roxane Labs., Inc. v. SmithKline Beecham Corp.*,
    No. 09-CV-1638, 2010 WL 331704 (E.D. Pa. Jan. 26, 2010) ............................................. 9

**I.      INTRODUCTION**

Plaintiffs describe the "overarching conspiracy" that they claim Perrigo New York, Inc. ("Perrigo") joined as "an agreement in which 'each generic drug manufacturer was entitled to its fair share of the generic drug industry sandbox.'"  Pls.' Opp'n at 3 (quoting DPP CAC ¶ 9).  In other words, the "overarching conspiracy" that Plaintiffs allege is a market share conspiracy.  Yet, the Complaints are nearly bereft of allegations concerning market shares for Perrigo's products; and the limited market share allegations that they make *are directly contrary* to Plaintiffs' allegations about how market shares were to be allocated pursuant to the purported "fair share" conspiracy.  That fact alone is sufficient to require dismissal of Plaintiffs' overarching conspiracy claims against Perrigo.

Moreover, the lynchpin of Plaintiffs' contention that Perrigo conspired with other Defendants concerning dozens of products that it neither manufactured nor sold is their assertion that Perrigo is a "competitor[] or potential competitor[] with [all of the other Defendants] for all of the drugs at issue."  Pls.' Opp'n at 11.  But that assertion is completely unsupported by *any* factual allegations.  There is certainly no allegation—nor could there be—that Perrigo actually produced or sold *all* of the products at issue in the Complaints.  Nor are there *any* factual allegations to support the conclusion that Perrigo was a potential competitor for *all* of the products at issue in the Complaints, or even *any* of those products other than the five that Perrigo is alleged to have manufactured and sold.[1]

There are, in short, no factual allegations to support Plaintiffs' efforts to impose sweeping joint and several liability on Perrigo by claiming that Perrigo joined any "overarching

---

[1] Nystatin cream, nystatin ointment, clobetasol (only Kroger and Humana Complaints), econazole (only Kroger and Humana Complaints), and desonide (only Kroger and Humana Complaints).

1

conspiracy" for dozens of drugs that it did not sell, and the allegations concerning Perrigo are, in fact, directly contrary to any inference that Perrigo joined such a conspiracy. It is not enough for Plaintiffs to assert allegations that may plausibly suggest that Perrigo participated in *some* conspiracy; they must allege facts plausibly suggesting that Perrigo actually entered into *the "overarching conspiracy" they allege*. Plaintiffs have failed to do so, and the claims against Perrigo must be dismissed.

## II. PLAINTIFFS HAVE NOT PLAUSIBLY ALLEGED PERRIGO'S KNOWING PARTICIPATION IN THE PURPORTED "OVERARCHING CONSPIRACY" THEY ALLEGE

### A. The Circumstantial Facts Plaintiffs Allege Relating to Perrigo Do Not Support Their Contention That Perrigo Participated in the Overarching Conspiracy They Allege

Plaintiffs have alleged no direct evidence of Perrigo's participation in any overarching conspiracy, which they acknowledge in their Opposition. Pls.' Opp'n at 7. Plaintiffs' arguments in their Opposition, like their Complaints, instead rely on circumstantial facts concerning Perrigo. Those facts are—in total—that (a) Perrigo raised prices for a small number of products (two products for the class Plaintiffs and five products for the Kroger and Humana Plaintiffs) at different times, *id.* at 6-7; (b) Defendants that manufactured and sold those products also raised prices for the products, *id.*; (c) Perrigo employees attended various trade shows and trade association meetings that were also attended by representatives of other generic pharmaceutical companies, *id.* at 10-11; and (d) Perrigo is being investigated by the United States Department of Justice ("DOJ"), *id.* at 4.

Those circumstantial facts, however, do not and cannot support a plausible inference that Perrigo participated in the "fair share" overarching conspiracy that Plaintiffs allege. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,

2

556 U.S. 622, 670, 679 (2009). "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. Plaintiffs have alleged nothing more than the sheer possibility that Perrigo joined their claimed "fair share" overarching conspiracy. Consequently, dismissal is warranted.

Raising prices—even raising prices at around the time of other competitors—has nothing intrinsically to do with "fair shares." It is not in any logical way necessary for there to be a "fair share" agreement for a company unilaterally to raise prices. And price-fixing conspiracies are frequently alleged that do not contain market share agreements as a component, much less "fair share" agreements. In other words, the fact that Perrigo may have raised prices for certain products at certain times says nothing about whether it participated in a "fair share" conspiracy, even if those pricing decisions could be used to support an inference of a pricing conspiracy.

