**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION** | **MDL NO. 2724**<br>**16-MD-2724**<br><br>**HON. CYNTHIA M. RUFE** |
| **THIS DOCUMENT RELATES TO:**<br><br>*Ahold USA, Inc., et al. v. Actavis Holdco U.S., Inc., et al.*<br><br>*1199SEIU Nat'l Benefit Fund, et al. v. Actavis Holdco US, Inc.*<br><br>*Humana Inc. v. Actavis Elizabeth, LLC et al.*<br><br>*West Val Pharm, et al. v. Actavis Holdco U.S., Inc.*<br><br>*The Kroger Co., et al. v. Actavis Holdco U.S., Inc.*<br><br>*Marion Diagnostic Center, LLC, et al. v. McKesson Corp., et al.*<br><br>*The State Attorneys General Litigation* | **Civil Action Nos.**<br><br>**18-2641**<br>**18-2401**<br>**18-3299**<br>**18-2533**<br>**18-284**<br>**18-4137**<br>**17-3768**<br><br>**ORAL ARGUMENT**<br>**REQUESTED** |

**APOTEX CORP.'S REPLY BRIEF IN SUPPORT OF ITS**
**MOTION TO DISMISS PLAINTIFFS' OVERARCHING CONSPIRACY CLAIMS**

## TABLE OF CONTENTS

Table of Authorities ..................................................................................................... ii

**Introduction** ................................................................................................................. 1

I.     **Plaintiffs Do Not Sufficiently Allege An "Overarching" conspiracy as to Apotex.** ....................................................................................................... 2

      A.     **Nothing in Plaintiffs' Complaints Ties Apotex to Any of the Conduct That Allegedly Manifested an "Overarching" Conspiracy.** ............................. 2

      B.     **Plaintiffs Mischaracterize the Allegations in their Complaints as Evidencing an "Overarching" Conspiracy that includes Apotex.** ................... 2

      C.     **Plaintiffs Do Not Adequately Address their Lack of Allegations that Apotex was a Competitor or Potential Competitor in any Markets Other than the Markets for Leflunomide and Pravastatin.** .............................. 6

II.    **Plaintiffs' Allegations of Individual, Single Drug Conspiracies Are Not Sufficient to Plead an "Overarching" Conspiracy as to Apotex.** .................................. 7

**Conclusion** .................................................................................................................. 10

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*In re Automotive Parts Antitrust Litigation*,
  MDL 2311, 2016 WL 8200512 (E.D. Mich. Apr. 13, 2016)................................................6, 10

*In re K-Dur Antitrust Litig.*,
  No. 01-1652, 2016 WL 755623 (D.N.J. Feb. 25, 2016) ..........................................................10

*In re Optical Disk Drive Antitrust Litig.*,
  MDL 2143, 2011 WL 3894376 (N.D. Cal. Aug. 3, 2011)..........................................................6

*U.S. v. Kelly*,
  892 F.2d 255 (3d Cir. 1999)...............................................................................................8, 9, 10

*U.S. v. Kemp*,
  500 F.3d 257 (3d Cir. 2007).........................................................................................................9

*U.S. v. Perez*,
  280 F.3d 318 (3d Cir. 2002).........................................................................................................8

*United States v. Keystone Biofuels*,
  350 F. Supp. 3d 310 (M.D. Pa. 2018)..........................................................................................8

**Federal Rules of Civil Procedure**

Rule 12(b)(6)...............................................................................................................................6, 8

Rule 15............................................................................................................................................6

