**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL 2724 16-MD-2724 HON. CYNTHIA M. RUFE |
| THIS DOCUMENT RELATES TO: *The Kroger Co., et al. v. Actavis Holdco U.S., Inc.* *Humana Inc. v. Actavis Elizabeth, LLC et al.* | Civil Action Nos.    18-284    18-3299 ORAL ARGUMENT REQUESTED |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**TELIGENT'S INDIVIDUAL MOTION TO DISMISS THE**
**KROGER AND HUMANA COMPLAINTS AGAINST TELIGENT, INC.**

**FILED WITH REDACTIONS – PUBLIC VERSION**

## <u>TABLE OF CONTENTS</u>

**TABLE OF AUTHORITIES** ...................................................................................................... ii

**INTRODUCTION** .................................................................................................................... 1

**ARGUMENT** ........................................................................................................................... 2

    **I.**    **The Amended Kroger and Humana Econazole-Specific and Overarching Conspiracy Claims Fail for the Same Reasons that the Amended *Econazole* Complaints Fail** ........................................................................................... 2

        A.    Kroger and Humana Cannot Allege Opportunities to Conspire ...................... 2

        B.    Teligent's Pricing Cannot Be Made to Be Parallel, Much Less Suspicious ...... 3

        C.    Kroger and Humana Make No Plausible Allegations Regarding the Participation of Sandoz and Fougera in the Market, Much Less the "Conspiracy" .......................................................................................... 5

    **II.**    **Even If the Amended Econazole-Specific Claims Were to Survive Dismissal (And They Should Not), the Overarching Conspiracy Claims Would Still Fail** ............. 6

        A.    Teligent Lacks the "Vast Portfolio" Central to Kroger and Humana's Theory . 6

        B.    Kroger and Humana Allege Conduct by Teligent Inconsistent with a "Fair Share" Agreement, as Teligent Priced Differently Than Competitors .............. 6

        C.    Kroger and Humana Continue to Fail to Implicate Teligent in Any Conspiracy, and Allegations Against Other Defendants Do Not Suffice to Do So ............... 7

        D.    The *Kelly* Factors Would Provide an Independent Basis for Dismissal Here.... 8

    **III.**    **The Amended Kroger and Humana Ecomplaints Cannot State a Claim Even If Amended, and Dismissal with Prejudice Is Thus Appropriate** ............................ 10

# **TABLE OF AUTHORITIES**

**Page(s)**

### CASES

*Beltz Travel Service, Inc. v. Int'l Air Transp. Ass'n*, 620 F.2d 1360 (9th Cir. 1980) .....................7

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212 (3d Cir. 2011) .........................................2

*Carpenters Health & Welfare Fund v. Kia Enters.*, No. 09-116, 2009 U.S. Dist. LEXIS 61320 (E.D. Pa. July 15, 2009) ....................................................................5

*Dahl v. Bain Capital Partners, LLC*, 937 F. Supp. 2d 119 (D. Mass. 2013).................................9

*Dahl v. Gladstone Tech., Partners, LLC*, 267 F. Supp. 3d 625 (E.D. Pa. 2017) ..........................10

*Howard Hess Dental Labs Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237 (3d Cir. 2010) ....................8

*In re Flat Glass Antitrust Litig.*, 385 F.3d 550 (3d Cir. 2004)..........................................4

*In re Linerboard Antitrust Litig.*, 504 F. Supp. 2d 38 (E.D. Pa. 2007).............................4

*In re Pressure Sensitive Labelstock Antitrust Litig.*, 566 F. Supp. 2d 363 (M.D. Pa. 2008) .................................................................................................8

*In re Processed Egg Prods. Antitrust Litig.*, 821 F. Supp. 709 (E.D. Pa. 2011) ...........................8

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109 (N.D. Cal. 2008) .................................................................................................8

*Prowire LLC v. Apple, Inc.*, No. 17-223, 2017 U.S. Dist. LEXIS 126640 (D. Del. Aug. 9, 2017) ..............................................................................................5

