**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | MDL No: 2724<br>16-MD-2724 |
| THIS DOCUMENT RELATES TO:<br><br>*The Kroger Co., et al. v. Actavis Holdco U.S., Inc., et al.* | Individual Case No. 18-CV-284<br><br>HON. CYNTHIA M. RUFE |

**KROGER DIRECT ACTION PLAINTIFFS' MEMORANDUM
IN SUPPORT OF THEIR MOTION FOR LEAVE TO AMEND**

Both the Federal Rules of Civil Procedure and basic considerations of fairness and justice contemplate that parties should be entitled to amend their pleadings based on information learned during discovery. That is particularly true in antitrust price-fixing cases, in which courts have long recognized that "the facts of the conspiracy are for the most part within [the] possession and knowledge of [the] defendant." *F.D.I.C. v. WH Venture*, No. 84-5673, 1986 WL 3560, at *1 (E.D. Pa. Mar. 13, 1986) (citing *Leonia Amusement Corporation v. Lowe's Incorporated*, 16 F.R.D. 583, 584 (S.D.N.Y. 1954)). Indeed, Congress has voiced its support of this principle as well, by tolling the applicable statute of limitations in antitrust cases in which the DOJ brings criminal proceedings pending the completion of those proceedings, plus one additional year. *See* 15 U.S.C. § 16(i).

Given that basic principles of fairness and also strong public policy considerations support the ability of antitrust plaintiffs to amend their pleadings after receiving at least some meaningful discovery from Defendants, one would think that the instant motion would be merely *pro forma*, or at least not controversial. But the Defendants have voiced opposition in this MDL at seemingly

every turn. Accordingly, the Kroger DAPs[1] anticipate that the Defendants will argue, based on an out-of-context provision in PTO 61 – a stipulated Order entered by this Court in November 2018 – that the deadline to amend pleadings in this MDL lapsed almost two years ago, *before* Defendants even produced their documents and *before* the Court granted Plaintiffs access to the State AGs' documents.

Defendants' position that the Kroger DAPs may not amend their pleading is without merit. As detailed in Section I, the record suggests to us that this Court has anticipated that the parties would be permitted to amend their pleadings after the entry of PTO 61. For example, PTO 105 (entered by the Court in October 2019) expressly contemplated that amended complaints could be filed. Nor can Defendants' position be reconciled with the numerous hurdles that they have put in our way to investigate the Kroger DAPs' claims since filing an initial complaint in January 2018. The Court's statements at subsequent status conferences on September 24 and December 13, 2019, and July 9, 2020, *infra* at 5, also indicated that amendments were still allowed.

For these reasons, as we demonstrate in Section II, the proposed amendment is authorized by Fed. R. Civ. P. 15 because Defendants cannot demonstrate that the Kroger DAPs unduly delayed in discovering our amended claims. But even if Rule 16 were to apply - and we think it does not in this situation - the Kroger DAPs easily meet this "good cause" standard as well. This is because the Kroger DAPs, in coordination with other Plaintiffs in this MDL, have diligently pursued all of the evidence supporting the proposed amendment, only to face a gauntlet of delay and obstruction from Defendants that prevented the Kroger DAPs from accessing the evidence by

---

[1] The Kroger DAPs in the proposed amended pleading are the Kroger Co., Albertsons Companies, LLC, and H.E. Butt Grocery Company L.P., each of which is recognized as a party under the forthcoming Second Case Management Order, the terms of which the parties are in the process of negotiating and submitting for Court approval. J M Smith Corporation is no longer a plaintiff in the PSAC, and has instead filed a new complaint.

December 2018.  *See infra* at 6–13.  Additionally, the case law recognizes that the addition of new parties and new claims – particularly at a relatively early juncture in a case[2] – does not establish prejudice or an undue burden.

