**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **In re: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION** | **MDL NO. 2724**<br>**16-MD-2724**<br><br>**HON. CYNTHIA M. RUFE** |
| **THIS DOCUMENT RELATES TO:**<br><br>***THE KROGER CO., et al. v. ACTAVIS HOLDCO U.S., INC. et al.*** | **Civil Action No.: 18-cv-00284-CMR** |

**OPPOSITION OF DEFENDANT BRECKENRIDGE PHARMACEUTICAL, INC. TO THE KROGER DIRECT ACTION PLAINTIFFS' MOTION FOR LEAVE TO AMEND**

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT .................................................................................................... 1

BACKGROUND ........................................................................................................................... 2

LEGAL STANDARD.................................................................................................................... 4

ARGUMENT ................................................................................................................................. 5

I.     THE MOTION FOR LEAVE TO AMEND SHOULD BE DENIED BECAUSE
BRECKENRIDGE WOULD BE PREJUDICED IF IT WERE GRANTED.................... 6

II.    THE MOTION FOR LEAVE TO AMEND SHOULD BE DENIED BECAUSE
THE KROGER PLAINTIFFS UNDULY DELAYED IN SEEKING LEAVE TO
AMEND................................................................................................................................ 8

III.   THE MOTION FOR LEAVE TO AMEND SHOULD BE DENIED BECAUSE
THE PROPOSED AMENDMENTS ARE FUTILE AS TO BRECKENRIDGE........... 10

CONCLUSION............................................................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**                                                                             **Page(s)**

*Berger v. Edgewater Steel Co.*,
   911 F.2d 911 (3d Cir. 1990)......................................................................................9

*F. D. Rich Co. v. U.S. for Use of Indus. Lumber Co.*,
   417 U.S. 116 (1974)...................................................................................................3

*Fed. Nat'l Mortg. Ass'n v. DuBois*,
   No. 15-cv-3787, 2018 WL 5617566 (D.N.J. Oct. 30, 2018) ....................................7

*Fraser v. Nationwide Mut. Ins. Co.*,
   352 F.3d 107 (3d Cir. 2003), *as amended* (Jan. 20, 2004).......................................4

*In re Generic Pharm. Pricing Antitrust Litig.*,
   394 F. Supp. 3d 509 (E.D. Pa. 2019) .....................................................................11

*In re Generic Pharm. Pricing Antitrust Litig.*,
   338 F. Supp. 3d 404 (E.D. Pa. 2018) .....................................................................15

*Heraeus Med. GmbH v. Esschem, Inc.*,
   321 F.R.D. 215 (E.D. Pa. 2017).......................................................................4, 5, 7

*Hilburn v. Bayonne Parking Auth.*,
   562 F. App'x 82 (3d Cir. 2014) ...............................................................................3

*Holtst v. Oxman*,
   290 F. App'x 508 (3d Cir. 2008) ...........................................................................10

*In re Ins. Brokerage Antitrust Litig.*,
   618 F.3d 300 (3d Cir. 2010)...................................................................................11

*Juan v. Sanchez*,
   339 F. App'x 182 (3d Cir. 2009) ...........................................................................10

*Just New Homes, Inc. v. Beazer Homes*,
   293 F. App'x 931 (3d Cir. 2008) ...........................................................................14

*Lee v. City of Philadelphia*,
   No. 13-cv-510, 2014 WL 12616820 (E.D. Pa. Sept. 24, 2014)................................5

*Lorenz v. CSX Corp.*,
   1 F.3d 1406 (3d Cir. 1993)........................................................................................4

*In re Mullarkey*,
　　536 F.3d 215 (3d Cir. 2008)..............................................................................9

*Parker Auto Body Inc. v. State Farm Mut. Auto. Ins. Co.*,
　　171 F. Supp. 3d 1274 (M.D. Fla. 2016) ..........................................................15

*Rolo v. City Investing Co. Liquidating Trust*,
　　155 F.3d 644 (3d Cir. 1998)..............................................................................8

*Superior Offshore Int'l, Inc. v. Bristow Grp.*,
　　738 F. Supp. 2d 505 (D. Del. 2010) .................................................................15

*Van Veen v. AT & T Corp.*,
　　No. 10-cv-1635, 2011 WL 4001004 (E.D. Pa. May 25, 2011)...........................7

*Wash. Cty. Health Care Auth. v. Baxter Int'l Inc.*,
　　328 F. Supp. 3d 824 (N.D. Ill. 2018) ..........................................................14, 15

*Zeigenfuse v. Kemp & Assocs., Inc.*,
　　No. 14-cv-5954, 2015 WL 7568259 (E.D. Pa. Nov. 25, 2015) ..........................9

## Other Authorities

Fed. R. Civ. P. 12 ..............................................................................................................7

28 U.S.C. § 1927 ..............................................................................................................3

Defendant Breckenridge Pharmaceutical, Inc. ("Breckenridge") submits this Opposition to the untimely Kroger Direct Action Plaintiffs' Motion for Leave to Amend.  Dkt. No. 230-1 ("Kroger Motion" or "Kroger Mot.").  Breckenridge has joined in the Defendants' Joint Opposition to the Kroger Motion filed on October 2, 2020, and files this supplemental brief in further opposition to address certain facts and circumstances particular to Breckenridge.

