# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION | Case No: 16-MD-2724 MDL No. 2724 |
| | Individual Case No. 18-CV-284 |
| THIS DOCUMENT RELATES TO: | HON. CYNTHIA M. RUFE |
| *The Kroger Co. et al. v. Actavis Holdco U.S., Inc. et al,* | |

## KROGER DIRECT ACTION PLAINTIFFS' CONSOLIDATED REPLY MEMORANDUM IN FURTHER SUPPORT OF THEIR MOTION FOR LEAVE TO AMEND

The Kroger Direct Action Plaintiffs ("DAPs") submit this Reply in support of their Motion for leave to file their Second Amended Complaint and supporting Memorandum (the "Motion"). *See* ECF No. 230.

As explained more fully below, the Court should grant the Kroger DAPs' Motion for several reasons.  <u>First</u>, all Defendants, except Breckenridge, walk back their opposition to the Motion, acknowledging that this Court indicated at the July 9, 2020 status conference that amendments would be allowed.  In any event, the Kroger DAPs have diligently investigated Defendants' conspiracy in order to amend timely despite Defendants' tactics in discovery and interlocutory appeals to stymie that effort.  We have been forthright and transparent with the Court in stating our intention to amend and why.  PTO 61, on which Defendants' opposition principally relies, was plainly not a scheduling order under Fed. R. Civ. P. 16, the later-dated PTO 161 expressly provides for amendments and, as noted earlier, the Court has indicated at status conferences its willingness to allow amendments.  <u>Second</u>, Breckenridge's argument that the Kroger DAPs' proposed Second Amended Complaint ("PSAC") is futile is without merit.  This proposed pleading is *more detailed* as to Breckenridge (and other Defendants) than the allegations in other complaints whose legal sufficiency the Court has already upheld in denying motions to dismiss.  *Generics*, 394 F.Supp. 3d 509, 526 (E.D. Pa. 2019).  <u>Third</u>, Defendants' use of their Opposition to seek a deadline for all Plaintiffs in this MDL to amend is procedurally and substantively deficient.  Indeed, the parties are actively negotiating with respect to this very subject.

1.    **The Kroger DAPs' Motion is Timely and Legally Justified**

Although all Defendants[1] other than Breckenridge have now effectively conceded that the Kroger DAPs may properly amend our Complaint, Defendants continue to argue that the Kroger DAPs have been anything other than diligent in updating our Complaint as this MDL progresses. In fact, Breckenridge – alone among Defendants – goes as far as characterizing the Kroger DAPs' efforts as "serial, unreasonable and vexatious."[2]

Even setting aside Breckenridge's hyperbolic aspersions, Defendants' implication that the Kroger DAPs have been dilatory in any way in pursuing our claims in this MDL is simply wrong. As detailed in the Motion, the investigation of Defendants' cartel by the Kroger DAPs (and other Plaintiffs) has required a Herculean effort. At times, the task has even felt Sisyphean. But at this juncture – before a single deposition has been taken, before the DOJ has concluded its parallel criminal investigation, and before we have had a reasonable opportunity to review comprehensively the 26,000,000 documents (and counting) produced by Defendants in this case – we have compiled a pleading that reflects the universe of drugs and defendants that the Kroger DAPs intend to pursue in this MDL.

Moreover, throughout this process, we have been fully transparent and earnest with both the Court and with Defendants about our plans to amend our Complaint.

---

[1]    All Defendants other than Breckenridge offer no more than token opposition to the Kroger DAPs' Motion. Instead, Defendants improperly use their Response Brief, filed only in the Kroger DAPs' case, to ask for relief against all Plaintiffs in the MDL. For the reasons explained on pages 8–10, *infra,* this request is both procedurally and substantively improper.

[2]    *See* Breckenridge Opp., at 3 n.3; 6 n.6; & 9 n.11. Breckenridge uses the term "vexatious" six times in its brief and even argues that the Kroger DAPs' motion "should result in an award of attorneys' fees and costs to Breckenridge." *Id.* at 3 n.3. As detailed below, we respectfully disagree with this characterization of our motion or that any sanction would be legally permissible here.

