| | |
|---|---|
| **In re: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION** | **MDL NO. 2724**<br>**16-MD-2724**<br><br>**HON. CYNTHIA M. RUFE** |
| **THIS DOCUMENT RELATES TO:**<br><br>*THE KROGER CO., et al. v. ACTAVIS HOLDCO U.S., INC. et al.* | **Civil Action No.: 18-cv-00284-CMR** |

**SUR-REPLY OF DEFENDANT BRECKENRIDGE
PHARMACEUTICAL, INC. IN FURTHER OPPOSITION TO THE KROGER
DIRECT ACTION PLAINTIFFS' MOTION FOR LEAVE TO AMEND**

## TABLE OF CONTENTS

**Page**

I. THE KROGER PLAINTIFFS DO NOT REFUTE THAT BRECKENRIDGE WOULD BE PREJUDICED IF THE MOTION FOR LEAVE TO AMEND WERE GRANTED ................................................................................................... 1

II. THE KROGER PLAINTIFFS DO NOT REFUTE THAT THEY UNDULY DELAYED IN SEEKING LEAVE TO AMEND ............................................................. 3

III. THE KROGER PLAINTIFFS DO NOT REFUTE THAT THE PROPOSED AMENDMENTS ARE FUTILE AS TO BRECKENRIDGE ......................................... 5

CONCLUSION ............................................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aileron Sols. v. Health Mkt. Sci., Inc.*,
  No. 11-cv-4244, 2013 WL 5377286 (E.D. Pa. Sept. 25, 2013) ................................................3

*In re Baby Food Antitrust Litig.*,
  166 F.3d 112 (3d Cir. 1999) ....................................................................................................9

*Barr Labs., Inc. v. Abbott Labs.*,
  978 F.2d 98 (3d Cir. 1992) ......................................................................................................9

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................................6

*Deakyne v. Comm'rs of Lewes*,
  416 F.2d 290 (3d Cir. 1969), *aff'd*, 475 F.2d 1394 (3d Cir. 1973) ..........................................2

*Dreibelbis v. Scholton*,
  274 F. App'x 183 (3d Cir. 2008) ..................................................................................7, 8, 10

*In re Flat Glass Antitrust Litig.*,
  385 F.3d 350 (3d Cir. 2004) ....................................................................................................9

*In re Generic Pharm. Pricing Antitrust Litig.*,
  338 F. Supp. 3d 404 (E.D. Pa. 2019) ....................................................................................10

*In re Generic Pharm. Pricing Antitrust Litig.*,
  394 F. Supp. 3d 509 (E.D. Pa. 2019) ......................................................................................7

*Heraeus Med. GmbH v. Esschem, Inc.*,
  321 F.R.D. 215 (E.D. Pa. 2017) .........................................................................................2, 3

*Just New Homes, Inc. v. Beazer Homes*,
  293 F. App'x 931 (3d Cir. 2008) ...........................................................................................10

*Superior Offshore Int'l, Inc. v. Bristow Grp. Inc.*,
  738 F. Supp. 2d 505 (D. Del. 2010) ........................................................................................9

*Van Veen v. AT & T Corp.*,
  No. 10-cv-1635, 2011 WL 4001004 (E.D. Pa. May 25, 2011) ...............................................2

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ....................................................................................................................2

Nothing in the Kroger Direct Action Plaintiffs' Consolidated Reply Memorandum in Further Support of Their Motion for Leave to Amend ("Reply") defeats Breckenridge's arguments that firmly establish that the Kroger Plaintiffs should be denied leave to amend their claims belatedly and yet again against Breckenridge.[1]  In fact, the Kroger Plaintiffs do not so much as meaningfully address the compelling arguments advanced by Breckenridge supporting that denial, and in failing to do so, have conceded the correctness of Breckenridge's positions that:  (1) Breckenridge would be prejudiced if the Kroger Plaintiffs' proposed amendment were allowed, (2) the Kroger Plaintiffs' request to amend is untimely and unduly delayed, and (3) such an amendment should be disallowed because it would be futile as to Breckenridge.  Breckenridge files this supplemental Sur-Reply to further address certain facts and circumstances particular to Breckenridge that support denial of the Kroger Plaintiffs' Motion for Leave to Amend.

