**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

<table>
<tr><td><b>IN RE: GENERIC PHARMACEUTICALS<br>PRICING ANTITRUST LITIGATION</b></td><td><b>MDL 2724</b><br><b>16-MD-2724</b><br><b>HON. CYNTHIA M. RUFE</b></td></tr>
<tr><td>THIS DOCUMENT RELATES TO:</td><td><b>Civil Action Nos.</b></td></tr>
<tr><td><i>Kroger Co. et al. v. Actavis Holdco U.S., Inc. et al.</i></td><td>18-CV-00284</td></tr>
<tr><td><i>United Healthcare Services, Inc. v. Actavis Holdco U.S. Inc., et al.</i></td><td>19-CV-00629</td></tr>
<tr><td><i>Humana Inc. v. Actavis Elizabeth, LLC, et al.</i></td><td>19-CV-04862</td></tr>
<tr><td><i>Health Care Service Corp. v. Actavis Elizabeth, LLC, et al.</i></td><td>19-CV-05819</td></tr>
<tr><td><i>1199SEIU National Benefit Fund, et al. v Actavis Holdco U.S., Inc., et al.</i></td><td>19-CV-06011</td></tr>
<tr><td><i>Reliable Pharmacy, Inc., et al. v. Actavis Holdco US, Inc., et al.</i></td><td>19-CV-06044</td></tr>
<tr><td><i>MSP Recovery Claims, Series LLC, et al. v. Actavis Elizabeth, LLC, et al.</i></td><td>20-CV-00231</td></tr>
<tr><td><i>Molina Healthcare, Inc. v. Actavis Elizabeth, LLC, et al.</i></td><td>20-CV-00695</td></tr>
<tr><td><i>Rite Aid Corp., et al. v. Actavis Holdco U.S., Inc., et al.</i></td><td>20-CV-03367</td></tr>
<tr><td><i>J M Smith Corp. v. Actavis Holdco U.S., Inc., et al.</i></td><td>20-CV-04370</td></tr>
<tr><td><i>County of Suffolk v. Actavis Holdco US, Inc., et al.</i></td><td>20-CV-04893</td></tr>
<tr><td><i>Walgreen Company v. Actavis Holdco U.S. Inc., et al.</i></td><td>20-CV-06258</td></tr>
<tr><td><i>Winn-Dixie Stores, Inc., et al. v. Actavis Holdco U.S., Inc., et al.</i></td><td>20-CV-06290</td></tr>
<tr><td><i>Reliable Pharmacy, Inc., et al. v. Actavis Holdco US, Inc., et al.</i></td><td>20-CV-06291</td></tr>
</table>

| *CVS Pharmacy, Inc., v. Actavis Elizabeth, LLC, et al.* | 20-CV-06310 |
| *County of Albany, et al. v. Actavis Holdco US, Inc., et al.* | 21-CV-01875 |
| *County of Westchester, et al. v. Actavis Holdco US, Inc., et al.* | 21-CV-04474 |
| *Providence St. Joseph Health, et al. v. Actavis Holdco U.S., Inc., et al.* | 23-CV-03636 |

**PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' OMNIBUS PARTIAL MOTION TO DISMISS INDIVIDUAL DRUG CONSPIRACY CLAIMS**

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................... 1

BACKGROUND ..................................................................................................................... 3

ARGUMENT ........................................................................................................................... 5

    I.    Defendants Impermissibly Challenge the Scope of the Overarching Conspiracy. .......................... 5

    II.   Plaintiffs Have Also Alleged Sufficient Facts to Support Their Alternative Individual Drug
        Conspiracy Claims. .......................................................................................................... 9

    III.  The Individual Defendants Should Not Be Dismissed. ................................................... 13

CONCLUSION ...................................................................................................................... 15

**TABLE OF AUTHORITIES**

**CASES**                                                                   **PAGE(S)**

*BBL, Inc. v. City of Angola*,
   809 F.3d 317 (7th Cir. 2015).................................................................................. 8

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ......................................................................... 1, 10, 11, 12

*Brown v. Certain Underwriters at Lloyds*,
   777 F. App'x 34 (3d Cir. 2019)............................................................................... 9

*Burtch v. Millberg Factors, Inc.*,
   662 F.3d 212 (3d Cir. 2011) .................................................................................. 10

*Cont'l Ore Co. v. Union Carbide & Carbon Corp.*,
   370 U.S. 690 (1962) ........................................................................................... 5, 9

*Connecticut v. Aurobindo Pharma USA Inc.*,
   No. 16-CV-2056, 2025 U.S. Dist. LEXIS 22329 (D. Conn. Feb. 7, 2025) ................... 1, 14, 15

*In re Am. Express Anti-Steering Rules Antitrust Litig.* ("*Amex*"),
   343 F. Supp. 3d 94 (E.D.N.Y. 2018)....................................................................... 8

*In re Auto. Parts Antitrust Litig.*,
   2018 WL 1138422 (E.D. Mich. Jan. 16, 2018)......................................................... 8

*In re Generic Pharms. Pricing Antitrust Litig.* ("*Generic Pharms. I*"),
   338 F. Supp. 3d 404 (E.D. Pa. 2018) ................................................. 10, 11, 13, 14, 15

*In re Generic Pharms. Pricing Antitrust Litig.* ("*Generic Pharms. IV*"),
   394 F. Supp. 3d 509 (E.D. Pa. 2019) ................................................. 1, 2, 3, 6, 7, 8, 11

*In re Generic Pharms. Pricing Antitrust Litig.*,
   386 F. Supp. 3d 477 (E.D. Pa. 2019) ...................................................................... 15

*In re Generics Pharms. Pricing Antitrust Litig.*,
   2023 U.S. Dist. LEXIS 31649 (E.D. Pa. Feb. 27, 2023)...................................... 2, 9, 11, 13, 15

*In re Generic Pharms. Pricing Antitrust Litig.*,
   2022 U.S. Dist. LEXIS 93633 (E.D. Pa. May 25, 2022) ........................................... 9

*In re Ins. Brokerage Antitrust Litig.*,
   618 F.3d 300 (3d Cir. 2010).................................................................................. 10

*In re Lithium Ion Batteries Antitrust Litig.*,
  2014 U.S. Dist. LEXIS (N.D. Cal. Jan. 21, 2014) ...................................................................... 7

*In re Processed Egg Prods. Antitrust Litig.*,
  821 F. Supp. 2d 709 (E.D. Pa. 2011) .......................................................................... 8, 13, 14

*In re TFT-LCD Antitrust Litig.*,
  586 F. Supp. 2d 1109 (N.D. Cal. 2008) ................................................................................. 12

*McDaniel v. Vilsack*,
  947 F. Supp. 2d 24 (D.D.C. 2013) ........................................................................................... 8

*Selvaggi v. Borough of Point Pleasant Beach*,
  2024 U.S. Dist. LEXIS 14075 (D.N.J. Jan. 26, 2024) ............................................................ 9

**STATUES**

Fed. R. Civ. P. 12(b)(6)............................................................................................................. 8

## INTRODUCTION

This Court has held that Plaintiffs' overarching conspiracy claims to broadly and unreasonably restrain trade for the sale of generic pharmaceutical products are well-pleaded. *See, e.g.*, *In re Generic Pharms. Pricing Antitrust Litig.* ("*Generic Pharms. IV*"), 394 F. Supp. 3d 509, 526 (E.D. Pa. 2019) ("The allegations in Plaintiffs' Overarching Complaints plausibly allege that Defendants engaged in a conspiracy regarding the broader market for generic drugs."); *see also Connecticut v. Aurobindo Pharma USA Inc.*, No. 16-CV-2056, 2025 U.S. Dist. LEXIS 22329, at *26 (D. Conn. Feb. 7, 2025) ("Because the MDL court's decision is law of the case (and, in any event I agree with it), the States have adequately stated a claim under *Twombly* that there was an overarching conspiracy to fix prices and allocate markets in the generic pharmaceutical industry.").