Likewise, participation in trade association meetings and trade shows is not indicative of Perrigo's participation in an overarching "fair share" conspiracy. There are no non-conclusory factual allegations that Perrigo employees discussed or agreed with others on such an overarching "fair share" conspiracy in the context of any such meetings. Plaintiffs emphasize that almost "***all*** Defendant manufacturers of ***every other drug at issue*** [in the MDL] also attend the main NACDS conferences," and argue that this somehow supports their "overarching conspiracy" claims, but most of Perrigo's customers—including many of the named Plaintiffs—also participated in the same conferences. Pls.' Opp'n at 10 (emphasis added). The fact that Perrigo, like the Plaintiffs, attended trade shows and trade association meetings also attended by other companies certainly does not, by itself or in conjunction with the other Perrigo-specific facts alleged, support a plausible inference that Perrigo participated in an overarching "fair share" conspiracy spanning dozens of different products.

3

Plaintiffs argue that *Precision Associates, Inc. v. Panalpina World Transportation (Holding) Ltd.*, 2011 WL 7053807 (E.D.N.Y. Jan. 4, 2011), establishes that Perrigo employees' attendance at various trade association meetings and customer meetings is enough to plead an overarching conspiracy claim.  *See* Pls.' Opp'n at 11.  That interpretation cannot be squared with the holding of the case.  Plaintiffs fail to mention the additional facts that were pled in that complaint that went beyond the opportunity to conspire at trade association meetings:

> The Complaint alleges that the defendants formed and monitored the conspiracies through a series of meetings over the course of three years.  The Complaint provides information as to who initiated these meetings, when and where they took place, as well as the names of specific attendees for certain defendants.  These meetings did not take place at the defendants' offices or other places of business but rather at a coffee shop or clubs located in hotels.

*Precision Assocs.*, 2011 WL 7053807, at *25.  Plaintiffs here do not allege *any* specific meetings between Perrigo and *all of the other Defendants in their Complaints* at these trade association meetings, let alone who initiated them, where and when these meetings took place, or who attended those meetings.  There are also no allegations that Perrigo discussed or agreed on "fair shares"—or any overarching conspiracy—in the context of the trade association meetings.  Further, while the court in *Precision Associates* found such facts regarding meetings to be sufficiently pled to infer a conspiracy, it nevertheless dismissed the *global* conspiracy claim alleged in the complaint.  *See id.* at *27-30.

Finally, the fact that Perrigo is part of a DOJ investigation is not enough to create a plausible inference that Perrigo participated *in the overarching "fair share" conspiracy* that Plaintiffs allege.  There is no indication or allegation that the DOJ investigation concerns the purported overarching conspiracy that Plaintiffs have alleged, and there has been no action by the DOJ against Perrigo in any event.  It is well established that the existence of a government

4

investigation is insufficient to support a claim that the law was violated. *See* Perrigo Opening Br. at 10.

In nodding recognition of the deficiencies of the allegations concerning Perrigo in their Complaints, Plaintiffs point to an allegation in the State Complaint, in which Perrigo is not a defendant, referencing an internal email of a company, Heritage, that neither manufactured nor sold any of the Perrigo products at issue in the Complaints.[2] *See* Pls.' Opp'n at 11 (citing States Consolidated Amended Complaint ("State Complaint"), No. 17-cv-3768, Dkt. No. 15 (June 18, 2018) ¶ 287). Putting aside the impropriety of relying on facts that are not alleged in their Complaints to support the viability of those Complaints, the allegation in the State Complaint that mentions Perrigo cannot carry the water Plaintiffs claim for at least two reasons. First, the cited internal email does nothing to suggest or imply an overarching "fair share" agreement between any companies; rather, it purports to concern "pricing trends" for certain products. *Id.* Second, Plaintiffs conveniently leave out the name of the drug discussed in connection with Perrigo, and it is not at issue in any case in the MDL.

The allegations concerning Perrigo in the Complaints do not support Plaintiffs' claim that Perrigo participated in an overarching "fair share" conspiracy.

---

[2] Plaintiffs' suggestion that Perrigo does manufacture and sell a product at issue in the State Complaint that was also sold by Heritage—"nystatin"—betrays a fundamental misunderstanding of the products and markets at issue. *See* Pls.' Opp'n at 4. As explained in Perrigo's opening motion, the product at issue in the State Complaint—nystatin tablets—is a completely different formulation, used to treat completely different conditions, that was manufactured and sold by completely different companies than the Perrigo nystatin products that are identified in the class and Kroger and Humana Complaints—nystatin cream and nystatin ointment. Perrigo Opening Br. at 3. Plaintiffs' contention that they are somehow "the same product" because they contain the same active ingredient is akin to contending that plastic and gasoline are the "same product" because both are derived from crude oil.