## INTRODUCTION[1]

Plaintiffs' Opposition[2] merely highlights their Complaints' deficiencies in pleading that Apotex – a company that allegedly sold only <u>two</u> of the more than thirty drugs in this MDL – was a participant in an "overarching" conspiracy. Rather than respond to the arguments raised in Apotex's opening brief, all of which require dismissal of Plaintiffs' Complaints as to Apotex, Plaintiffs regurgitate their description of the "fair share" agreement and "overarching conspiracy" using the term "Defendants" broadly. It speaks volumes that, in their Opposition, Plaintiffs point to no allegations indicating that Apotex engaged in conduct that would support their "horse trading" or "fair share" theory of the case. Nowhere do they cite that Apotex was aware of, and committed to, a broad, all-encompassing conspiracy that involved fixing the prices of, or allocating markets for, drugs that it did not sell. Instead, Plaintiffs wrongly imply that certain Apotex-specific allegations connect Apotex to a broader conspiracy when they do no such thing. Indeed, Plaintiffs' allegations of anticompetitive conduct specific to Apotex are confined to only two drugs – pravastatin and leflunomide. The mere fact that Plaintiffs allege multiple conspiracies relating to individual drugs does not transform their allegations into plausible allegations of an "overarching" conspiracy. Simply put, Plaintiffs cannot use allegations of individual, single-drug conspiracies as to Apotex to bootstrap pleading an overarching conspiracy. Accordingly, the "overarching" conspiracy claims against Apotex should be dismissed.

---

[1] Defendant Apotex Corp. ("Apotex") joins and incorporates by reference Defendants' Reply Memorandum of Law in Support of the Motion to Dismiss Plaintiffs' Overarching Conspiracy Claims ("Defs. Joint Reply Br.") and Defendants' Reply Memorandum of Law in Support of the Motion to Dismiss State Plaintiffs' Federal Law Claims for Lack of Standing and submits this reply brief in support of its individual motion for an order dismissing the "overarching" conspiracy claims against Apotex in the Complaints.

[2] Plaintiffs' Brief in Opposition to Apotex Corp.'s Motion to Dismiss Plaintiffs' Overarching Complaints, ("Opp."), Case No. 18-cv-2401, Dkt. No. 168.

I.    **Plaintiffs Do Not Sufficiently Allege An "Overarching" conspiracy as to Apotex.**

    A.    **Nothing in Plaintiffs' Complaints Ties Apotex to Any of the Conduct That Allegedly Manifested an "Overarching" Conspiracy.**

Plaintiffs' Complaints set forth the various theories of conduct that they allege effected the "overarching" conspiracy – *quid pro quo* trading of customers across multiple drug markets, *quid pro quo* price increases across multiple drug markets, market allocation, and bid rigging. Yet, Plaintiffs do not have *any* Apotex-specific allegations in their Complaints underpinning these theories. *See* Apotex Opening Br. ("Apotex Br.") Section I.A. [3] Plaintiffs' Opposition ignores this critical deficiency entirely. Plaintiffs do not attempt to point out where in the Complaints this Court might find plausible factual allegations that Apotex engaged in any of the "horse trading" or other conduct that allegedly manifested the "overarching" conspiracy, because no such allegations exist. Plaintiffs' silence underscores the fact that they have only alleged Apotex's participation in individual drug conspiracies for pravastatin and leflunomide and have failed to connect Apotex's sale of those two drugs to each other or to any other drug in the MDL. To sufficiently plead that connection, Plaintiffs' Complaints would need to include (among other things) factual allegations indicating that Apotex consciously committed to an industry-wide agreement implicating drugs that it did not sell. They do not. *See* Defs.' Joint Reply Br. Section II.A.3. This requires dismissal of Plaintiffs' "overarching" conspiracy claims against Apotex.

    B.    **Plaintiffs Mischaracterize the Allegations in their Complaints as Evidencing an "Overarching" Conspiracy that includes Apotex.**

Rather than address these fatal omissions, Plaintiffs instead rehash their conclusory allegations that "Defendants" (not Apotex specifically) engaged in an "overarching" conspiracy to

---

[3] In their Opposition, Plaintiffs argue that none of the cases cited by Apotex require them to allege these *quid pro quo* type of arrangements. Opp. at 9. But this misses the point. These are Plaintiffs' "overarching" conspiracy theories. As such, *Twombly* and its progeny dictate that Plaintiffs support those theories with specific factual allegations demonstrating that Apotex engaged in the conduct underlying them. *See* Apotex Br. at 3-4.

fix drug prices, rig bids, and engage in market and customer allocation, for a slew of generic drugs that Apotex is not even alleged to have manufactured or sold.  *See, e.g.,* Opp. at 1-4.  Plaintiffs never explain how these entirely generic, non-specific references to "Defendants" and generalized examples of allegedly anticompetitive conduct allege an "overarching" conspiracy as to Apotex specifically.  Without further specificity as to Apotex's conduct, however, these general and conclusory allegations do not pass muster.  *See* Defs.' Joint Reply Br. Section II.A.1.