*United States v. Fattah*, 914 F.3d 112 (3d Cir. 2019)................................................8, 9

*United States v. Greenidge*, 495 F.3d 85 (3d Cir. 2007) .................................................9

*United States v. Kelly*, 892 F.2d 255 (3d Cir. 2010).....................................................8

*Vacaflor v. Pa. State Univ.*, No. 4:13-CV-00601, 2014 U.S. Dist. LEXIS 98541 (M.D. Pa. July 21, 2014)..................................................................................5

*Valspar Corp. v. E.I. Du Pont De Nemours & Co.*, 873 F.3d 185 (3rd Cir. 2017) ........................4

FILED WITH REDACTIONS – PUBLIC VERSION

## INTRODUCTION

Teligent "has long played a peripheral role in this litigation," does not appear in the State AG complaints, never attended any suspect industry social events, is not a member of any of the relevant trade associations (much less a board member), and is barely mentioned (if at all) by most of the consolidated complaints.[1]   In their Opposition,[2] Kroger and Humana accordingly try the same strategy as in their complaint:  Lumping Teligent in with other defendants, in the hope the Court will overlook the lack of plausible allegations involving Teligent.  But Kroger and Humana have again failed to state a claim against Teligent, and dismissal with prejudice is thus appropriate.

As to the Econazole-specific allegations, Kroger and Humana's claims fail for all the reasons explained by Teligent in its motion to dismiss the DPP, EPP, and IRP complaints.[3]  Kroger and Humana add nothing to the allegations by the other plaintiffs on these issues.

As to the "overarching conspiracy" claim, Kroger and Humana base their argument on the assumption that Teligent has a "vast portfolio" of generic drug products, such that it would make sense for Teligent to enter a correspondingly vast conspiracy—but in their complaints they admit that Teligent in fact makes only a handful of products, and thus has the very *opposite* of a "vast portfolio."  Moreover, the "fair share" conspiracy Kroger and Humana allege here is dependent on Teligent pricing *identically* to its competitors upon entry, but Kroger and Humana allege instead that Teligent priced *differently*.  Kroger and Humana's opposition therefore relies on rejecting the allegation made in their own complaint, and dismissal is accordingly appropriate.

---

[1]       Teligent's Individual Mot. to Dismiss the Kroger and Humana Complaints Against Teligent, Inc. ("Mot.") at 1, 18-cv-284, ECF 91 / 18-cv-3299, ECF 81; *see also* Oct. 16, 2018 Opinion ("Op.") at 60-61 (dismissing claims).

[2]       Plaintiff Humana Inc.'s and The Kroger Plaintiffs' Joint Opposition to the Motions to Dismiss by (1) Lupin Pharmaceuticals, Inc., (2) Breckenridge Pharmaceutical, Inc., and (3) Teligent, Inc. ("Opp'n"), 18-cv-284, ECF 132 / 18-cv-3299, ECF 128.

[3]       *See* Op. at 60-61; Teligent's Mot. to Dismiss the Am. Econazole Compl. ("Econazole Motion") at 1-8, 16-EC-27240, ECF 194; Reply in Further Support of Teligent's Mot. to Dismiss the Am. Econazole Compl. ("Econazole Reply") at 2-10, 16-EC-27240, ECF 215.

FILED WITH REDACTIONS – PUBLIC VERSION

## ARGUMENT

### I.   The Amended Kroger and Humana Econazole-Specific and Overarching Conspiracy Claims Fail for the Same Reasons that the Amended *Econazole* Complaints Fail

As previously noted, the Econazole-specific claims of the amended Kroger and Humana complaints are almost entirely excerpted from the amended *Econazole* complaints.  *See* Mot. at 4 (citing Kroger Am. Compl. ¶¶ 472-517, 922-29, Count Thirteen; Humana Am. Compl,. ¶¶ 522-536, 1201-44, Counts LI-LV).   These claims thus fail for the same reasons previously identified by this Court in dismissing claims against Teligent.  *See* Op. at 60-61.