I.      **THE RULE 15 LIBERAL AMENDMENT STANDARD APPLIES**

As explained in Section II, this Court should grant the Kroger DAPs' motion regardless of whether the liberal standard under Rule 15 or the heightened "good cause" standard under Rule 16 applies. However, we respectfully submit that the Court's Orders provide for the application of Rule 15 to the Kroger DAPs' proposed amendment.

Defendants have previously argued that PTO 61 – a stipulated order entered by the Court to provide a briefing schedule for motions to dismiss the overarching conspiracy claims – provided a final deadline for all parties in the MDL to file amended complaints.  This argument is incorrect for two reasons.

First, PTO 61 expressly contemplated that the parties would file future amended pleadings "as permitted by the Federal Rules of Civil Procedure or Court Order."  "The Federal Rules of Civil Procedure" are – obviously – inclusive of Rule 15.  Thus, PTO 61 did not require that post-2018 amendments would need to satisfy the Rule 16 "good cause" standard.

In other words, to the extent (as Defendants have argued previously) that the parties supposedly stipulated in 2018 – before meaningful discovery even began in this MDL – that future amendments could not be made under Rule 15, it is only logical that the stipulation would have stated as much unambiguously.  *See, e.g., Premier Comp Sols., LLC v. UPMC*, --- F.3d ---, No. 19-1838, 2020 WL 4668235, at *1 (3d Cir. Aug. 12, 2020) (holding that it was within the district

---

[2]   Due to objections from Defendants and requests from DOJ to stay discovery in this case for an extended time period, substantive discovery in this MDL did not commence in earnest until several years after the MDL Panel first centralized the doxycycline and digoxin cases in 2016.

court's discretion to reject an amendment filed after a scheduling order deadline providing a *final* deadline to amend pleadings).[3]  Any other result would be unfair to Plaintiffs, who would not have been on notice of this hidden condition.  Indeed, final deadlines to amend pleadings are typically found in Scheduling Orders that meet the requirements of Rule 16(b)(3)(A), by expressly including mandatory provisions such as "the time to join other parties, amend the pleadings, complete discovery, and file motions," which puts the parties on fair notice of what to expect in this regard.  PTO 61 did not attempt to do any of this – it merely outlined the briefing schedule for a second round of Rule 12 motions.  *See* ECF No. 775.

Second, the Court's subsequent Pretrial Order No. 105 expressly contemplated that parties could file amended pleadings.  *See* Pretrial Order No. 105, ECF No. 1135, ¶ 1 ("With respect to any *new complaint or amended complaint* filed after September 1, 2019, responsive pleadings and/or motions shall be filed as normally required or agreed.") (emphasis added.)  It is therefore incorrect for Defendants to suggest that the Kroger DAPs must seek to modify a prior scheduling order that is no longer operative and that was not really a scheduling order in the first place.  *See In re: L'Oreal Wrinkle Cream Mktg. Practices Litig.,* MDL No. 2415, 2015 WL 5770202, at *3 (D.N.J. Sept. 30, 2015) ("The bottom line is the deadline for amended pleadings contained in the original scheduling order is – and has been – inoperative for quite some time, much like the rest of the scheduling order.  It would be illogical to hold Plaintiffs to an amendment deadline date in a scheduling order that long ago went stale. This is especially so because discovery will again be extended.").

---

[3]  Defendants submitted *Premier* as "supplemental authority" in support of their earlier opposition to the Kroger DAPs' motion to amend, but the case is inapposite here because there has never been a final deadline to amend pleadings or add parties in this MDL.