## PRELIMINARY STATEMENT

The Kroger Plaintiffs acknowledge, as they must, the insurmountable hurdle that should prohibit them from being permitted to untimely amend their complaint — namely that Breckenridge's (and other defendants') motions to dismiss the presently operative Kroger First Amended Complaint were fully briefed nearly sixteen months ago and have been pending since. *See* Kroger Mot. at 13.  If the Kroger Plaintiffs were to concede — which they have not, despite multiple opportunities to do so — that a grant of Breckenridge's pending motion to dismiss the Kroger First Amended Complaint would result in a dismissal of all of their claims against Breckenridge, Breckenridge would have no opposition to Kroger's motion for leave to file their proposed Second Amended Complaint ("PSAC").  In support of their motion for leave to amend, however, the Kroger Plaintiffs instead opaquely suggest that "the Court could give Defendants the opportunity to resubmit their motions to dismiss as applied to the Kroger DAPs' PSAC." *Id.* at 14.  The Kroger Plaintiffs do not attempt to explain how the Court is to rule on a fully briefed motion to dismiss that addresses one complaint as if it were filed to address another.  But to the extent that the Kroger Plaintiffs contend that if the Court were to grant Breckenridge's fully briefed and pending motion to dismiss, it would *not* result in dismissal of all of their claims against Breckenridge, then granting the Kroger Plaintiffs' leave to file the untimely PSAC — an unjustifiably and significantly delayed filing that relates to events that allegedly occurred *well before* the filing of the *original* Kroger complaint, let alone the subsequently proposed amended

complaints — would be unduly prejudicial and futile as to Breckenridge.  For these reasons, as well as those in the joint Defendants' Opposition, the Kroger Plaintiffs' motion for leave to amend should be denied.

## BACKGROUND

On January 22, 2018, Direct Action Plaintiffs The Kroger Co., Albertson's Companies, LLC, and H.E. Butt Grocery Company, L.P. (collectively, "the Kroger Plaintiffs") filed a complaint naming various generic pharmaceutical companies as defendants, including Breckenridge.  Dkt. No. 1.  On December 21, 2018, in compliance with the governing Pre-Trial Order ("PTO") 61 deadline (*In re Generic Pharms. Pricing Antitrust Litig.*, E.D. Pa. No. 16-MD-2724, Dkt. No. 775, ¶ 1), the Kroger Plaintiffs filed their First Amended Complaint, which is presently the operative Kroger complaint.  Dkt. No. 37 ("FAC").  On February 21, 2019, Breckenridge filed a motion to dismiss the Kroger FAC.  Dkt. No. 86-1 ("Breckenridge MTD").[1] Briefing on the Breckenridge MTD was completed on June 13, 2019, and the motion remains pending.[2]

On February 3, 2020, the Kroger Plaintiffs filed a Motion for Leave to Amend, attaching a prior iteration of their proposed Second Amended Complaint.  Dkt. No. 196.  On September 4,

---

[1] *See also* Dkt. Nos. 132, 170 (additional Breckenridge MTD briefing).  On November 5, 2019, in response to a request from this Court to identify critical pending and fully briefed motions to dismiss, Breckenridge identified the Breckenridge MTD, among others.

[2] In the Breckenridge MTD, Breckenridge demonstrated that the FAC contains no allegations that could possibly support a finding that Breckenridge participated in any conspiracy, whether overarching or specifically regarding Propranolol capsules, the only drug that the FAC alleges that Breckenridge sold.  *See generally* Breckenridge MTD. Indeed, as to Breckenridge, the allegations in the Kroger FAC are virtually non-existent.  *Id.* at 5.  The Kroger FAC alleges no facts to support the inference that Breckenridge agreed to fix the price of Propranolol or any other drug. *Id.*  As to the purported overarching conspiracy, the Kroger FAC asserts no factual allegations that (1) Breckenridge was committed to the common goal of an overarching conspiracy to fix the price of multiple drugs, (2) the overarching conspiracy was dependent upon the existence of a Propranolol capsule price fixing scheme, or (3) Breckenridge engaged in any methods to negotiate, implement or police the alleged overarching conspiracy.  *Id.*

2020, the Kroger Plaintiffs withdrew that motion.  Dkt. No. 229.[3]  The allegations against

Breckenridge in the newly filed PSAC are nearly identical to the allegations in the Kroger

Plaintiffs' previously filed proposed Second Amended Complaint.