- The first attempted amendment, filed on August 30, 2019, was non-substantive, and did not add a single new Defendant or a single new drug. Instead, as we forthrightly noted in support of the amendment, it was intended as "a belt-and-suspenders measure that conform[ed] certain of the Counts in the Kroger DAPs' Complaint to the overarching conspiracy Counts that the States already assert[ed] in their Heritage-Related Conspiracy."[3]  As we further noted at the time, this proposed amendment was based on discussions between the Kroger DAPs and the State AGs to jointly try as a possible bellwether case the Heritage-centric conspiracy asserted by the State AGs in *State of Connecticut et al. v. Aurobindo Pharma USA, Inc.*, Case No. 17-cv-03768-CMR (E.D. Pa.).

- The second attempted amendment was initially filed on January 28, 2020 (and refiled on our individual docket on February 4, 2020) and brought up to date the Kroger DAPs' Complaint with the then-current state of the MDL.  The proposed amendment asserted claims related to all the drugs and all the Defendants named by the States in their second complaint, which alleged a Teva-centric conspiracy. The proposed amendment also added hundreds of additional allegations of conspiratorial communications between Defendants based on facts learned through discovery, none of which was known to us as of December 2018.[4]  Additionally, the proposed amendment asserted a Count that mirrored the Teva-centric conspiracy pled by the State AGs, so the Kroger DAPs might have the option of jointly trying that claim with the States in a bellwether trial, which at the time was under active consideration.  *See* Special Master Marions' Third Report & Recommendation, ECF No. 1244, note 4.  The States agreed to this provided it did not prove impractical or cause unreasonable delay.

- The current attempted amendment, filed on September 4, 2020, also brings current the Kroger DAPs' Complaint based on the new drugs added by the State AGs' third and final Complaint (the Sandoz-centric complaint).  It does not add any drug or any Defendant that was not already included in the MDL as of June 11, 2020.[5]  It includes a Teva-centric Count that generally aligns with the State AG's Teva-centric conspiracy.  We advised the Court at the July 9, 2020 hearing of our intention to move to amend, or substitute, a new proposed SAC because we were mindful of judicial resources, to align with our overarching conspiracy theory and

---

[3]     *See* First Motion for Leave to Amend & Memo in Support, ECF No. 185 & 185-1 at 2.

[4]     *See* Second Motion for Leave to Amend & Memo in Support, ECF No. 196 & 196-1.

[5]     *See* Third Motion for Leave to Amend & Memo in Support, ECF No. 230 & 230-1; *see also* Kroger DAPs' Notice of Withdrawal of Second Motion for Leave to Amend, ECF No. 229.

the States' third Complaint, and position ourselves to ask to participate in the Teva-centric bellwether, which the Court had already selected.

Accordingly, the Kroger DAPs have updated our proposed amended pleading based on our existing theory of the case and added the drugs and the Defendants involved in the conspiracy as we have discovered factual support for those allegations in our ongoing investigation.

This demonstrates transparency and diligence.  It certainly does not demonstrate undue delay.  And to characterize these proposed amendments as "vexatious" (six times) is, frankly, disappointing.[6]  PTO 105 expressly provided for amendments,[7] and the Court has further indicated its willingness to allow amendments at prior hearings, including the July 9, 2020 hearing, as Defendants now acknowledge.  We ourselves have been candid with the Court about our plans to update our proposed amendment throughout this process.[8]  Following the most recent colloquy on the subject, during which we informed the Court about our intention to update our allegations, the Court commented:

> I don't hear in any of the amendments that may be pending that there is a change in the primary allegation of overarching conspiracy.  I am hearing you want to add or drop claims or parties specifically.

---

[6]     The Kroger DAPs have not challenged the motives of Breckenridge, which continues to litigate issues that it has already lost in this Court and others, without regard for the law-of-the-case doctrine or the Court's limited resources.  *See, e.g., In re Generic Pharm. Pricing Antitrust Litig.*, 394 F. Supp. 3d 509, 526 (E.D. Pa. 2019) (rejecting argument by Breckenridge and other Defendants that the overarching conspiracy claims asserted by Plaintiffs' early complaints were implausible); *In re Propranolol Antitrust Litig.*, 249 F. Supp. 3d 712, 731 (S.D.N.Y. 2017) (finding plausible, at the Rule 12 stage, allegations that Breckenridge and other manufacturers conspired to fix prices of propranolol).