I. **THE KROGER PLAINTIFFS DO NOT REFUTE THAT BRECKENRIDGE WOULD BE PREJUDICED IF THE MOTION FOR LEAVE TO AMEND WERE GRANTED**

The Kroger Plaintiffs fail to refute Breckenridge's argument that it would be prejudiced if the Kroger Plaintiffs were permitted to file their untimely and unduly delayed Proposed Second Amended Complaint ("PSAC") while Breckenridge's ripe Motion to Dismiss the First Amended Complaint ("FAC") remains pending.  Opp. at 6-8.  In their Reply, the Kroger Plaintiffs instead simply leap to the conclusion that a ruling by the Court on Breckenridge's pending Motion to Dismiss the FAC, as if it were applied to the PSAC, would not be prejudicial to Breckenridge.  That conclusion is unfounded and plainly wrong.  Indeed, as Breckenridge explains in detail (*id*. at 4, 6-8), "[p]rejudice means 'undue difficulty in prosecuting [or defending] a law suit as a

---

[1] The Kroger Plaintiffs' Reply was filed at Dkt. No. 235.  Breckenridge filed its Opposition to the Kroger Plaintiffs' Motion for Leave to Amend at Dkt. No. 234 ("Opposition" or "Opp.").  Other capitalized terms and abbreviations, if not defined herein, are as defined in Breckenridge's Opposition.

result of a change in tactics or theories on the part of the other party.'" *Heraeus Med. GmbH v. Esschem, Inc.*, 321 F.R.D. 215, 217 (E.D. Pa. 2017) (quoting *Deakyne v. Comm'rs of Lewes*, 416 F.2d 290, 300 (3d Cir. 1969), *aff'd*, 475 F.2d 1394 (3d Cir. 1973)).  Subjecting a defendant to additional motion practice is a well-recognized form of undue prejudice.  *See, e.g.*, *Heraeus Med.*, 321 F.R.D. at 218 (denying leave to amend as prejudicial in light of an anticipated additional motion to dismiss because "[a]mendment of the complaint would necessitate a new wave of motion practice"); *see also* Opp. at 5-7.[2]

The Kroger Plaintiffs concede that allowing their proposed amendment would unjustifiably result in Breckenridge being forced to file serial motions to dismiss.  Specifically, the Kroger Plaintiffs point to their argument that "if the Court were to grant Breckenridge's motion to dismiss the individual-drug conspiracy claim related to Propranolol, then that ruling should apply to the *Propranolol conspiracy in the PSAC*."  Opp. at 13 (emphasis added).[3]  Notably, though, the Kroger Plaintiffs still do not agree that, if the Court were to grant Breckenridge's Motion to Dismiss their FAC, *all claims against Breckenridge* would be dismissed.  Thus, the Kroger Plaintiffs posit that even if Breckenridge's fully pending and ripe Motion to Dismiss the FAC is granted by the Court, Breckenridge should, nevertheless, have to engage in new, additional motion to dismiss briefing to address this latest version of the PSAC.  *See id*.  Imposing this kind of serial motion to dismiss briefing as a result of the Kroger

---

[2] If, in the alternative, the Kroger Plaintiffs are suggesting that Breckenridge be precluded from filing a new motion to dismiss addressing the PSAC, that suggestion should be summarily rejected.  Depriving a defendant of an opportunity to move to dismiss a pleading is more than merely prejudicial; it would violate Federal Rule of Civil Procedure 12(b), which explicitly affords defendants such an opportunity.  Fed. R. Civ. P. 12(b)(6): *see also, e.g.*, *Van Veen v. AT & T Corp.*, No. 10-cv-1635, 2011 WL 4001004, at *3 (E.D. Pa. May 25, 2011) (holding that defendant had the right to move to dismiss an amended complaint under Rule 12 even if all substantive allegations were identical to those in prior complaint); *see also* Opp. at 7-8.

[3] Breckenridge notes that its Motion to Dismiss the Kroger Plaintiffs' FAC seeks dismissal of all claims in that complaint against Breckenridge, including the overarching conspiracy claim.  Dkt. No. 170 ("Breckenridge MTD Kroger FAC Reply"), at 15; Dkt. No. 86-1 ("Breckenridge MTD Kroger FAC"), at 15.