Accordingly, Defendants seek to undermine those rulings (and Plaintiffs' overarching conspiracy claims) by challenging the sufficiency of certain individual drug claims. In so doing, Defendants' motion recasts Plaintiffs' overarching conspiracy claims as of the sum of these separate, individual drug conspiracies. Defendants, however, misread Plaintiffs' claims and the Court's prior decisions. *Generic Pharms. IV*, 394 F. Supp. 3d at 526 (overarching conspiracy claims concern "the broader market for generic drugs, and not just the market for any individual drug"); *see also Aurobindo*, 2025 U.S. Dist. LEXIS 22329, at *27 ("[T]he MDL court has already decided that [Plaintiffs] have pled an overarching conspiracy, not separate individual drug conspiracies.").

The Court should deny Defendants' motion because, as this Court has already recognized, Plaintiffs have plausibly pleaded the *existence* of Defendants' overarching conspiracy to restrain trade in *all of the identified generic pharmaceuticals*. If Defendants wish to challenge the scope of the overarching conspiracy claims, they may do so following the close

1

of discovery. *See Generic Pharms. IV*, 394 F. Supp. 3d at 524-25 ("discovery will be required" to "challenge to the sufficiency of allegations regarding any drug-specific conduct").

Alternatively, Defendants' motion must be denied because Plaintiffs have met their burden to adequately allege facts sufficient to put Defendants on notice as to each of the challenged alleged individual drug conspiracies, as the same facts that plausibly plead the existence of an overarching conspiracy claim regarding generic drugs generally, logically also plead the existence of a conspiracy regarding each generic drug identified in the Complaints individually. Indeed, Defendants do not challenge Plaintiffs' individual drug claims regarding scores of generic drugs. *See* Exhibit A. In any event, Defendants' motion will have no practical effect on the scope of discovery, since all drugs identified in Plaintiffs' Complaints are relevant to Plaintiffs' well-pleaded overarching conspiracy claims.

Finally, Plaintiffs' allegations link each Defendant to both the overarching conspiracy and at least one individual drug conspiracy. As this Court has previously held, plausibly alleging that a Defendant participated in a conspiracy to restrain trade for *one generic drug* is sufficient to plausibly plead that such Defendant also participated in the overarching conspiracy. *In re Generics Pharms. Pricing Antitrust Litig.*, 2023 U.S. Dist. LEXIS 31649, *34-35 (E.D. Pa. Feb. 27, 2023). The converse is also true. None of the Defendants challenge Plaintiffs' allegations that they participated in the overarching conspiracy. Accordingly, "[t]he claims asserted in the Overarching Complaints would impose joint and several liability on Defendants . . . for their participation in any individual drug conspiracy." *Generic Pharms. IV*, 394 F. Supp. 3d at 515. Therefore, the Court should, consistent with its prior rulings, deny Defendants' motion in its entirety.[1]

---

[1] As Defendant Aurobindo incorporates Defendants' instant motion (ECF No. 200-1, at 5-7), the Court should also deny Aurobindo's motion as to its "Group A-1" drugs.

## **BACKGROUND**

Plaintiffs allege that Defendants participated in a wide-ranging conspiracy to unreasonably restrain competition across the generic pharmaceutical industry.  Specifically, Defendants pursued a common goal—to achieve artificially inflated generic drug prices through a wide-ranging "fair share" arrangement that pervaded the generic drug industry.[2]  This "fair share" scheme was designed to fix, maintain and stabilize prices—either for a particular drug or any number of generic drugs—through mutual agreements and understandings to raise prices and not to compete on price for certain customers' business.[3]  *See generally Generic Pharms. IV*, 394 F. Supp. 3d at 514-24.

Pursuant to their overarching conspiracy, when a Defendant sought to enter a market for a generic drug, Defendants in the market would cede what they deemed to be a "fair share" of sales to their co-conspirator who, in return, would refrain competing on price to win additional share.[4]  As a result of the fair share arrangement, each Defendant was free to raise prices as to its

---

[2]  *See, e.g.*, CVS First Am. and Supp. Compl., No. 20-cv-06310, ECF 187 ("CVS FASC") ¶¶ 117-24; End-Payer Second Am. Class Action Compl., No. 19-cv-06011, ECF 85 ("EPP SACAC") ¶¶ 118-30, 158-65 (discussing fair share generally); Providence St. Joseph Health Action's Suppl. and First Am. Compl., No. 23-cv-03636, ECF 215 ("Hospital DAPs' FAC") ¶¶ 404-20; Rite Aid Am. Compl., No. 20-CV-03367, ECF 26 ("Rite Aid Compl.") ¶¶ 3-12, 139-214, 274-86; United Supp. and Second Am. Compl., No. 19-CV-00629, ECF 169 ("United SAC"), ¶¶ 1, 178-85, 1105-24; IRPs' July 2022 Am. Compl., No. 19-cv-6044 ("IRP II AC"), ¶¶ 111-48 (discussing fair share generally); IRPs' March 2025 Am. Compl., No. 20-cv-6291 ("IRP III AC"), ¶¶ 72-109 (discussing fair share generally); Suffolk County Proposed First Am. Compl., 20-cv-04893, ECF 110-2 ("Suffolk FAC") ¶¶ 140-52, 151-55; MSP Recovery Claims, Series LLC, First Am. Compl., ECF 50 ("MSP FAC"), ¶¶242-308; Humana First Am. Compl., No. 2:19-cv-04862, ECF 40 ("Humana II FAC") ¶¶ 367-427;  Molina First Am. Compl., No. 2:20-cv-00695, ECF 58 ("Molina FAC") ¶¶ 423-83; Health Care Service Corp. First Am. Compl., No. 2:19-cv-05819, ECF 43 ("HCSC FAC") ¶¶ 407-67; Kroger Sec. Am. Compl., No. 18-cv-284, ECF 231 ("Kroger SAC") ¶¶ 3-12, 142-218, 281-94; J M Smith Am. Compl., No. 20-cv-04370, ECF 200 ("Smith Compl.") ¶¶ 3-12, 170-246, 304-17; Walgreen Am. Compl., No. 20-cv-06258, ECF 179 ("WAG Compl.") ¶¶ 2-14, 143-224, 280-90; County of Albany's Supp. and Sec. Am. Compl., No. 21-cv-01875, ECF 144 ("Albany SSAC") ¶¶ 380-496; County of Westchester Supp. and Sec. Am. Compl., No. 21-cv-04474, ECF 138 ("Westchester SSAC") ¶¶ 14, 299-307; Winn-Dixie Plaintiffs' Am. Compl. ("WAC") ¶¶ 219-63.