### B. Plaintiffs' Market Share Allegations Contradict Their Assertion That Perrigo Participated in an Overarching "Fair Share" Agreement

Plaintiffs contend that "Perrigo's drug-specific conduct demonstrates how Defendants' 'common goal' under the 'fair share' agreement worked in practice," Pls.' Opp'n at 6, but that contention does not withstand scrutiny. The only allegations in the class Complaints concerning any "drug-specific" conduct by Perrigo relates to nystatin cream and nystatin ointment, but the facts alleged concerning those products directly contradict the contention that Perrigo joined any "overarching fair share conspiracy." The Kroger and Humana Plaintiffs also make allegations concerning pricing behavior by Perrigo concerning three other products—clobetasol, econazole, and desonide—but there are no allegations concerning those products that would tie them, or Perrigo, to any overarching conspiracy.

Plaintiffs claim that the "overarching conspiracy" among Defendants was an agreement in which each Defendant was entitled to its "fair share of the generic drug industry sandbox." Pls.' Opp'n at 3. They describe the "fair share agreement" as the following:

> "Fair shares" were allocated to Defendants within a particular drug market based upon the number of competitors in the market and the timing of their entry into the market. Traditionally, the first entrant to the market received the largest share of the market, and each subsequent entrant received a progressively smaller share. This system aimed to allocate to each Defendant a "fair share" of the market without depressing prices. EPP ¶ 122.

Plaintiffs' "overarching conspiracy," in other words, centers on market shares, and in particular on proportionality in market shares based on the number of competitors in a particular generic drug market and the order in which each competitor entered that market. Despite the centrality of market shares to Plaintiffs' overarching conspiracy claims, none of the allegations specific to Perrigo concern "fair shares" and few even address "market shares" in general.

Plaintiffs have access to market share information: they cite it in alleging the "collective" market shares of Defendants in relation to particular products. *See, e.g.*, DPP CAC ¶¶ 274, 328,

6

422-24. Yet, the Kroger and Humana Plaintiffs make no allegations about individual market shares for clobetasol, desonide and econazole, three of the five Perrigo products that they claim were part of the alleged "fair share" overarching conspiracy. The class Plaintiffs do not even allege that those products were part of that alleged conspiracy.

Plaintiffs do allege some market share information concerning nystatin cream and nystatin ointment, but those allegations contradict, rather than confirm, the assertion that Perrigo participated in an overarching "fair share" conspiracy. In the first place, the alleged market shares were not proportionate to the number of competitors in the market. At the time of the alleged nystatin cream price increases, Taro is alleged to have had a 96% market share and Perrigo 4%. EPP ¶ 190. That is clearly not proportional. Likewise, at the time Perrigo increased prices for nystatin ointment, there were no other competitors selling that product—i.e., its market share was 100%. While that market share is proportionate to the number of competitors in the market (one), it clearly does not support the contention that there was an agreement between Perrigo and other nystatin ointment producers to maintain "fair shares" for that product.

Moreover, there are no allegations that shares were proportional to the order in which different competitors entered the nystatin cream and nystatin ointment markets. Although Plaintiffs do not allege the order of entry among Defendants for these two products, the allegations they do make clearly indicate that market shares were not directly proportional to the order of market entry. Plaintiffs allege that prior to 2011 Sandoz had the largest share of nystatin cream sales, but that share dwindled to near *de minimis* levels by 2011, when—as noted above— Taro had achieved roughly a 96% share. *Id.* Similar share dynamics are alleged with regard to nystatin ointment. *Id.* ¶ 193. Plaintiffs' contentions about the meaning of "fair shares" do not allow for this type of market share dynamism.

7

No other facts regarding market shares for Perrigo products—the purported reason for and animating principle behind the alleged "fair share" overarching conspiracy—are alleged in the Complaints, and the facts that are alleged cannot be squared with Plaintiffs' allegation that Perrigo participated in that alleged conspiracy. This also justifies dismissal of Perrigo.

### C. The Lynchpin of Plaintiffs' Argument That Perrigo Participated in an Overarching "Fair Share" Conspiracy Is Unsupported and Unsupportable

The lynchpin of Plaintiffs' claim that Perrigo participated in an overarching conspiracy touching dozens of products that Perrigo does not make or sell is their contention that Perrigo is a "competitor[] or potential competitor[] with [all of the other Defendants] for all of the drugs at issue." Pls.' Opp'n at 11. That bald (and bold) contention, however, cannot withstand scrutiny. It certainly is not supported by well-pled factual allegations in the Complaints.

There are, for instance, no allegations that Perrigo manufactured or sold all of the products at issue in the Complaints, nor could there be. Perrigo made and sold only the five products about which there are Perrigo-specific allegations in one or more of the Complaints: nystatin cream, nystatin ointment, clobetasol, desonide and econazole. It did not make or sell any of the dozens of other products at issue in the Complaints.