Plaintiffs' Opposition also distorts the scope of their Apotex-specific allegations.  Plaintiffs imply that certain Apotex-specific allegations relate to the "overarching" conspiracy when, in fact, those allegations have only been asserted as to Apotex's alleged participation in single drug conspiracies related to pravastatin or leflunomide.  For example, Plaintiffs point to allegations regarding Heritage's communications with Apotex as support for their "overarching" conspiracy claims.  Opp. at 4-5.  However, all of these allegations are limited to leflunomide.  There are no allegations that these communications included discussion of any other drugs, let alone an "overarching conspiracy." *See* Apotex Br. at Section I.A.  The allegations regarding "frequent" communications with Teva, Opp. at 4-5, similarly lack any detail, and certainly do not include allegations that these communications related to any particular drug or an "overarching conspiracy."  Apotex Br. at Section I.A.

Nevertheless, Plaintiffs attempt to paint Apotex as being part of an "industry-wide network" because of allegations that these **other** defendants **(not Apotex)** had frequent contact with other generic drug manufacturers.  Opp. at 5-6.  But this is an unsupportable jump without any plausible factual allegations suggesting that Apotex sought to communicate with other drug manufacturers through these two defendants or that Apotex participated in or was aware of any drug-specific conspiracies beyond pravastatin and leflunomide.

3

Plaintiffs likewise stretch in suggesting their allegations are sufficient to tie Apotex to an "overarching" conspiracy because "all but 4 of the 31 drugs targeted in this MDL to date involve conspiracies alleged to have been joined by one or more of the Defendants named with regard to Pravastatin or Leflunomide." Opp. at 6, 13. But, other defendants' alleged participation in multiple conspiracies does not establish Apotex's knowledge of or involvement in those conspiracies or an "overarching" conspiracy involving drugs other than pravastatin and leflunomide.[4] *See* Defs.' Joint Reply Br. Section II.A.3.

In perhaps their most egregious stretch, Plaintiffs assert they have sufficiently pleaded an "overarching" conspiracy as to Apotex because they have alleged that "individual Defendants had knowledge of the conduct of other Defendants regarding products that individual Defendants did not sell" and that "Defendants struck deals to allocate the market of different drugs." Opp. at 8. Again, Plaintiffs use the general term "Defendants" – and not Apotex specifically – to describe these allegations. Even more significant is that Plaintiffs do not cite *any* supporting allegations for this assertion. This is unsurprising given neither of those assertions is true with regard to Apotex. No Complaint contains allegations that Apotex knew of conduct in other markets, or that it struck deals in certain drug markets to allocate the market for certain other drugs.

Plaintiffs also distort their Apotex-specific allegations in asserting that employee overlap and connections among the generic manufacturers facilitated Apotex's collusion in an "overarching" conspiracy. Opp. at 4; Indirect Reseller Plaintiffs' Brief in Opposition to Defendants' Joint Motion to Dismiss the IRP Overarching Complaint ("IRP Opp."), Case No. 18-cv-2533, Dkt. No. 83, at 23. As to Apotex, Plaintiffs state that Beth Hamilton was a key

---

[4] Plaintiffs also assert that the "industry-wide" communications scheme shows that negotiations about one drug could quickly expand to cover many drugs. But the sole factual allegation Plaintiffs point to in support references a discussion between two other defendants (not Apotex). Opp. at 6.