#### A.  Kroger and Humana Cannot Allege Opportunities to Conspire

Absent plausible opportunities to conspire, even plausible allegations of parallel pricing are insufficient to state a claim.  *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 233 (3d Cir. 2011).  But the amended Kroger and Humana complaints fail to plausibly allege opportunities to conspire.

First, Kroger and Humana assert that Teligent's alleged "co-conspirators" are subject to government investigations, and thus that Teligent is likewise suspect.  Opp'n at 14-15.  But, in previously dismissing claims against Teligent, this Court has already implicitly held that investigations into *other companies* are insufficient to implicate *Teligent*.  Op. at 60-61.

Second, Kroger and Humana assert without elaboration that Teligent attended "at least nine trade association meetings that coincide with Plaintiffs' allegations regarding the timing of price increases."  Opp'n at 12-13.  But the Court has also already rejected these allegations.  Op. at 60-61 (noting that Teligent allegedly attended nine trade conferences, but rejecting the allegations against Teligent).  Nor can Kroger and Humana identify any suspect "price increases" that might coincide with potentially-suspect conferences.  Kroger and Humana cite a conference in February 2014, but this cannot plausibly be connected to Teligent's decision in ████████—four months *earlier*—to increase price unilaterally.  Opp'n at 13.  Likewise, Kroger and Humana cite

conferences in June 2014 and October 2014, but admit that both were attended solely by scientists.[4] *See* Opp'n at 12-13; Econazole Motion at 11-12 (explaining why a conspiracy of scientists is implausible to say the least).  Finally, Kroger and Humana cite conferences in February 2015, a time when prices were *falling*.  *Compare* Opp'n at 13 *with* EPP Am. Compl. ¶ 75.  These allegations were thus rightly dismissed by the Court when asserted by the other Plaintiffs.

### B.  Teligent's Pricing Cannot Be Made to Be Parallel, Much Less Suspicious

This Court has previously noted that the 2014 price increases here were not fully "parallel." *See* Op. at 53 (Teligent's price increase "follow[ed] several months behind" and "did not precisely match the alleged price increases by either Perrigo or Taro" though the "manufacturers' peak prices were within close range of each other"); *id.* at 61 (prices allegedly "peaked several months after those instituted by either Perrigo or Taro").  Kroger and Humana nonetheless argue that parallel conduct need not be "identical" or "simultaneous."  *Compare* Opp'n at 3, 8 *with* EPP Am. Compl. at ¶ 75 (showing pricing).  But to be parallel, a price increase must be "reasonably proximate in time and value."  Op. at 46.  For this reason, while the differences between Teligent's pricing and that of Perrigo and/or Taro are not *alone* sufficient to grant dismissal, when placed in context they are clearly reason to be skeptical of any claim that Teligent conspired.  *See* Op. at 53, 61.

Perhaps recognizing this, Kroger and Humana assert that Teligent's decision to increase price in late 2013, a few months after entering the market, was "inconsistent with standard market practices."[5]  Opp'n at 9.  Kroger and Humana thus allege that pricing similarly to competitors *and*

---

[4]    The Opposition erroneously asserts that Teligent attended one additional conference that the *complaints* say Teligent did *not* attend—the June 2014 HDMA Business and Leadership Conference.  *Compare* Opp'n at 13 *with* Humana Am. Compl. Ex. A at 17.  There is no allegation that Teligent attended this conference, nor did it do so.

[5]    Kroger and Humana allege a list price increase *prior to* Teligent's entry into the market.  Opp'n at 2 (citing Kroger Am. Compl. at ¶ 482 ("Teligent, however, announced a list price (WAC) increase in July 2013, even before its first sale of Econazole under its own label."); Opp'n at 24 ("Teligent . . . could not have entered the Econazole market at pre-announced supracompetitive prices and gain market share absent the 'fair share' overarching agreement.")).  However, they offer no facts to support this claim, and the other plaintiffs' complaints expressly refute it.  *See, e.g.*, EPP Am. Compl. ¶ 74(g) (no change in list prices prior to 2014).  But even if Kroger and Humana *had* alleged such facts, such a price increase would not be unexpected or irrational for all the reasons explained herein.