Defendants' position is also inconsistent with the Court's comments during recent status conferences, which indicated to us a willingness on the Court's part to consider amendments to pleadings that aligned with the drugs and Defendants already in the MDL. In that regard, the Kroger DAPs have been transparent with this Court throughout in stating their intention to amend their pleading. For example, during the most recent hearing on July 9, 2020, the Kroger DAPs informed the Court that we intended to file the instant amendment "to conform with those other drugs [in the State AGs' June 2020 complaint] and align with what's been done in the MDL." July 9, 2020 Hr'g Tr. at 51, ECF No. 1465. The Court's response indicated that such amendments were still permissible:

> I don't hear in any of the amendments that may be pending that there is a change in the primary allegation of overarching conspiracy. I am hearing you want to add or drop claims or parties specifically.
>
> And the sooner you do that, the better. And I may just have to put a date on this that is realistic. And I don't know what that is yet, but I'm going to have to, because I want it to stop. It's going to have to stop.
>
> And I may just be too tired after a long day of video hearings to actually think through what that date is right now, but it might very well be October 1st [2020]. I won't be cruel enough to do September 1st. I don't think that's realistic anyway.

*Id.* at 53.[4]

Based on this record, the Kroger DAPs respectfully submit that Plaintiffs have not been put on notice that the deadline to amend pleadings occurred in December *2018* -- before discovery began in the MDL. To the contrary, as noted, we read the current record as indicating the Court's

---

[4] These comments were consistent with the Court's comments at status conferences on September 24, 2019 and December 13, 2019, which also recognized that amendments were still permissible. *See* Dec. 13, 2019 Hr'g Tr. at 27–28, ECF No. 1177; Sept. 24, 2019 Hr'g Tr. 8–9, ECF No. 1128 ("Of course, the Court would always allow an amendment to add or drop parties and claims.... But I would like to, also, reign in the amount of and prediction of future amendments. And it would seem it's about time.").

5

willingness to allow future amendments at least to this point. For these reasons, the liberal standard of Rule 15 applies, and not the heightened "good cause" standard under Rule 16.

Additionally, consistent with the Court's comments at the July 9, 2020 status conference, the Kroger DAPs' proposed amendment does not alter the core allegations in the Complaint – that Defendants rigged bids, allocated markets, and fixed prices of numerous generic drugs by following a set of "fair share" rules. The PSAC merely adds new drugs and new Defendants that participated in that same conspiracy. *It does not add any drug or any Defendant that was not already a part of the MDL as of June 10, 2020 (when the State AGs filed their third complaint).*

## II.     THE KROGER DAPS HAVE DILIGENTLY PURSUED THE EVIDENCE SUPPORTING THE PROPOSED AMENDMENT

It does not ultimately matter which standard the Court applies in deciding the Kroger DAPs' motion for leave to amend – the liberal standard of Rule 15, or good cause and diligence under Rule 16 – because Plaintiffs in this MDL, including the Kroger DAPs, have diligently pursued the evidence supporting the proposed amendment since January 2018. First, Plaintiffs[5] have sought the production of documents from Defendants under the Federal Rules of Civil Procedure. Second, the Plaintiffs sought to leverage the evidence obtained by the State AGs' civil investigation and the DOJ criminal investigation. Third, the Plaintiffs have sought phone records of more than 200 current and former employees of Defendants from third-party phone companies. As detailed below, Defendants have raised numerous objections to each of these three avenues of investigation. Although this Court and the Special Masters overruled virtually all of Defendants'

---

[5] This Section discusses discovery sought by all Plaintiffs in this MDL, including the Kroger DAPs.

objections, the objections were successful in preventing the Kroger DAPs from discovering the scope of Defendants' conspiracy prior to December 2018.[6]

1. **Discovery From Defendants Under Rule 34**

The Kroger DAPs served Rule 34 discovery requests on Defendants in May 2018.[7] Since that time, Plaintiffs have engaged in hundreds of meet and confers with Defendants. Many of the topics discussed during these conferences required extensive motions practice to resolve. All of this took a great deal of time, and delayed the Kroger DAPs' ability to obtain discovery in time to incorporate it into the proposed substantive amendment. For example:

- In August and September 2018, after the parties reached impasse on certain global issues affecting all Defendants, the Kroger DAPs filed a motion to compel, and certain Defendants filed individual cross-motions to "limit discovery." *See* ECF Nos. 707, 714, 716. All Defendants jointly opposed the motion to compel, and seven Defendants filed individual oppositions. ECF Nos. 737–743. Special Master Merenstein first attempted to resolve these issues in an informal Report and Recommendation on January 8, 2019, that overruled the vast majority of Defendants' objections. Following this informal Report, there were additional discussions between the parties and the Special Master, and the global issues were ultimately resolved in a letter memorialized by the Special Master on April 3, 2019.