On September 4, 2020, the Kroger Plaintiffs filed their most recent Motion for Leave to

Amend, attaching the PSAC.  Dkt. No. 230-2.  Out of the 188 products included in the PSAC,

the PSAC now proposes to allege that Breckenridge conspired as to four drugs:  Propranolol,

Estradiol/Norethindrone Acetate tablets ("ENA"), Cyproheptadine HCL tablets

("Cyproheptadine"), and Methylprednisolone.  The Propranolol-related claims in the PSAC are

substantively identical to those in the FAC, which are the subject of the fully briefed

Breckenridge MTD.  *Compare* FAC ¶¶ 12, 68, 742-50, 821, 833, 1043-49 *with* PSAC ¶¶ 2173-

76, 2185-87, 2849, 2877.  The claims as to ENA and Cyproheptadine essentially regurgitate the

allegations asserted against Breckenridge in the States 2019 Amended Complaint, which is

subject to a motion to dismiss that Breckenridge filed on February 14, 2020 (E.D. Pa. No. 19-cv-

2407-CMR, Dkt. Nos. 129 & 153) that is fully briefed and remains pending.  *Compare*

*Connecticut v. Teva Pharmaceuticals USA, Inc.*, No. E.D. Pa. 19-cv-2407-CMR, Dkt. No. 106

---

[3] The Kroger Plaintiffs withdrew that motion only after briefing was complete.  Indeed, on March 2, 2020, Breckenridge submitted an opposition to the Kroger Plaintiffs' February 2020 Motion for Leave to Amend (Dkt. No. 207), and filed a sur-reply in further opposition on March 30, 2020 (Dkt. No. 218).  Thus, the Kroger Plaintiffs have forced Breckenridge to engage in duplicative, vexatious, and unnecessary briefing in order to protect its rights.  The Kroger Plaintiffs' serial motion to amend practice should result in an award of attorneys' fees and costs to Breckenridge to reimburse it for having to respond to the Kroger Plaintiffs' vexatious and unreasonable motion practice.  *See F. D. Rich Co. v. U.S. for Use of Indus. Lumber Co.*, 417 U.S. 116, 129 (1974) (noting that courts "have long recognized that attorneys' fees may be awarded to a successful party when his opponent has acted in bad faith, vexatiously, wantonly, or for oppressive reasons"); *Hilburn v. Bayonne Parking Auth.*, 562 F. App'x 82, 86 (3d Cir. 2014) ("Imposition of sanctions pursuant to the court's inherent power are warranted when a party has acted in bad faith, vexatiously, wantonly or for oppressive reasons." (internal quotation omitted)); 28 U.S.C. § 1927 ("Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.").

("States 2019 Am. Compl.") ¶¶ 540-41, 740, 745, 748-50, 797-803, 964-69, 1218-19, 1221-23 *with* PSAC ¶¶ 1155-60, 2544-55, 2606-13, 2749-54, 2877.[4]  The claims as to Methylprednisolone are merely regurgitated from the End Payer Plaintiffs' Class Action Complaint, which was filed nearly a year ago (in December 2019) and is the follow-on EPP class action complaint to the States 2019 Amended Complaint.[5]  *1199SEIU Nat'l Benefit Fund v. Actavis Holdco U.S., Inc.*, E.D. Pa. 19-cv-6011-CMR, Dkt. No. 1 ("2019 EPP Complaint" or "2019 EPP Compl.").  *Compare* 2019 EPP Compl. ¶¶ 3, 393-404 *with* PSAC ¶¶ 1702-12, 2877.

## LEGAL STANDARD

A motion for leave to amend should be denied if "(1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party."  *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 116 (3d Cir. 2003), *as amended* (Jan. 20, 2004).

In the Third Circuit, "prejudice to the non-moving party is the touchstone for the denial of an amendment."  *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993) (quoting *Cornell & Co. v. Occupational Safety & Health Review Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978)). "Prejudice means 'undue difficulty in prosecuting [or defending] a law suit as a result of a change in tactics or theories on the part of the other party.'"  *Heraeus Med. GmbH v. Esschem, Inc.*, 321 F.R.D. 215, 217 (E.D. Pa. 2017) (quoting *Deakyne v. Comm'rs of Lewes*, 416 F.2d 290, 300 (3d Cir. 1969)).  "More specifically, courts consider 'whether allowing an amendment would

---

[4] The allegations as to Breckenridge in the States 2019 Amended Complaint are substantively identical to the allegations in the States original complaint filed on May 10, 2019.  *Connecticut v. Teva Pharmaceuticals USA, Inc.*, No. 19-cv-710 (D. Conn.) (Dkt. No. 1) ("States Complaint")).