[7]     *See* PTO 105, ¶ 1, ECF No. 1135 ("With respect to any new complaint or amended complaint filed after September 1, 2019, responsive pleadings and/or motions shall be filed as normally required or agreed.").

[8]     *See* ECF No. 1465, July 9, 2020 Hrg. Tr. at 53; Dec. 13, 2019 Hrg. Tr. at 24–28, ECF No. 1177.  *See also* Sept. 24, 2019 Hrg. Tr. 8–9, ECF No. 1128 (colloquy with State AGs).

And the sooner you do that, the better. And I may just have to put a date on this that is realistic. And I don't know what that is yet, but I'm going to have to, because I want it to stop. It's going to have to stop.

And I may just be too tired after a long day of video hearings to actually think through what that date is right now, but it might very well be October 1st. I won't be cruel enough to do September 1st. I don't think that's realistic anyway.[9]

2. **The Kroger DAPs' Proposed Second Amended Complaint is Not Futile**

Alone among Defendants, Breckenridge argues that the proposed amendment is futile. Given that the broader overarching conspiracy is plausibly established, Breckenridge cannot demonstrate that the new – *more detailed* - allegations of its involvement in the conspiracy – taken as true – are insufficient to state a claim. Tellingly, Breckenridge makes no attempt to distinguish the Court's August 2019 Order ruling that the Kroger DAPs' overarching conspiracy alleged in our First Amended Compaint was plausible under *Twombly*. *See In re Generic Pharm. Pricing Antitrust Litig.*, 394 F. Supp. 3d 509, 526 (E.D. Pa. 2019) ("Plaintiffs make plausible claims that the alleged individual drug conspiracies were connected by common goals, methods, or actors so as to form a broader overarching conspiracy.").

The Kroger DAPs' proposed Second Amended Complaint (the "PSAC") adds allegations of numerous specific communications in which specifically identified Breckenridge employees discussed agreements with other Defendants to implement the fair share arrangement. For example, in ¶ 2613, the PSAC alleges that, "when Impax entered the market [for Cyproheptadine HCL] in mid-2015, Teva and Breckenridge both coordinated to concede market share to the new entrant, and Impax was able to enter the market at the same supracompetitive WAC prices and net prices as those charged by Teva and Breckenridge." The PSAC further alleges that Impax's entry

---

[9]     *See* ECF No. 1465, July 9, 2020 Hrg. Tr. at 53.

was facilitated by a specifically identified senior executive from Breckenridge, who "brokered Impax's entrance through a series of texts with [his counterpart at Impax] on July 20, 2015." *Id.* at ¶ 2613.

In another instance the PSAC alleges that, Nisha Patel of Teva (one of the most active members of the conspiracy) spoke twice with a senior executive from Breckenridge on February 7, 2014. These are the only two calls that ever occurred between Ms. Patel and the Breckenridge employee. After the second of the two calls, Ms. Patel directed her team not to submit a bid to a customer for Cyproheptadine HCL. PSAC, ¶ 2610. This allegation, even standing alone, is far more damning as to Breckenridge than the largely circumstantial evidence from which the Court previously sustained the overarching conspiracy claims for all plaintiffs. *In re Generic Pharm. Pricing Antitrust Litig.*, 394 F. Supp. 3d 509, 526 (E.D. Pa. 2019).

And these are just two of the many examples of Breckenridge's involvement in the overarching conspiracy. The PSAC alleges numerous additional instances of actions taken by the company to fix prices and allocate markets for generic drugs sold in the United States and also numerous specific communications between senior Breckenridge executives and their co-conspirators implementing those agreements. *See, e.g.,* ¶ 264–280, 1154, 1156–60, 1702–1712, 2173–2176, 2606–2613, 2749–2754. Accordingly, the PSAC is not futile as to Breckenridge (or any Defendant), because the allegations "plausibly allege that Defendants engaged in a conspiracy regarding the broader market for generic drugs, and not just the market for any individual drug." *Id.*

Finally, Breckenridge argues that it – alone among Defendants – would be prejudiced if the Court were to allow the proposed amendment due to the pendency of its individual motion to dismiss. Breckenridge writes:

> But nowhere do the Kroger Plaintiffs attempt to explain how the Court can properly rule on a fully briefed motion to dismiss, which addresses one complaint, as if it were filed to address another complaint.  If it means that if the Court were to grant the Breckenridge MTD, all of the Kroger Plaintiffs' claims against Breckenridge would be dismissed, then the Kroger Plaintiffs should say so.  But they have not said that.