Plaintiffs' untimely and iterative amendments is clearly prejudicial. *See, e.g.*, *Heraeus Med.*, 321 F.R.D. at 218 ("Prejudice means undue difficulty in prosecuting [or defending] a law suit as a result of a change in tactics or theories on the part of the other party;" denying leave to amend as prejudicial because "[a]mendment of the complaint would necessitate a new wave of motion practice") (internal quotation omitted); *Aileron Sols. v. Health Mkt. Sci., Inc.*, No. 11-cv-4244, 2013 WL 5377286, at *2 (E.D. Pa. Sept. 25, 2013) (denying motion for leave to file further amended complaint as unduly delayed and as prejudicial because it would "invite another motion to dismiss"); *see also* Opp. at 6; PTO 61.[4]

The Kroger Plaintiffs make the baseless argument that the clear prejudice to Breckenridge from being forced to respond to the Kroger Plaintiffs' numerous motions for leave to amend (and from being obligated to file sequential motions to dismiss in order to ensure complete dismissal from the PSAC) somehow vanishes because Breckenridge "must also face identical allegations from J M Smith" in a new complaint. Reply at 7. The opposite conclusion applies. That Breckenridge may be obligated to respond to the same meritless allegations in the J M Smith complaint, which is signed by the same counsel as the counsel representing the Kroger Plaintiffs, serves to compound rather than alleviate the prejudice to Breckenridge.

## II. THE KROGER PLAINTIFFS DO NOT REFUTE THAT THEY UNDULY DELAYED IN SEEKING LEAVE TO AMEND

The Kroger Plaintiffs completely fail to refute Breckenridge's argument that they unduly delayed, without legitimate justification and in willful contravention of a clear Court Order, i.e.,

---

[4] This prejudice is not eliminated by the Kroger Plaintiffs' suggestion that that "any Orders of dismissal from the Court based on the pending motions to dismiss should apply to the PSAC, *provided* that the dismissal is without prejudice to cure any deficiency identified in the Court's Order." Reply at 7 (emphasis in original). In so saying, the Kroger Plaintiffs are seeking to ensure that Breckenridge will have to engage in additional motion to dismiss practice, *regardless* of whether it prevails on its pending Motion to Dismiss, solely as a result of the Kroger Plaintiffs' conscious strategy of delay.

PTO 61, in seeking leave to amend. Indeed, the Kroger Plaintiffs do not contest that they knew before the PTO 61 December 21, 2018 deadline to amend of their obligations to conduct sufficient internal investigations to identify all potential claims; any assertion to the contrary is belied by the fact that they filed their FAC on that very day. *See* Opp. at 8-9. The Kroger Plaintiffs do not, and cannot, dispute that all of the allegations in their PSAC relate to events that allegedly occurred well before the December 21, 2018 amendment deadline, and therefore could and should have been included in the FAC. *See id*. at 7. More importantly, the Kroger Plaintiffs do not contest that they failed to satisfy their obligations to conduct timely due diligence of their potential claims against Breckenridge by reviewing their own generic drug purchase history with Breckenridge on a timely basis, i.e., before that they filed the FAC. They point to *not a single supposed fact* that they did not or should not have known as of the time of the filing of their FAC that they have alleged in support of their purported claims against Breckenridge.

The Kroger Plaintiffs' assertion that they needed the discovery record from the States' investigation to amend their complaint[5] is a factually baseless argument as to Breckenridge because Breckenridge has never been investigated by the States, and has not produced any discovery to the States that could have been produced by the States into the MDL.

The Kroger Plaintiffs additionally undermine their own baseless assertion that they relied on the production of the States' investigatory materials in drafting their PSAC because they affirmatively represent that, in fact, they relied upon *allegations* in the States' complaints. Reply at 3-4. Indeed, the Kroger Plaintiffs represent that they seek to amend in order to "align with our overarching conspiracy theory and the States' third Complaint" (i.e., the States' Sandoz-centric

---

[5] Furthermore, the Federal Rules do not entitle the Kroger Plaintiffs to pre-complaint discovery in order to enable them to try to bolster otherwise insufficiently pleaded claims.

complaint). Reply at 3. This assertion is nonsensical as to Breckenridge because Breckenridge *is not even named* in the States' third Complaint. And, to the extent that the Kroger Plaintiffs' allegations in the PSAC against Breckenridge are copied from the States' Teva-centric Complaint (*see* Reply at 3), the Kroger Plaintiffs offer no authority – because none exists – that would support the notion that waiting to copy claims from later filed complaints is an appropriate exercise of due diligence. *See* Opp. at 8-9.