[3]  *See id.; see also* EPP SACAC ¶¶ 2, 6, 107-13, 118-30, 165, 1925-29; United SAC ¶¶ 178-85, 1105-24; IRP II AC ¶¶ 1, 133; Humana II FAC ¶¶ 367-427; Molina FAC ¶¶ 423-83; HCSC FAC ¶¶ 407-67; Albany SSAC ¶¶ 14, 16, 385, 417-22; Westchester SSAC ¶¶ 14, 16, 307-12; WAC ¶¶ 219-63.

[4]  *See, e.g.*, CVS FASC ¶¶ 125-29; EPP SACAC ¶¶ 7-12, 123, 265, 339-42, 358; Hospital DAP's FAC ¶¶ 409-10, 776; Rite Aid Compl. ¶¶ 185-88, 282-83; United SAC ¶¶ 167-72, 178-85; IRP II AC ¶¶ 118-19, 123; IRP III AC ¶¶

3

existing customers without fear that it would lose business to its so-called "competitors."[5]

Indeed, Defendants further agreed to raise the price of generic drugs to levels (or to artificially

maintain high prices) that would have been lower absent their conspiratorial agreements.[6]

To effectuate their conspiracy, Defendants would submit sham bids to protect the

incumbent's price increase, or would otherwise decline altogether to bid for a particular

customer's business.[7]  The scheme was interdependent because each Defendant's commitment to

one price increase helped solidify and protect other conspiratorial price increases as they were

implemented.[8]  The web of relationships and understandings between all Defendants thus

enabled them to implement and enforce the conspiracy across drug portfolios.[9]  Plaintiffs allege

that Defendants' conspiracy was effectuated through bilateral calls, emails, texts, and online

---

79-81; MSP FAC ¶¶ 260-62; Humana II FAC ¶¶ 378-86; Molina FAC ¶¶ 434-42; HCSC FAC ¶¶ 418-26; Kroger SAC ¶¶ 174-218; Smith Compl. ¶¶ 202-46; WAG Compl. ¶¶ 182-224; Suffolk FAC ¶¶ 142-52, 222-23; Albany SSAC ¶¶ 410-27; Westchester SSAC ¶¶ 300-17; WAC ¶ 220.

[5] *See, e.g.,* CVS FASC ¶ 138; EPP SACAC ¶¶ 9-14, 118-19, 123-25; Hospital DAP's FAC ¶ 1786; Rite Aid Compl. ¶¶ 196, 285-86; United SAC ¶¶ 172, 183, 185; IRP II AC ¶¶ 118-19, 123; IRP III AC ¶¶ 86, 88-89; MSP FAC ¶¶ 274, 3028, 3072, 3073; Humana II FAC ¶¶ 387-427; Molina FAC ¶¶ 443-83; HCSC FAC ¶¶ 427-67; Kroger SAC ¶ 200; Smith Compl. ¶ 228; WAG Compl. ¶ 207; Suffolk FAC ¶ 147; Albany SSAC ¶¶ 11-30, 385, 417-27; Westchester SSAC ¶¶ 5-24, 276, 312-16; WAC ¶¶ 237-38, 240, 243, 247.

[6] *See, e.g.*, CVS FASC ¶¶ 131-32; EPP SACAC ¶¶ 7-10, 143, 145; Hospital DAP's FAC ¶¶ 417-20; Rite Aid Compl. ¶¶ 171, 190-92, 284-86; United SAC ¶¶ 166-72, 182-85; IRP II AC ¶¶ 122, 126; IRP III AC ¶¶ 80, 85, 89; Humana II FAC ¶¶ 5-13, 2704; Molina FAC ¶¶ 5-14, 3809; HCSC FAC ¶¶ 5-13, 3651; Kroger SAC ¶¶ 175, 194; Smith Compl. ¶¶ 203, 222; WAG Compl. ¶¶ 183, 202; Suffolk FAC ¶¶ 145-47; Albany SSAC ¶¶ 4402-04, 4414, 4437; Westchester SSAC ¶¶ 4278-83, 4287; WAC ¶ 2590.

[7] *See, e.g.*, CVS FASC ¶ 127; EPP SACAC ¶¶ 8, 125-27; Hospital DAP's FAC ¶ 395; Rite Aid Compl. ¶ 188; United SAC ¶¶ 169-171; IRP II AC ¶¶ 119, 136; IRP III AC ¶ 91; MSP FAC ¶ 262; Humana II FAC ¶¶ 8, 385, 567, 629; Molina FAC ¶¶ 8, 441, 495, 1481, 1544; HCSC FAC ¶¶ 8, 425, 1465, 1528; Kroger SAC ¶ 185; Smith Compl. ¶ 213; WAG Compl. ¶ 193; Suffolk FAC ¶¶ 145, 222, 1066; Albany SSAC ¶¶ 16, 393, 1492, 1941-55; Westchester SSAC ¶¶ 16, 288-90, 316, 1831, 3087; WAC ¶¶ 238, 242, 251, 252.

[8] *See, e.g.*, CVS FASC ¶ 140; EPP SACAC ¶¶ 4, 7-9, 150, 155; Hospital DAP's FAC ¶ 1794; Rite Aid Compl. ¶¶ 200-03, 281; United SAC ¶¶ 1114; IRP II AC ¶¶ 120, 133-34; IRP III AC ¶¶ 85, 88-90; MSP FAC ¶ 283; Humana II FAC ¶¶ 368, 383, 406, 409, 412; Molina FAC ¶¶ 424, 439, 462, 465, 468, 972; HCSC FAC ¶¶ 408, 423, 446, 449, 452; Kroger SAC ¶ 207; Smith Compl. ¶ 235; WAG Compl. ¶ 213; Suffolk FAC ¶¶ 145-46; Albany SSAC ¶¶ 383, 422-25, 489-94; Westchester SSAC ¶¶ 312-15, 1706, 3242; WAC ¶¶ 253, 259, 230.

[9] *See, e.g.*, CVS FASC ¶ 161; EPP SACAC ¶¶ 108-13; Hospital DAP's FAC ¶ 402; Rite Aid Compl. ¶¶ 171-72, 175-80, 200-03; United SAC ¶¶ 229; 1105, 1114; IRP II AC ¶¶ 1, 120-21; IRP III AC ¶¶ 91, 99-100; Humana II FAC ¶¶ 486-505; Molina FAC ¶¶ 908-29; HCSC FAC ¶¶ 892-911; Kroger SAC ¶¶ 179-84; Smith Compl. ¶¶ 207-12; WAG Compl. ¶¶ 187-92; Suffolk FAC ¶ 149; Albany SSAC ¶¶ 383-84, 405-09, 489; Westchester SSAC ¶¶ 272-73, 293-99, 312; WAC ¶¶ 250, 255.

messages, and through multilateral meetings at industry conferences, private dinners, cocktail hours, and similar social outings.[10]  Plaintiffs' Complaints methodically detail the communications, trade show attendance, and movement of employees among and between the Defendants named in the Complaints.[11]  Finally, Plaintiffs allege various "plus factors" about the generic pharmaceutical industry showing that it is "conducive to collusive activity between generic drug manufacturers."[12]

## ARGUMENT

### I.    Defendants Impermissibly Challenge the Scope of the Overarching Conspiracy.

Recognizing the sufficiency of Plaintiffs' allegations and the Court's prior rulings, Defendants do not move to dismiss Plaintiffs' overarching conspiracy claims, which allege that the conspiracy affected *each generic drug identified* in Plaintiffs' Complaints.[13]  Instead of challenging the existence of the overarching conspiracy, Defendants challenge only its scope.  In short, Defendants argue that because Plaintiffs' pleadings contain more detailed allegations about how the overarching conspiracy affected certain exemplar generic drugs, Plaintiffs must replicate