Likewise, there are no well-pled factual allegations that Perrigo was a "potential competitor" in any economically or legally relevant way for those other products. The antitrust enforcement agencies, for example, have defined "potential competitors" relevant for antitrust analysis to be limited to "committed entrants"—those companies "not currently earning revenues in the relevant market, but that have committed to entering the market in the near future" and "rapid entrants"—companies that are "very likely [to] provide rapid supply responses" in the event that market prices increase. U.S. Department of Justice & FTC, Horizontal Merger Guidelines § 5.2 (2010). Indeed, a manufacturer needs to take specific actions to pursue business

8

in a relevant market to be considered a potential competitor. *See Roxane Labs., Inc. v. SmithKline Beecham Corp.*, No. 09-CV-1638, 2010 WL 331704, at *3 (E.D. Pa. Jan. 26, 2010) ("To demonstrate intention and preparedness, a plaintiff 'must show not only that it had the background, experience and financial ability to make a viable entrance, but even more important, that it took affirmative actions to pursue the new line of business.'" (quoting *Out Front Prods., Inc. v. Magid*, 748 F.2d 166, 170 (3d Cir. 1984))).

Here, again, there are no factual allegations that could support a plausible inference that Perrigo was a potential competitor for the other products at issue in the Complaints. Plaintiffs do not point to any allegations in their Opposition because there are no such allegations in their Complaints. This failure also independently justifies Perrigo's dismissal.

### D.  Plaintiffs' "Daisy Chain" Argument Is Unsupported and Unalleged Speculation That Cannot Support a Claim Against Perrigo

Instead of directly addressing Perrigo's argument that there are no well-pled allegations that Perrigo was an actual or potential competitor for all of the products at issue in the Complaints, Plaintiffs indulge in a speculative hypothetical in an attempt to tie unrelated markets together through a sort of "daisy chain" of overlapping manufacturers. *See* Pls.' Opp'n at 14. That chain is built on mere speculation, and it is contradicted by the specific facts Plaintiffs allege concerning Perrigo. It clearly cannot justify allowing Plaintiffs to proceed with their overarching conspiracy claims against Perrigo.

In the first place, Plaintiffs nowhere allege any specific facts to suggest that such a scenario played out across any two or more drugs. The case law is clear that mere speculation is insufficient to satisfy Plaintiffs' pleading burden. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 225 (1st Cir. 2012) ("speculation, unaccompanied by any factual predicate, is not sufficient to confer plausibility"); *DM Research,*

9

*Inc. v. Coll. of Am. Pathologists*, 170 F.3d 53, 56 (1st Cir. 1999) (speculation insufficient to survive motion to dismiss).  Without facts, just because Perrigo competes separately with Company A on one drug and Company B on another drug does not mean that Perrigo was part of any purported agreement between Company A and Company B for a third drug.  Yet, this is exactly what Plaintiffs are asking the Court to infer.  It is not surprising that Plaintiffs are unable to cite a single case predicated on similar hypothetical logic daisy chains.

Second, as described above, Plaintiffs' allegations indicate that the only market shares they allege for Perrigo products did not correspond to the "fair share" principles they contend were the subject of the alleged "overarching conspiracy."  *See supra* at 4-5.  Plaintiffs contend, without factual support, that the "overarching conspiracy" would fall apart if "fair share" principles were not honored in one of the products at issue in the Complaints.  *See* Pls.' Opp'n at 6.  Yet, their allegations clearly indicate that at least with regard to Perrigo products, the market shares were not proportional to the number of market participants or to the order of entry (what Plaintiffs describe as a "fair share").  Either the logic of their hypothetical is wrong, Perrigo products were not subject to the purported conspiracy, or both.  In any case, Perrigo clearly should be dismissed.

## III.   CONCLUSION

For all of the reasons set forth above and in Perrigo's opening motion, there is no plausible basis to believe that Perrigo was involved in any overarching multidrug conspiracy, and Perrigo should be dismissed from Plaintiffs' Complaints in their entirety.

Dated: June 13, 2019	Respectfully submitted,

/s/ *J. Clayton Everett, Jr.*
J. Clayton Everett, Jr.
Scott A. Stempel
Tracey F. Milich
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC  20004
Phone: (202) 739-3000
Fax: (202) 739-3001
clay.everett@morganlewis.com
scott.stempel@morganlewis.com
tracey.milich@morganlewis.com

Harvey Bartle IV
Francis A. DeSimone
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA  19103
Phone: (215) 963-5000
Fax: (215) 963-5001
harvey.bartle@morganlewis.com
frank.desimone@morganlewis.com

*Counsel for Defendant Perrigo New York, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify on this 13th day of June, 2019, a true and correct copy of the foregoing document was filed electronically and is available for viewing and downloading from the Court's ECF System. Notice of this filing will be sent to all counsel of record by operation of the ECF System.

Dated:   June 13, 2019                                           /s/  *J. Clayton Everett, Jr.*
                                                                              J. Clayton Everett, Jr.