conspirator at Apotex until she left to join another manufacturer and that "repeat players" such as Ms. Hamilton established "rules of the road" that governed the overarching conspiracy.  *Id.*  The allegations Plaintiffs cite for this assertion, however, contain no Apotex references at all.   *Id.* (citing DPP CAC ¶ 15; EPP CAC ¶ 103; State CAC ¶ 91).  Plaintiffs also fail to address Apotex's argument that Ms. Hamilton's transition from Apotex to another defendant is irrelevant and not evidence of a conspiracy because: (a) Plaintiffs do not allege that Apotex manufactured or sold any of the same drugs as her new employer, (b) Plaintiffs do not allege *when* Ms. Hamilton moved from Apotex to the other defendant, making it impossible to even speculate about whether she *could* have communicated back to Apotex about any anticompetitive agreements, and (c) there are no allegations that Ms. Hamilton spoke with Apotex representatives after her employment ended. Without these allegations, Ms. Hamilton's switch of employers does not plausibly suggest that Apotex was involved in *any* conspiracy, let alone one beyond pravastatin and leflunomide.[5]

Without any Apotex-specific allegations to stand on, Plaintiffs resort to relying on the Court's decisions on the Motions to Dismiss the Private Class Plaintiffs' Pravastatin Complaints and the Plaintiff States' Motion for Leave to Amend in arguing that their allegations of an "overarching" conspiracy are plausible. However, neither has any bearing on this motion.  *See* Defs.' Joint Reply Br. Section II, n.5, 8.  Plaintiffs' success in pleading a single drug conspiracy that Apotex allegedly took part in does not mean they have pleaded Apotex's involvement in a

---

[5] Plaintiffs also attempt to connect Apotex to the "overarching" conspiracy in light of its trade association membership and attendance at trade shows, suggesting that it used leadership roles on the board of a particular trade association to conspire as to leflunomide.  Opp. at 4; End Payer Plaintiffs' Brief in Opposition to Defendants' Joint Motion to Dismiss the EPP Overarching Complaint ("EPP Opp."), Case No. 18-cv-2401, Dkt. No. 176, at 16.  However, none of the Complaints contain allegations identifying meetings or communications among defendants implicating leflunomide; rather Plaintiffs rely largely on boilerplate lists of attendees at unremarkable industry functions and meetings. Likewise, Plaintiffs' allegations regarding "frequent" contacts – without any indication of the content or topic of those contacts – does not establish an "overarching" conspiracy. *See, e.g.*, Humana Inc.'s Brief in Opposition to Defendants' Joint Motion to Dismiss Humana Inc.'s Overarching Complaint ("Humana Opp."), Case No. 18-cv-3299, Dkt. No. 130, at 11.

conspiracy spanning multiple products.   Plaintiff States' success on their Motion to Amend under Rule 15's liberal standard for pleading amendments is also irrelevant.  *Id.*  Granting the State Plaintiffs' Motion to Amend did not answer whether, under Rule 12(b)(6), Plaintiffs have alleged sufficient facts to plausibly suggest that Apotex engaged in conduct in furtherance of the "overarching" conspiracy.[6]

### C.   Plaintiffs Do Not Adequately Address their Lack of Allegations that Apotex was a Competitor or Potential Competitor in any Markets Other than the Markets for Leflunomide and Pravastatin.

Plaintiffs do not deny that generally an antitrust plaintiff must plausibly allege that conspirators are competitors or potential competitors in the same markets to state a plausible Section 1 claim based on allegations of market allocation, bid rigging, and price increases.  *See* Apotex Br. at 10.  Plaintiffs, however, suggest that where an "overarching" conspiracy is concerned, they are relieved from this requirement.  Opp. at 9.  Plaintiffs cite no support for this self-styled exception other than one inapposite decision.  *Id.* at 9.  In *In re Optical Disk Drive Antitrust Litig.*, MDL 2143, 2011 WL 3894376, at *8 (N.D. Cal. Aug. 3, 2011), the court held that plaintiffs failed to allege a *plausible factual basis* for contending that sellers of a component part were conspiring with sellers of the finished product containing that component.  If anything, this decision simply reinforces Apotex's point.  Without *plausible factual allegations* tying Apotex to anticompetitive agreements in drug markets other than pravastatin and leflunomide (including via