3

*pricing differently* are both suspect.  But the case they cite for the idea that pricing differently is suspect—*Linerboard*, 504 F. Supp. 2d 38—instead shows the stark contrast between suspect conduct and the plaintiffs' allegations here.  In *Linerboard*, the defendants allegedly shut down their plants at exactly the same time after meeting to discuss excess inventory, despite not typically engaging in such shutdowns.  *Id.* at 59-60, 61-62.  Here, Teligent is alleged to have simply taken a different pricing strategy than its competitors a few months after entering the market.  Opp'n at 10.  No provision of the antitrust laws requires a new entrant to adopt the same pricing as its competitors, nor is there a plausible basis to allege that it is "standard market practice" to maintain identical prices to competitors.  On the contrary, as the Third Circuit instructs, it "is generally unremarkable for the pendulum in oligopolistic markets to swing from less to more interdependent and cooperative"—and a new entrant  like Teligent thus certainly could choose, if it desired, to be less "interdependent" by adopting a different pricing approach than its competitors.[6]  *See, e.g.*, *Valspar*, 873 F.3d at 195; *In re Flat Glass Antitrust Litig.*, 385 F.3d 550, 361 (3d Cir. 2004).

Finally, Kroger and Humana's motive allegations make clear why their allegation of "irrational" pricing makes no sense.  According to Kroger and Humana, any participant in this market would have had every reason to try to raise price.  Opp'n at 11.  According to the Third Circuit, a participant in an oligopolistic market with a reason to raise price will frequently do so—without any need for collusion with its competitors.  *See, e.g.*, *Valspar*, 873 F.3d at 193; *Flat Glass*, 385 F.3d at 361.  Thus, Kroger and Humana allege conditions under which Teligent should have been expected, under controlling Third Circuit authority, to raise price unilaterally—but nonetheless allege that it would be "irrational" to do exactly what the Third Circuit said should be expected here.  *See* Opp'n at 11.  Such an allegation is implausible, to say the least.

---

[6]     Indeed, while Kroger and Humana assert that Teligent would not have attempted a price increase "in the absence of changes in demand or cost," Opp'n at 11-12, they do not try to claim (nor could they) that Teligent's costs, or the demand it faced when entering the market, are identical to those of Prasco, whose ANDA it purchased,

4

### C.  Kroger and Humana Make No Plausible Allegations Regarding the Participation of Sandoz and Fougera in the Market, Much Less the "Conspiracy"

Although Teligent's participation in a conspiracy would not be made any more plausible by the addition of two further "conspirators"—Sandoz and Fougera[7]—the allegations regarding these additional parties are further implausible.  While Kroger and Humana argue that by "November 2014, Fougera also increased its WAC prices to the exact same levels," Opp'n at 9, their allegations are solely on "information and belief."  *See* Kroger Am. Compl. ¶ 488; Humana Am. Compl. ¶¶ 523, 530.  While a plaintiff may plead on "information and belief" if it lacks reasonable access to the facts, *see, e.g.*, *Prowire*, 2017 U.S. Dist. LEXIS 126640, at *12-13, Kroger and Humana do not argue that they lack such access here, nor could they.  *See, e.g.*, DPP Am. Compl. ¶ 90 (demonstrating that the necessary information is available); EPP Am. Compl. ¶¶ 74(c, e, g-i), 90; IRP Am. Compl. ¶¶ 63(c, e, g-h), 78.  Indeed, Kroger and Humana would need only look to their co-plaintiffs' complaints to realize the allegation regarding Fougera/Sandoz is incorrect.  *See id.* (only manufacturers of Econazole active during the relevant period were Perrigo, Taro, and Teligent).  And even relying on information and belief requires alleging some facts to support the allegation.  *See Carpenters Health & Welfare*, 2009 U.S. Dist. LEXIS 61320, at *9-10; *Vacaflor*, 2014 U.S. Dist. LEXIS 98541, at *15-16.  There is thus no plausible allegation that Fougera/Sandoz participated in any alleged "conspiracy" here—on the contrary, it exited the market in late 2013.  But, in any event, regardless of the *number* of companies with whom Teligent did not conspire, the bottom line is that there are no plausible allegations that it conspired.