But the resolution of the global issues was only the beginning of this lengthy process.

- Following Special Master Merenstein's January 8, 2019 Report and his April 3, 2019 Letter, which helped clarify the scope of discovery for all Defendants, the Kroger DAPs continued to negotiate with Defendants on an individual basis over the custodians for which each Defendant would produce documents. Again, this process required the intervention of Special Master Merenstein with respect to certain Defendants.

On a parallel track, Plaintiffs approached Defendants in March 2019 about establishing a schedule for the production of documents and other case milestones. Defendants took a month to

---

[6] Defendants' efforts to delay and thwart Plaintiffs' discovery in this MDL have been so numerous and persistent that even a high-level summary of our diligence requires five pages in this Reply.

[7] After serving our individual requests, Defendants agreed to consolidate that request with the Requests previously served by other Plaintiffs.

respond to this inquiry, and the ensuing negotiations ultimately reached an impasse requiring the intervention of Special Master Marion. ECF No. 1093 at 4.

- Special Master Marion issued a Report and Recommendation that established a case management order and addressed a number of concerns raised by all Plaintiffs intended to expedite fulsome discovery. In particular, the Report recommended that Defendants produce all documents responsive to any search term without unilaterally withholding any document based on relevance. ECF No. 1135, Pretrial Order 105, ¶ 3(b). As this Court is well aware, based on that provision, Defendants have filed a writ of mandamus to the Third Circuit, then to the *en banc* Third Circuit, and now to the Supreme Court.[8]

Finally, following the Court's and Special Masters' intervention and the entry of PTO 105, the parties began to negotiate search terms.

- This again required numerous meet and confers, and – eventually – the involvement of Special Master Regard. With the help of the Special Master, the parties reached an agreement on global search terms (but not Defendant-specific search terms) on February 26, 2020.

Accordingly, although (we hope) the end is now in sight for Defendants to substantially complete their production of documents in response to Plaintiffs' Rule 34 Requests, fulsome custodial document productions by Defendants are not even finished. Indeed, although Defendants have now produced approximately 26,000,000 documents in this MDL, Defendants currently estimate that there remain to be produced approximately 8,000,000 documents responsive to the discovery requests served by Plaintiffs in early 2018. Moreover, the substantial majority of those 26,000,000 documents have been produced to Plaintiffs in the last six months. Accordingly, despite substantial diligence on the part of all Plaintiffs, including the Kroger DAPs, we

---

[8] ECF No. 1171. Defendants also sought to stay the proceedings in this MDL pending resolution of that writ, which the Court denied because "Moving Defendants attempt to halt the progress the Court has made and disrupt the pace and the content of the administration of the MDL." ECF No. 1155 at 7.

indisputably did not have Rule 34 document productions from Defendants as of the December 2018 deadline in PTO 61.

2. **Government Enforcement Actions**

On a second investigatory track, the Kroger DAPs have sought to leverage the State AGs' civil investigation and the DOJ criminal investigation. Indeed, many of the new allegations in the PSAC align with the evidence uncovered by the State AGs' investigation and detailed in their May 2019 Teva-centric Complaint and their June 2020 Sandoz-centric Complaint, neither of which was available to the Kroger DAPs as of December 2018. Again, the delay in our ability to access this evidence earlier was at least partially attributable to objections raised by Defendants.

- In June 2018, Plaintiffs filed a motion for access to the unredacted State AGs' Heritage-centric complaint and to the materials produced to the States by Defendants in this MDL, which the Defendants opposed. ECF Nos. 606, 626–628.