[5] On September 4, 2020, the End Payer Plaintiffs amended their 2019 EPP Complaint.  *1199SEIU Nat'l Benefit Fund v. Actavis Holdco U.S., Inc.*, E.D. Pa. 19-cv-6011-CMR, Dkt. No. 62 ("EPP Amended Complaint" or "EPP Am. Compl.").

result in additional discovery, cost, and preparation to defend against new facts or new theories.'" *Heraeus Med.*, 321 F.R.D. at 217 (quoting *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001)).

"Futility is also a sufficient basis to deny a motion to amend." *Lee v. City of Philadelphia*, No. 13-cv-510, 2014 WL 12616820, at *2 (E.D. Pa. Sept. 24, 2014) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "In this context, 'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Lee*, 2014 WL 12616820, at *2 (quoting *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000)). In other words, in making the futility determination, courts "must apply the same standard of legal sufficiency that applies under Rule 12(b)(6)." *Lee*, 2014 WL 12616820, at *2.

## ARGUMENT

This new Kroger Plaintiffs' Motion for Leave to Amend should be denied. First, the Kroger Plaintiffs' proposed amendments would unduly prejudice Breckenridge by requiring it to engage in needlessly duplicative motion to dismiss briefing (which is in addition to this duplicative briefing regarding the Kroger Plaintiffs' serial motions to amend), resulting solely from the Kroger Plaintiffs' untimely and unjustifiable stratagem in defiance of the governing Court-Ordered December 21, 2018 motion to dismiss deadline. Second, the Kroger Plaintiffs do not even begin to provide any reasonable or legitimate justification for seeking this further untimely leave to amend when they knew, or should have known, on or before the Court's December 2018 deadline for plaintiffs to amend their complaints, of any claims that they might have had as a result of their generic pharmaceutical purchases from Breckenridge. Third, the Kroger Plaintiffs' proposed amendments are futile because the allegations against Breckenridge in the PSAC fail to state a claim.

I.   **THE MOTION FOR LEAVE TO AMEND SHOULD BE DENIED BECAUSE BRECKENRIDGE WOULD BE PREJUDICED IF IT WERE GRANTED**

At the December 2018 deadline for plaintiffs in this MDL to amend their complaints, the Kroger Plaintiffs amended their initial complaint and filed their FAC.  Breckenridge timely moved to dismiss that FAC, in reasonable reliance that the Kroger Plaintiffs had complied with the Court's deadline to amend.  If the Court were to deem this latest iteration of the PSAC to be the operative complaint, the time, effort, energy, and expense that Breckenridge has already expended to support the Breckenridge MTD as to the FAC would be wasted.  There is no justification to allow the Kroger Plaintiffs belatedly to amend their FAC while a motion to dismiss that complaint remains pending and is ripe for adjudication.[6]

In an apparent effort to sidestep this undeniable prejudice, the Kroger Plaintiffs now suggest that, if Breckenridge were to be permitted to move to dismiss the PSAC at all, "the Court could give Defendants the opportunity to resubmit their motions to dismiss as applied to the Kroger DAPs' PSAC."  Kroger Mot. at 14.  But nowhere do the Kroger Plaintiffs attempt to explain how the Court can properly rule on a fully briefed motion to dismiss, which addresses one complaint, as if it were filed to address another complaint.  If it means that if the Court were to grant the Breckenridge MTD, all of the Kroger Plaintiffs' claims against Breckenridge would be dismissed, then the Kroger Plaintiffs should say so.  But they have not said that.  If, on the other hand, the Kroger Plaintiffs intend that Breckenridge would have to file a new motion to dismiss to address the new claims they propose to assert in the PSAC related to additional drugs, then Breckenridge would be prejudiced either by (a) having to engage in duplicative and serial

---

[6] As discussed *supra* n.3, the Kroger Plaintiffs' serial, unreasonable and vexatious motions for leave to amend—in order to add alleged events that the Kroger Plaintiffs knew or should have been known in 2018—have imposed unnecessary and unjustifiable costs on Breckenridge by forcing Breckenridge to serially oppose those motions in order to protect its rights.

motion to dismiss briefing as a result of the timing whims of the Kroger Plaintiffs, and/or (b) having its existing motion to dismiss be denied as a result of the Breckenridge MTD briefing not comprehensively addressing the allegations in the PSAC.  Any resulting additional motion practice, brought about only by the Kroger Plaintiffs' pleading machinations, would unduly prejudice Breckenridge.  *See, e.g.*, *Heraeus Med.*, 321 F.R.D. at 218 (denying leave to amend as prejudicial because "[a]mendment of the complaint would necessitate a new wave of motion practice").