Breckenridge Opp. at 6.[10]

But the Kroger DAPs *did* expressly address this issue previously in our March 16, 2020

Reply in support of our prior motion to amend.  ECF No. 214.  As we explained previously:

> [T]o be clear, we do agree that any Orders of dismissal from the Court based on the pending motions to dismiss should apply to the PSAC, *provided* that the dismissal is without prejudice to cure any deficiency identified in the Court's Order.  Accordingly, if the Court were to grant Breckenridge's motion to dismiss the individual-drug conspiracy claim related to Propranolol, then that ruling should apply to the Propranolol conspiracy in the PSAC.

ECF No. 214 at 14.

Moreover, Breckenridge must still face similar allegations related to the same drugs from

other Plaintiffs in this MDL, including the State AGs and the EPPs.  Breckenridge must also face

the identical allegations from J M Smith, which filed a new complaint that wholly mirrors the

Kroger DAPs' amendment (other than the identification of the Plaintiffs).[11]

Given that Breckenridge clearly intends to engage in additional motion practice as to these

other Plaintiffs – including J M Smith who is represented by the same counsel as the Kroger DAPs

---

[10]     Breckenridge also complains about the prejudice that it has supposedly faced by having to oppose the Kroger DAPs' motions to amend.  But its brief is mostly identical to the one it filed on March 2, 2020.  *Compare* ECF No. 234 *with* ECF No. 207.  Accordingly, Breckenridge has saved resources in that regard.  Additionally, it appears that Breckenridge did not closely review the Kroger DAPs' March 16, 2020 Reply brief, which directly answered the rhetorical question posed above that Breckenridge claims the Kroger DAPs have failed to answer.

[11]     Defendants indicated during meet and confers that they would only consider J M Smith to be a party under the CMO that the parties are in the process of negotiating if J M Smith filed an operative complaint as of September 4, 2020 (as opposed to a proposed amendment).

– it does not offer any reason why it is prejudiced by having to file the same motion against the PSAC that it is already planning to file against other Plaintiffs in the MDL.  As well-settled case law recognizes, the fact that Breckenridge must face additional litigation is not legally cognizable prejudice.  *See Smith v. Genesis Ventures I, LLC*, No. 06-1473-CMR, 2006 WL 3592330, at *2 (E.D. Pa. Dec. 8, 2006) ("The Court recognizes that adding these four additional parties will add to the lengthiness and cost of the litigation.... [T]he Court finds that generalized inconvenience and cost is not alone enough to justify denying the motion to amend, which Rule 15(a) contemplates should be freely allowed...").

Accordingly, given that the Court has wide discretion to manage its docket to promote efficiency, there are several ways the Court could incorporate the PSAC into the MDL.  As the Kroger DAPs have previously suggested, the Court can simply issue its ruling on all Defendants' pending motions based on the allegations in the Kroger DAPs' First Amended Complaint.  Alternatively, the Court could deny all those motions without prejudice to refile them against Plaintiffs' operative complaints (which are substantially more detailed now than they were in December 2018).  Or the Court could hold the instant motion in abeyance and rule on it after resolving the pending Rule 12 motions.  All of these options – and surely others that the Court has considered – would allow for the incorporation of the PSAC into the MDL without resulting in prejudice to Breckenridge.

3.  **The Request in Defendants' Opposition That The Court Set a Date For Amendment For All Plaintiffs in This MDL is Procedurally and Substantively Deficient**

Defendants improperly seek to use their opposition to the Kroger DAPs' individual motion to request that the Court impose a deadline for amended complaints (but not amendments to defense pleadings) that would apply to all Plaintiffs in the MDL.  This request as framed is deficient both as a matter of process and substance.