Instead of addressing the merits of the arguments advanced by Breckenridge, the Kroger Plaintiffs erroneously argue that the Court's statements at the July 9, 2020 hearing were tantamount to granting a motion for leave to amend. Reply at 5. They were not. That the Court permitted the Kroger Plaintiffs to file a motion for leave to amend says nothing about the merits of that motion, including whether the Kroger Plaintiffs unduly delayed in seeking leave to amend. Thus, the Kroger Plaintiffs have entirely failed to justify their undue delay, their failure to engage in the requisite due diligence in a timely manner, and their disregard of the governing judicially ordered deadline to amend.

### III. THE KROGER PLAINTIFFS DO NOT REFUTE THAT THE PROPOSED AMENDMENTS ARE FUTILE AS TO BRECKENRIDGE

The Kroger Plaintiffs do not rebut Breckenridge's arguments about the fatal substantive deficiencies of the scant allegations regarding Breckenridge in the Kroger Plaintiffs' FAC and PSAC. *See* Opp. at 10-15. In their wholly inadequate response to Breckenridge's arguments that the Kroger Plaintiffs' proposed amendments as to Breckenridge in the PSAC are futile because they suffer the same substantive fatal deficiencies as those in the FAC, the Kroger Plaintiffs merely paraphrase certain amended allegations against Breckenridge, and then conclude, without explanation, that those allegations are sufficient to state a claim against Breckenridge. *See* Reply at 5-6. Even with their proposed amendments, however, the Kroger Plaintiffs fail to plead

5

factual allegations that can survive Breckenridge's motion to dismiss because the allegations *as to Breckenridge* are more consistent with independent, non-conspiratorial, competitive conduct. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007) (a plaintiff must allege facts that "tend to rule out the possibility that the defendants were acting independently"); Opp. at 10-15; Breckenridge MTD Kroger FAC Reply at 12-15; Breckenridge MTD Kroger FAC at 7-12, 13-15; *see also Connecticut v. Teva Pharm., Inc.*, No. 19-cv-2407 (E.D. Pa.), Dkt. No. 153 ("Breckenridge MTD States Am. Compl. Reply"); *Connecticut v. Teva Pharm., Inc.*, No. 19-cv-2407 (E.D. Pa.), Dkt. No. 129-1 ("Breckenridge MTD States Am. Compl.")), at 12-23.[6]

The Kroger Plaintiffs were made fully aware of the fatal pleading deficiencies in their FAC by the Breckenridge Motion to Dismiss the FAC. Yet, those same pleading deficiencies continue to plague even this latest iteration of the Kroger Plaintiffs' PSAC. As is the case with the FAC, the Kroger Plaintiffs' PSAC continues to fail to allege: (i) facts demonstrating that Breckenridge participated in any overarching conspiracy, (ii) facts demonstrating that Breckenridge participated in a conspiracy with respect to any specific drug, and (iii) the requisite plus factors as to Breckenridge. *See* Opp. at 10-15; *see also* Breckenridge MTD Kroger FAC Reply at 3-15; Breckenridge MTD Kroger FAC at 7-12, 13-15. The Kroger Plaintiffs' Reply completely fails to show how the PSAC cures these fatal deficiencies.

The Kroger Plaintiffs rest their Reply argument regarding Breckenridge's alleged participation in the supposed overarching conspiracy entirely on the Court's August 15, 2019 Order addressing the defendants' joint motion to dismiss the overarching conspiracy claims in their FAC. Reply at 5. But the Kroger Plaintiffs ignore that the Court explicitly held that that

---

[6] As described in greater detail below, because the Kroger Plaintiffs copied virtually all of their allegations asserted as to Breckenridge in the PSAC from the States Amended Complaint, the arguments in Breckenridge's Motion to Dismiss the States Amended Complaint that show why those allegations are entirely inadequate to state a claim against Breckenridge apply equally to the Kroger Plaintiffs' PSAC.