---

[10]  *See, e.g.*, CVS FASC ¶¶ 145-46, 156-83; EPP SACAC ¶¶ 14, 106, 120, 149-56, 1893, 1894, Ex. A (Joint Meetings from 2009-15); Rite Aid Compl. ¶¶ 142-69, 173-80, 205-06, Ex. 1; Hospital DAP's FAC ¶¶ 1643-1716; United SAC ¶¶ 229; 1105, 1114; IRP II AC ¶¶ 666, 678; IRP III AC ¶¶ 75, 99-100; MSP FAC ¶¶ 181-241; Humana II FAC ¶¶ 330-66, 486-505; Molina FAC ¶¶ 386-422, 908-29; HCSC FAC ¶¶ 370-406; Kroger SAC ¶ 177; Smith Compl. ¶ 205; WAG Compl. ¶ 185; Suffolk FAC ¶ 149-50 Albany SSAC ¶¶ 24-28, 380-81, 434-40, 1012, 4388-89; Westchester SSAC ¶¶ 270, 328-30, 902, 4285; WAC ¶¶ 179-218, 219-63.

[11]  *See, e.g.*, CVS FASC ¶¶ 156-83; EPP SACAC ¶¶ 149-56; Hospital DAP's FAC ¶¶ 1717-36; Rite Aid Compl. ¶¶ 142-69, 173-80; United SAC ¶¶ 175-224; IRP II AC ¶¶ 89, 98-99, 109-10; IRP III AC ¶¶ 75, 99-100; MSP FAC ¶¶ 181-241; Humana II FAC ¶¶ 330-366, 474-505; Molina FAC ¶¶ 386-422, 896-929; HCSC FAC ¶¶ 370-406, 880-911; Kroger SAC ¶ 207; Smith Compl. ¶ 235; WAG Compl. ¶ 213; Suffolk FAC ¶¶ 154-221; Albany SSAC ¶¶ 472-74, 2487; Westchester SSAC ¶¶ 325-27, 331-33; WAC ¶¶ 179-218, 219-63.

[12]  *See, e.g.*, CVS FASC ¶¶ 115-16, 155; EPP SACAC ¶¶ 1881-95; Hospital DAP's FAC ¶¶ 341-65; Rite Aid Compl. ¶¶ 139-40, 2816-26; United SAC ¶¶ 175-224; IRP II AC ¶¶ 111-17, 145-48; IRP III AC ¶¶ 85-88; MSP FAC ¶¶ 149, 150, 181-308; Humana II FAC ¶¶ 347-48; Molina FAC ¶¶ 347-48, 378-88; Kroger SAC ¶¶ 77-91; Smith Compl. ¶¶ 104-18; WAG Compl. ¶¶ 98-108; Suffolk FAC ¶¶ 109-10; Albany SSAC ¶¶ 22, 340-45, 4381-87; Westchester SSAC ¶¶ 22, 4277-80; WAC ¶¶ 2574, 2583.

[13] Memo. of Law in Supp. of Defs.' Omnibus Partial Mot. to Dismiss Conspiracy Claims for Which There Are No Factual Allegations (hereinafter "Defs. MOL") at 1 (seeking "dismissal of alleged conspiracies or portions of alleged conspiracies").  All citations to the Defs. MOL are to the brief filed in the CVS action, No. 20-CV-06310, ECF No. 199-1.

such allegations regarding *all generic drugs* identified in their pleadings.  *See* Defs. MOL at 6-10.

But as courts presiding over antitrust MDL proceedings have often noted, "there simply is no requirement that an antitrust plaintiff draw the boundaries of the alleged conspiracy (or conspiracies) in a complaint with the precision of a diamond cutter."  *In re Capacitors Antitrust Litig.*, 106 F. Supp. 3d 1051, 1063 (N.D. Cal. 2015); *see also In re Fine Paper Antitrust Litig.*, 685 F.2d 810, 822 (3d Cir. 1982) (noting district court should not overlook a conspiracy claim by conducting "a seriatim examination of the claims against each of five conspiracy defendants as if they were separate lawsuits" (citing *Cont'l Ore Co. v. Union Carbide & Carbon Corp.,* 370 U.S. 690, 698–99 (1962))).  For this reason, courts at the pleading stage have not required plaintiffs to make detailed allegations regarding every non-substitutable product that was alleged to be affected by defendants' illegal agreement to restrain trade.  *See*, *e.g.*, *In re Capacitors*, 106 F. Supp. 3d at 1058-62 (denying motion to dismiss that the defendants conspired to restrain trade regarding products that "can vary considerably in specific application" and rejecting the defendants' argument that a single "overarching" conspiracy is "just too big to plead"); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 738 F. Supp. 2d 1011, 1016 (N.D. Cal. 2010) (denying motion to dismiss claim that the defendants conspired to restrain trade for all cathode ray tubes used in "televisions and computer monitors" without requiring the plaintiffs to plead separate factual allegations for each non-substitutable size of CRT).

Following this long line of precedent, this Court has recognized that Defendants' challenges to the *scope* of the overarching conspiracy claims are questions of fact that can only be addressed post-discovery.  *See Generic Pharms. IV*, 394 F. Supp. 3d at 524-25 ("'[T]he question here *goes to the scope* of each Defendants' anticompetitive agreement, *not its existence*

6

and, based on the facts alleged in [Plaintiffs'] Complaints, *discovery will be required* to answer the question.") (emphasis added); *see also In re Lithium Ion Batteries Antitrust Litig.*, 2014 U.S. Dist. LEXIS, at *36 (N.D. Cal. Jan. 21, 2014) ("The question in this case is not whether any conspiracy existed, only how far it reached.  That question is ultimately one of fact, and cannot be resolved in the present procedural posture, where the Court tests only the sufficiency of the pleadings.").  Further, non-substitutability was a feature of Defendant's scheme—not a bug—as Plaintiffs allege that Defendants' conspiracy was effectuated by agreements not to compete across products that are *not* substitutes for one another.  As this Court has already held, Plaintiffs have plausibly pleaded that each Defendant benefited from limiting competition on its "portfolio of drugs" by staying in its lane according to the "rules of the road." *Generic Pharms. IV*, 394 F. Supp. 3d at 516 ("[T]o effectuate a successful price-fixing and market allocation agreement on one drug, they would need to effectuate agreements across each Defendant's portfolio of drugs.").