---

[6] Plaintiffs not only mischaracterize their allegations, but also the case law they rely on in their Opposition in arguing that they have pleaded a plausible "overarching" conspiracy as to Apotex. For example, Plaintiffs argue that *In re Automotive Parts Antitrust Litigation*, MDL 2311, 2016 WL 8200512 (E.D. Mich. Apr. 13, 2016) is actually supportive of their cause because there the court "relied in part" on a DOJ investigation that auto part suppliers engaged in various separate and independent conspiracies in rejecting the plausibility of an industrywide global conspiracy; whereas here, the Plaintiff States' theory is that there is an overarching conspiracy (and this should make all the Plaintiffs' allegations more plausible). Opp. at 7. However, *In re Auto Parts* merely states that the allegations in the complaints at issue "support[ed]" the DOJ's assessment that the conspiracies are multiple, separate and product-specific." *Id.* at *4 (emphasis added). Here, even the Plaintiff States' allegations do not support an "overarching" conspiracy.

6

plausible factual allegations that Apotex competes in those markets), Plaintiffs cannot state an "overarching" conspiracy claim against Apotex.

Here, Plaintiffs have not alleged that Apotex sold any other MDL drugs beyond pravastatin or leflunomide, nor do Plaintiffs allege Apotex held an ANDA for these other drugs beyond zoledronic acid.[7] Plaintiffs ignore these deficiencies, falling back on their conclusory allegations that all defendants could have obtained approval or otherwise acquired marketing rights to sell any of the MDL drugs had they chosen to do so.  Opp. at 9 n.45.  But, as Apotex pointed out in its opening brief (and which Plaintiffs fail to address), Plaintiffs do not allege that Apotex attempted to obtain, intended to obtain or succeeded in obtaining an ANDA from a competing manufacturer during the alleged relevant time periods.  Apotex Br. at 11.  Because they have no factual support for establishing Apotex as a competitor for any drugs save leflunomide and pravastatin, Plaintiffs' "overarching" conspiracy claims as to Apotex fail.

## II.    Plaintiffs' Allegations of Individual, Single Drug Conspiracies Are Not Sufficient to Plead an "Overarching" Conspiracy as to Apotex.

Without any plausible factual allegations connecting Apotex to an "overarching" conspiracy spanning all of the drugs in the MDL, Plaintiffs suggest that their pleading of Apotex's involvement in the pravastatin and leflunomide conspiracies is sufficient to make that connection

---

[7] Plaintiffs also overstep by suggesting that they have sufficiently pleaded that Apotex is a competitor or potential competitor in many drug markets because it holds ANDAs for MDL drugs other than pravastatin and leflunomide. Opp. at 2.  However, Plaintiffs do not allege that Apotex held ANDAs for any additional drugs (other than one Plaintiff who alleges Apotex held an ANDA for zoledronic acid).  Rather, Plaintiffs point to Apotex's submission in opposition to Plaintiffs' Motion to Compel, which discussed the burden of certain global discovery definitions, to support the assertion that "Apotex holds ANDAs, but has not entered the market for at least the following drugs: Albuterol, Benazepril-Hydrochlorothiazide, Clobetasol, Divalproex ER, Glipizide-Metformin, Zoledronic Acid, and Verapamil."  Apotex's submission was not a pleading and cannot be relied upon here by Plaintiffs.  Moreover, Apotex notes that its prior submission contained typographical errors and that it holds ANDAs for the following drugs: Albuterol, Benazepril-Hydrochlorothiazide, Clobetasol, Divalproex DR (not Divalproex ER), Glipizide (not Glipizide-Metformin), Zoledronic Acid, and Verapamil.  Further, for many of those drugs Apotex either did not hold an ANDA during the time period price increases have been alleged or else holds an ANDA for a different version of the drug that cannot be substituted for the version of the drug at issue in the MDL, and thus was not a potential competitor in that market.