---

[7]    Although Kroger and Humana begrudgingly admit at one point that Sandoz is merely Fougera's parent company, Opp'n at 13, they otherwise treat them as if they were two separate entities each competing against one another in the market—and thus try to create the misimpression that there were not just four, but five competitors.

FILED WITH REDACTIONS – PUBLIC VERSION

II.     **Even If the Amended Econazole-Specific Claims Were to Survive Dismissal (And They Should Not), the Overarching Conspiracy Claims Would Still Fail**

A.     **Teligent Lacks the "Vast Portfolio" Central to Kroger and Humana's Theory**

Kroger and Humana claim that it is plausible to suggest that Teligent participated in an overarching conspiracy because it has a "vast portfolio of generic drugs, some of which are in this MDL, that allowed them to further participate in the 'fair share' agreement." Opp'n at 17.  But far from a "vast portfolio," the Kroger and Humana Amended Complaints make clear that Econazole was one of Teligent's *very first products* to be sold under its own label, and that it continues to make only a handful of products.  Humana Am. Compl. ¶ 535; Kroger Am. Compl. ¶¶ 478-79.  And Plaintiffs identify no other product Teligent sold during the relevant time period that is at issue in this MDL.  Thus, the question becomes whether Teligent, having been alleged (correctly) to have the exact *opposite* of a "vast portfolio of generic drugs," can be plausibly alleged to have nonetheless entered a conspiracy that even Humana says would make no sense for it to enter.  *See* Humana Am. Compl. ¶ 262 ("[A]n agreement between two Defendants to raise prices or to allocate market share on one drug would not likely hold where those same two Defendants engaged in vigorous price competition on another drug[.]").  No such claim is plausible.

B.     **Kroger and Humana Allege Conduct by Teligent Inconsistent with a "Fair Share" Agreement, as Teligent Priced Differently Than Competitors**

Kroger and Humana's' "fair share" theory also differs in a critical way from the fair share theory alleged against other defendants, because Teligent is alleged to have entered the market and priced *differently* than its competitors.  Opp'n at 18-19.  Kroger and Humana allege that for the "fair share" conspiracy to operate, the existing competitors must *already* be pricing at a supracompetitive level that is then maintained by a new entrant.  Humana Am. Compl. ¶ 266 ("The 'fair share' scheme enabled Defendants to keep prices at supracompetitive levels despite new generic entrants[.]"); Kroger Am. Compl. ¶ 481 ("Rather than allow the new entrant to drive the

6

price of drugs lower, the incumbent manufacturers and the new entrant can 'play nice in the sandbox' and keep prices high."). Indeed, Kroger and Humana assert that supracompetitive pricing is ***impossible*** unless there is collusively similar pricing—because Maximum Allowable Cost rules would not permit an increase unless that increase is made by all participants in the market. Opp'n at 1; *see also* Op. at 34 ("[T]his effect of MAC pricing is lessened when generic drug manufacturers ***collectively*** increase their prices[.]") (emphasis added). But Teligent is not alleged to have entered the market and *matched* the price of its competitors—it is alleged to have increased price *unilaterally*, and thus to have *not* followed a "fair share" agreement.

### C. Kroger and Humana Continue to Fail to Implicate Teligent in Any Conspiracy, and Allegations Against Other Defendants Do Not Suffice to Do So

Particularly in the face of this inconsistency, Kroger and Humana cannot seriously suggest that Teligent is a plausible co-conspirator simply because such allegations are made against others who behaved differently. *See* Opp'n at 16-17, 25. Kroger and Humana cite *Beltz Travel*, a 1980 Ninth Circuit case which stands for the proposition that joint and several liability will apply to co-conspirators "*[i]f*" the plaintiff "can establish the existence of a conspiracy . . . *and that appellee were a part of such a conspiracy*." 620 F.2d at 1367 (emphasis added). But this is precisely the problem; Kroger and Humana allege nothing to suggest that ***Teligent*** conspired with anyone— whether on an industry-wide basis or otherwise. Whether someone else may have conspired is, as this Court previously held, not sufficient to plausibly allege that Teligent did so. *See* Op. at 60-61 (rejecting allegations against Teligent but not dismissing claims against other defendants).