- In November 2018, the Court overruled Defendants' objections, granted Plaintiffs' motion, and directed the parties to work with the Special Masters to develop a framework so that Plaintiffs could obtain the State AG documents without revealing any details about DOJs' investigation. ECF No. 758. The Court also permitted the State AGs to unseal their Heritage-centric Complaint on February 27, 2019.

Over the next few months, Plaintiffs worked with the State AGs and the Special Masters to develop a framework for Plaintiffs to gain access to the evidence produced by Defendants to the State AGs. With PTO 70, entered in January 2019, the Court approved a Report and Recommendation from Special Master Marion that established this framework. However, this Order only prompted more objections from certain Defendants that further delayed Plaintiffs' access to the State AGs' evidentiary materials. *E.g.*, ECF No. 852.

The Special Masters again resolved Defendants' objections, which ultimately allowed the State AGs to provide the Kroger DAPs access to more than 5,000,000 documents through a series of rolling productions beginning in May 2019 (*i.e.*, *after* PTO 61 in November 2018).

Also in May 2019, the State AGs filed a new Complaint that substantially expanded the number of drugs at issue in this MDL. The State AGs' Complaint provided important information for the Kroger DAPs in supplementing the allegations in our First Amended Complaint and analyzing the millions of documents – spanning tens of millions of pages – that the Kroger DAPs have obtained *since* December 2018 as described in this Memorandum.

Also of note, between February 4, 2020, and August 25, 2020, DOJ has filed eight criminal enforcement actions against Defendants and their employees. The criminal enforcement actions filed against Sandoz, Taro, and Apotex were each resolved by deferred prosecution agreements that include extensive admissions by those Defendants of their wide-ranging criminal conduct. Additionally, a Grand Jury has returned indictments against Teva and Glenmark. Collectively, those criminal enforcement actions demonstrate that the conspiracy extended to, among other drugs, Carbemazepine, Clobetasol, Clotrimazole, Desonide, Etodolac, Fluocinonide, Lidocaine, Nadolol, Nystatin Triamcinolone, Pravastatin, Temozolomide, Tobramycin, Warfarin, and also to additional generic drugs not specific in the charging documents. Although some of these drugs were included in the Kroger DAPs' initial and amended complaints in 2018 (Clobetasol, Desonide, Fluocinonide, Pravastatin), most of the drugs were not identified prior to December 2018 (Carbemazepine, Clotrimazole, Etodolac, Fluocinonide, Lidocaine, Nadolol, Nystatin Triamcinolone, Tobramycin, Temozolomide, Warfarin).

Finally, on June 10, 2020, the State AGs filed a third complaint based on their ongoing civil investigation of Defendants. This new complaint identified approximately 40 drugs that were not the subject of the Kroger DAPs prior proposed amendment. The Kroger DAPs' instant PSAC adds each of these drugs and incorporates allegations based on the facts uncovered by the State AGs' recent filing.

3. **Third Party Discovery**

On a third track, the Kroger DAPs and other Plaintiffs have sought extensive discovery from third parties. Most pertinent to the PSAC, the Kroger DAPs and other Plaintiffs have sought to obtain telephone records of more than 100 current and former employees of the Defendants who actively communicated through phone calls and text messages in furtherance of the conspiracy. Indeed, the PSAC references more than 1000 phone calls between Defendants' employees in furtherance of the conspiracy.

However, due to delays caused directly by Defendants' objections, the Kroger DAPs obtained the vast majority of the phone records evidence *after* December 2018.

- Acting diligently to obtain phone records, the Kroger DAPs served a subpoena on AT&T on March 29, 2018 to produce phone records of approximately 100 specified current and former employees of Defendants. Before AT&T produced the requested phone records, Defendants contacted AT&T in May 2018 and requested that AT&T *refrain* from responding to Plaintiffs' subpoena. *See* ECF No. 601 at 4. AT&T agreed to comply with Defendants' request pending resolution of a motion to quash the subpoena, which Defendants filed on May 31, 2018. *See id.*

- Following briefing and oral argument on that motion, the Court denied Defendants' motion to quash in November 2018. *See* ECF No. 758. However, due to the delay caused by Defendants' motion, AT&T did not begin producing phone records until November 26, 2018, when it made its initial production of approximately 51,000 pages of phone records. AT&T then produced more than 1,137,000 additional pages of phone records in 2019 and 2020.