Alternatively, the Kroger Plaintiffs argue that the Court could deny the Breckenridge MTD and preclude Breckenridge from being permitted to file a motion to dismiss challenging the PSAC on the basis that "it logically stands to reason that the PSAC – which is substantially more detailed than the Kroger DAPs' First Amended Complaint, particularly with respect to the overarching conspiracy theory – states a plausible claim . . . ."  Kroger Mot. at 13-14.[7]  To the extent that the Kroger Plaintiffs are arguing that Breckenridge should be precluded from being permitted to file a motion to dismiss challenging the PSAC, there is no authority that would support such a suggestion.  Federal Rule of Civil Procedure 12(b) permits a defendant an opportunity to move to dismiss a pleading, including an amended complaint, without regard to the similarity between the allegations in the prior complaint and the amended complaint.  *See Van Veen v. AT & T Corp.*, No. 10-cv-1635, 2011 WL 4001004, at *3 (E.D. Pa. May 25, 2011) (holding that defendant had right to move to dismiss amended complaint under Rule 12 even though all substantive allegations were identical to those in prior complaint); *see also Fed. Nat'l Mortg. Ass'n v. DuBois*, No. 15-cv-3787, 2018 WL 5617566, at *6 (D.N.J. Oct. 30, 2018) ("nothing in the Federal Rules of Civil Procedure" prevents a defendant from moving to dismiss

---

[7] This is untrue with regard to the allegations about Breckenridge.

an amended complaint even if it had already responded to a prior complaint).[8]  Kroger should not

be permitted to create such a "heads I win, tails you lose" scenario because it inexplicably and

unjustifiably decided to wait until the Court-ordered deadline had passed to assert its full

complement of alleged claims against Breckenridge.

## II.   THE MOTION FOR LEAVE TO AMEND SHOULD BE DENIED BECAUSE THE KROGER PLAINTIFFS UNDULY DELAYED IN SEEKING LEAVE TO AMEND

The Kroger Motion should also be denied because the Kroger Plaintiffs unduly and

unjustifiably delayed in seeking leave to amend.  On November 20, 2018, the Court entered PTO

61, which set the December 21, 2018 deadline for the plaintiffs to amend their complaints.  At

that time, the Kroger Plaintiffs, each sophisticated commercial entities with capable counsel,

were on notice that each was under an obligation to conduct a sufficient internal investigation to

identify all potential claims related to alleged price fixing and market allocation of generic

pharmaceuticals it purchased on or before December 21, 2018.  The Kroger Plaintiffs do not (and

cannot) contend that their proposed amendments are based on new evidence that did not exist as

of December 2018.  To the contrary, all of the new allegations in the PSAC relate to events that

allegedly occurred well before the filing of the original Kroger complaint, let alone the FAC.

This supports a finding of undue delay.  *See Rolo v. City Investing Co. Liquidating Trust*, 155

F.3d 644, 654 (3d Cir. 1998) (a court may consider whether the proposed amended complaint

---

[8] The Kroger Plaintiffs' argument that "no Defendant is prejudiced by this amendment because discovery in this MDL is still at a relatively nascent stage" (Kroger Mot. at 13) is simply wrong.  Breckenridge has completed its production of its go get documents, its Tier 1 custodial documents, and its bellwether product structured and unstructured transactional and cost data (plus Propranolol), and it is well on its way to completing its Tier 2 custodial document production (to be substantially completed by November 16, 2020) and will complete  production of its remaining non-bellwether product structured and unstructured transactional and cost data on or before November 23, 2020.

"primarily seeks to replead facts and arguments that could have been pled much earlier in the proceedings").[9]

That the States were continuing to conduct their investigation did not relieve the Kroger Plaintiffs of their obligation to conduct their own investigation and amend their own complaint by December of 2018 in compliance with the governing PTO 61.  But even if the Court were to find that the Kroger Plaintiffs were entitled reasonably to rely on the May 2019 States Complaint in formulating its amendment, they advance no justification for the delay between May of 2019 and now.[10]  That is especially true in light of PTO 105, in which the Court held that discovery would proceed based on cases pending as of September 1, 2019.[11]  Thus, the Kroger Plaintiffs have unduly delayed in seeking leave to amend, and as a result, granting their motion would prejudice Breckenridge.  *See Berger v. Edgewater Steel Co.*, 911 F.2d 911, 924 (3d Cir. 1990) (affirming district court's decision to deny leave to amend where basis for amendment was known for over four months before leave was sought); *Zeigenfuse v. Kemp & Assocs., Inc.*, No. 14-cv-5954, 2015 WL 7568259, at *3-4 (E.D. Pa. Nov. 25, 2015) (finding undue delay where movants were aware of potential claims at least three months before filing motion to amend).