<u>First</u>, as noted in the Plaintiffs' joint letter asking that the Court not rule on this request, ECF No. 1546, the parties have been meeting and conferring on the issue raised by Defendants – a global deadline for all plaintiffs to amend their pleadings – for several months and have exchanged a number of written proposals. These talks are ongoing, and Defendants' request is not ripe for resolution by the Court.

<u>Second</u>, a motion filed on the Kroger DAPs' individual case docket is not the forum to litigate a global request that applies to all Plaintiffs in the MDL. That is not fair to all other Plaintiffs in the MDL. If it were not for communication among liaison for the Plaintiff groups, it is certainly possible that many other Plaintiffs would not even have been aware of Defendants' request. For this reason, as the Court has noted previously and as Pretrial Orders 33 and 48 provide, issues that pertain to all parties should be filed on the MDL docket, while issues that pertain to just one case should be filed on the individual docket. Indeed, the Court has previously stricken filings that contravened these Electronic Case Management Protocol Orders.

<u>Third</u>, from a substantive standpoint, Defendants' request would create additional problems. For example, the Court is in the process of ruling on pending motions to dismiss. Although the Kroger DAPs believe that all pending Rule 12 motions filed against our First Amended Complaint should be denied, if the Court grants any of these motions, then it would be appropriate to permit Plaintiffs to amend their complaints to cure any identified deficiencies without risking relegation to a "suspense" docket. Similarly, while it is obviously too soon to know, a plaintiff may need to amend based on what is learned in discovery.

Moreover, Defendants ask that Plaintiffs' pleadings be frozen (or subject to amendment only upon a showing of good cause), but they do not intend that deadline to be reciprocal (nor could they – Defendants have not yet answered the vast majority of Complaints in the MDL). And

although Defendants' Rule 12 motions have delayed their answering nearly all the Complaints in the MDL (including the Kroger DAPs' Complaint), principles of fairness dictate that Defendants should answer all Plaintiffs' complaints before the pleadings close in the MDL. These issues can surely be worked out by the parties. But that is why the meet-and-confer process exists as a prerequisite to asking the Court for relief. Defendants' Response skips this step and asks the Court to enter an Order applicable to all Plaintiffs in the MDL.

Accordingly, the Kroger DAPs respectfully request that the Court reject Defendants' proposal so the parties can continue to meet and confer on this request. If the meet and confer process fails, then the Defendants can file their request on the MDL docket, so that all Plaintiffs have the opportunity to be heard.

<u>**CONCLUSION**</u>

As noted in our initial Motion, the Kroger DAPs have been diligent in seeking to discover the evidence that supports the PSAC. The Kroger DAPs did not unduly delay in obtaining and analyzing the tens of millions of documents that provide evidentiary support for the amendment. To the contrary, this investigation produced an extremely detailed Complaint that is plausible as to Breckenridge and every other Defendant. Further, the Court's PTO 105 and comments at various status conferences indicate that Plaintiffs in the MDL may still file amended complaints with leave of Court. Accordingly, the Court should grant the Kroger DAPs' motion for leave to amend.

Additionally, the Court should reject Defendants' deficient request to impose a deadline to amend complaints on all Plaintiffs in the MDL.

Dated:  October 8, 2020                          Respectfully submitted,


                                                 By: */s/ William J. Blechman*
                                                      Richard Alan Arnold, Esquire
                                                      William J. Blechman, Esquire
                                                      Scott E. Perwin, Esquire
                                                      Anna T. Neill, Esquire
                                                      Samuel J. Randall, Esquire
                                                      Brandon S. Floch, Esquire
                                                      Joshua B. Gray, Esquire
                                                      KENNY NACHWALTER, P.A.
                                                      1441 Brickell Avenue
                                                      Suite 1100
                                                      Miami, Florida  33131
                                                      Tel:   (305) 373-1000
                                                      Fax:   (305) 372-1861
                                                      E-mail: rarnold@knpa.com
                                                               wblechman@knpa.com
                                                               sperwin@knpa.com
                                                               aneill@knpa.com
                                                               srandall@knpa.com
                                                               bfloch@knpa.com
                                                               jgray@knpa.com

                                                      **Counsel for the Kroger Direct Action**
                                                      **Plaintiffs**


626622.1