6

Order *did not apply to Breckenridge's separately pending Motion to Dismiss the FAC*. *See In re Generic Pharm. Pricing Antitrust Litig.*, 394 F. Supp. 3d 509, 514 n.8, 533 (E.D. Pa. 2019) (holding that defendant-specific motions to dismiss address *"separate question[s] not here resolved"*) (emphasis added).  By failing to rebut Breckenridge's argument that the PSAC does not allege that *Breckenridge* engaged in any conduct that could support a finding that Breckenridge participated in any alleged overarching conspiracy (*see* Opp. at 5-6), the Kroger Plaintiffs have conceded the futility of their overarching conspiracy claim in the PSAC against Breckenridge.  *See, e.g.*, *Dreibelbis v. Scholton*, 274 F. App'x 183, 185 (3d Cir. 2008) (affirming waiver based on district court's finding that plaintiff failed to respond to an argument in defendant's motion to dismiss); *see also* Breckenridge MTD Kroger FAC Reply at 3-12; Breckenridge MTD Kroger FAC at 4-6, 8.

Furthermore, Breckenridge details in its Motion to Dismiss the States' Amended Complaint the many reasons why the allegations that the Kroger Plaintiffs copied from the States' Amended Complaint are entirely inadequate to state a claim against Breckenridge.  *See* Breckenridge MTD States Am. Compl. Reply; Breckenridge MTD States Am Compl. at 12-23.  These arguments are equally applicable to the Kroger Plaintiffs' PSAC.

The Kroger Plaintiffs fail entirely to respond to Breckenridge's argument that their PSAC fails to plead facts demonstrating that Breckenridge participated in any conspiracy with respect to Propranolol and ENA.  Opp. at 12.  Thus, the Kroger Plaintiffs concede (as they must) that their proposed amendments do not adequately allege that Breckenridge participated in any conspiracy with respect to Propranolol and ENA.  *See, e.g.*, *Dreibelbis*, 274 F. App'x at 185.

Furthermore, the Kroger Plaintiffs fail entirely to respond to Breckenridge's argument that their PSAC fails to plead facts demonstrating that Breckenridge participated in any

conspiracy with respect to Methylprednisolone. Opp. at 13. It remains uncontested that the Kroger Plaintiffs do not even allege that Breckenridge raised its price for Methylprednisolone at any point, only that Breckenridge began to sell Methylprednisolone after other sellers increased their prices. *Id.* Nor do the Kroger Plaintiffs rebut that they insufficiently allege any agreement by Breckenridge with any other party regarding Methylprednisolone. *Id.* Thus, the Kroger Plaintiffs concede (as they must) that their proposed amendments do not adequately allege that Breckenridge participated in any conspiracy with respect to Methylprednisolone. *See*, *e.g.*, *Dreibelbis*, 274 F. App'x at 185.

The only allegations that the Kroger Plaintiffs even attempt to argue are sufficient pertain only to Breckenridge's supposed participation in a conspiracy with Teva and Impax regarding Cyproheptadine. *See* Reply at 5-6. That attempt fails for several reasons. The Kroger Plaintiffs conclude that because Impax successfully began selling Cyproheptadine in "mid-2015," Teva and Breckenridge must have "coordinated to concede market share" to Impax. PSAC ¶ 2613. Breckenridge detailed numerous reasons demonstrating that these allegations, which allege procompetitive entry by Impax, do not state a viable antitrust claim. Opp. at 12-13. The Kroger Plaintiffs ignore those points entirely, and instead resort to simply quoting their own allegations without even attempting to explain how they state a claim. Reply at 5-6.