Undaunted by this Court's prior rulings, Defendants assert here that "[t]he Complaints lack well-pled facts that plausibly connect the individual products at issue in this Motion to *any* one of the purported conspiracies." Defs. MOL at 1-2 (emphasis added).  Not so.  As the Court has recognized, "the Overarching Complaints allege that Defendants engaged in conduct that reached *beyond their individual drugs*." *Generic Pharms. IV*, 394 F. Supp. 3d at 526 (emphasis added).  Accordingly, the Court found that the overarching conspiracy claims alleged here are analogous to those pleaded in the *Auto Parts* case, where the court "determined that the plaintiffs had sufficiently stated a broad conspiracy among multiple defendants to rig bids and fix prices of air conditioning systems where the plaintiffs alleged defendants who manufactured different [non-substitutable] component parts of the systems." *Id.* (citing *In re Auto. Parts Antitrust Litig.*,

7

2018 WL 1138422, at *4 (E.D. Mich. Jan. 16, 2018)).

Moreover, to the extent that Defendants seek to dismiss a portion of Plaintiffs' overarching conspiracy claims, they are barred by doing so by the Federal Rules, which only permit dismissal of *entire claims*. *See* Fed. R. Civ. P. 12(b)(6) (permitting dismissal for "failure to state a *claim* upon which relief can be granted") (emphasis added). Defendants cannot seek "piecemeal dismissal[]" of certain *drugs* to undercut Plaintiffs' well-pleaded overarching conspiracy claims. *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015); *McDaniel v. Vilsack*, 947 F. Supp. 2d 24, 26 n.1 (D.D.C. 2013) (holding that "Rule 12(b)(6) is not an appropriate device to use to eliminate a portion of a claim"); *In re Am. Express Anti-Steering Rules Antitrust Litig.* ("*Amex*"), 343 F. Supp. 3d 94, 102 (E.D.N.Y. 2018) ("The relevant question is whether the motion seeks dismissal of any 'claim,' no matter how many of the factual allegations in the complaint are relevant to that claim.").

*Amex* is especially instructive. In that case, Amex sought, as Defendants do here, to dismiss certain allegations that made up portions of the plaintiffs' claims, an effort that was rejected by the court as procedurally improper. *Amex*, 343 F. Supp. 3d at 101 ("Amex's Motion would be a motion to dismiss if it sought to foreclose all paths to liability under a certain cause of action; since it does not, it is properly thought of as a motion for partial summary judgment."). The same result is warranted here. As the unchallenged overarching conspiracy claims concern *all* generic drugs listed in each Complaint, the relief Defendants seek is improper. *See Generic Pharms. IV*, 394 F. Supp. 3d at 524 ("[T]he conspiracy must not be compartmentalized. The character and effect of [the] conspiracy are not to be judged by dismembering it and viewing its separate parts, but only by looking at it as a whole.") (quoting *In re Processed Egg Prods. Antitrust Litig.*, 821 F. Supp. 2d 709, 718 (E.D. Pa. 2011))); *In re Generic Pharms.*, 2023 U.S.

8

Dist. LEXIS 31649, at *35 ("[I]t is improper to 'segregate Plaintiffs' alleged overarching scheme of anticompetitive conduct into multiple discrete acts.'"); *In re Generic Pharms. Pricing Antitrust Litig.*, 2022 U.S. Dist. LEXIS 93633, at *18 (E.D. Pa. May 25, 2022) (same) (quoting *Cont'l Ore*, 370 U.S. at 699).

Accordingly, Plaintiffs' overarching conspiracy claims must, as a matter of law, survive and discovery must proceed on the merits (including the scope) of such claims. *See Selvaggi v. Borough of Point Pleasant Beach*, 2024 U.S. Dist. LEXIS 14075, at *12 (D.N.J. Jan. 26, 2024) (holding that "Defendants' failure to move to dismiss [a] claim" necessitates the claim's survival).[14]

## II. Plaintiffs Have Also Alleged Sufficient Facts to Support Their Alternative Individual Drug Conspiracy Claims.

Contrary to Defendants' arguments, Plaintiffs have pleaded sufficient factual material to put Defendants on notice as to the claims pending against them. Plaintiffs have made copious allegations—citing extensively, for example, Defendants' internal company documents and telephone logs—that Defendants participated in a broad conspiracy to unreasonably restrain trade in the sale of generic pharmaceuticals.[15] These allegations, which are provided either generally or regarding exemplar drugs, detail how Defendants' conspiracy was agreed and effected in practice.[16] These allegations, in and of themselves, are sufficient to both satisfy

---

[14] It is black letter law that an argument omitted from a defendant's motion is deemed waived. *See, e.g.*, *Brown v. Certain Underwriters at Lloyds*, 777 F. App'x 34, 36 (3d Cir. 2019) ("When a party does not raise an argument in district court, that failure 'constitutes a waiver of the argument.'") (quoting *Belitskus v. Pizzingrilli*, 343 F.3d 632, 645 (3d Cir. 2003)).

[15] *E.g.*, CVS FASC ¶¶ 139, 161; EPP SACAC ¶¶ 4-21, 105-08, 155, 156 (Table 2), 178, 1894; United SAC ¶¶ 174-232; Humana II FAC ¶¶ 367-427, 423-83; Molina FAC ¶¶ 386-422, 896-929; HCSC FAC ¶¶ 407-67; Rite Aid Compl. ¶¶ 139-214, 217-73; Suffolk FAC ¶¶ 154-221; Albany SSAC ¶¶ 42-43, 3248-52, 3687-92, 899-902, 4388-90; Westchester SSAC ¶¶ 42-43, 1615-22; WAC ¶¶ 321-2178.

[16] *E.g.*, CVS FASC App. B ("Teva's Role in Conspiracies Related to Price-Fixed Drugs"); EPP SACAC ¶¶ 162, 195, 232, 237, 251, 284, 307, 344, 358, 364, 390, 405, 472, 533, 654, 833, 851, 860, 1012, 1032, 1039, 1263, 1269, 1369, 1514, 1768 (individual drug conspiracy allegations); WAC ¶¶ 321-2178.

*Twombly* and to put Defendants on notice of the claims pending against them regarding each drug identified in the Complaint as affected by Defendants' conspiracy. *See generally In re Generic Pharms. Pricing Antitrust Litig.* ("*Generic Pharms. I*"), 338 F. Supp. 3d 404, 437-54 (E.D. Pa. 2018) (denying motion to dismiss and finding that the plaintiffs pleaded sufficient allegations surrounding communications between defendants and other plus factors); *see also In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 331 (3d Cir. 2010) ("At this stage of the litigation, Rule 8(a)(2) requires plaintiffs to plead only 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of illegal agreement.'") (quoting *Twombly*, 550 U.S. at 556).

Indeed, Defendants do not challenge the fact that Plaintiffs have plausibly pleaded individual conspiracies as to a multitude of generic drugs. *See* Exhibit A.[17]  And as this Court has accepted as plausible Plaintiffs' allegation that Defendants conspired to fix prices and allocate markets across the generic pharmaceutical industry generally, it is reasonable to infer that discovery will reveal the existence of an illegal agreement to fix prices and allocate markets *for* each generic drug identified by Plaintiffs specifically. *See Twombly*, 550 U.S. at 556 (holding that, at the pleading stage, plaintiffs are only required to plead facts that plausibly support the inference that discovery will reveal the existence of an illegal agreement); *Burtch v. Millberg Factors, Inc.*, 662 F.3d 212, 227 (3d Cir. 2011) (same).

As the Supreme Court stated in *Twombly*, a plaintiff is not required to demonstrate that the alleged conduct was *probable*, only that it is *plausible*.  550 U.S. at 556 ("Asking for

---

[17] Defendants' claim that their Exhibit 1 lists all drugs for which "there are no factual allegations" in Plaintiffs' pleadings is false as to numerous drugs.  Defs. MOL at 7.  *See*, *e.g.*, CVS FASC: Benazepril Hydrochloride, Hydrochlorothiazide (App. F ¶¶ 52, 54-59, 61); Betamethasone Dipropionate (App. C ¶¶ 233-51, App. E ¶¶ 123-28, App. G ¶¶ 65-75); Desogestrel, Ethinyl Estradiol, Inert (App. B ¶¶ 488-94); Erythromycin (App. C ¶ 652-66); Glipizide, Metformin HCL (App D. ¶¶ 191-203, App F. 152-58); Oxybutynin Chloride (App. B. ¶¶ 102-08).

plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement."); *see also In re Generic Pharms.*, 2023 U.S. Dist. LEXIS 31649, at *31 ("On a motion to dismiss, the Court 'consider[s] plausibility, not probability.'").