7

because all Plaintiffs must do is allege "related activities" by Apotex and other defendants in raising the prices of generic drugs. Opp. at 9. This "related activities" language is pulled from a criminal conspiracy case in which the defendants argued there was a variance between the single conspiracy charged in the indictment and the evidence of two separate conspiracies presented at trial. *U.S. v. Perez*, 280 F.3d 318, 346 (3d Cir. 2002). Yet, Plaintiffs overlook the most significant point made in this decision – namely, that to establish a single overarching conspiracy (versus multiple separate conspiracies), although a prosecutor need not prove that each defendant knew all the details, goals or other participants, it must demonstrate that a defendant *knew* that he was part of a "larger drug operation." *Id*. at 347. To the extent this decision provides guidance, it is that Plaintiffs must – to avoid dismissal – include plausible factual allegations concerning Apotex's knowledge that it was a participant in a "fair share" or "overarching" agreement dealing with more than just pravastatin and leflunomide. Plaintiffs have not done so here. *See* Section I.B *supra*; Defs.' Joint Reply Br. Section II.A.3.

Plaintiffs' Opposition also attempts to sidestep the Third Circuit's instructions for distinguishing "single conspiracies" from "separated and unrelated conspiracies." *See U.S. v. Kelly*, 892 F.2d 255, 259 (3d Cir. 1999).[8] This is unsurprising since Plaintiffs do not plead facts that connect Apotex's alleged participation in two separate, drug-specific conspiracies with a supposed "industry-wide," "overarching" conspiracy.[9] Regardless, *Kelly* applies, and Plaintiffs do

---

[8] Plaintiffs claim that the *Kelly* analysis "serves a markedly different purpose than the Court's plausibility analysis under Rule 12(b)(6)" and that decisions such as *United States v. Keystone Biofuels*, 350 F. Supp. 3d 310 (M.D. Pa. 2018) have rejected its application at the motion to dismiss stage. Although the *Keystone* court did acknowledge some limitations of the *Kelly* factors, it nevertheless applied the factors in reaching its decision. *See Keystone Biofuels*, 350 F. Supp. 3d at 320–21; *see also* Pls.' Joint Opp. Br. at 4–5 (acknowledging the *Kelly* analysis of "common goals, interdependence, and overlap is useful for resolving the sufficiency of the evidence" when viewed alongside "the totality of the evidence" (quotations omitted)). The *Kelly* factors alone may not be dispositive, but they remain useful for evaluating Plaintiffs' deficient Complaints.

[9] *See, e.g.*, EPP Opp. at 4, n.8; IRP Opp. at 2-3; *Id.* at 6-7; *Id.* at 9; States' Brief in Opposition to Defendants' Joint Motion to Dismiss States' Overarching Complaint, Case No. 17-cv-3768, Dkt. No. 119, at 11-12, n. 9.

not satisfy its three requirements of pleading a common goal, continuous cooperation/interdependence, and overlapping participants.

*Common Goal.* Plaintiffs assert that Apotex shared a "common goal" to fix prices across the generic drug industry for drugs it did not manufacture, sell, or have FDA approval to sell. *See* Opp. at 11–12.[10] As described in Apotex's opening brief, that assertion is inherently implausible (and Plaintiffs' Opposition does nothing to rebut this point). *See* Apotex Br. at 11–12. Recognizing the deficiency of their Complaints and rather than engage Apotex's arguments concerning a "common goal," Plaintiffs instead obfuscate through an assertion that this Court previously rejected Apotex's argument that the "overarching" conspiracy is implausible. *See* Opp. at 12. That attempt is misplaced for the reasons mentioned above. *See* Section I.B *supra*; Defs.' Joint Reply Br. Section II, n.5, 8.

*Continuous Cooperation or Interdependence.* Plaintiffs allege that Apotex participated in two drug-specific conspiracies. Plaintiffs' Complaints fail, however, to allege any facts that plausibly show how each individual drug conspiracy depended upon separate conspiracies involving manufacturers selling *other drugs*. Indeed, the Complaints do not include a single Apotex-specific fact explaining why the success of the alleged leflunomide and pravastatin conspiracies were contingent upon the success of: (1) each other; (2) the other alleged drug-specific conspiracies; or (3) the alleged "overarching" conspiracy as a whole. Plaintiffs' Complaints thereby fail to satisfy the second *Kelly* factor. *See U.S. v. Kemp*, 500 F.3d 257, 290-291 (3d Cir. 2007) (finding lack of "interdependence" where one set of transactions was not "contingent upon the other").