Nor is it any response to say that "brevity" is permitted in a complaint, and that this fact should excuse the complete absence of plausible allegations that Teligent joined any type of overarching conspiracy. *Compare* Mot. at 8-11 *with* Opp'n at 24 n.119. The problem is not that the several-hundred-page Kroger and Humana amended complaints are too "brief"—it is that they quite simply say almost nothing about Teligent, much less anything plausibly suggesting

Teligent's participation in a conspiracy.  *See, e.g.*, *Processed Egg*, 821 F. Supp. 2d at 732-33 (requiring allegations that the defendant actually participated in the conspiracy, including by holding positions on boards and attending particular meetings at which conspiracies were plausibly alleged to have been entered); *Flat Panel*, 586 F. Supp. 2d at 1117 ("allegations specific to each defendant alleging that defendant's role in the alleged conspiracy" required).  And "sprinkling a complaint with conclusory assertions that a party was a 'participant in coordinated conduct' or a 'conspirator' or acted in 'concert' with others does not make the requisite showing of entitlement to relief."  *In re Pressure Sensitive Labelstock Antitrust Litig.*, 566 F. Supp. 2d 363, 376 (M.D. Pa. 2008); *see also Howard Hess Dental Labs Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 255 (3d Cir. 2010) (allegation that all defendants "conspired and knew about the alleged plan" insufficient).

### D.  The *Kelly* Factors Would Provide an Independent Basis for Dismissal Here

Finally, apparently responding to arguments made by other defendants, Kroger and Humana argue that they have sufficiently alleged a conspiracy against Teligent under the so-called "*Kelly*" factors, but applying those factors to Teligent would provide another basis for dismissal here.  *See* Opp'n at 19-27.  Initially, because *Kelly* asked whether a conviction must be overturned as *a matter of law*, it can certainly provide a basis for granting a motion to dismiss.  *Kelly*, 892 F.2d at 258-59.  If a conviction could potentially be overturned as a matter of law notwithstanding that the underlying facts were proven beyond a reasonable doubt, then a pleading can similarly fail as a matter of law on the same basis even if it is assumed that the facts it alleges are true.

When applying these factors, any allegation that Teligent joined a broad conspiracy fails.

First, Kroger and Humana, citing *Fattah*, 914 F.3d at 168, suggest that Teligent would have a "common goal" with numerous other generic manufacturers with which it does not compete, because everyone wants to "make money."  Opp'n at 21.  But under this reading of *Fattah* every company—from Apple to Zillow—would share a common goal, as all want to "make money."

*Fattah* does not so hold; rather, it requires a common goal *related to the alleged conspiracy*. 914 F.3d at 168-69; *see also Greenidge*, 495 F.3d at 93 ("to make money *by depositing stolen and altered corporate checks*") (emphasis added). This is what Kroger and Humana lack; Kroger and Humana cannot explain why Teligent would have a goal of making money from a broad conspiracy focused on drugs it does not sell. Nor can Kroger and Humana cover up this problem by arguing that Teligent had "different tasks" and "perform[ed] different functions" in an alleged conspiracy, Opp'n at 21-22, as Kroger and Humana do not allege facts suggesting that Teligent played *any* role in an overarching conspiracy, or would have had any reason whatsoever to do so. *See* Humana Am. Compl. ¶ 262 (acknowledging that without multiple products a conspiracy makes no sense).