Accordingly, despite proceeding with diligence, the Kroger DAPs did not obtain any phone records in time to incorporate them into a pleading due in December 2018.

4. **Because the Kroger DAPs Were Not Aware of the Facts Supporting the Amendment in December 2018, Denial of Leave to Amend Would be Improper and Unfair under Either Standard**

As demonstrated above, the Kroger DAPs were diligent in seeking the evidence supporting the amendment – the 24,000,000 documents produced under Rule 34, the 5,000,000 documents produced pursuant to PTO 70, and the 1,200,000 pages of phone records produced pursuant to subpoenas – all after December 2018.

11

Indeed, the delay between PTO 61 and the Kroger DAPs' instant motion for leave to amend is attributable to the Defendants' course of conduct in this MDL.  Under these circumstances, the case law clearly supports the ability of a party to amend its pleading – even when a scheduling order deadline has passed.

For example, in *Pegley v. Roles*, the District Court recognized that good cause under Rule 16 is established when an amendment is based on information learned after the applicable scheduling order has passed.  *See Pegley v. Roles*, No. 17-732, 2018 WL 1863024, at *3 (W.D. Pa. Apr. 18, 2018) (finding good cause established and granting leave to amend because "Plaintiff discovered new information during the discovery period and sought leave to amend as soon as practicable.") (collecting cases allowing amendment based on newly discovered information).

Similarly, in *ICU Med., Inc. v. RyMed Techs., Inc.*, the Court held that good cause existed under Rule 16 because "Defendant's proposed Second Amended Answer pleads a new legal theory – inequitable conduct – based on a new set of facts obtained and confirmed during discovery which took place after the Scheduling Order's deadline for amended pleadings."  674 F. Supp. 2d 574, 578 (D. Del. 2009).  Indeed, District Courts in this Circuit routinely find good cause established when a party discovers information after the Scheduling Order's deadline to amend has passed. *See Novartis Vaccines & Diagnostics, Inc. v. MedImmune, LLC*, No. 11-84, 2013 WL 3812074, at *3 (D. Del. July 22, 2013) (collecting cases).

Finally, in I*n re Nat'l Prescription Opiate Litig.*, 956 F.3d 838, 843 (6th Cir. 2020), the Sixth Circuit determined that good cause was not present in a case that is plainly inapposite to this case. The plaintiffs in *Opiate* did not even attempt to satisfy the good cause standard because: (i) they were aware of the claims that they later sought to assert by amendment prior to the deadline to amend, *but "expressly disavowed" these claims*; and (ii) both discovery and the summary judgment deadlines had also closed.  In stark contrast, as demonstrated at length above, the Kroger

12

DAPs establish good cause because we seek to amend based on evidence discovered after December 2018. Further, no Defendant is prejudiced by this amendment because discovery in this MDL is still at a relatively nascent stage, as Defendants have completed just a fraction of their Rule 34 productions and deposition discovery has not yet commenced.

     5.    **Defendants Cannot Meet Their Burden To Establish That The Proposed Amendment Creates An "Undue Burden."**

Finally, Defendants cannot meet their burden to demonstrate that the proposed amendment would unduly burden the Court by adding new parties and complicating the pending motions to dismiss the Kroger DAPs' First Amended Complaint.

<u>First</u>, it is well established that the addition of parties to an existing case does not create an undue burden. *See Smith v. Genesis Ventures I, LLC*, No. 06-1473-CMR, 2006 WL 3592330, at *2 (E.D. Pa. Dec. 8, 2006) ("The Court recognizes that adding these four additional parties will add to the lengthiness and cost of the litigation…. [T]he Court finds that generalized inconvenience and cost is not alone enough to justify denying the motion to amend, which Rule 15(a) contemplates should be freely allowed...").