---

[9] Res judicata would bar the claims against Breckenridge in the PSAC if the Court grants the Breckenridge MTD. *See In re Mullarkey*, 536 F.3d 215, 225 (3d Cir. 2008) ("The doctrine of res judicata bars not only claims that were brought in a previous action, but also claims that could have been brought.").  Because all of the new allegations in the PSAC relate to events that allegedly occurred well before the December 2018 amendment deadline, the Kroger Plaintiffs' failure to include those allegations then, would preclude the Kroger Plaintiffs from being able to assert them in the PSAC in the event that the Breckenridge MTD is granted.

[10] It is worth noting that Breckenridge was not named as a defendant in the most recently filed State AG complaint asserting claims primarily regarding dermatological products.  *State of Connecticut, et al. v. Sandoz, Inc., et al.*, E.D. Pa. No. 20-cv-03539-CMR, Dkt. No. 1.  Thus, as to Breckenridge, there are no additional claims in Kroger's instant PSAC flowing from the most recently filed State AG complaint.  This further supports the fact that the Kroger Plaintiffs knew, or should have known, all of their claims as to Breckenridge no later than December of 2018.

[11] The Kroger Plaintiffs' multiple abandoned efforts to amend its complaint (in December 2019, they withdrew their August 30, 2019 motion for leave to amend, and in September 2020, they withdrew their February 3, 2020 motion for leave to amend (*see* Dkt. Nos. 185, 194, 196, & 229) that Breckenridge opposed (*see* Dkt. Nos. 206, 207, 217, & 218)) has resulted in serial unwarranted and wasteful motion practice.

III.     **THE MOTION FOR LEAVE TO AMEND SHOULD BE DENIED BECAUSE THE PROPOSED AMENDMENTS ARE FUTILE AS TO BRECKENRIDGE**

The Court should also deny the motion because the Kroger Plaintiffs' proposed amendments as to Breckenridge are futile. *See Juan v. Sanchez*, 339 F. App'x 182, 187 (3d Cir. 2009) (affirming denial of leave to amend where "the amendment would be futile"). Proposed amendments are futile where the newly added claims would not withstand a motion to dismiss. *See Holtst v. Oxman*, 290 F. App'x 508, 510 (3d Cir. 2008). That is the case here.[12]

In the Breckenridge MTD, Breckenridge demonstrates that the Kroger Plaintiffs fail to (i) plead facts that would support a finding that Breckenridge participated in any overarching conspiracy or Propranolol conspiracy, and (ii) allege the requisite plus factors as to Breckenridge. Breckenridge MTD at 7-12, 13-15. The PSAC does not cure those deficiencies.

The PSAC continues to fail to (i) plead facts demonstrating that Breckenridge participated in any overarching conspiracy, (ii) plead facts demonstrating that Breckenridge participated in a conspiracy with respect to any specific drugs, and (iii) allege the requisite plus factors as to Breckenridge. The PSAC again only alleges an insufficient supposed series of independent, separate agreements among different defendants for different drugs, and labels it an overarching conspiracy. *See* PSAC ¶¶ 28, 1155-60, 2173-76, 2185-87, 2544-55, 2606-13, 2749-54, 2849, 2877; Breckenridge MTD at 7-15. As to Breckenridge, the PSAC merely identifies three new drugs that Breckenridge allegedly has sold and lists claims regarding them (*see* PSAC ¶¶ 1155-60, 2544-55, 2606-13, 2749-54, 2877), but does not plead any facts from which the Court could infer that Breckenridge participated in any conspiracy specific to any of those

---

[12] If the Court were to grant the Kroger Motion, Breckenridge does not waive its right, and to the contrary, specifically reserves its right here, to file a motion to dismiss the claims in the PSAC as to Breckenridge in order to fully explicate the insufficiency of the allegations in that complaint that it summarizes herein.

individual drugs, or in the supposed overarching conspiracy related to the almost 200 drugs in the PSAC (*id.* ¶ 2877), only four of which Breckenridge is even alleged to have sold.