In fact, though, the Kroger Plaintiffs' PSAC fails to allege the existence of any agreement among Breckenridge, Teva, and Impax. *See* Opp. at 10-15; *see also* Breckenridge MTD States Am. Compl. Reply at 2-10; Breckenridge MTD States Am Compl. at 2-3, 12-23. That Impax allegedly "enter[ed] the market at the same supracompetitive WAC prices and net prices as those charged by Teva and Breckenridge" (Reply at 5) is not evidence of any agreement. *See* Opp. at

8

13.[7]  Indeed, Breckenridge's wholesale acquisition cost ("WAC") price increases were contemporaneously published in industry press, consistent with industry practice, and thus, had been widely available to generic pharmaceutical companies (including Teva and Impax) for months before Impax allegedly began selling Cyproheptadine at the published price.  *See id*.; *see also* Breckenridge MTD States Am. Compl. Reply at 10; Breckenridge MTD States Am Compl. at 2, 6-7, 14-15, 22 (demonstrating that alleged price "matching" is not evidence of any agreement).  That Impax may have set its prices to match the existing market price is completely consistent with a unilateral economically-sound business strategy known as follow-the-leader pricing.  *See*, *e.g.*, *In re Flat Glass Antitrust Litig.*, 385 F.3d 350, 359-60 (3d Cir. 2004) (explaining that interdependent firms in an oligopolistic market could independently decide to follow a competitor's price increase); *In re Baby Food Antitrust Litig.*, 166 F.3d 112, 122 (3d Cir. 1999) ("In an oligopolistic market, meaning a market where there are few sellers, interdependent parallelism can be a necessary fact of life but be the result of independent pricing decisions."); *Superior Offshore Int'l, Inc. v. Bristow Grp. Inc.*, 738 F. Supp. 2d 505, 510, 515 (D. Del. 2010) (granting motion to dismiss claims alleging "lawful unilateral and independent conduct of competitors, where [defendant-competitors'] decisions are interdependent"); *see also* Opp. at 12-13; Breckenridge MTD States Am. Compl. Reply at 8; Breckenridge MTD States Am Compl. at 2-3, 14-15.  The Kroger Plaintiffs do not, and cannot, challenge the unassailable legality of this follow-the-leader pricing.

---

[7]  Inferring coordination between incumbents because of the fact of entry would turn antitrust law upside down; new entrants coming in as a result of increased prices is a characteristic of a competitive market, not the opposite.  *Barr Labs., Inc. v. Abbott Labs.*, 978 F.2d 98, 114 (3d Cir. 1992) (holding that that "new manufacturers entered the market" was "evidence reflect[ing] a competitive market").

Additionally, the Kroger Plaintiffs' Reply also fails in its entirety to respond to Breckenridge's arguments demonstrating that the PSAC fatally fails to plead the requisite plus factors as to Breckenridge.  *See* Opp. at 14-15; *see also, e.g.*, *Just New Homes, Inc. v. Beazer Homes*, 293 F. App'x 931, 934 (3d Cir. 2008) ("[m]embership in a trade association, without more, does not violate the antitrust laws"); *In re Generic Pharm. Pricing Antitrust Litig.*, 338 F. Supp. 3d 404, 451 (E.D. Pa. 2018) (dismissing claims against Teligent because, although plaintiffs had specifically alleged that representatives of Teligent attended specific trade association meetings, plaintiffs nevertheless failed sufficiently to allege that Teligent had an opportunity to conspire); *see also Dreibelbis*, 274 F. App'x at 185 (affirming waiver where plaintiff failed to respond argument in motion to dismiss).

For all of the reasons detailed above, the Kroger Plaintiffs have entirely failed to show that this most recent iteration of their PSAC does anything to remedy the many pleading deficiencies of the FAC.  *See* Opp. at 10-15; *see also* Breckenridge MTD Kroger FAC Reply; Breckenridge MTD Kroger FAC at 7-15.  Thus, this Court should find that it would be futile to permit the Kroger Plaintiffs to amend their claims as to Breckenridge.

## CONCLUSION

For the foregoing reasons, the Kroger Motion for Leave to Amend should be denied.

Dated:  October 22, 2020                                        Respectfully submitted,

/s/ *Stacey Anne Mahoney*
Stacey Anne Mahoney
Grant R. MacQueen
Victoria Peng
Sarah E. Hsu Wilbur

MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue

10

New York, New York  10178
Telephone:  (212) 309-6000
Facsimile:   (212) 309-6001
stacey.mahoney@morganlewis.com
grant.macqueen@morganlewis.com
victoria.peng@morganlewis.com
sarah.wilbur@morganlewis.com

*Counsel for Defendant Breckenridge Pharmaceutical, Inc.*