Here, Plaintiffs' individual drug conspiracy claims easily surpass this threshold for three reasons. *First*, the individual drug conspiracy claims set forth "'enough factual matter (taken as true) to *suggest* that an agreement was made.'" *Generic Pharms. IV*, 394 F. Supp. 3d at 525 (quoting *Twombly*, 550 U.S. at 556) (emphasis added). Plaintiffs' copious allegations as to the documents, communications, and trade organization meetings that demonstrate the existence of Defendants' conspiracy to restrain competition in the generic pharmaceutical industry generally are not inherently drug-specific and are thus equally applicable to each of Plaintiffs' individual drug conspiracy claims.[18]

*Second*, the Court has already held that the allegations supporting the overarching conspiracy claims are sufficiently detailed to give Defendants notice of the claims against them. *Generic Pharms. I*, 338 F. Supp. 3d at 454 ("Plaintiffs' complaints, while not answering all specific questions about 'who, what, when and where,' do put defendants on notice concerning the basic nature of their complaints against the defendants and the grounds upon which their claims exist."). As to each of the individual drug conspiracies alleged in Plaintiffs' Complaints, Defendants have been put on notice as to: (i) the alleged co-conspirators; (ii) the object of the

---

[18] *See supra* at pp. 3-5; *see also* CVS FASC ¶¶ 117-83; EPP SACAC ¶¶ 118-30, 155-65; Hospital DAP's FAC ¶¶ 404-20; Rite Aid Compl. ¶¶ 74-273; MSP FAC ¶¶ 210-312; Kroger SAC ¶¶ 77-280; Smith Compl. ¶¶ 105-303; WAG Compl. ¶¶ 98-289; United SAC ¶¶ 178-232; Humana II FAC ¶¶ 367-427, 423-83; Molina FAC ¶¶ 386-422, 896-929; HCSC FAC ¶¶ 407-67; Suffolk FAC ¶¶ 154-221; Albany SSAC ¶¶ 24-28, 403-09, 4388-90; Westchester SSAC ¶¶ 270, 291-93, 4286, 4331-32.

conspiracy; (iii) the alleged timeframe of the conspiracy; and (iv) the manner in which the conspiracy was effectuated—*i.e.*, the fair share scheme and its implementation as described above.  Stated differently, as to each individual drug conspiracy claim, Plaintiffs have alleged the who, what, when, where, and why—far exceeding the requirements of *Twombly*.  *See id.* at 440 ("[S]pecific facts are not necessary; the [complaints] need only give the defendant fair notice of what the claim is and the grounds upon which it rests.").

As between each individual drug conspiracy *claim*, the only element that changes is the individual drug at issue.  But that change alone cannot deprive Defendants of notice of the claims they must defend against.  Indeed, Plaintiffs in *TFT-LCD* were found to have plausibly alleged claims regarding the TFT-LCD industry generally, despite the fact that, for example, a 15-inch LCD panel cannot be used in a mobile phone, a 28-inch monitor, or a 46-inch television, among a myriad of other products.  *In re TFT-LCD Antitrust Litig.*, 586 F. Supp. 2d 1109, 1114-16 (N.D. Cal. 2008).  Like the *TFT-LCD* defendants, Defendants here know that Plaintiffs intend to meet their burden of proof as to each generic drug specifically identified in Plaintiffs' pleadings and, more importantly, *how* they intend to meet their burden of proof—through evidence of meetings, phone calls, text messages, and other direct and circumstantial evidence of unlawful agreement among the Defendants to artificially inflate the price of those generic drugs.

It is therefore of no consequence that some Plaintiffs allege that Defendants' conspiracy affected "all dosages, strengths, and formulations" of particular generic drugs.[19]  *See* Defs.' MOL at 8; Ex. 2.  Nor have any individual Defendants demonstrated any basis to dismiss claims

---

[19]  Defendants are again wrong on the facts.  For example, Defendants claim that CVS only alleged conduct surrounding Etodolac ER tablets. Defs. MOL at 8-9.  Not true.  *See* CVS FASC, App. B ¶¶ 582-607, App. E ¶¶ 363–92 (allegations concerning *both* Etodolac and Etodolac ER).  Moreover, the IRPs asserts that Taro's "competitors [which for Carbamazepine ER included Wockhardt] uniformly declined opportunities to bid on Taro's customers after the May 2013 increases."  *See* IRP III Am. Compl. ¶ 245, App. A.

where alleged participants are manufacturers of different forms (*e.g.*, tablets vs. capsule) of *the same drug*. *See id.* at Ex. 3 (seeking dismissal because allegations are "combined" within the same drug). Plaintiffs have identified each generic drug impacted by Defendants' conspiracy, and, where possible, have given "reasonable, not exhaustive, notice of the allegations" by identifying the formulations and strengths affected by Defendants' conspiracy. *In re Processed Egg Prods.*, 821 F. Supp. 2d at 719. Nothing more is required.[20]

Finally, even if the Court were to grant Defendants' motion as to the individual drug conspiracy claims that purportedly lack factual allegations, such a decision would have no practical import on the case because the overarching conspiracy claims will continue as to those drugs and Defendants. *See supra* Section I. Accordingly, the Court should deny Defendants' motion to dismiss individual drug conspiracies as to the drugs listed in Defendants' Exhibits 1 and 2, as well as Exhibit 3 to the extent that individual Defendants assert (without support) that different forms (*e.g.*, tablets and capsules) *of the same drug/active ingredient* render a conspiracy implausible and complain that the allegations on the same drug are "combined."

## III.    The Individual Defendants Should Not Be Dismissed.

The Court should deny dismissal of any individual Defendants for a lack of drug-specific allegations against them, because these Defendants concede that Plaintiffs have plausibly alleged

---

[20]  Defendants' argument that "[t]he Court has previously observed that alleged conspiracies vary across different formulations of products," (Defs. MOL at 9 (citing *Generic Pharms. I*, 338 F. Supp. 3d at 419)), is misplaced because that decision was specific to complaints only alleging freestanding, individual drug conspiracies. *See Generic Pharms. I*, 338 F. Supp. 3d at 412 ("[F]or the drugs relevant to this Opinion the DPPs, EPPs, and IRPs are currently proceeding with claims set forth in multiple separate complaints, each of which is focused on an alleged conspiracy regarding *one generic drug* (although each complaint addresses claims pertaining to multiple strengths and/or formulations of the same drug).") (emphasis added). Where the Court has dismissed individual *formulations*, it has done so only where Plaintiffs have withdrawn their claims voluntarily. *See In re Generic Pharms.*, 2023 U.S. Dist. LEXIS 31649 at *34 (dismissing individual conspiracy claim regarding Methylphenidate HCL Extended Release against Actavis because "Plaintiffs agree"); *id.* at *35 ("Plaintiff States have withdrawn the claim as to Methylphenidate HCL ER asserted against Sun Pharmaceuticals Industries, Inc. and the motion to dismiss will be granted as to this drug.").

that each of these Defendants participated in at least *some portion of the conspiracy* (*see* Exhibit A) *and* the overarching conspiracy.[21]  Defendants' argument that Plaintiffs must allege facts tying each individual Defendant to each and every conspiracy alleged in the Complaints, (Defs.' MOL at 10), has already been soundly rejected as premature.  *See Aurobindo*, 2025 U.S. Dist. LEXIS 22329 at *26-27 ("[O]nce the existence of a conspiracy is plausibly alleged, the scope of that conspiracy—*including the extent of any single Defendant's participation*—is usually treated as a question of fact better resolved at a later stage of the case.") (emphasis added); *see also In re Processed Egg Prods.*, 821 F. Supp. 2d at 719 ("[C]ourts have held that antitrust conspiracy allegations need not be detailed on a defendant-by-defendant basis.") (collecting cases).