---

[10] Contrary to Plaintiffs' contention, to succeed on its motion to dismiss, Apotex need not bear the burden of "identif[ying] any allegations that would suggest that [Apotex's] conduct was inconsistent with [the] alleged common goal." Opp. at 12. This flips the federal pleading standard on its head.

Plaintiffs' Opposition fares no better.  Plaintiffs do not cite even a single fact that demonstrates the requisite "continuous cooperation," instead asserting that "Plaintiffs plausibly allege that Apotex was part of a common enterprise" without pointing to what, if any, factual allegations from the Complaints support that conclusory statement.  Try as it might, Plaintiffs' Opposition cannot speak into existence facts that are not specifically pleaded, and, because Plaintiffs' Complaints do not allege any facts that establish the necessary "continuous cooperation" or "interdependence," Plaintiffs do not plead an "overarching" conspiracy.  *See* Defs.' Joint Reply Br. Section II.B.; *see also In re K-Dur Antitrust Litig.*, No. 01-1652, 2016 WL 755623, at \*21 (D.N.J. Feb. 25, 2016) (explaining that, to examine whether individual conspiracies were connected, the court examines "the extent to which the success or failure of one conspiracy is independent of a corresponding success or failure by the other").

     ***Overlapping Participants.*** "[T]he mere overlap of some of the defendants in some of the [conspiratorial] transactions is, on its own, insufficient to establish an overarching agreement." *See Auto Parts*, 2016 WL 8200512, at \*4.  By relying solely on Apotex's alleged involvement in two individual conspiracies with only one common defendant, Plaintiffs do precisely what the *Auto Parts* decision cautions against.  That is, Plaintiffs attempt to plead Apotex's involvement in an "overarching" conspiracy with mere overlap of only some defendants.  Such insignificant overlap, without more, is well short of what is necessary to plead an "overarching" conspiracy. *See Auto Parts*, 2016 WL 8200512, at \*4; *see also Kelly*, 898 F.2d at 259-60.  As a result, Plaintiffs do not plausibly allege that Apotex participated in an "overarching" conspiracy.

## CONCLUSION

For the foregoing reasons, Apotex requests that this Court issue an order dismissing with prejudice the "overarching" conspiracy claims against Apotex in Plaintiffs' Complaints.

Dated:  June 13, 2019

*/s/ James W. Matthews*
James W. Matthews
Katy E. Koski
John F. Nagle
FOLEY & LARDNER LLP
111 Huntington Avenue
Boston, Massachusetts 02199
Tel:  (617) 342-4000
Fax:  (617) 342-4001
jmatthews@foley.com
kkoski@foley.com
jnagle@foley.com

James T. McKeown
Elizabeth A. N. Haas
Kate E. Gehl
FOLEY & LARDNER LLP
777 E. Wisconsin Avenue
Milwaukee, WI 53202
Tel:  (414) 271-2400
Fax:  (414) 297-4900
jmckeown@foley.com
ehaas@foley.com
kgehl@foley.com

Terry M. Henry
Melanie S. Carter
BLANK ROME LLP
One Logan Square
130 North 18th Street
Philadelphia, PA  19103
Tel:  (215) 569-5644
Fax:  (215) 832-5644
THenry@blankrome.com
**MCarter@blankrome.com**

*Attorneys for Defendant Apotex Corp.*

11

## CERTIFICATE OF SERVICE

I hereby certify on this 13th day of June 2019, a true and correct copy of the foregoing was filed electronically and is available for viewing and downloading from the Court's ECF System. Notice of this filing will be sent to all counsel of record by operation of the ECF System.

/s/ *James W. Matthews*
James W. Matthews