As to the second factor, Kroger and Humana cannot plausibly claim that Teligent's alleged participation in a conspiracy focused on Econazole was interdependent with conspiracies on other products it did not sell. Kroger and Humana suggest that Teligent's ability to "enter[] the Econazole market at pre-announced supracompetitive prices and gain market share" depends on a quid pro quo for other products, Opp'n at 24, but since Teligent does not sell any such other products, and since Kroger and Humana allege no other way that Teligent might have been involved in an overarching conspiracy, such an allegation makes no sense. Simply put, there is no "quo" regarding another product that Teligent could have exchanged for a "quid" under Plaintiffs' theory because, again, Teligent lacks the "vast portfolio" required for such an arrangement.

Finally, as to the third factor, Kroger and Humana fail to plausibly allege that Teligent actually participated in any "ever-rotating, overlapping cast" of conspirators. Opp'n at 27 (quoting *Dahl*, 937 F. Supp. 2d at 125). *Dahl* is instructive, as in that case the alleged conspirators were all plausibly part of an overall conspiracy targeted at rigging a particular set of bids—the defendants overlapped because they were all focused on the same goal even if not all did so at the same time. *Id.* at 125-26. But Teligent is not alleged to have had any involvement or even awareness of any

9

overarching conspiracy here.  Plaintiffs cite nothing to suggest that in such a situation, a defendant can nonetheless become liable for conspiracies that have nothing to do with it.

* * *

In any event, the primary problem with the "overarching conspiracy" claim vis-à-vis Teligent is the same problem as the Econazole-specific claim against it: There is simply no plausible basis to claim that Teligent had opportunities to conspire, or that it did conspire, when Teligent is not a member of any of the relevant trade associations, is not alleged to have attended any of the relevant social events, is not under investigation by any government agency even after years of investigation into other companies, and is alleged only to have priced unilaterally.  *See* Op. at 60-61 (dismissing the allegations against Teligent in light of these facts).  Regardless of the scope of the conspiracy, Teligent simply cannot be alleged to have been part of it.

## III.   The Amended Kroger and Humana Complaints Cannot State a Claim Even If Amended, and Dismissal with Prejudice Is Thus Appropriate

Although Kroger and Humana have already amended their complaints in light of this Court's guidance, they nonetheless assert that they have not had "two solid bites at the apple" because this is the first time Teligent has had a chance to move specifically as to these plaintiffs. Opp'n at 27-28.  But there is no requirement that a court grant every plaintiff the chance to oppose two motions to dismiss; the relevant question instead is whether amendment would be futile.  *See, e.g.*, *Dahl v. Gladstone Tech., Partners, LLC*, 267 F. Supp. 3d 625, 632 n.37 (E.D. Pa. 2017) (Rufe, J.).   Kroger and Humana amended their complaints, they had two chances, but they still cannot state a claim.  Under these circumstances, dismissal with prejudice is appropriate.

Dated:  June 13, 2019                                Respectfully submitted,

                                                     By: */s/ Heather K. McDevitt*
                                                         Heather K. McDevitt
                                                         Bryan D. Gant
                                                         White & Case LLP
                                                         1221 Avenue of the Americas
                                                         New York, New York 10020
                                                         Tel.: (212) 819-8200
                                                         Fax: (212) 354-8113
                                                         hmcdevitt@whitecase.com
                                                         bgant@whitecase.com

                                                         *Counsel for Defendant Teligent, Inc.*

**FILED WITH REDACTIONS – PUBLIC VERSION**

<u>**CERTIFICATE OF SERVICE**</u>

I, Heather K. McDevitt, hereby certify that on this 13th day of June 2019, a true and correct copy of the foregoing was filed electronically, under seal, pursuant to Section II of Order No. 61 (16-MD-2724, ECF 775), Paragraph 2 of Order No. 40 (16-MD-2724, ECF 533), and Section 9 of Order No. 53 (16-MD-2724, ECF 697), and is available for viewing and downloading from the Court's ECF System.  Notice of this filing will be sent to all counsel of record by operation of the ECF System.

Moreover, a true and correct unredacted copy of the foregoing was served electronically upon all counsel of record via electronic mail, and will be hand-delivered to the Court and Clerk.


*/s/ Heather K. McDevitt*
Heather K. McDevitt

.

**FILED WITH REDACTIONS – PUBLIC VERSION**