<u>Second</u>, as noted above, PTO 105 expressly contemplates that "discovery involving pre-existing parties may be expanded as appropriate to include newly added defendants and/or drugs." Given that no Defendant has substantially completed document production and deposition discovery has not even begun, the proposed amendment does not present a burden that is "undue" within the meaning of Rule 15.

<u>Third</u>, the amendment will not complicate the resolution of the fully briefed motions to dismiss. To be clear, the Kroger DAPs do not wish to supplement the briefing on those motions. If the Court denies all Defendants' pending individual dismissal motions, then it logically stands to reason that the PSAC – which is substantially more detailed than the Kroger DAPs' First Amended Complaint, particularly with respect to the overarching conspiracy theory – states a

plausible claim against those same individual Defendants. And if the Court grants any individual Defendant's motions to dismiss the overarching conspiracy or certain individual drug claims, then the Kroger DAPs agree that this dismissal should apply to the same claims in the PSAC. Alternatively, the Court could give Defendants the opportunity to resubmit their motions to dismiss as applied to the Kroger DAPs' PSAC.

The Kroger DAPs only submit that the PSAC demonstrates that, if the Court finds any merit to any of the Rule 12 motions filed by Defendants in early 2019, then leave to amend to address any deficiencies is warranted based on the substantial evidence uncovered by Plaintiffs since those pleadings and motions were filed.

For example, as the PSAC demonstrates, Plaintiffs have uncovered evidence that senior sales executives from Teligent communicated with their counterparts at G&W and Perrigo at the same time that the Defendants, including Teligent, were increasing prices on drugs such as Econazole and Fluocinolone. Accordingly, to the extent that the Court determines that the Kroger DAPs' First Amended Complaint is insufficient as to any Defendant, the Kroger DAPs submit that any deficiencies are more than cured in the PSAC. (This does not become an issue should the Court decide to offer Defendants the opportunity to resubmit their Rule 12 motions as to the Kroger DAPs' PSAC.)

For these reasons, the Court might even find that the instant amendment helps promote efficiency in this MDL. Because the currently pending motions to dismiss were filed against complaints that did not reflect evidence gleaned from discovery or the most recent DOJ filings, those early complaints do not reflect the breadth of evidence against Defendants. Accordingly, the Court could, in its discretion, deny those motions as moot and require the parties to brief Rule 12 motions based on a more contemporary record.

### III.  CONCLUSION

The Kroger DAPs have been diligent in seeking to discover the evidence that supports the PSAC. The Kroger DAPs did not unduly delay in obtaining and analyzing the tens of millions of documents that provide evidentiary support for the amendment. Further, the Court's PTO 105 and comments at various status conferences indicate that Plaintiffs in the MDL may still file amended complaints with leave of Court. Accordingly, regardless of which standard applies – Rule 15 or Rule 16 – the Kroger DAPs satisfy it, and the Court should grant the Kroger DAPs' motion for leave to amend.

Dated:  September 4, 2020					Respectfully submitted,

								By: _____
									Richard Alan Arnold, Esquire
									William J. Blechman, Esquire
									Scott E. Perwin, Esquire
									Anna T. Neill, Esquire
									Samuel J. Randall, Esquire
									Brandon S. Floch, Esquire
									Joshua B. Gray, Esquire
									KENNY NACHWALTER, P.A.
									1441 Brickell Avenue, Suite 1100
									Miami, Florida  33131
									Tel:   (305) 373-1000
									Fax:   (305) 372-1861
									E-mail:  rarnold@knpa.com
										wblechman@knpa.com
										sperwin@knpa.com
										aneill@knpa.com
										srandall@knpa.com
										bfloch@knpa.com
										jgray@knpa.com

								*Counsel for Kroger Plaintiffs*

624915.1

16