First, the Kroger Plaintiffs' proposed amendments as to Breckenridge continue to lack any factual allegations that show that Breckenridge participated in the extraordinarily broad alleged overarching conspiracy.  The PSAC still does not allege that Breckenridge traded customers in one drug market for customers in another drug market, agreed to concede market share for one generic drug in exchange for another company agreeing to concede market share for a second generic drug, declined to offer a competitive bid so as not to undermine an agreed price increase, or agreed to join in the price increase for one drug in exchange for leading a price increase for another drug.  *See* Breckenridge MTD at 4-6, 8.  The Kroger Plaintiffs again fatally fail to plead that Breckenridge agreed to and was committed to the common goal of an overarching conspiracy to fix the prices of almost 200 drugs, virtually none of which it ever sold. *See id*. at 8-9.

Sufficient allegations of an overarching conspiracy require more than allegations regarding a series of separate, parallel agreements among different manufacturers in different markets within the same industry.  *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 350 (3d Cir. 2010) (finding a series of broker-centered conspiracies was insufficient to state a claim for a "global" conspiracy, even if plaintiffs demonstrated a "pernicious industry practice"); *In re Generic Pharm. Pricing Antitrust Litig.*, 394 F. Supp. 3d 509, 525 (E.D. Pa. 2019).  But again, the PSAC fails to plead the requisite interdependence and overlap as to Breckenridge necessary to state an overarching conspiracy claim and fails to allege that Breckenridge participated in any *quid pro quo* exchange.  *See* Breckenridge MTD at 9-12.  Thus, the PSAC continues to fail to allege that Breckenridge's supposed agreements as to the four drugs it allegedly sold were

11

interdependent in any way on a supposed overarching agreement to fix the prices of almost 200 other drugs.

Second, the Kroger Plaintiffs fail to plead facts demonstrating that Breckenridge participated in a conspiracy with respect to any specific drug. The PSAC alleges that Breckenridge participated in a conspiracy with respect to four drugs: Propranolol (PSAC ¶¶ 2173-76, 2185, 2849, 2877), ENA (PSAC ¶¶ 1155-60, 2606-13, 2749-54, 2877), Cyproheptadine (PSAC ¶¶ 2544-55, 2606-13, 2749-54, 2877), and Methylprednisolone (PSAC ¶¶ 1702-12, 2877).

As to Propranolol, the PSAC does not contain any new factual allegations against Breckenridge that are not in the FAC. Thus, the Kroger Plaintiffs fail to adequately allege that Breckenridge participated in a conspiracy with respect to Propranolol for the reasons set out in the Breckenridge MTD. As to ENA and Cyproheptadine (with the one exception discussed below), the PSAC does not contain any allegations that are not also contained in the States 2019 Amended Complaint. In its motion to dismiss the States 2019 Amended Complaint, Breckenridge demonstrates why that complaint does not adequately allege that Breckenridge participated in a conspiracy with respect to either of those two drugs. E.D. Pa. No. 19-cv-2407-CMR, Dkt. No. 129.

In comparison to the States 2019 Amended Complaint, the Kroger Plaintiffs' PSAC contains a new allegation that Impax successfully began selling Cyproheptadine in "mid-2015." It concludes that Teva and Breckenridge "coordinated to concede market share" to Impax and suggests that a Breckenridge employee supposedly "brokered Impax's entrance" through a series of text messages with an Impax employee on July 20, 2015 (PSAC ¶ 2613), but the PSAC fails to allege any coordination between Teva and Breckenridge, or anything about the content of the

12

alleged text messages (completely lacking factual allegations regarding any supposed bargain or exchange between Breckenridge and Impax) or their relative timing in relation to the Impax entry. *Id.* Rather, the PSAC merely alleges that Impax successfully began selling Cyproheptadine in 2015 at the then-competitive market price, and competed for and won customers from the incumbent suppliers. *Id.* Thus, these allegations allege procompetitive entry, and do not state a viable antitrust claim.[13] Accordingly, it would be futile to allow them to be asserted against Breckenridge as part of the PSAC.

The Kroger Plaintiffs' PSAC purports to assert a claim against Breckenridge regarding Methylprednisolone, about which no motion to dismiss has yet been permitted to be filed by Breckenridge. But the PSAC does not even allege that Breckenridge raised its price for Methylprednisolone at any point. Rather, the PSAC alleges that, between March and June 2011, Cadista and Sandoz increased their prices for Methylprednisolone. *Id.* ¶ 1705. With no allegations as to timing, the PSAC alleges that Qualitest/Endo "was obligated by contractual price protections to maintain its current prices for large customers" but, as those alleged protections phased out, "Qualitest also raised its prices in accordance with Sandoz and Cadista." *Id.* ¶ 1707. The PSAC alleges that, four to nineteen months after Cadista and Sandoz allegedly increased their Methylprednisolone prices (i.e., between October 2011 and October 2012), Breckenridge (and another generic company, Greenstone) began to sell Methylprednisolone at the higher market price. *Id.* ¶ 1708.