For this reason, the Court's previous decisions concerning Teligent and McKesson are distinguishable.  Teligent was dismissed in context of a complaint alleging a single-drug conspiracy wherein Plaintiffs offered no allegations concerning Teligent's involvement in the overarching conspiracy.  *Generic Pharms I*, 338 F. Supp. 3d at 412 ("[R]elevant to this Opinion

---

[21] G&W falsely claims that United has made "no allegations as to G&W [at all] in the Complaint, aside from G&W's inclusion in the caption," and thus seeks dismissal as to "[a]ll products listed" in United's SAC.  Ex. 3 at 5. That is plainly in error.  *See* United SAC ¶¶ 638-55 (detailing extensive direct communications between G&W and competitors to allocate and raise prices in the Fluocinonide market).  G&W tellingly does not challenge the virtually identical allegations against it concerning Fluocinonide in the other Plaintiffs' complaints.  Defendants' Exhibit 3 also contains numerous other misstatements concerning Plaintiffs' allegations.  Specifically, for some drugs identified in Exhibit 3, Plaintiffs *do provide* drug-specific allegations.  *See* CVS FASC: Adapalene, Taro (App. B ¶¶ 74, 94-96); Cephalexin Monohydrate, Teva (App. B ¶¶ 71, 157-64); Glyburide, Metformin Hydrochloride, Teva (App. D ¶¶ 232-49); Verapamil, Apotex (App. D ¶¶ 365-79); Rite Aid Compl.: Amantadine, Lannett (¶¶ 359-63); Clarithromycin ER, Zydus (¶¶ 2565-66, 2569-70); Doxycycline DR, Mayne (¶¶ 101, 997-98, 1025-28, 2861, 2863); Hydralazine, Glenmark (¶¶ 1441-42, 1449); Hydralazine, Camber (¶¶ 1441-42, 1449); Hydralazine, Teva (¶¶ 1441-42, 1449); Oxycodone/Acetaminophen, Mayne (¶ 1985); Penicillin VK, Greenstone (¶¶ 2645-46); Triamcinolone Acetate, Taro (¶ 2274); MSP FAC: Ciclopirox Shampoo, Taro (¶¶ 1875, 1918, 1936-48); Digoxin Tablets, Sun ¶¶ 2973-76); Trazadone HCL Tablets, Teva (¶¶ 3127-32); Triamcinolone Acetonide Cream, Taro (¶¶ 1564-71); Epitol tablets, Apotex & Taro (¶ 1064); Penicillin V Potassium, Greenstone (¶¶ 1435-38) Pfizer (¶¶ 2652-53); Epitol, Apotex (¶¶ 1064-65) Taro (¶¶ 1064-65); Fluocinolone Acetonide Ointment, Taro (¶¶ 1489-94, 2207); Nabumetone Tablets, Taro (¶ 571, Exhibit D Trade Association Meetings); Nadolol, Taro (¶¶ 217, 235, 237, 249); Carbamazepine, Apotex (¶¶ 237, 1064-65, 3183, 3186); Desoximetasone Ointment, Perrigo (¶¶ 241, 297, 1489-95); Albany SSAC: Clemastine Fumarate, Sandoz and Teva (¶¶ 2852-2873); Disulfiram Tablets, Breckenridge (¶¶4052-4059); Pioglitazone HCL Metformin HCL Tablets, Torrent (¶¶ 2180-2202); Westchester SSAC: Clarithromycin ER Tablets, Zydus (¶¶1635; 1711-14; 2896-921); Clemastine Fumarate Oral Liquid, Sandoz and Teva (¶¶ 2744-66); Disulfiram Tablets, Breckenridge (¶¶ 3946-3953); Amlodipine/Valsartan HCTZ Tablets, Torrent (¶¶ 388, 4313-4320).  *See also* Supplemental Memoranda filed contemporaneously by EPPs.

the DPPs, EPPs, and IRPs are currently proceeding with claims set forth in multiple *separate*

*complaints*, each of which is focused on an alleged conspiracy regarding *one* generic drug.")

(emphasis added).  McKesson is a drug distributor "situated in a different level of the supply

chain," and plaintiffs made "no explicit allegations of parallel conduct" between McKesson and

the Defendants.  *In re Generic Pharms. Pricing Antitrust Litig.*, 386 F. Supp. 3d 477, 483-84

(E.D. Pa. 2019) (citation omitted).

Moreover, as the Court has already found, allegations as to a single drug (like those listed

in Exhibit A) are sufficient to tie a Defendant to the overarching conspiracy.  *See In re Generic*

*Pharms.*, 2023 U.S. Dist. LEXIS 31649, *34-35 (allegations concerning only a single drug were

sufficient to tie Lannett to the 80-drug conspiracy); *id.* at *38 (plaintiffs "[were] not required to

allege that Amneal 'engaged in all activities alleged to have advanced the conspiracy'" (quoting

*Generic Pharms. I*, 338 F. Supp. 3d at 450)).  Accordingly, Defendants' arguments are more

appropriately adjudicated on a motion for summary judgment.  *See Aurobindo*, 2025 U.S. Dist.

LEXIS 22329 at *60 (denying the motion to dismiss regarding individual drug conspiracies and

an overarching conspiracy but noting that the States would have to "prove" the allegations).

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion in its entirety.

However, should the Court grant Defendants' motion as to any of drugs at issue, Plaintiffs

respectfully request leave to amend their Complaints.  Such leave is ordinarily freely granted and

would be particularly warranted here since Defendants have not previously raised these

particular challenges, and discovery into the full extent of Defendants' conduct has been

proceeding since the complaints were filed and still remains ongoing.

Dated: June 20, 2025

Respectfully submitted,

By: */s/ Cindy Reichline*
Cindy Reichline
Keith Butler
Shira Liu
Taylor Keating
**BRS LLP**
2121 Avenue of the Stars, Suite 800
Los Angeles, CA 90067
Tel: (310) 295-9524
creichline@brsllp.com
kbutler@brsllp.com
sliu@brsllp.com
tkeating@brsllp.com

*Counsel for Hospital Direct Action Plaintiffs*

By: */s/ Christian Hudson*
Christian Hudson
**CUNEO GILBERT & LaDUCA, LLP**
300 Cadman Plaza West
12th Floor, Suite 12060
Brooklyn, NY 11201
Tel: (202) 789-3960
Facsimile: (202) 789-1819
christian@cuneolaw.com

Charles Barrett
Jennifer E. Kelly
Claire Esmonde
Dajonna Richardson
**CUNEO GILBERT & LaDUCA, LLP**
2445 M Street, NW
Suite 740
Washington, DC 20037
Tel: (202) 789-3960
Facsimile: (202) 789-1819
cbarett@cuneolaw.com
jkelly@cuneolaw.com
cesmonde@cuneolaw.com
drichardson@cuneolaw.com