Notably, although the PSAC alleges that a Breckenridge employee communicated with a Par employee, the PSAC alleges *nothing* about the form of the alleged communication, the date

---

[13] The Kroger Plaintiffs' argument that the antitrust laws should be applied in such a way as to discourage competitors from beginning to sell new products and increasing the number of suppliers is illogical and unsupportable.

of the alleged communication, or the substance of the alleged communication.  Moreover, the

PSAC does not allege any bargain and exchange by Breckenridge and Qualitest, nor that

Breckenridge communicated with Cadista or Sandoz.  It merely alleges that Breckenridge

informed Qualitest, Cadista, and Sandoz that Breckenridge would be selling Methylprednisolone

and that Breckenridge succeeded in becoming a new supplier and winning customers from

certain incumbent suppliers.  *Id.*  In other words, the Kroger Plaintiffs are purporting to base

their Methylprednisolone-related antitrust claim against Breckenridge on the allegations that

Breckenridge successfully entered and sold Methylprednisolone at the then-competitive market

price.[14]  These allegations do not state a viable antitrust claim and it would be futile to allow

them to be asserted against Breckenridge as part of the PSAC.

Third, the Kroger Plaintiffs still fail to allege the requisite plus factors as to Breckenridge.

*See* Breckenridge MTD at 13-15.  Indeed, although they must allege both, the Kroger Plaintiffs

continue to fail to allege either (i) parallel conduct among and between Breckenridge and the

other MDL defendants or (ii) circumstantial evidence ("plus factors") from which the Court may

plausibly infer Breckenridge's participation in an overarching agreement to fix the prices of the

almost 200 drugs that are alleged to be part of the overarching conspiracy in the PSAC, or an

agreement to fix the prices of the four drugs that Breckenridge is alleged to have sold.

In the PSAC, the Kroger Plaintiffs include one conclusory allegation that Breckenridge

was an "HDMA member[] during the relevant time period."  PSAC ¶ 157.  But "[m]embership in

a trade association, without more, does not violate the antitrust laws."  *Just New Homes, Inc. v.*

*Beazer Homes*, 293 F. App'x 931, 934 (3d Cir. 2008); *see also Wash. Cty. Health Care Auth. v.*

---

[14] It will be a sad day indeed if the antitrust laws are applied in such a way as to discourage competitors from beginning to sell new products and increasing the number of suppliers, as the Kroger Plaintiffs advocate in their PSAC with regard to at least two of the four products that Breckenridge is alleged to have sold.

*Baxter Int'l Inc.*, 328 F. Supp. 3d 824, 843 (N.D. Ill. 2018) (dismissing antitrust conspiracy claim where "[t]he plaintiffs assert only that the defendants were members of two of the same [trade] organizations, and that those organizations held meetings attended by defendants"); *Parker Auto Body Inc. v. State Farm Mut. Auto. Ins. Co.*, 171 F. Supp. 3d 1274, 1285 (M.D. Fla. 2016) ("participation in trade associations and similar organizations provides no indication of a conspiracy"); *Superior Offshore Int'l, Inc. v. Bristow Grp.*, 738 F. Supp. 2d 505, 516 (D. Del. 2010) (holding that the mere allegation that "Defendants had numerous opportunities to conspire" is insufficient to "permit a reasonable inference of collusion"). Moreover, the Kroger Plaintiffs do not specifically allege that Breckenridge actually attended any HDMA meetings. By contrast, this Court has previously dismissed Teligent, holding that although plaintiffs had specifically alleged that representatives of Teligent attended specific trade association meetings, plaintiffs nevertheless failed sufficiently to allege that Teligent had an opportunity to conspire. *In re Generic Pharm. Pricing Antitrust Litig.*, 338 F. Supp. 3d 404, 451 (E.D. Pa. 2018) (16-MD-2724, Dkt. No. 721, at 40).

Thus, it would be futile to permit the Kroger Plaintiffs' proposed amendments as to Breckenridge.

## **CONCLUSION**

For the foregoing reasons, the Kroger Motion for Leave to Amend should be denied.

Dated: October 2, 2020                        Respectfully submitted,


                                             /s/ *Stacey Anne Mahoney*
                                             Stacey Anne Mahoney
                                             Grant R. MacQueen
                                             Victoria Peng
                                             Sarah E. Hsu Wilbur
                                             MORGAN, LEWIS & BOCKIUS LLP
                                             101 Park Avenue

New York, New York 10178
Telephone:  (212) 309-6000
Facsimile:   (212) 309-6001
stacey.mahoney@morganlewis.com
grant.macqueen@morganlewis.com
victoria.peng@morganlewis.com
sarah.wilbur@morganlewis.com

*Counsel for Defendant Breckenridge
Pharmaceutical, Inc.*