By: */s /Douglas F. Johnson*
Douglas F. Johnson
PA ID #40036
**EARP COHN P.C.**
123 South Broad Street, Suite 1030
Philadelphia, PA 19109
Tel: (215) 963-9520
dfjohnson@earpcohn.com

Ethan E. Litwin
Matthew L. Cantor
**SHINDER CANTOR LERNER LLP**
14 Penn Plaza, Suite 1900
New York, New York 10122
Tel: (646) 960-8610
ethan@scl-llp.com
matthew@scl-llp.com

Allison F. Sheedy
**CONSTANTINE CANNON LLP**
1001 Pennsylvania Avenue, N.W.,
Suite 1300N
Washington, D.C. 20004
Tel: (202) 204-3500
asheedy@constantinecannon.com

*Counsel for Plaintiff CVS Pharmacy, Inc.*

By: */s/ Roberta D. Liebenberg*
Roberta D. Liebenberg
Paul Costa
**FINE, KAPLAN AND BLACK, R.P.C.**
One South Broad Street, 23rd Floor
Philadelphia, PA 19107
Tel: (215) 567-6565
rliebenberg@finekaplan.com
pcosta@finekaplan.com

*Lead and Liaison Counsel for the
End-Payer Plaintiffs*

16

*Lead Counsel for the Indirect Reseller Plaintiffs*

By: */s/ Eric L. Bloom*
Eric L. Bloom
Barry L. Refsin
Alexander J. Egerváry
Caitlin V. McHugh
**HANGLEY ARONCHICK
SEGAL PUDLIN & SCHILLER**
One Logan Square, 27th Floor
Philadelphia, PA 19103
Tel: (215) 568-6200
ebloom@hangley.com
brefsin@hangley.com
aegervary@hangley.com
cmchugh@hangley.com

*Counsel for Rite Aid Corporation,
Rite Aid Hdqtrs. Corp. & RAD Sub-Trust A*

By: */s/ Charles F. Rule*
Charles F. Rule
Daniel J. Howley
Margot M. Campbell *(Admitted Pro Hac Vice)*
Emily M. Renzelli
Taylor C. Williams *(Admitted Pro Hac Vice)*
**RULE GARZA HOWLEY LLP**
901 7th Street NW
Washington, D.C. 20001
Tel.: (202) 843-9280
Rule@RuleGarza.com
Howley@RuleGarza.com
Campbell@RuleGarza.com
Renzelli@RuleGarza.com
Williams@RuleGarza.com

*Counsel for Plaintiff The Cigna Group*

By: */s/ Judith A. Zahid*
Judith A. Zahid
Eric W. Buetzow
**ZELLE LLP**
555 12th Street, Suite 1230
Oakland, CA 94607
Tel: (415) 693-0700
jzahid@zellelaw.com
ebuetzow@zellelaw.com

Hamish P.M. Hume
Michael S. Mitchell
**BOIES SCHILLER FLEXNER LLP**
1401 New York Ave, NW
Washington, D.C. 20005
Tel: (202) 237-2727
hhume@bsfllp.com
mmitchell@bsfllp.com

*Counsel for Plaintiff United HealthCare Services, Inc.*

By: */s/ Samuel Randall*
Richard Alan Arnold, Esquire
William J. Blechman, Esquire
Samuel J. Randall, Esquire
**Sperling Kenny Nachwalter, LLC**
1441 Brickell Avenue
Suite 1100
Miami, Florida  33131
Tel: (305) 373-1000
Fax: (305) 372-1861
E-mail:
rarnold@sperlingkenny.com
wjb@sperlingkenny.com
srandall@sperlingkenny.com

*Counsel for Kroger DAPs*

17

By: */s/ Aida M. Landa*
Aida M. Landa, Fla. Bar No. 0136451
John W. Cleary, Fla. Bar No. 118137
Janpaul Portal, Fla. Bar No. 0567264
**MSP RECOVERY LAW FIRM**
The Miami Green Building
3150 SW 38th Ave., Suite 1100
Miami, Florida 33146
Tel: (305) 614-2222
alanda@msprecoverylawfirm.com
jcleary@msprecoverylawfirm.com
jportal@msprecoverylawfirm.com
serve@msprecoverylawfirm.com

*Counsel for Plaintiffs MSP Recovery Claims, Series LLC; Series PMPI, a designated series of MAO-MSO Recovery II, LLC; MSPA Claims 1, LLC*

By: */s/ Salvatore C. Badala*
Salvatore C. Badala
**NAPOLI SHKOLNIK PLLC**
400 Broadhollow Road
Melville, NY 11747
Tel: (212) 397-1000
Fax: (646) 843-7603
sbadala@napolilaw.com

By: */s/ Nestor D. Galarza*
Nestor D. Galarza
**NSPR LAW SERVICES, LLC**
1302 Avenida Ponce de Leon
Santurce, Puerto Rico 00907
Tel: (833) 271-4502
ngalarza@nsprlaw.com

*Counsel for Plaintiffs County of Albany, Town of Amherst, County of Cattaraugus, County of Chemung, County of Chenango, County of Columbia, County of Erie, County of Essex, County of Livingston, MagnaCare Insurance, MEBCO, City of Mobile, County of Monroe, County of Oneida, County of Onondaga, County of Osceola, County of Otsego, City of Poughkeepsie, County of Schuyler, County of Shelby, WCA Group Health Trust, County of Yates, County of Westchester and Illinois Public Risk Fund*

By: */s/ Peter D. St. Phillip*
Peter D. St. Phillip
Raymond P. Girnys
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, N.Y. 10601
Tel: (914) 997-0500
PStPhillip@lowey.com
RGirnys@lowey.com

Laura Mummert
**LOWEY DANNENBERG, P.C.**
One Tower Bridge
100 Front Street, Suite 520
West Conshohocken, PA 19428
Tel: (215) 399-4770 lmummert@lowey.com

By: */s/ Jason H. Kim*
Todd M. Schneider
Jason H. Kim
Matthew S. Weiler
J. Caleigh Macdonald
**SCHNEIDER WALLACE COTTRELL KONECKY LLP**
2000 Powell Street, Suite 1400
Emeryville, CA 94608
Tel: (415) 421-7100
TSchneider@schneiderwallace.com
JKim@schneiderwallace.com
MWeiler@schneiderwallace.com
JMacdonald@schneiderwallace.com

*Attorneys for Plaintiffs Humana Inc.,*

18

*Counsel for Humana, Inc. and Molina Healthcare, Inc.*

*Health Care Service Corporation, and Molina Healthcare, Inc.*

By: */s/ Patrick J. Ahern*
Patrick J. Ahern
**AHERN AND ASSOCIATES P.C.**
8 South Michigan Avenue
Suite 3600
Chicago, Illinois
Tel: (312) 404-3760
patrick.ahern@ahernandassociatespc.com

By: */s/ Jonathan A. Sorkowitz*
Jonathan A. Sorkowitz
**LAW OFFICES OF JONATHAN A. SORKOWITZ**
480 Bedford Road, Suite 3201
Chappaqua, New York 10514
Tel: (646) 493-9636
jsorkowitz@sorkowitzlaw.com

*Counsel for Plaintiff Winn-Dixie Stores, Inc. and Bio-Lo Holdings, LLC*

*Counsel for Plaintiff County of Suffolk*

19